1   DAVID GROSSMAN (SBN 211326)
    dgrossman@loeb.com
2   LOEB & LOEB LLP
    10100 Santa Monica Blvd., Suite 2200
3   Los Angeles, CA  90067
    Telephone: 310.282.2000
4   Facsimile: 310.282.2200

5   Attorneys for Defendants
    AARON SIMS, MATT DUFFER, ROSS
6   DUFFER, NETFLIX, INC., NETFLIX
    STREAMING SERVICES, INC., and
7   21 LAPS INC.

8

9                    UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11

12  IRISH ROVER ENTERTAINMENT,          Case No.: 2:20-cv-06293-CBM-PLA
    LLC, a California limited liability
13  company,                            Assigned to Hon. Consuelo B.
                                         Marshall
14              Plaintiffs,
                                         **MEMORANDUM OF POINTS**
15         v.                            **AND AUTHORITIES IN**
                                         **SUPPORT OF DEFENDANTS'**
16  AARON SIMS, an individual; MATT     **MOTION TO DISMISS**
    DUFFER, an individual; ROSS          **PLAINTIFF'S FIRST AMENDED**
17  DUFFER, an individual; NETFLIX,     **COMPLAINT PURSUANT TO**
    INC., a Delaware corporation;        **FED. R. CIV. PROC. 12(b)(6)**
18  NETFLIX STREAMING SERVICES,
    INC., a Delaware corporation; 21
19  LAPS, INC., a California corporation;
    and DOES 1 through 50, inclusive,    [Filed concurrently: *Notice of Motion
20                                        and Motion to Dismiss; Request for
                Defendants.               Judicial Notice; Declaration of David
21                                        Grossman; Notice of Lodging;
                                          [Proposed] Order*]
22
                                         Date: January 26, 2021
23                                       Time: 10:00 a.m.
                                         Courtroom: 8B
24
25                                       First Amended Complaint Filed:
                                         October 12, 2020
26

27

28

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

19699050
231804-10002

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................... i

II.     FACTS ...................................................................................................... 2

    A.      Plaintiff's "Totem" ...................................................................... 2

    B.      Defendants' "Stranger Things" .................................................. 4

        1.      Season 1 .......................................................................... 4

        2.      Season 2 .......................................................................... 6

        3.      Season 3 .......................................................................... 7

III.    DISCUSSION ......................................................................................... 9

    A.      Legal Standard ............................................................................ 9

        1.      Rule 12(b)(6) .................................................................. 9

        2.      Copyright Infringement. ................................................ 9

    B.      There Is No Substantial Similarity Between The Works At
Issue .......................................................................................... 11

        1.      Plot and Sequence of Events ........................................ 12

        2.      Characters ..................................................................... 16

        3.      Theme ............................................................................ 20

        4.      Dialogue ........................................................................ 20

        5.      Mood .............................................................................. 21

        6.      Setting ........................................................................... 21

        7.      Pace ............................................................................... 22

    C.      Plaintiff's "Concept Art" Claim Is Frivolous. ...................... 23

IV.     CONCLUSION ...................................................................................... 25

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

19699050
231804-10002

i

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

5

*Acker v. King,*
46 F. Supp. 3d 168 (D. Conn. 2014) ................................................ 18

6

7

*Althouse v. Warner Bros. Entm't,*
2014 U.S. Dist. LEXIS 92071 (C.D. Cal. Apr. 28, 2014)................... 14

8

9

*Anderson v. Clow (In re Stac Elecs. Sec. Litig.),*
89 F.3d 1399 (9th Cir. 1996) ............................................................ 9

10

11

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ......................................................................... 9

12

13

*Balistreri v. Pacifica Police Dep't,*
901 F.2d 696 (9th Cir. 1988) ............................................................ 9

14

*Basile v. Warner Bros. Entm't, Inc.,*
2016 U.S. Dist. LEXIS 194791 (C.D. Cal. Jan. 4, 2016).................. 14

15

16

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ......................................................................... 9

17

18

*Benay v. Warner Bros. Entm't, Inc.,*
607 F.3d 620 (9th Cir. 2010) ................................................*passim*

19

20

*Berkic v. Crichton,*
761 F.2d 1289 (9th Cir. 1985) ........................................................ 11

21

22

*Bernal v. Paradigm Talent & Literary Agency,*
788 F. Supp. 2d 1043 (C.D. Cal. 2010)........................................... 18

23

24

*Cavalier v. Random House, Inc.,*
297 F.3d 815 (9th Cir. 2002) .................................................... 11, 22

25

*Christianson v. W. Pub. Co.,*
149 F.2d 202 (9th Cir. 1945) .......................................................... 10

26

27

*DuckHole Inc. v. NBC Universal Media LLLC,*
2013 U.S. Dist. LEXIS 157305 (C.D. Cal. Sept. 6, 2013)................ 23

28

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

19699050
231804-10002

ii

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS

<u>**TABLE OF AUTHORITIES (CONT'D)**</u>

<u>**Page(s)**</u>

*Esplanade Prods., Inc. v. Walt Disney Co*.,
  2017 U.S. Dist. LEXIS 217700 (C.D. Cal. Nov. 8, 2017) ................................. 19

*Funky Films, Inc. v. Time Warner Ent. Co., L.P.*,
  462 F.3d 1072 (9th Cir. 2006) ........................................... 11, 14, 15, 18

*Gable v. NBC*,
  727 F. Supp. 2d 815, 844 (C.D. Cal. 2010), *aff'd sub nom.*
  438 F. App'x 587 (9th Cir. 2011) ............................................... 13, 20

*Litchfield v. Spielberg*,
  736 F.2d 1352 (9th Cir. 1984) ............................................................. 11

*Olson v. NBC*,
  855 F.2d 1446 (9th Cir. 1988) .......................................................... 11, 20

*Peter F. Gaito Architecture, L.L.C. v. Simone Dev. Corp.*,
  602 F.3d 57 (2d Cir. 2010) .................................................................. 12

*Rentmeester v. Nike, Inc.*,
  883 F.3d 1111 (9th Cir. 2018) ........................................................... 9, 10

*Rice v. Fox Broad. Co.*,
  330 F.3d 1170 (9th Cir. 2003) ............................................................. 21

*Shame on You Prods. v. Banks*,
  120 F. Supp. 3d 1123 (C.D. Cal. 2015) ........................................ 10, 20, 21, 22

*Shaw v. Lindheim*,
  919 F.2d 1353 (9th Cir. 1990) ............................................................. 21

*Weygand v. CBS, Inc.*,
  1997 U.S. Dist. LEXIS 10613 (C.D. Cal. May 20, 1997) ................................. 22

*Wild v. NBC Universal, Inc.*,
  788 F. Supp. 2d 1083 (C.D. Cal. 2011) ................................................... 10

*Zella v. E.W. Scripps Co.*,
  529 F. Supp. 2d 1124 (C.D. Cal. 2007) .................................................... 11

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

19699050
231804-10002

iii

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS

## <u>TABLE OF AUTHORITIES (CONT'D)</u>

<u>**Page(s)**</u>

**Other Authorities**

Fed. Rule Civ. Proc. 12(b)(6) ........................................................................ 9

Nimmer on Copyright §12.10 ....................................................................... 12

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

19699050
231804-10002

iv

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS

# I.     INTRODUCTION

Plaintiff Irish Rover ("Plaintiff") filed this copyright infringement suit claiming that three different seasons of the acclaimed Netflix series, *Stranger Things*, collectively infringe on certain unpublished screenplays entitled *Totem*.[1] Plaintiff also alleges that *Stranger Things* infringes on unpublished "concept art" that was created in connection with the unrealized *Totem* film project.  Plaintiff's infringement claims are entirely without merit – even a cursory comparison of *Stranger Things* and *Totem* demonstrates that there is no substantial similarity of protectable elements between these works.

*Stranger Things* is a lighthearted and sentimental series, set in a small Indiana town in the mid-1980s, which focuses on four teenage boys and a young girl named Eleven who is gifted with telekinetic powers.  In the series' first season, one of the teenage boys, Will Byers, is abducted by a creature called the "Demogorgon."  The other children (along with Will's mother) work together to find and rescue Will.  In the second and third seasons, the same core group of teenagers, along with some of their older siblings and classmates, continue to fight off different monsters, evil scientists, and Russian military operatives in their small town.

Plaintiff's *Totem*, on the other hand, is the story of Jackson Chance, an epileptic veteran who dies after freeing his dead wife's spirit from the grasp of a giant English-speaking angel/demon named Azrael.  *Totem* is steeped in Native American imagery and mythology, and involves magical totem poles, dream catchers with supernatural powers, "Blackwolf Indians" from another realm, "Lynx Indians" that help the protagonist on his journey, and a local doctor who is eventually revealed to be a powerful medicine man.

---

[1] Plaintiff has attached one of the *Totem* screenplays to the First Amended Complaint ("FAC") and alleges that other screenplays have been registered under the same, or similar names.  Defendants collectively refer these works as *Totem*. The characters, plots and other creative elements of Plaintiff's separately-registered works do not differ in any material respect from the screenplay attached to the FAC.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

19699050
231804-10002

1

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS

These stories are incredibly dissimilar in plot, theme, characters, settings, dialogue, tone and mood.  Most glaringly, *Stranger Things* features a core group of <u>children</u> who fight off evil monsters while navigating teenage social issues.  *Totem*, on the other hand, features <u>adults</u>, and its characters and storylines are deeply immersed in Native American imagery and mythology, and involve a medicine man, a Shaman, and a spiritual "warrior" battling an evil deity.  Plaintiff's work is objectively different from *Stranger Things* in virtually every imaginable measure.

Plaintiff has populated the FAC with a lengthy list of supposed similarities, but the only arguable similarities between the works arise from general, unprotectable ideas.  For example, Plaintiff claims that both works involve the "rescue [of] a loved one" who has "been abducted by a monster and carried to an alternate dimension."  FAC ¶ 73.  Ninth Circuit law makes clear that this type of abstract idea is not protectable; only the "concrete elements" that fill out such general conceptual frameworks are subject to legal protection.  Here, a straightforward application of this Circuit's governing test unequivocally establishes that <u>there are no similarities of protectable expression between these works</u>.  Further amendments to Plaintiff's FAC would be futile, as the works themselves are fixed, and no amount of artful pleading can alter the content of the parties' respective works.  Defendants therefore request that the FAC be dismissed with prejudice.

## II.    FACTS

### A.    Plaintiff's "*Totem*"

*Totem* tells the story of Jackson Chance, a man in his thirties living in "Blackwolf Valley," Wyoming, struggling with epilepsy after his time in the military.  Declaration of David Grossman ("Grossman Decl."), Ex. D, *Totem*, dated March 2013, pp. 1, 3, 7, 9, dated March 2015, p. 3.[2]  Jackson's wife Autumn is a

---

[2] Plaintiff claims that Jackson Chance's epilepsy was based on the author's childhood friend, Clint Osthimer, who suffered from that disease.  The FAC also goes into detail regarding the fact that Osthimer served as an inspiration for *Totem's*

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

19699050
231804-10002

schizophrenic who resists medication because she believes she is a "mystic," connected to the Native American spirit world. *Id.*, at 6, 10-11, 16.

After bringing home a totem pole from a "Lynx Indian" village, Autumn is mauled by wolves in her backyard. *Id.*, pp. 19-30, 34-37. Before she dies, Autumn asks Jackson to find a Native American Shaman named Thunderbear. *Id.* p. 37. Autumn's childhood friend Sam Miller, who was in love with her, blames Jackson for not protecting Autumn. *Id.*, pp. 28, 38-41. Sam attacks Jackson at Autumn's funeral and even contemplates shooting him. *Id.*

Overcome with grief, Jackson recalls Autumn's stories about the evil spirit Azrael and his band of "Blackwolf Indians." *Id.*, pp. 44-45. Jackson believes that Azrael captures spirits (like Autumn) and holds them captive as "Grims" trapped in darkness. *Id.* Jackson travels to the Lynx Indian village where he meets the Shaman Thunderbear and his granddaughter Kimi (who is referred to as the "Eternal Light"). *Id.*, pp. 80-83. Jackson's quest to save Autumn's spirit becomes part of a larger quest to defeat Azrael, the spirit of darkness and evil, and to save Kimi, the spirit of light and goodness. *Id.*, pp. 48-55, 70-71, 73, 79-87.

While Azrael tries to kill Jackson and Kimi in the spiritual world, Sam tries to kill Jackson in the real world. *Id.*, pp. 48-53, 90-104. Using magical dream catchers that render all of them invisible, Jackson, Kimi, and Jackson's longtime doctor friend William Nerowe, reach Azrael's cave, which is marked by a tall, burning totem pole. Nerowe eventually comes to believe what others have told him – that he is a powerful medicine man – and, along with Jackson, he fights off Azreal using an electrified spear called a "Silverstick." *Id.*, pp. 48-55, 70-71, 73, 79-87. Jackson and Nerowe destroy the burning totem and kill Azrael, releasing the trapped souls of Lynx Indians (Grims), who then turn into floating celestial auras. *Id.*, pp. 108-113. During this battle, Jackson dies and is reunited with Autumn when her spirit is

---

characters and storylines. FAC ¶¶ 36-40. However, Osthimer is not a character in *Totem*, and his life story is not relevant to this suit for copyright infringement.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

19699050
231804-10002

3

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS

released.  Sam Miller also dies and, while Jackson's and Autumn's spirits are enveloped by light, Sam is enveloped by darkness.  *Id.*, p. 119.

### B.    Defendants' "*Stranger Things*"

Matt and Ross Duffer created *Stranger Things* using a brilliant combination of fantasy, childhood adventure, conspiracy theories, and 1980s nostalgia.  As acknowledged in the FAC (¶ 7, Ex. 8), the Duffers began developing their ideas for *Stranger Things* as early as November of 2010, and they continued to do so for several years thereafter.  *Stranger Things* premiered on Netflix on July 15, 2016.

### 1.    Season 1

The series is set in Hawkins, Indiana, in 1983.  Grossman Decl., Ex. A, Ep. 1. Season 1 begins with twelve-year-old Will Byers being abducted by a monster while biking home one night after playing a "Dungeons & Dragons" game at a friend's house.  *Id*.  Will's friends Mike, Dustin, and Lucas, all also twelve years old, begin investigating Will's disappearance.  While looking for Will in the local forest, the boys find a young girl with a shaved head wearing a hospital gown.  They learn that her name is Eleven, and that she has psychokinetic abilities.

While the young boys and Eleven search for Will, the monster threatens other Hawkins residents.  *Id.*, Eps. 2-8.  Will's mother, who becomes convinced that Will is communicating with her through the electricity in their house, sees the monster several times.  *Id.*, Eps. 2-3.  Mike's sixteen-year-old sister Nancy attends a party where her best friend, Barb, is abducted by the monster.  *Id.*, Ep. 2.  While searching for Barb, Nancy catches a glimpse of the monster running through the woods.  *Id.*, Ep. 3.  Will's sixteen-year-old brother, Jonathan, also captures a photo of Barb and the monster.  Nancy and Jonathan team up to search for the monster in the hopes that they can save Will and Barb.  *Id.*, Eps. 5-6.

What appears to be Will's body is discovered in a quarry.  *Id.*, Ep. 3. However, Eleven proves that Will is still alive by manipulating radios to project the sound of Will's voice.  *Id.*, Ep. 4.  Dustin, Lucas, and Mike decide that Will is

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

19699050
231804-10002

4

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS

trapped in an alternate dimension, which they name "The Upside Down."  They decide to call the monster that abducted Will a "Demogorgon" (after a character in "Dungeons & Dragons").  *Id.*  After pulling together all their knowledge and speculation on the supernatural events occurring in Hawkins, Dustin, Lucas, Mike, and Eleven decide to search for a hypothetical gate to the Upside Down.  *Id.*, Ep. 5.

Meanwhile, the Hawkins police chief, Jim Hopper, grows suspicious of the nearby research laboratory after he finds a torn piece of Eleven's hospital gown outside the lab grounds.  *Id.*  After discovering that the body found in the quarry was not Will's, Hopper breaks into the laboratory and finds Eleven's bedroom and a massive gate to an alternate dimension.  *Id.*, Eps. 4-5.  Throughout the first season, Eleven experiences a series of painful flashbacks to the experiments conducted on her at the laboratory.  *Id.*, Eps. 3, 5-6.  These culminate in a flashback to an experiment in which Eleven was placed in a sensory deprivation tank.  *Id.*, Ep. 6.  While in an altered psychic state, Eleven accidentally opened the gate to the Upside Down after making contact with the Demogorgon.  *Id.*

Joyce, Hopper, Nancy and Jonathan find Lucas, Mike, Dustin, and Eleven, and they formulate a plan to make a sensory deprivation tank to enhance Eleven's powers, so that she can psychically view Will and Barb without entering the Upside Down.  *Id.*, Ep. 7.  They break into Hawkins Middle School to set up a makeshift tank.  *Id.*  Using the tank, Eleven discovers that Barb is dead, but that Will is alive and is hiding in a children's fort in the forest near his house.  Hopper and Joyce break into the laboratory to pass through the gate and save Will, but are apprehended by security.  *Id.*  Hopper gives up Eleven's location in exchange for access to the gate to the Upside Down.  *Id.*, Ep. 8.  Hopper and Joyce enter the Upside Down, discovering the monster's nest, where an unconscious Will has been strung up with a tendril extending down his throat.  Hopper and Joyce detach and revive Will, and return through the gate.  *Id.*

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

Agents from the government lab arrive at Hawkins Middle School to capture Eleven.  *Id.*  After sharing a romantic moment with Mike, Eleven kills some of the agents, crushing their brains with her psychokinetic abilities.  The monster is attracted to the bloodshed at the school and attacks just as Eleven is about to be captured by the agents.  Mike, Dustin, and Lucas escape with Eleven and hide in a classroom, but the monster finds them.  Before it can harm the boys, Eleven says goodbye to Mike and telekinetically explodes the monster.  Mike is left in tears as Eleven vanishes.  Will is hospitalized and reunited with his family and friends.

### 2.      Season 2

Season 2 begins in 1984, on the one-year anniversary of Will's disappearance.  *Id.*, Ex. B, Ep. 1.  Dustin, Lucas, and Mike are intrigued by a new girl at school named Max, and Will is struggling to return to normal life.  Will's classmates have given him the unflattering nickname "zombie boy."  He has started having episodes in which he freezes and sees a long-limbed shadowy monster looming over the town of Hawkins.  This new monster is called the "Mind Flayer" (another Dungeons & Dragons reference), and is depicted as a massive, spider-like, shadow creature.

Mike mourns the loss of Eleven, but she is alive and secretly living with Hopper in his cabin.  *Id.*, Ep. 2.  Eleven struggles with being cut off from Mike, and rebels against Hopper over his strict rules which require that she stay hidden.  One day, Eleven breaks the rules and leaves home to find Mike, but she mistakes an argument between him and Max as flirting and leaves heartbroken.  *Id.*, Ep. 3.

Dustin finds a strange-looking slug and adopts it as a pet, which he names Dart.  *Id.*  When Dustin shows Dart to the other boys, Will concludes that it is from the Upside Down.  This upsets Dustin and creates a rift between the boys until Dart grows large, eats Dustin's cat, and escapes.  *Id.*, Ep. 4.  The boys learn that Dart is one of four juvenile demogorgons (who Dustin nicknames "demodogs") psychically linked to the Mind Flayer's hive mind.  *Id.*, Eps. 4-6.  As they grow, the demodogs terrorize Hawkins as a pack, killing and eating people and pets.  *Id.*, Eps. 4-6, 8.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

19699050
231804-10002

6

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Will's episodes become more frequent, and during one of them, the monster sticks a tentacle down Will's throat and infects him like a parasite. *Id.*, Ep. 4. After passing out, Will awakens at home acting strangely. *Id.* He scribbles and demands that the house be kept cold. *Id.* Joyce, Mike, and Joyce's boyfriend, Bob, piece together the scribbles to discover a map to the demodogs' underground tunnels. *Id.*, Ep. 5. Joyce, Bob, Will, and Mike rescue Hopper, who had also found the tunnels but became stuck inside. Scientists from the laboratory set fire to the tunnels, causing Will to collapse in pain due to his connection to the Mind Flayer. Will is rushed to the laboratory, but the demodogs soon arrive and start attacking everyone. *Id.*, Ep. 6. Mike deduces that the Mind Flayer can spy on them through Will, and he convinces Joyce to sedate Will to prevent the monster from tracking them. Joyce, Hopper, and Mike escape the laboratory and are rescued by Nancy, Jonathan, Dustin, Lucas, and Steve (Nancy's ex-boyfriend). *Id.*, Ep. 9. They take Will to Hopper's cabin to try and force the monster out of him by overheating it. With the heat in the cabin turned all the way up, Nancy finally releases Will from the monster's grasp by burning his hand with a fire poker. *Id.*

Meanwhile, Eleven tracks down her biological mother and discovers that another young girl named Kali, with the ability to make people see things that are not there, was also experimented on at Hawkins laboratory. *Id.*, Ep. 7. Eleven travels to Chicago to find Kali, who helps Eleven hone her abilities by channeling her anger. Kali is part of a street gang that murders people that have harmed its members. Eleven decides not to be like Kali and returns home to reunite with the boys. *Id.*, Ep. 9. The Mind Flayer finds the group at Hopper's cabin and sends the demodogs to attack, but Eleven destroys them. Hopper drives Eleven to the laboratory, where she closes the gate to the Upside Down. *Id.*

### 3. Season 3

Season 3 begins in 1984, in the Soviet Union. *Id.*, Ex. C, Ep. 1. A Soviet scientist has come close, but failed to build a gate to the Upside Down, and is

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

19699050
231804-10002

murdered by a Soviet general.  The general gives the remaining scientists one year to successfully build the gate.  The story moves to Hawkins, in 1985, on the second anniversary of Will's abduction.  The new Starcourt Mall has become the focal point of the town, Mike and Eleven are dating, as are Lucas and Max, and Jonathan and Nancy.  Dustin returns home from summer camp and sets up a high-powered radio to contact his camp girlfriend Suzie, who the other boys doubt exists.  Will still wants to play Dungeons & Dragons, but the other boys are more interested in girls.

Billy, Max's eighteen-year-old brother, gets hit by a shadowy creature while driving by the town mill and becomes possessed by the Mind Flayer.  *Id.*  Gradually, Billy abducts more townspeople, who also become possessed.  *Id.*, Eps. 2-4.  While trying to contact Suzie, Dustin intercepts a Russian message.  *Id.*, Ep. 1.  Dustin enlists Steve, who now works with a former classmate named Robin at an ice cream shop in Starcourt Mall, to help translate the message.  *Id.*, Ep. 2.  Dustin, Steve, and Robin translate the message and learn that Starcourt Mall is a front for the Russians.

Eleven and Max become friends and use Eleven's powers to spy on Mike and Billy.  *Id.*, Ep. 3.  Eleven telekinetically sees Billy abducting a girl he works with, but he senses her presence.  Recalling from Season 2 that the Mind Flayer dislikes heat, they trap Billy in a sauna to confirm that he is possessed.  *Id.*, Ep. 4.  Billy breaks free, and rallies the other possessed townspeople to attack Will, Mike, Lucas, Eleven, Max, Jonathan, and Nancy.  *Id.*, Eps. 4-5. Eleven saves them, injuring the Mind Flayer in the process.  *Id.*, Ep. 5.

Meanwhile, Dustin, Steve, and Robin enlist Lucas' younger sister Erica to crawl through an air duct to break into the Russians' loading dock at the mall.  *Id.*, Eps. 4.  They discover an underground testing area where Russian scientists are trying to force open the gate to the Upside Down.  *Id.*, Ep. 5.  Steve and Robin are captured, but Dustin and Erica help them escape.  *Id.*, Ep. 6.  Eleven uses her powers to find Dustin at the mall, and she, Will, Mike, Lucas, Max, Jonathan, and Nancy head there.  The Mind Flayer finds and attacks the group.  *Id.*, Ep. 7.  This season,

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

19699050
231804-10002

8

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS

the Mind Flayer is depicted as a massive, scaly, muscular, spider-like creature with long tentacles.  *Id.*, at 10:15, Ep. 8, at 20:53.

Eleven protects the group, but the Mind Flayer manages to bite her, infecting her with a piece of itself.  *Id.*, Ep. 7.  Eleven uses her powers to fling the piece out of her body but, in doing so, exerts all her energy and loses her powers.  *Id.*, Ep. 8.  Billy captures Eleven and offers her to the Mind Flayer but Eleven accesses Billy's memories and manages to release him from the Mind Flayer's control.  Billy sacrifices himself for Eleven as the others use fireworks to distract the Mind Flayer.  Joyce and Hopper find the gate to the Upside Down and Hopper sacrifices himself so that Joyce can close the gate and kill the Mind Flayer.  *Id.*

## III.   DISCUSSION

### A.   Legal Standard

#### 1.   Rule 12(b)(6).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint if it lacks a cognizable legal theory or does not allege sufficient facts to support a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  A court may consider the allegations contained in the pleadings, exhibits attached to or referenced in the complaint, matters properly subject to judicial notice, and materials whose contents are alleged in the complaint, in ruling on a motion to dismiss.  *Anderson v. Clow* (*In re Stac Elecs. Sec. Litig.*), 89 F.3d 1399, 1405 n.4 (9th Cir. 1996).  To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

#### 2.   Copyright Infringement.

To state a claim for copyright infringement, Plaintiff must plausibly allege two things: (1) that it owns a valid copyright; and (2) that the defendants copied protected aspects of the plaintiff's work.  *Rentmeester v. Nike, Inc.*, 883 F.3d 1111,

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

19699050
231804-10002

1116–17 (9th Cir. 2018). The second element has two distinct components: "copying" and "unlawful appropriation." *Id.* "When the plaintiff lacks direct evidence of copying, he can attempt to prove it circumstantially by showing that the defendant had access to the plaintiff's work and that the two works share similarities probative of copying."[3] *Id.* at 1117. "To prove unlawful appropriation…the similarities between the two works must be substantial and they must involve protected elements of the plaintiff's work." *Id.* "[W]hether works are substantially similar involves a two-part analysis consisting of the extrinsic test and the intrinsic test." *Id.* at 1118.

Because a plaintiff must satisfy both the extrinsic and intrinsic tests, a lack of extrinsic similarity is fatal to an infringement claim. Using the extrinsic test, the Court may determine that works are not substantially similar on a motion to dismiss. *See Shame on You Prods. v. Banks*, 120 F. Supp. 3d 1123, 1150-71 (C.D. Cal. 2015). "[W]hen the copyrighted work and the alleged infringement are both before the court, [and] capable of examination and comparison, non-infringement can be determined on a motion to dismiss." *Christianson v. W. Pub. Co.*, 149 F.2d 202, 203 (9th Cir. 1945).

The Ninth Circuit's governing extrinsic test is an objective analysis that:

> focuses on 'articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events' in the two works. In applying the extrinsic test, this court 'compares, not the basic plot ideas for stories, but the actual concrete elements that make up the total sequence of events and the relationships between the major characters.

---

[3] Whether or not Plaintiff has alleged a viable access theory, dismissal is proper when a comparison of the two works shows that there is no substantial similarity as a matter of law. *Wild v. NBC Universal, Inc.*, 788 F. Supp. 2d 1083, 1110 (C.D. Cal. 2011) (dismissing case after holding that, even if access could be proven, "the two works are not substantially similar within the meaning of Ninth Circuit copyright jurisprudence"). For purposes of this motion only, Defendants do not challenge access to Plaintiff's *Totem* works.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

19699050
231804-10002

10

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

*Funky Films, Inc. v. Time Warner Ent. Co., L.P.*, 462 F.3d 1072, 1081 (9th Cir. 2006) (citations omitted).  "Familiar stock scenes and themes that are staples of literature are not protected."  *Cavalier v. Random House, Inc.*, 297 F.3d 815, 823 (9th Cir. 2002).  In addition, "[s]cenes-à-faire, or situations and incidents that flow necessarily or naturally from a basic plot premise, cannot sustain a finding of infringement."  *Id.*  "Therefore, when applying the extrinsic test, a court must filter out and disregard the non-protectable elements in making its substantial similarity determination." *Id.* at 822-23; *see also Berkic v. Crichton*, 761 F.2d 1289, 1293-94 (9th Cir. 1985) (rejecting consideration of general ideas as well as scènes-à-faire in determining substantial similarity under the extrinsic test).

Because Plaintiff has alleged that all three seasons of *Stranger Things* infringe his copyrighted works, the Court may properly consider the content of both *Stranger Things* and Plaintiff's copyrighted works as documentation of facts "whose contents are alleged in [the] complaint."  *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1128 (C.D. Cal. 2007).

**B.    There Is No Substantial Similarity Between The Works At Issue.**

Here, there is no legal similarity of plot, themes, dialogue, mood, setting, pace, characters and sequence of events between the two works.

As plaintiffs in infringement cases often do, Plaintiff has cobbled together lists of claimed "similarities."  Courts routinely disregard such lists, as they are inherently subjective and subject to manipulation.  *See Olson v. NBC*, 855 F.2d 1446, 1450 (9th Cir. 1988); *Litchfield v. Spielberg*, 736 F.2d 1352, 1356 (9th Cir. 1984) ("such lists of similarities…are inherently subjective and unreliable" and at times a plaintiff's list "emphasizes random similarities scattered throughout the works.").  Random elements, cherry-picked from the works, and disassociated from the extrinsic analysis, are of no assistance in carrying out the requisite legal analysis.

Moreover, the FAC's characterizations of the works' characters, plots, and objective elements are similarly irrelevant to the determination of legal similarity.

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

19699050
231804-10002

11

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS

The law is clear that, in analyzing an infringement claim on a motion to dismiss, "the works themselves supersede and control contrary descriptions of them," including "any contrary allegations, conclusions or descriptions of the works contained in the pleadings." *Peter F. Gaito Architecture, L.L.C. v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (quoting 3-12 Nimmer on Copyright §12.10). Thus, the content of the works themselves is controlling, and Plaintiff's allegations, particularly to the extent they mischaracterize the works, are not.

### 1.     Plot and Sequence of Events

An objective analysis of the works shows that *Totem* and *Stranger Things* tell completely different stories. Moreover, the elements that Plaintiff claims are legally "similar" are largely comprised of unprotectable ideas and concepts that are not subject to legal protection.

### *The Works' Plots Are Entirely Dissimilar*

Plaintiff's Screenplay is centered around Jackson Chance, an epileptic veteran, his schizophrenic wife Autumn, and her "mystic" connection to the Native American spiritual world. When Autumn dies, Jackson embarks on a quest to release her spirit from the evil spirit Azrael and his band of "Blackwolf Indians." Battling Azrael in the spirit world, and Autumn's childhood friend Sam, who is in love with Autumn, in the real world, Jackson embraces Native American folklore, teaming up with a Shaman and his granddaughter, Kimi, to defeat Azrael. Jackson and his friend Dr. Nerowe fight Azrael in a climactic scene, aided by fiery swords and magical dreamcatchers. Jackson sacrifices himself to save Nerowe and, as he dies, Kimi tells Jackson: "be not afraid, Warrior. Your quest is complete…I am the Great Spirit. And you may dwell with me in the house of the Lord forever." Grossman Decl., Ex. D, *Totem*, dated March 2013, p.115.

The plot of Defendants' *Stranger Things* does not concern Native American folklore and, for the most part, does not even revolve around adults. *Stranger Things* follows a group of nerdy twelve-year old boys, who like to play Dungeons &

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

19699050
231804-10002

Dragons (Will, Mike, Dustin, and Lucas).  The first season of *Stranger Things* is about Will's abduction, his friends' (and family's) search to save him, Mike's budding relationship with Eleven, and the group's quest to find and destroy the gate to the Upside Down.  The plot of the second season revolves around freeing Will from his possession by the Mind Flayer, avoiding being eaten by "demodogs," Eleven learning about her past and honing her psychokinetic abilities, and closing the gate to the Upside Down.  The third season involves the teenage leads working together to prevent Russian scientists from reopening the gate to the Upside Down, avoiding being killed by possessed townspeople, the core group of friends becoming interested in girls, and two of the teen girls (Eleven and Max) becoming friends.

Plaintiff alleges that *Stranger Things* is the story of Joyce (Will's mother), and Plaintiff's FAC attempts to compare Joyce's story to the journey of Jackson Chance, *Totem's* protagonist.  FAC ¶¶ 71, 73.  Contrary to Plaintiff's allegation, Joyce is not the series' protagonist.  Even a superficial review of the series reveals that *Stranger Things* is not about Joyce in the way that *Totem* is about Jackson.  To the contrary, *Stranger Things* is the story of a core group of teenagers bonding together, and fighting a supernatural threat in order to save one of their classmates.  Even assuming that Joyce is the "protagonist" of *Stranger Things* (and she is not), her story arc is completely different than Jackson's in *Totem*.  Unlike Jackson's quest, Joyce's "quest" does not involve a Native American tribe, a Shaman, the "Eternal Light," a medicine man, glowing dream catchers that make people invisible, or even the goal of saving the world from evil.  Joyce is a mother desperately trying to find and protect her sons from monsters that have been released as a result of secret experimentation conducted in a nearby laboratory.

Courts routinely find no substantial similarity where, as here, the plots and sequences of events expressing plot concepts are highly dissimilar.  *See Gable v. NBC*, 727 F. Supp. 2d 815, 844 (C.D. Cal. 2010), *aff'd sub nom. Gable v. Nat'l Broad. Co.*, 438 F. App'x 587 (9th Cir. 2011) (finding no substantial similarity in

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

19699050
231804-10002

13

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS

plot where many of the elements pointed out by plaintiff were not similar when viewed in context, and those that did "bear some commonality—e.g., lottery winnings, prison time, paying off debts—[did] not occur in the same sequence"). There is no similarity of expression involving plot or sequence of events – *Stranger Things'* plot is vastly different from *Totem's* Native American mythological quest.

### *Plaintiff Cannot Monopolize General Story Concepts.*

Plaintiff alleges that the plots of both *Totem* and *Stranger Things* involve a quest by the protagonist to rescue a loved one from a monster residing in an alternate dimension that is a dark copy of their current reality.  FAC ¶ 73.  Plaintiff's abstract plot description is so generalized that it is nothing more than an idea – and ideas are not legally protectable.  *See Funky Films*, *Inc*., 462 F.3d at 1081.

Moreover, the broad concept of a protagonist on a quest to an alternate dimension to save a loved one is not protectable.  Thus, in *Althouse v. Warner Bros. Entm't*, 2014 U.S. Dist. LEXIS 92071, *9 (C.D. Cal. Apr. 28, 2014), the court held that, although the protagonists both attempted to free other characters, had nightmares about their significant other dying, and battle against an evil enemy, those general concepts were insufficient to establish similarity of protectable plot expression.  Similarly, in *Basile v. Warner Bros. Entm't, Inc*., 2016 U.S. Dist. LEXIS 194791, *20-21 (C.D. Cal. Jan. 4, 2016), the plaintiff alleged that "Jupiter Jones and the characters Earth and Mars are similar because they are part of the 'Supreme being bloodline and the only ones who can save their home planet.'"  The court held that this claimed plot similarity was insufficient to establish a legal claim as it was based on nothing more than the "shared premises of human origin mythology and a hero's quest."

In fact, Courts consistently reject infringement claims alleging far more concrete and specific similarities.  For example, in *Benay v. Warner Bros. Entm't, Inc*., the Ninth Circuit ruled that the works at issue were <u>not</u> substantially similar even though:

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

19699050
231804-10002

14

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS

[The works] have identical titles; both share the historically unfounded premise of an American war veteran going to Japan to help the Imperial Army by training it in the methods of modern Western warfare for its fight against a samurai uprising; both have protagonists who are authors of non-fiction studies on war and who have flashbacks to battles in America; both include meetings with the Emperor and numerous battle scenes; both are reverential toward Japanese culture; and both feature the leader of the samurai rebellion as an important foil to the protagonist...

The most important similarities involve unprotectable elements. They are shared historical facts, familiar stock scenes, and characteristics that flow naturally from the works' shared basic plot premise. Stripped of these unprotected elements, the works are not sufficiently similar to satisfy the extrinsic test.

607 F.3d 620, 625 (9th Cir. 2010). Similarly, in *Funky Films*, the Ninth Circuit applied the extrinsic test and ruled that the works were not substantially similar in plot despite the fact that both works were based on the death of a family patriarch who leaves the family's two sons to run the family funeral home. Both works also involved the return of one son to his hometown to help in the business, another son changing his religion to aid in the business, and a competitor bidding on the business. The Ninth Circuit affirmed dismissal, noting these conceptual similarities, but concluding that "general plot ideas are not protected by copyright law, they remain forever the common property of artistic mankind." *Id.* at 1081.

Further, Plaintiff's allegation that both plots involve a young girl who "is responsible for the rupture in the 'veil' between the human dimension and a dark, carbon-copy alternate dimension through which a monster is able to invade the current human reality" fails to allege protectable similarity. FAC ¶ 74. This is a general plot idea and is, therefore, not subject to protection. Moreover, in *Totem*, Kimi lets Jackson's wife, Autumn, have a mystical totem pole after Autumn said it "spoke to her." It is that totem pole, and not a 'young girl' that unleashes Azreal from the spirit realm. In *Stranger Things*, Eleven's psychokinetic abilities open the gate to the Upside Down world. Eleven does not use a magic tool – instead she accidentally makes contact with the Demogorgon while she was the unwilling subject of experiments aimed at amplifying her psychokinetic abilities.

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

19699050
231804-10002

15

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Plaintiff's other alleged plot "similarities"— an alternate dimension with a cavern/tunnels, an "independent agency of evil that wishes to destroy humanity," humans possessed by monsters, abduction in a backyard tool shed, mental illness and seizures, sweating out infection — either do not exist in the actual works[4]; appear in highly different contexts, involving highly different characters, and/or are unoriginal and unprotectable.  *Benay*, 607 F.3d at 625.

Accordingly, the parties' works are not substantially similar as to plot or sequence of events under the extrinsic test because Plaintiff's claimed similarities do not involve protectable expression and, putting those general concepts aside, "a closer inspection reveals that they tell very different stories."  *Id.*

### 2.   Characters

*Totem*'s protagonist is Jackson, a thirty-year-old epileptic veteran who has a "mystic" connection to the Native American spiritual world.  The other main characters are: Jackson's schizophrenic wife *Autumn* who is also a mystic; Autumn's childhood friend *Sam* who is an FBI agent, is in love with Autumn and teams up with Azrael to kill Jackson; Jackson's longtime doctor friend *William*, who takes on the image of a Native American medicine man; a Lynx Indian Shaman named *Thunderbear*, his granddaughter *Kimi*, who is the "Eternal Light" for the Lynx Indian tribe, and the evil spirit *Azrael* and his "Blackwolf Indians."  Nearly all of these characters are adults with a Native American affiliation.

In contrast, most of the main characters in *Stranger Things* are children, with no Native American affiliations whatsoever.  Unlike in *Totem*, where an adult male named Jackson is the single protagonist, in *Stranger Things* the primary protagonists are four nerdy twelve-year-old boys who like to play Dungeons & Dragons (*Will,*

---

[4] There is no common "independent agency of evil" in the two works.  In *Stranger Things*, a secretive lab conducts experiments on Eleven and other children, whereas in *Totem*, the villain is a talking demon from another realm.  Further, Will is abducted while riding his bike home from his friend's house, and is found in a makeshift fort in the woods near his house, not a "backyard tool shed."

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

19699050
231804-10002

16

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS

*Mike, Dustin,* and *Lucas*), and a strange-but-gifted young girl with psychokinetic abilities (*Eleven*).  Throughout the seasons in question, the group matures from wanting to play Dungeons & Dragons for hours on end, to developing their first crushes and wanting to spend more time with the opposite sex.  Other significant characters in *Stranger Things* include: Will's sixteen-year-old brother *Jonathan*, an intelligent outcast who finds his place after Season 1; Mike's sixteen-year-old sister *Nancy*, who evolves from a somewhat superficial young girl into a more substantive young woman; *Steve* (Nancy's boyfriend in Season 1, ex-boyfriend in Seasons 2-3), who similarly matures; Steve's friend *Robin* who comes out to him as lesbian; *Max*, a tomboy who develops her first female friendship with Eleven; Max's eighteen-year-old brother *Billy*, an angry bully who redeems himself through self-sacrifice; Will's mom *Joyce*, a neurotic single mother trying to protect her sons; and the Hawkins police chief *Hopper*, an outwardly harsh yet inwardly kind man who carries a torch for Joyce.  <u>None of these characters bear any resemblance to any characters in *Totem*</u>.

Although Plaintiff's FAC attempts to manufacture analogue characters for each of the main characters in *Totem* (*see* FAC ¶ 71), this is an exercise in futility because the characters in these two works are completely different.  For example, Plaintiff alleges that Mike, one of the three friends trying to find Will Byers, is substantially similar to Thunderbear, the Lynx Indian Shaman.  This comparison is specious, as there are no protectable character traits shared between this awkward teenage boy who is smitten with an extraordinary young girl, and an elderly Native American Shaman who provides guidance and advice to *Totem's* main characters.

Plaintiff also alleges that Will Byers' mother, Joyce, is substantially similar to *Totem's* lead character, Jackson Chance, but Joyce is a mother trying to find and protect her son, whereas Jackson is a widower with special powers who is trying to

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

free the spirit of his deceased wife.[5]  As with all of Plaintiff's baseless character comparisons, there is no similarity of protectable expression between these two entirely different fictional figures.  Indeed, Jackson, like all the characters in *Totem*, has no counterpart in *Stranger Things*.  *Benay*, 607 F.3d at 627 (finding no similarity among characters where there were "a number of important characters in the Film and the Screenplay who have no obvious parallel in the other work"); *Funky Films*, *Inc*., 462 F.3d at 1078-79 (finding no similarity in characters where several central characters in defendants' work were "[c]ompletely missing" from or had "no counterpart" in plaintiff's work).

To the extent that Plaintiff alleges that *Totem*'s protagonist Jackson is similar to Will Byers because Jackson is epileptic, this is not a character trait shared with Will.  Jackson is epileptic and suffers from epilepsy prior to beginning his quest to defeat Azrael.  In contrast, Will does not have epilepsy, and instead, after he is possessed by the Mind Flayer in Season 2, he has periodic visions that he calls "now-memories" during which he is briefly able to see what the creature can see.  Thus, Will does not experience medical seizures and, in any case, having seizures is not a protectable character element.

Plaintiff alleges that one of *Totem's* supporting characters, Kimi, and *Stranger Things'* far more central character, Eleven, are substantially similar because they are both young girls with supernatural powers.  FAC ¶ 71.  However, courts have rejected this precise argument, holding that "a young girl with psychic abilities as a protagonist is an unprotectible idea."  *Acker v. King*, 46 F. Supp. 3d

---

[5] Plaintiff also attempts to mix and match character attributes to manufacture similarities.  Plaintiff claims that Jackson is "similar" to Will from *Stranger Things* because they both have seizures and can see an alternate universe, and to Will's mother Joyce because they both try to save a loved one from an alternate universe.  FAC ¶¶ 71, 82.  Such composites do not support Plaintiff's claim of character similarity.  *See, e.g., Bernal v. Paradigm Talent & Literary Agency*, 788 F. Supp. 2d 1043, 1070 (C.D. Cal. 2010) (finding no substantial similarity in characters where one is clearly the main character and the other is "one of four main characters [that are] central to the progression of the series").

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

19699050
231804-10002

18

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS

168, 175 (D. Conn. 2014) ("using psychic abilities to save people, seeing and doing supernatural things, and defeating villains are scenes a faire that flow necessarily from the idea of a character using her psychic abilities to triumph over evil.").

At most, Plaintiff's allegations of character similarity amount to similarities of generic characteristics, such as being "strong-willed" characters on a "quest" to find a loved one.  FAC ¶ 71.  Such stock elements are unprotectable, and courts have routinely rejected character infringement claims where far greater similarities existed.  *See Esplanade Prods., Inc. v. Walt Disney Co*., 2017 U.S. Dist. LEXIS 217700, *34 (C.D. Cal. Nov. 8, 2017) (the fact that both works had characters "acting bravely and determinedly to help others in trouble" was unprotectable). Accordingly, it is abundantly clear that the characters in *Totem* and *Stranger Things* are not substantially similar under the extrinsic test.

Finally, Plaintiff alleges that the "monster" characters in the two works are substantially similar but, aside from sharing the common element of being evil supernatural beings from another plane/dimension, there is no similarity of protectable expression between *Totem's* Azrael and the various monsters that the children battle during the first three seasons of *Stranger Things*.  Azrael is an English-speaking evil deity who has vowed to defeat the Native American "Great Spirit."  Azrael is cloaked in Native American robes, and appears as a skeleton with animal horns on his head.  In *Stranger Things*, on the other hand, the "Demogorgon" is a monstrous-looking creature, without a face, who can run and crawl like an animal.  Unlike Azrael, the Demogorgon does not have extended scenes of dialogue, and its motivation is unclear.  Similarly, Azrael bears no protectable similarities to the Mind Flayer (from seasons 2-3 of *Stranger Things*) who is a tarantula-like creature that is the size of a building, and who is often depicted in the midst of an electromagnetic storm cloud.  As set forth in greater detail in the discussion of concept art, below, there is no physical similarity between Azrael and the various monsters/villains that appear throughout *Stranger Things*.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

19699050
231804-10002

19

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS

### 3.    Theme

The primary themes of *Totem* are overcoming the grief of a loved one dying and the fight between good and evil in the Native American spirit world.  The primary theme of *Stranger Things* is friendship and romance between teenagers working together to defeat monsters.

Plaintiff alleges that the works share the "similar" themes of "unconditional love, death of a close family member, mental illness, dreams and visions, family, power and corruption, courage and heroism, facing darkness, epilepsy and seizures, female roles with supernatural powers, reuniting with loved ones, man versus supernatural, etc." FAC ¶ 95.  These stock themes are unprotectable.  *See Benay*, 607 F.3d at 627 (noting that although both works "explore general themes of the embittered war veteran, the 'fish-out-of water,' and the clash between modernization and traditions, . . . those themes arise naturally from the premise of an American war veteran who travels to Japan to fight the samurai" and were therefore unprotectable). Moreover, as described above, these themes are not depicted in a substantially similar manner in *Totem* and *Stranger Things*.  *See, e.g., Gable,* 727 F. Supp. 2d at 844 (finding no substantial similarity where many of the elements pointed out by plaintiff were not similar when viewed in context).

### 4.    Dialogue

There is no "extended similarity in dialogue" in *Totem* and *Stranger Things*, as is required for the works to be substantially similar.  *Shame on You Prods.*, 120 F. Supp. 3d at 1156; *see also Olson*, 855 F.2d at 1450 (finding no "extended similarity of dialogue [as] needed to support a claim of substantial similarity").

Plaintiff alleges that the use of the term "PTSD", the use of variants of the phrase "let me go", the common use of the phrase "I'm sorry" and references to "garden gnomes" (FAC ¶137) constitute similarity of protectable dialogue.  None of the allegedly similar dialogue is sufficient to satisfy the requirements of the extrinsic test.  These snippets of allegedly similar dialogue are lacking in similarity, appear in

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

19699050
231804-10002

20

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS

highly different contexts, are uttered by completely different characters, and/or are unoriginal and unprotectable.

### 5. Mood

*Totem* is dark and serious throughout – beginning with Autumn's brutal murder in the opening scene, and ending with Jackson's sacrifice and bloody death in the final scene.  While *Stranger Things* does include some scary scenes involving monsters, the overarching mood is quirky and light-hearted, following the adventures of innocent, fun-loving teenagers.  Moreover, to the extent that both works include scenes involving evil creatures and alternate dimensions, the mood in these scenes is unprotectable as it flows "naturally from unprotectable basic plot premises" involving monsters and evil dimensions.  *See Shame on You Prods.*, 120 F. Supp. 3d at 1158 ("Thus, Shame on You cannot demonstrate there is substantial similarity in mood by arguing that both works are light-hearted comedies that involve a walk of shame" because such a "general mood…flows naturally from unprotectable basic plot premises" and is not entitled to protection).

### 6. Setting

Although Plaintiff alleges that *Totem's* setting is inspired by author Jeffrey Kennedy's childhood in South Bend, Indiana during the 1980s, *Totem* itself is set in "Blackwolf Valley," Wyoming.  Further, much of *Totem* takes place on rural, Native American lands.  This setting ties in to the Native American village, folklore, and spirit world that is central to *Totem's* plot.

*Stranger Things* is set in the fictional town of Hawkins, Indiana.   Plaintiff alleges that the works share "a small, middle-class town in rural America surrounded by a sprawling landscape of woods and nature" (FAC ¶ 111), but this broad concept is not protectable.  *See Shaw v. Lindheim*, 919 F.2d 1353, 1363 (9th Cir. 1990) (the fact that the works were both "set in large cities…do[es] not weigh heavily in our decision" on the issue of substantial similarity); *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1177 (9th Cir. 2003) (any similarities in setting, such as being

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

19699050
231804-10002

21

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS

filed in a secret location without any audience, was "generic and inconsequential" and therefore was not substantially similar).

Similarly, the setting of "humble houses, [that] have large yards like one would find in a rural town" (FAC ¶ 112) is generic and unprotectable.  *See, e.g.,* S*hame on You Prods.,* 120 F. Supp. 3d at 1159 ("[T]he use of city streets is generic and flows from the unprotectable concept of setting a work in a city"); *Cavalier*, 297 F.3d at 824 (night sky setting was unprotectable scene a faire where it "naturally and necessarily flows from the basic plot premise").  Plaintiff's other setting "similarities" — backyard tool sheds, large institutional buildings, alternate dimensions with a blue-tinted cave/tunnels, railroad tracks, and a sweat lodge – similarly constitute generic unprotectable ideas and appear in highly different contexts.  FAC ¶¶ 113-118.

Finally, *Stranger Things* is firmly set in the mid-1980s, and features 1980s music, clothing, hair styles, video games and mall culture.  While the 1980s setting is an unmistakable feature of *Stranger Things*, there are no references anchoring *Totem* to any particular point in time, and it could be set in virtually any time during the last several decades.

### 7.    Pace

Plaintiff's work is an unpublished screenplay for a feature-length film. *Stranger Things* currently extends its stories over twenty-five television episodes, with a total runtime of more than twenty hours.  *Stranger Things* is comprised of three distinct seasons, each with separate storylines, spanning the course of several years and portraying the adventures of numerous characters including Will, Mike, Dustin, Lucas, Eleven, Jonathan, Nancy, and Steve.  Accordingly, the parties' works are not substantially similar in pace.  *See Weygand v. CBS, Inc.,* 1997 U.S. Dist. LEXIS 10613, *25-26 (C.D. Cal. May 20, 1997) (pace not substantially similar where one work took place within approximately one year whereas the other work spanned over approximately twenty years).

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

19699050
231804-10002

22

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS

The extrinsic analysis makes clear that these works are substantially <u>dissimilar</u> and Plaintiff's infringement claims should be dismissed.  Further, while some courts have ruled that: "[c]opying a particular sequence of unprotectable elements can be considered infringement if there are a significant number of elements strung together" (*DuckHole Inc. v. NBC Universal Media LLLC*, 2013 U.S. Dist. LEXIS 157305, *19 (C.D. Cal. Sept. 6, 2013)), this alternative formulation of the substantial similarity test is unavailing because *Stranger Things* and *Totem* do not share many similarities, protectable or not.

### C.    Plaintiff's "Concept Art" Claim Is Frivolous.

Plaintiff has included a separate claim for copyright infringement of *Totem's* "concept art" – but all of Plaintiff's concept art, like the *Totem* story, is based on Native American imagery and mythology.  Grossman Decl., Ex. E.  None of that art is substantially similar to any of the characters or artwork in *Stranger Things*.

Plaintiff claims that *Stranger Things'* monsters are substantially similar to concept art for the evil Native American deity, Azrael, but a basic visual comparison of these creatures reveals a total lack of similarity.  Azrael is a skeletal creature adorned with three horns, and is dressed in Native American garb.  Unlike Azrael, the Demogorgon is muscular, with scaly skin and a gaping hole in place of a face.

| <u>Plaintiff's Azrael</u> | <u>Defendants' Season 1 Monster</u> |
|:---:|:---:|
|  |  |

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

19699050
231804-10002

23

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS

The Mind Flayer from *Stranger Things* Seasons 2 and 3 is a spider-like shadow creature that lacks any similarities whatsoever to Plaintiff's Azrael:

**<u>Defendants' Season 2 Monster</u>**     **<u>Defendants' Season 3 Monster</u>**

     

Plaintiff's concept art also includes depictions of the magical totem pole and Azreal's cave.  The totem pole is depicted as a wooden pole with Native American symbols carved into it, along with Christian imagery evoking the crucifixion.

     

Azrael's cave is depicted as a dark, rocky cave leading to a fiery alter. Jackson and William (holding a magical stick) enter the cave in the image below:

     

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

19699050
231804-10002

24

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS

Beyond these individual elements, Plaintiff's concept art illustrates *Totem's* Native American themes, symbols, and imagery.  The below depicts the Lynx Indian village and Jackson dressed in traditional Native American attire. FAC Ex. 9.

 

There is absolutely no similarity of protectable expression between Plaintiff's concept art and the characters or artwork included in *Stranger Things*.  Plaintiff claims that the comparisons included on Exhibits 9-10 of the FAC demonstrate substantial similarity of expression, but those exhibits are clear evidence of the overwhelming differences between the relevant works.  Plaintiff's "concept art" exhibits include such comparisons as characters looking out a window, characters walking in a backyard, and two outdoor panorama shots (one showing a vast forest and the other showing a hillside).  Plaintiff's "concept art" claims, like Plaintiff's claims relating to the literary works themselves, are frivolous.

## IV.   CONCLUSION

Defendants respectfully request that the FAC be dismissed with prejudice.


Dated:  December 3, 2020                    LOEB & LOEB LLP


By:   */s/ David Grossman*
                                                    David Grossman
                                                    Nathalie Russell (*pro hac vice* pending)
                                                    Attorneys for Defendants

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

19699050
231804-10002

25

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS