1  BOREN, OSHER & LUFTMAN, LLP
2  Jeremy J. Osher (SBN 192109)
   josher@bollaw.com
3  Aaron M. Gladstein (SBN 266287)
   agladstein@bollaw.com
4  Matthew K. Tom (SBN 324298)
   mtom@bollaw.com
5  222 North Pacific Coast Highway, Suite 2222
6  El Segundo, CA 90245
7  Telephone: (310) 322-2021
   Facsimile: (310) 322-2228
8
9  Attorneys for Plaintiff IRISH ROVER ENTERTAINMENT, LLC

**REDACTED VERSION OF
DOCUMENT PROPOSED TO BE
FILED UNDER SEAL**

10          **UNITED STATES DISTRICT COURT**

11       **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

12

13  IRISH ROVER ENTERTAINMENT,        Case No.: 2:20-CV-06293-CBM-PLA
    LLC, a California limited liability
14  company,                          **DISCOVERY MATTER**

15              Plaintiff,            **DECLARATION OF JEREMY J.
16                                    OSHER IN SUPPORT OF
         vs.                          PLAINTIFF'S MOTION TO COMPEL
17                                    CERTAIN FURTHER RESPONSES
                                      TO PLAINTIFF'S FIRST SETS OF
18  AARON SIMS, an individual; MATT   REQUESTS FOR PRODUCTION
19  DUFFER, an individual; ROSS       FROM DEFENDANTS NETFLIX,
    DUFFER, an individual; NETFLIX,   INC. AND AARON SIMS**
20  INC., a Delaware corporation;
    NETFLIX STREAMING SERVICES,       **[Notice of Motion and Motion; and Joint
21  INC., a Delaware corporation; 21 LAPS  Stipulation filed concurrently herewith]**
22  ENTERTAINMENT, a business entity,
    form unknown; and DOES 1 through  Date:    August 3, 2022
23  50, inclusive,                    Time:    10:00 a.m.
24                                    Judge:   Hon. Paul L. Abrams
              Defendants.             Courtroom: 780
25
26
27                                    Discovery Cutoff:    August 25, 2022
                                      Pre-Trial Conference: March 7, 2023
28                                    Jury Trial:           April 4, 2023

DECLARATION OF JEREMY J. OSHER IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL

## DECLARATION OF JEREMY J. OSHER

I, Jeremy J. Osher, do hereby declare and state:

1.     I am an attorney licensed to practice in the State of California, including before this Court. I am a Partner with Boren, Osher & Luftman, LLP, counsel of record for Plaintiff Irish Rover Entertainment, LLC, ("Plaintiff"). I have personal knowledge of the facts set forth herein and, if called as a witness at the trial of this matter, I could and would testify competently thereto.

2.     I make this Declaration in support of Plaintiff's Motion to Compel Further Responses ("Motion") to (1) Request for Production No. 28 from Defendant Netflix, Inc. ("Netflix"); and (2) Request for Production Nos. 5 and 7 from Defendant Aaron Sims ("Sims," and, collectively with Netflix, "Defendants").

3.     On July 8, 2021, Plaintiff served on Netflix its Requests for Production, Set One ("Requests") consisting of thirty-four (34) total Requests. A true and correct copy of Plaintiff's Requests for Production, Set One to Netflix is attached hereto as **Exhibit "A"**.

4.     On July 8, 2021, Plaintiff served on Sims its Requests for Production, Set One ("Requests") consisting of twenty-three (23) total Requests. A true and correct copy of Plaintiff's Requests for Production, Set One to Sims is attached hereto as **Exhibit "B"**.

5.     On September 3, 2021, Netflix served its Responses to Plaintiff's Requests for Production, Set One. A true and correct copy of Netflix's Responses to Plaintiff's Requests for Production, Set One, is attached hereto as **Exhibit "C"**.

6.     On September 3, 2021, Sims served his Responses to Plaintiff's Requests for Production, Set One. A true and correct copy of Sims' Responses to Plaintiff's Requests for Production, Set One, is attached hereto as **Exhibit "D"**.

7.     On September 15, 2021, the Court entered a Stipulated Protective Order that remains in place as of the date of this declaration. A true and correct copy of said Protective Order is attached hereto as **Exhibit "E"**.

8.     On October 8, 2021, I sent a letter to David Grossman, counsel for Defendants, to address the deficiencies in Netflix's Responses to Plaintiff's Requests for Production, Set One, and request to meet and confer regarding those issues pursuant to Local Rule 37-1. A true and correct copy of my letter to Mr. Grossman dated October 8, 2021 is attached hereto as **Exhibit "F"**.

9.     On October 12, 2021, I sent a letter to Mr. Grossman to address the deficiencies in Sims' Responses to Plaintiff's Requests for Production, Set One, and request to meet and confer regarding those issues pursuant to Local Rule 37-1. A true and correct copy of my letter to Mr. Grossman dated October 12, 2021 is attached hereto as **Exhibit "G"**.

10.    On October 15, 2021, Mr. Grossman sent a letter responding to the issues addressed in my meet and confer letter dated October 8, 2021 related to Netflix's Responses to Plaintiff's Requests. A true and correct copy of Mr. Grossman's response letter dated October 15, 2021 is attached hereto as **Exhibit "H"**.

11.    On October 21, 2021, Mr. Grossman sent a letter responding to the issues addressed in my meet and confer letter dated October 12, 2021 related to Sims' Responses to Plaintiff's Requests. A true and correct copy of Mr. Grossman's response letter dated October 21, 2021 is attached hereto as **Exhibit "I"**.

12.    On October 28, 2021, I engaged in a telephonic conference with Mr. Grossman pursuant to Local Rule 37-1 to meet and confer regarding, among others, the issues and deficiencies in Defendant's Responses to Plaintiff's Requests for Production, Set One. During this conference, Mr. Grossman and I discussed various issues, including (1) communications between Sims and defendants Matt Duffer and Ross Duffer ("Duffer Brothers") in connection with Sims' responses to Request Nos. 5 and 7; and (2) Netflix's consumer products licensing, i.e., drive-through pop-up stores, merchandise, etc., in connection with Netflix's response to Request No. 28.

13.    On November 12, 2021, I sent a letter to Mr. Grossman memorializing the issues discussed during our October 28 phone conference. A true and correct copy of

2

my November 12, 2021 letter is attached hereto as **Exhibit "J"**.

14.     On November 30, 2021, Mr. Grossman sent an email to me wherein he made the following proposal to resolve damages discovery issues: "the proposal would be to resolve the damages discovery issues by providing the costs for season 1, the consumer products summary information …" A true and correct copy of Mr. Grossman's email dated November 30, 2021 is attached hereto as **Exhibit "K"**.

15.     On January 3, 2022, I sent a letter to Mr. Grossman to address outstanding discovery issues. As to Request No. 28 to Netflix, I stated the following: "We agreed to narrow these requests to documents related to realized efforts to license, option, or exploit Stranger Things. Although you stated that you would look into Netflix's consumer products licensing and provide supplemental documents of the same, no additional responses or documents have been provided."

A true and correct copy of my letter to Mr. Grossman dated January 3, 2022 is attached hereto as **Exhibit "L"**.

16.     On January 7, 2022, I sent a letter to Mr. Grossman reiterating Plaintiff's position pertaining to the consumer products information and requesting that Netflix provide the information no later than January 13, 2022. A true and correct copy of my letter to Mr. Grossman dated January 7, 2022 is attached hereto as **Exhibit "M"**.

17.     On January 10, 2022, Mr. Grossman sent a letter in response to my letter dated January 3, 2022 wherein he stated:

- As to Request No. 28 to Netflix, the proposed production of "the consumer products summary information … was offered as part of Defendants' attempt to reach resolution of all outstanding disputes concerning damages discovery."

- As to Sims' production of documents, "we have verified with Sims that, with one limited exception discussed further below, all relevant communications and documents responsive to Plaintiff's requests that fall within Defendants' agreements to produce have been collected and produced."

A true and correct copy of Mr. Grossman's letter dated January 10, 2022 is

attached hereto as **Exhibit "N".**

18.    On January 10, 2022, Mr. Grossman also sent a letter in response to my letter dated January 7, 2022 where he stated that "Netflix proposes that it will provide the consumer products licensing information previously discussed…" A true and correct copy of Mr. Grossman's second letter dated January 10, 2022 is attached hereto as **Exhibit "O"**.

19.    On January 14, 2022, I sent a letter to Mr. Grossman addressing, among others, the outstanding issues related to consumer products licensing:

- "Throughout our meet and confer efforts, you have attempted to secure our agreement to limit the scope of the damages discovery to which our client is entitled … for example, **you proposed giving us a 'consumer product licensing information summary' but only if we agreed to waive our right to obtain copies of the product licensing agreements underlying the summary** and any backup financial information supporting the figures included in the summary."

- "You would have our client accept that the items you are agreeing to provide are sufficient for determining damages and that by providing this information, our client would have no right to take any further damages discovery in this case. **We do not believe that conditioning your disclosure of unseen and yet clearly relevant information on our agreement to waive rights to other relevant damages discovery is reasonable. Thus, we cannot agree to your proposal**."

- "Consumer products licensing information: There is no dispute this information is relevant and you previously agreed to provide it. **We also need to see the underlying licensing agreements so that we can evaluate the figures included in your summary and so that we have an understanding of the terms/duration of these agreements**."

A true and correct copy of my letter to Mr. Grossman dated January 14, 2022 is

DECLARATION OF JEREMY J. OSHER IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL

attached hereto as **Exhibit "P"**.

20.    On January 14, 2022, I also sent a letter to Mr. Grossman addressing, among others, the outstanding issues related to Sims' production of documents:

- "[P]lease confirm that all responsive communications by Sims have already been produced and that Sims has no additional responsive communications between August 2010 and November 2017.

- "To the extent the 'scope of Defendants' agreement to produce' as to Sims' emails is limited only to so-called 'creative contributions', our client's position is that this unilateral limitation is improper and requires an explanation as to what 'creative contributions' means in order to consider the issue further."

- "We believe that we are entitled to any communications between and among Sims, our client, and/or any other Defendant between August 2010 and November 2017, not just a subset that you are characterizing as 'creative contribution' emails."

A true and correct copy of my letter to Mr. Grossman dated January 14, 2022 is attached hereto as **Exhibit "Q"**.

21.    On January 20, 2022, Mr. Grossman sent a letter responding to the issues addressed in my two (2) meet and confer letters dated January 14, 2022.

- As to consumer products licensing information, Mr. Grossman stated that "Netflix further proposes that it will provide the consumer products licensing revenue previously discussed."

- As to Sims' communications, "Defendants will agree to produce Sims' non-privileged documents, internal emails, and emails with the other Defendants concerning his creative contributions, if any, to *Stranger Things* through April of 2018, when production began (and therefore content was effectively finalized) for the third season."

A true and correct copy of Mr. Grossman's response letter dated January 20, 2022 is attached hereto as **Exhibit "R"**.

22.     On February 11, 2022, Netflix produced additional documents in response to Plaintiff's Requests, including a one-page document (bates-labeled DEFS_0053849) that purportedly summarizes the revenues Netflix has received from its consumer products licensing.  A true and correct copy of the one-page consumer products summary is attached hereto as **Exhibit "S"**.

23.     On February 18, 2022, I sent an email to Mr. Grossman wherein I stated the following with regard to the consumer products licensing information: "Regarding licensing revenue, I was expecting more information. I cannot tell whether the information provided captures all licensing deals, and whether the amounts include all revenue to date. Also, **I have attached a non-exhaustive list of licensees that we were able to pull together based on our research—do the numbers provided include revenue from these deals?  How many other licensees are there? Are you able to provide reports of licensing revenue that break down the numbers by licensing deal?**" A true and correct copy of my email to Mr. Grossman dated February 18, 2022 is attached hereto as **Exhibit "T"**.

24.     On February 25, 2022, Mr. Grossman sent an email to me wherein he stated the following with regard to the consumer products licensing information: "The document bates numbered DEF 53849 is the consumer products summary through the end of 2021.  With regard to your attached list of potential licensees, some of these may be distributors (like Target/Walmart) as opposed to direct licensees.  I do not understand how the number of licensees or the specific revenues from individual licensees could relate to your client's damages claims, but those questions can be raised in deposition.  My understanding is that these are the consumer products revenues relating to the series, and you can also inquire at deposition regarding which of the companies you identified are licensees as opposed to distributors of licensed products." A true and correct copy of Mr. Grossman's email to me dated February 25, 2022 is attached hereto as **Exhibit "U"**.

25.     On March 7, 2022, I sent an email to Mr. Grossman wherein I stated the

following with regard to the consumer products licensing information: "We would like an all-inclusive list of Netflix's individual licensees regarding Stranger Things and the revenue each has received from the deals with each licensee. **We also would like copies of the underlying agreements with each licensee for the period 2015 to the present. The consumer products summary in DEF 53849 only provides numbers and I cannot tell whether those number capture all licensing deals.** Moreover, without having the actual agreements, I have no way of knowing how the deals are structured in terms of compensation, which is important for purposes of damages." A true and correct copy of my email to Mr. Grossman dated March 7, 2022 is attached hereto as **Exhibit "V"**.

26.    On March 11, 2022, Mr. Grossman responded as follows: "**Netflix does not agree to provide every single license agreement relating to its consumer licensing for the Stranger Things series**. We do not believe there is a factual or legal basis for that request; and those agreements are extensive and many contain confidentiality clauses. The existence of a protective order in this case does not resolve these concerns, and there has not been any articulation of the legal basis for this request. **Netflix would be willing to submit a declaration or provide a representation regarding the consumer products revenues, which could confirm the overall amount and what those amounts relate to**. Let me know if we can agree to that proposal."

A true and correct copy of Mr. Grossman's email dated March 11, 2022 is attached hereto as **Exhibit "W"**.

27.    On March 15, 2022, I sent an email to Mr. Grossman wherein I stated, with regard to consumer products licensing information: "the structure of the licensing deals is directly relevant to the damages analysis because it goes to both the licensing revenues that Netflix has already received and revenues that Netflix will receive in the future. The legal basis is simply that the information is related to damages. Although I appreciate the consumer products summary that Netflix produced, my client is also

DECLARATION OF JEREMY J. OSHER IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL

entitled to see the agreements underlying those figures. The fact that the agreements are extensive is not a basis for withholding them. The confidential nature of the agreements is addressed by the protective order. I'm not sure what you mean when you say that the protective order does not resolve these concerns. We are not willing to accept the proposed declaration in lieu of the agreements. Please let us know if Netflix will produce them."

A true and correct copy of my email to Mr. Grossman dated March 15, 2022 is attached hereto as **Exhibit "X"**.

28.    On March 30, 2022, Safia Hussain sent a response email wherein she stated the following with regard to the consumer products licensing agreements:

"Netflix also cannot agree to produce every single license agreement relating to its consumer licensing for the Series.  The only purported relevance of this information offered by plaintiff is that the agreements would show the revenues Netflix has and will receive.  However, a summary of the consumer products revenues received by Netflix has already been produced, and Netflix previously stated its willingness to submit a declaration or provide a representation regarding the CP revenues, which could confirm the overall amount and what those amounts relate to. Plaintiff's burdensome demand to see dozens of underlying agreements, containing confidential information of third parties, to obtain the same information is not justified by the limited—if any—utility and relationship of the agreements to plaintiff's damages analysis."

A true and correct copy of Ms. Hussain's response email dated March 30, 2022 is attached hereto as **Exhibit "Y"**.

29.    On April 13, 2022, I sent an email to Ms. Hussain wherein I stated the following with regard to the consumer products licensing agreements:

"With respect to consumer products licensing agreement, plaintiff is entitled to the underlying agreements. These agreements will provide further detail on the consumer products sold as well as how the licensing deals were structured (i.e.,

8

what types and quantities of consumer products were sold, were the deals front/back loaded, what percentage of revenues Netflix receives, term of deal, etc.). This information is relevant to the damages analysis. Plaintiff is also entitled to know what specific elements of Stranger Things were licensed out and how those elements were used in the consumer products. This information from the licensing deals is directly relevant to plaintiff's damages analysis because it goes to show what scope of Netflix's licensing profits are attributable to the alleged infringement. On the other hand, the deals may show that the licensing profits are attributable to factors other than the copyrighted work. **This analysis cannot be completed with the top line dollar summary and proposed declaration confirming what those dollar amounts relate to.** Any concerns regarding confidentiality are sufficiently addressed by the protective order in this case. **Accordingly, I request that Netflix re-consider its position on producing the licensing agreements.** As with the impact value issue, we have spent a considerable amount of time meeting and conferring. I appreciate your attempts to compromise on the issue but we believe we are entitled to see the actual agreements. **Please confirm whether Netflix is willing to disclose these agreements, subject of course to the protective order.** If not, then we will consider the meet and confer completed as to the consumer products licensing issue and will proceed with a motion to compel."

A true and correct copy of my email to Ms. Hussain dated April 13, 2022 is attached hereto as **Exhibit "Z"**.

30.   On April 19, 2022, Ms. Hussain sent a response email wherein she stated the following with regard to the consumer products licensing agreements:

Netflix cannot agree, however, to produce all of the underlying consumer products licensing agreements for the Series.  Netflix does not agree that Plaintiff has explained how that information is relevant to copyright infringement damages.  The de minimis relevance (if any) of this information is far outweighed

DECLARATION OF JEREMY J. OSHER IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL

by the burden on Netflix of collecting and producing the underlying agreements, which contain confidential information of third parties to this lawsuit.  Further, Plaintiff's unpublished screenplay, *Totem*, is not substantially similar to *Stranger Things*, no character in *Stranger Things* is even arguably similar to any of the characters in *Totem*, and there is no basis for the assertion that individual consumer products licensing agreements will be relevant to this case.  These agreements relate to toys, clothes and merchandise that have no bearing on anything in plaintiff's screenplay, and are far beyond the scope of permissible discovery.

A true and correct copy of Ms. Hussain's response email dated April 19, 2022 is attached hereto as **Exhibit "AA"**.

31.    On May 24, 2022, I sent an email to Ms. Hussain addressing, among others, the following issues:

- First, I requested copies of any communications between Sims and the Duffer Brothers regarding Seasons 1, 2, or 3.

- Second, I confirmed that we had exhausted our meet and confer efforts with regard to the consumer products licensing agreements.

A true and correct copy of my email to Ms. Hussain email dated May 24, 2022 is attached hereto as **Exhibit "BB"**.

32.    On June 3, 2022, Ms. Hussain responded to my email dated May 24, 2022, wherein she stated that, with regard to communications between Sims and the Duffer Broths, "Sims did very little on Season 2 of the Series and was not involved in Seasons 3 or 4.  We have, however, located some additional documents and will produce those."

A true and correct copy of Ms. Hussain's response email dated June 3, 2022 is attached hereto as **Exhibit "CC"**.

33.    On June 8, 2022, I sent an email to Ms. Hussain wherein I stated the following:

- "[W]e look forward to reviewing the additional email communications between

DECLARATION OF JEREMY J. OSHER IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL

Sims and the Duffer Brothers. Upon those documents being produced, we would like confirmation that all communications related to Stranger Things as between Sims and the Duffers have been produced."

A true and correct copy of my email to Ms. Hussain email dated June 8, 2022 is attached hereto as **Exhibit "DD"**.

34.     On June 10, 2022, Ms. Hussain responded to my email dated June 8, 2022 as follows:

- "[W]e can confirm that, following the forthcoming production of additional email communications between Sims and the Duffers, all communications between Sims and the Duffers **concerning Sims' creative contributions** to *Stranger Things* that were located after a diligent search and a reasonable inquiry will have been produced."

A true and correct copy of Ms. Hussain's response email dated June 3, 2022 is attached hereto as **Exhibit "EE"**.

35.     On June 12, 2022, I sent an email to Ms. Hussain wherein I stated the following in a final attempt to resolve the outstanding issues:

- "Our discovery request seek all communications between Sims and the Duffers regarding *Stranger Things*. We cannot tell what documents, if any, you are excluding from your production based on what appears to be limiting language (i.e., communications concerning 'Sims' creative contributions'). **Please confirm that you are in fact producing all communications between Aaron Sims and the Duffers regarding *Stranger Things*.** If not, we need a better understanding of how you are distinguishing between communications that do concern and that do not concern Sims' creative contributions."

A true and correct copy of my email to Ms. Hussain email dated June 12, 2022 is attached hereto as **Exhibit "FF"**.

36.     On June 17, 2022, Ms. Hussain responded to my email dated June 12, 2022 as follows:

DECLARATION OF JEREMY J. OSHER IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL

- ""Creative contributions' has the same meaning as used in Defendants' responses to Plaintiff's discovery requests, as discussed during the parties' October 28, 2021 telephonic meet and confer."

A true and correct copy of Ms. Hussain's response email dated June 3, 2022 is attached hereto as **Exhibit "GG"**.

37.    Plaintiff researched and found a total of one hundred and five (105) licensing partners related to *Stranger Things*. A true and correct copy of the list of licensing partners prepared by Plaintiff is attached hereto as **Exhibit "HH"**.

38.    As of the date of this declaration, despite extensive meet and confer efforts, Netflix has not produced the consumer products licensing agreements underlying the one-page revenue summary.

### Request For Monetary Sanctions

39.    My billing rate on this matter is $595.00 per hour, which is reasonable given my level of experience, and the rates charged by other attorneys in Los Angeles County with twenty-four years of active litigation experience.

40.    Notably, judges of the Los Angeles Superior Court have found that my rates of $600 per hour and $625 per hour are reasonable. A true and correct copy of a 2/25/21 Order by Hon. Dennis J. Landin in Case No. 19STLC03060 is attached hereto as **Exhibit "II"** [hourly rate of $600 found to be reasonable]. A true and correct copy of a 7/26/19 Order by the Honorable Robert S. Draper in Case NO. BC628018 is attached hereto as **Exhibit "JJ"** [hourly rate of $625 found to be reasonable].

41.    I received a Bachelor of Arts degree from the University of California, Los Angeles in 1993, where I graduated Magna Cum Laude and was selected to the Phi Beta Kappa Honor Society. I received a Juris Doctor from Loyola Law School of Los Angeles in 1997, where I served as the Chief Articles Editor for the Law Review.  I have been a lawyer engaged in the active practice of civil litigation and an active member of the California State Bar since November 1997.

DECLARATION OF JEREMY J. OSHER IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL

42.     From November 1997 through January 2000, I was a litigation associate at Jones Day, in its Los Angeles Office, and from January 2000 through January 2003, a litigation associate at Howrey, LLP.  From January 2003 through June 2007, I was the managing partner of Osher & Osher, LLP.  I then formed Boren, Osher & Luftman, LLP with my partners Stephen Z. Boren and Amanda Nori Luftman in June 2007 and I have been a named partner at Boren, Osher & Luftman, LLP specializing in trials and arbitrations.

43.     I am currently admitted to practice before all courts in the State of California, including State and Federal courts. I have extensive experience in all areas of general civil and commercial litigation, and arbitration, including appeals.

44.     In addition to my time spent on this matter, associate attorney Matthew K. Tom spent time to draft the Motion and Joint Stipulation and perform related legal research.  Mr. Tom was admitted to the California State Bar in 2018 and has experience in all areas of general civil and commercial litigation and arbitration.  Mr. Tom received his Bachelor of Arts degree from the University of Southern California in 2013 and his Juris Doctorate from the University of Southern California Gould School of Law in 2018, where he served as a staff member and senior editor for the Southern California Review of Law and Social Justice and was a judicial extern for the Honorable Ramona G. See of the Los Angeles Superior Court.  From December 2018 through March 2021, he was a litigation associate at Aleshire & Wynder, LLP.  Since March 2021, he has been a litigation associate at Boren, Osher & Luftman, LLP.  Mr. Tom's billing rate on this matter is $375.00 per hour, which is reasonable given his level of experience, and the rates charged by other attorneys in Los Angeles County with over three (3) years of active litigation experience.

45.     My partner Aaron M. Gladstein also spent time to review and revise the Motion and Joint Stipulation.  Mr. Gladstein received his Bachelor of Arts degree from The University of Arizona in 2006 where he graduated Cum Laude and his Juris Doctorate from Pepperdine University School of Law in 2009, where he served as a

staff member for the Journal of Business, Entrepreneurship, and the Law and was a judicial extern for the Honorable Alan M. Ahart, Judge for the United States Bankruptcy Court for the Central District of California.  Mr. Gladstein has been a lawyer engaged in active practice of civil litigation and an active member of the California State Bar since December 2009. Mr. Gladstein has extensive experience in all areas of general civil and commercial litigation and arbitration. From December 2009 through October 2015, he was a litigation associate at Milstein Adelman & Kreger, LLP (now Milstein, Jackson, Fairchild & Wade). From October 2015 through August 2016, he was a litigation associate at Tesser, Ruttenberg & Grossman, LLP. Since August 2016, he has been a litigation attorney at Boren, Osher & Luftman, LLP.  Mr. Gladstein's billing rate on this matter is $450.00 per hour, which is reasonable given his level of experience, and the rates charged by other attorneys in Los Angeles County with over twelve (12) years of active litigation experience.

46.    To prepare this declaration, I reviewed our firm's billing records for this matter to determine the number of hours myself, Mr. Gladstein, and Mr. Tom billed to this file with respect to Plaintiff's instant Motion.   As a result of that review, I determined that we billed Plaintiff necessary and reasonable attorneys' fees in connection with this matter as follows:

| Matthew K. Tom ($375.00/hour) | Draft Motion, Joint Stipulation, and Declaration of Jeremy J. Osher; Perform legal research related thereto: **15.4 hours** | **$5,775.00** |
|---|---|---|
| Aaron M. Gladstein ($450.00/hour) | Review and revise Motion and Joint Stipulation: **1.0 hours** | **$450.00** |
| Jeremy J. Osher ($595.00/hour) | Review and revise Motion, Joint Stipulation, and Declaration of Jeremy J. Osher: **2.0 hours** | **$1,190.00** |

DECLARATION OF JEREMY J. OSHER IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL

| | Subtotal: | $7,415.00 |
|---|---|---|
| | | |

47.    In addition, I anticipate spending two (2) additional hours reviewing preparing for and attending the hearing on the instant Motion. This amounts to $1,190.00 in additional fees.  When combined with the above, Plaintiff has reasonably incurred **$8,605.00** in attorneys' fees in preparing the instant Motion.

48.    Pursuant to Local Rule 37-2.1, a true and correct copy of the Scheduling Order establishing the case schedule in this matter is attached hereto as **Exhibit "KK"**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 17th day of June, 2022, at El Segundo, California.

_____/s/ Jeremy J. Osher_____
JEREMY J. OSHER

DECLARATION OF JEREMY J. OSHER IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL

**EXHIBIT A**

1  BOREN, OSHER & LUFTMAN, LLP
2  Jeremy J. Osher (SBN 192109)
   josher@bollaw.com
3  Brittanee A. Marksbury (SBN 315579)
   bmarksbury@bollaw.com
4  222 N. Pacific Coast Highway, Suite 2222
5  El Segundo, CA 90245
   Telephone: (310) 322-2021
6  Facsimile: (310) 322-2228
7
   Attorneys for Plaintiff,
8  IRISH ROVER ENTERTAINMENT,
9  LLC

10

11                **UNITED STATES DISTRICT COURT**

12         **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

13                      **WESTERN DIVISION**

14

15 | IRISH ROVER ENTERTAINMENT, | Case No.: 2:20-cv-06293-CBM-PLA |
16 | LLC, a California limited liability | |
   | company, | Judge: Hon. Consuelo B. Marshall |
17 | | Magistrate Judge: Hon. Paul L. Abrams |
18 |          Plaintiff, | **PLAINTIFF IRISH ROVER** |
   | | **ENTERTAINMENT, LLC'S** |
19 |     vs. | **REQUESTS FOR PRODUCTION** |
   | | **(SET ONE) TO DEFENDANT** |
20 | AARON SIMS, an individual; MATT | **NETFLIX, INC.** |
21 | DUFFER, an individual; ROSS | |
   | DUFFER, an individual; NETFLIX, | Complaint Filed:   July 15, 2020 |
22 | INC., a Delaware corporation; NETFLIX | Trial Date: None Set |
23 | STREAMING SERVICES, INC., a | |
   | Delaware corporation; 21 LAPS, INC., a | |
24 | California corporation; and DOES 1 | |
25 | through 50, inclusive, | |
26 |          Defendants. | |
27

28

PROPOUNDING PARTY:     Plaintiff IRISH ROVER ENTERTAINMENT, LLC

RESPONDING PARTY:     Defendant NETFLIX, INC.

SET NUMBER:     One (1)

**TO RESPONDING PARTY AND ALL COUNSEL OF RECORD HEREIN:**

**NOTICE IS HEREBY GIVEN** that pursuant to Rule 34 of the *Federal Rules of Civil Procedure,* Plaintiff IRISH ROVER ENTERTAINMENT, LLC ("Plaintiff") hereby demands that Defendant NETFLIX, INC. ("Defendant" or "YOU") produce and permit Plaintiff to inspect and copy all documents, including all originals and copies thereof, as described in the attached requests for documents and which are in Defendant's possession, custody or control. The documents to be produced are to be made available at Boren, Osher & Luftman, LLP, 222 North Pacific Coast Highway, Suite 2222, El Segundo, CA 90245, thirty (30) days after service of these Requests.

In the event that any documents are withheld by Defendant due to a claim of privilege, Plaintiff expressly requests that a privilege log of all such documents be provided to Plaintiff concurrent with the production of documents.

Plaintiff further demands that Defendant serve a written response which shall be verified to this request in accordance with the provisions of Code of Civil Procedure section 2031.260. Finally, Defendant need not physically produce a requested item at the time and place indicated if Defendant attaches a copy of said requested item to the response and serves same within the required time therefore.

## INSTRUCTIONS

1.    In responding to this demand for production of documents, Defendant shall produce all documents in his possession, custody or control, or in the possession, custody or control of his attorneys, accountants, investigators, adjusters, representatives, agents or employees.

2.    Defendant shall produce not only the originals (or exact copies of the originals of all documents demanded), but also any copies of such documents which bear any notes

or markings not found on the originals and all preliminary, intermediate, final or revised drafts of such documents.

3.     Defendant shall produce all documents and tangible things which are responsive in whole or in part to any of the following demands in full, without abridgement, abbreviation or redaction of any kind.  If any documents cannot be produced in full, Defendant shall produce those documents to the extent possible and indicate by way of written response what portions of those documents are not produced and why those portions are not produced.

4.     If any documents demanded below no longer exist or cannot be located, Defendant shall set forth in the written response a complete statement of all circumstances surrounding the destruction, loss, or disappearance of each such document, including, without limitation, the following information:

(a)     a specific description of the document, including the general subject matter, the date the document was created and received, its author or signatory, its addressee and every other recipient, and its type or nature;

(b)     the date of its disposal;

(c)     the manner of its disposal;

(d)     the reason for its disposal;

(e)     the name(s), business and home address(es) and telephone number(s) of the person(s) authorizing the disposal; and

(f)     the name(s), business and home address(es) and telephone number(s) of the person(s) who disposed of the document.

5.     If Defendant is withholding any document responsive to this demand on the basis of a claimed privilege, Defendant shall state the following information by way of written response;

(a)     a specific description of the document, including its type or nature and general subject matter;

(b)     the date the document was created, executed and received;

(c)     the author or authors of the document;

(d)     the address or addresses and the telephone number or telephone numbers of the author or authors of the document;

(e)     the addressee or addressees of the document;

(f)     the identity of all persons or entities copied on the document;

(g)     the title of the document;

(h)     the name, address and telephone number of the person having custody of the document;

(i)     the location of the document and the identity of its custodian; and

(j)     the type of privilege claimed as grounds for withholding the document.

6.     YOU are required to produce that portion of the document to which no claim of privilege has been made.

7.     These Requests for Production shall be deemed continuing in nature, and YOU are under a duty to supplement YOUR document production with any document requested herein that is unavailable upon the initial date for the production of documents.

8.     If YOU refer in your responses to any document already produced, and not supplied with YOUR response, please indicate by document number of the documents to which you refer.

## DEFINITIONS

1.     As used herein, the term "DOCUMENT" shall mean and refer to written, typed, printed and graphic materials of whatever kind or nature, including, but not limited to, COMMUNICATIONS, notes, memoranda, telexes, telecopies, publications, contracts, agreements, minutes, interoffice communications, offers, charts, logs, papers, records, reports, analyses, studies, books, calendars, diaries, statements, complaints, filings with any court, tribunal or governmental agency, internal investigations, plans, bylaws, corporate minutes, ledgers, transcripts, summaries, agendas, audits, work orders, repair orders, bills, invoices, receipts, estimates, financial records, financial statements, personnel files, instruction manuals, policy manuals, bulletins, accounting records, checks, check

stubs, check registers, cancelled checks, bank statements, money orders, negotiable instruments, photographs, transcriptions, any records of any statement, conversation, telephone call, meeting, event or activity, computer programs, data and data processing cards.  DOCUMENT shall also mean and refer to all writings, originals and duplicates as defined in Evidence Code sections 250, 255 and 266, whether in draft, or otherwise, including but not limited to copies and nonidentical copies (whether different from the originals because of notes or marks made on or attached to said copies, or otherwise).

2.     As used herein, the term "COMMUNICATIONS" shall mean and refer to any oral or written exchange or transmission of words or ideas to another person or persons, whether direct or through one or more intermediaries, including but not limited to, all discussions, conversations, negotiations, conferences, meetings, speeches, statements, questions and/or any other audible transmissions, e-mail, computer disks, computer back-up tapes, all printed, typed handwritten, and/or other readable or viewable DOCUMENTS.

3.     As used herein, the terms "YOU" or "YOUR" shall mean and refer to Defendant Netflix, Inc. and any person acting on YOUR behalf including, but not limited to, agents, partners, ex-partners, servants, employees, attorneys and others who are in possession of or may have obtained information for, or on, YOUR behalf.

4.     As used herein, the term "RELATE TO" or "RELATING TO" means, in whole or in part, evidencing, constituting, containing, concerning, embodying, reflecting, referring or relating to, describing, discussing, mentioning, analyzing, identifying, stating, referring to, dealing with, or in any way mentioning or pertaining to.

5.     As used herein, the term "STRANGER THINGS" shall mean and refer to the television series Stranger Things, that Plaintiff contends infringes on the TOTEM WORKS.

6.     As used herein, the term "TOTEM SCREENPLAYS" shall mean and refer to the screenplays at issue in this action (USDC, C.D. Cal., Case No. 2:20-cv-06293-CBM-PLA).

///

PLAINTIFF IRISH ROVER ENTERTAINMENT, LLC'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANT NETFLIX, INC.

7.     As used herein, the term "TOTEM CONCEPT ART" shall mean and refer to the concept art at issue in this action (USDC, C.D. Cal., Case No. 2:20-cv-06293-CBM-PLA).

8.     As used herein, the term "TOTEM WORKS" shall mean and refer to the TOTEM SCREENPLAYS and TOTEM CONCEPT ART.

9.     As used herein, the term "KESSLER LAWSUIT" shall mean and refer to the lawsuit entitled *Charlie Kessler v. Matt Duffer et al.*, LASC Case No. BC700197.

10.   As used herein, the term "EVERGREEN" shall mean and refer to Evergreen Films, Inc., and any of its officers, directors, agents, managers, supervisors, employees, representatives, and/or employees.

11.   The term "NETFLIX STREAMING" shall mean and refer to Defendant Netflix Streaming Services, Inc. and any of its officers, directors, agents, managers, supervisors, employees, representatives, and/or employees.

12.   As used herein, the term "21 LAPS, INC." shall mean and refer to Defendant 21 Laps, Inc. and any of its officers, directors, agents, managers, supervisors, employees, representatives, and/or employees.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

Any and all DOCUMENTS that RELATE TO YOUR involvement in the creation and development of STRANGER THINGS.

**REQUEST FOR PRODUCTION NO. 2:**

Any and all DOCUMENTS that RELATE TO the creation and development of STRANGER THINGS.

**REQUEST FOR PRODUCTION NO. 3:**

Any and all DOCUMENTS that RELATE TO the TOTEM WORKS, which YOU received before YOU produced, distributed, or streamed STRANGER THINGS.

///

///

PLAINTIFF IRISH ROVER ENTERTAINMENT, LLC'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANT NETFLIX, INC.

**REQUEST FOR PRODUCTION NO. 4:**

Any and all DOCUMENTS that YOU received from any third party, including any Defendant in this action, that RELATE TO the TOTEM WORKS.

**REQUEST FOR PRODUCTION NO. 5:**

Any and all COMMUNICATIONS between YOU and Aaron Sims that RELATE TO the TOTEM WORKS.

**REQUEST FOR PRODUCTION NO. 6:**

Any and all COMMUNICATIONS between YOU and Aaron Sims that RELATE TO STRANGER THINGS.

**REQUEST FOR PRODUCTION NO. 7:**

Any and all DOCUMENTS that YOU received from Aaron Sims that RELATE TO the TOTEM WORKS.

**REQUEST FOR PRODUCTION NO. 8:**

Any and all COMMUNICATIONS between YOU and Ross Duffer and/or Matt Duffer that RELATE TO the TOTEM WORKS.

**REQUEST FOR PRODUCTION NO. 9:**

Any and all COMMUNICATIONS between YOU and Ross Duffer and/or Matt Duffer that RELATE TO STRANGER THINGS.

**REQUEST FOR PRODUCTION NO. 10:**

DOCUMENTS that RELATE TO the script for the pilot episode for STRANGER THINGS

**REQUEST FOR PRODUCTION NO. 11:**

Any and all DOCUMENTS that RELATE to YOUR purchase of STRANGER THINGS, including any agreements that YOU signed with Monkey Massacre Productions, Matt Duffer and/or Ross Duffer.

**REQUEST FOR PRODUCTION NO. 12:**

Any and all DOCUMENTS that RELATE to why Aaron Sims was not involved in Season 3 and/or Season 4 of STRANGER THINGS.

6

PLAINTIFF IRISH ROVER ENTERTAINMENT, LLC'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANT NETFLIX, INC.

**REQUEST FOR PRODUCTION NO. 13:**

Any and all DOCUMENTS that RELATE to any "look book" or "pitch book" that Matt Duffer and/or Ross Duffer created for STRANGER THINGS.

**REQUEST FOR PRODUCTION NO. 14:**

Any and all DOCUMENTS that RELATE to any sizzle reel that Matt Duffer and/or Ross Duffer created for STRANGER THINGS.

**REQUEST FOR PRODUCTION NO. 15:**

Any and all DOCUMENTS that RELATE TO STRANGER THINGS that Matt Duffer and/or Ross Duffer, or anyone affiliated with either of them (e.g., agents), gave YOU prior to YOUR decision to purchase STRANGER THINGS.

**REQUEST FOR PRODUCTION NO. 16:**

Copies of any DOCUMENTS that YOU produced in connection with the KESSLER LAWSUIT.

**REQUEST FOR PRODUCTION NO. 17:**

Copies of any transcript for any deposition given by YOU in the KESSLER LAWSUIT.

**REQUEST FOR PRODUCTION NO. 18:**

Any and all COMMUNICATIONS between YOU and 21 LAPS, INC. that RELATE TO the TOTEM WORKS.

**REQUEST FOR PRODUCTION NO. 19:**

Any and all COMMUNICATION between YOU and 21 LAPS, INC. that RELATE TO STRANGER THINGS.

**REQUEST FOR PRODUCTION NO. 20:**

Any and all COMMUNICATIONS between YOU and EVERGREEN that RELATE TO the TOTEM WORKS.

**REQUEST FOR PRODUCTION NO. 21:**

Any and all COMMUNICATIONS between YOU and EVERGREEN that RELATE TO STRANGER THINGS.

**REQUEST FOR PRODUCTION NO. 22:**

Any and all COMMUNICATIONS between YOU and NETFLIX STREAMING that RELATE TO the TOTEM WORKS.

**REQUEST FOR PRODUCTION NO. 23:**

Any and all COMMUNICATIONS between YOU and NETFLIX STREAMING that RELATE TO STRANGER THINGS.

**REQUEST FOR PRODUCTION NO. 24:**

Any and all COMMUNICATIONS between and among any of YOUR employees, agents, or contractors that RELATE TO the TOTEM WORKS.

**REQUEST FOR PRODUCTION NO. 25:**

Any and all COMMUNICATIONS between and among any of YOUR employees, agents, or contractors that RELATE TO STRANGER THINGS.

**REQUEST FOR PRODUCTION NO. 26:**

Any and all COMMUNICATIONS between YOU and Jeffrey Kennedy that RELATE TO the TOTEM WORKS.

**REQUEST FOR PRODUCTION NO. 27:**

Any and all DOCUMENTS that RELATE TO contracts or agreements that YOU entered into RELATING TO STRANGER THINGS, including contracts or agreements regarding compensation.

**REQUEST FOR PRODUCTION NO. 28:**

Any and all DOCUMENTS that RELATE TO any attempt to license, option, or otherwise exploit STRANGER THINGS.

**REQUEST FOR PRODUCTION NO. 29:**

Any and all DOCUMENTS that RELATE TO the production budgets for each season of STRANGER THINGS.

**REQUEST FOR PRODUCTION NO. 30:**

Any and all DOCUMENTS sufficient to show the number of monthly Netflix subscribers in the United States, by month, from 2015 through 2020.

**REQUEST FOR PRODUCTION NO. 31:**

Any and all DOCUMENTS sufficient to show the amount of revenue YOU made from Netflix subscriptions from the United States, by month, from 2015 through 2019.

**REQUEST FOR PRODUCTION NO. 32:**

Any and all DOCUMENTS that RELATE TO the costs YOU have incurred that are associated with the streaming of STRANGER THINGS.

**REQUEST FOR PRODUCTION NO. 33:**

Any and all DOCUMENTS sufficient to show the Netflix streaming traffic numbers in the United States, by month, from 2015 through 2019.

**REQUEST FOR PRODUCTION NO. 34:**

Any and all DOCUMENTS that RELATE TO internal and/or third-party quantifications of the Netflix streaming traffic that is attributable to STRANGER THINGS.

Dated: July 8, 2021                         BOREN, OSHER & LUFTMAN, LLP

_____

Jeremy J. Osher
Brittanee A. Marksbury
Attorneys for Plaintiff,
IRISH ROVER ENTERTAINMENT, LLC

PLAINTIFF IRISH ROVER ENTERTAINMENT, LLC'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANT NETFLIX, INC.

# PROOF OF SERVICE

STATE OF CALIFORNIA ) ss
COUNTY OF LOS ANGELES )

     I am employed in the County of Los Angeles, State of California. I am over the age of 18 years of age and am not a party to this action. My business address is 222 North Pacific Coast Highway, Suite 2222, El Segundo, CA 90245.

     On July 8, 2021, I served the document(s) as described below on interested parties in this action as follows:

**PLAINTIFF IRISH ROVER ENTERTAINMENT, LLC'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANT NETFLIX, INC.**

| ☒ | (Via email) I caused the transmission of the above-referenced document(s) to the email address set forth below. |
|---|---|
| ☒ | (Via U.S. Mail) by placing the above-named document(s) in a sealed envelope addressed as set forth below and then by placing such sealed envelope for collection and mailing with the United States Postal Service in accordance with Boren, Osher & Luftman, LLP's ordinary business practices. |

| | |
|---|---|
| Nathalie Russell, Esq.<br>Loeb and Loeb LLP<br>345 Park Avenue<br>New York, NY 10154<br>Email: nrussell@loeb.com | *Attorneys for Defendants Aaron Sims, Matt Duffer, Ross Duffer, Netflix, Inc., Netflix Streaming Services, Inc., and 21 Laps, Inc.* |
| David A. Grossman, Esq.<br>Loeb and Loeb LLP<br>10100 Santa Monica Boulevard<br>Suite 2200<br>Los Angeles, CA 90067-4120<br>Email: dgrossman@loeb.com | *Attorneys for Defendants Aaron Sims, Matt Duffer, Ross Duffer, Netflix, Inc., Netflix Streaming Services, Inc., and 21 Laps, Inc.* |

     I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

     Executed on July 8, 2021, at El Segundo, California.

_____
Jon Austin Raymundo

**EXHIBIT B**

BOREN, OSHER & LUFTMAN, LLP
Jeremy J. Osher (SBN 192109)
josher@bollaw.com
Brittanee A. Marksbury (SBN 315579)
bmarksbury@bollaw.com
222 N. Pacific Coast Highway, Suite 2222
El Segundo, CA 90245
Telephone: (310) 322-2021
Facsimile: (310) 322-2228

Attorneys for Plaintiff,
IRISH ROVER ENTERTAINMENT,
LLC

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| IRISH ROVER ENTERTAINMENT, LLC, a California limited liability company,<br><br>     Plaintiff,<br><br>   vs.<br><br>AARON SIMS, an individual; MATT DUFFER, an individual; ROSS DUFFER, an individual; NETFLIX, INC., a Delaware corporation; NETFLIX STREAMING SERVICES, INC., a Delaware corporation; 21 LAPS, INC., a California corporation; and DOES 1 through 50, inclusive,<br><br>     Defendants. | Case No.: 2:20-cv-06293-CBM-PLA<br><br>Judge: Hon. Consuelo B. Marshall<br>Magistrate Judge: Hon. Paul L. Abrams<br><br>**PLAINTIFF IRISH ROVER ENTERTAINMENT, LLC'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANT AARON SIMS**<br><br>Complaint Filed:   July 15, 2020<br>Trial Date: None Set |

| | | |
|---|---|---|
| 1 | PROPOUNDING PARTY: | Plaintiff IRISH ROVER ENTERTAINMENT, LLC |
| 2 | RESPONDING PARTY: | Defendant AARON SIMS |
| 3 | SET NUMBER: | One (1) |

**TO RESPONDING PARTY AND ALL COUNSEL OF RECORD HEREIN:**

**NOTICE IS HEREBY GIVEN** that pursuant to Rule 34 of the *Federal Rules of Civil Procedure,* Plaintiff IRISH ROVER ENTERTAINMENT, LLC ("Plaintiff") hereby demands that Defendant AARON SIMS ("Defendant" or "YOU") produce and permit Plaintiff to inspect and copy all documents, including all originals and copies thereof, as described in the attached requests for documents and which are in Defendant's possession, custody, or control. The documents to be produced are to be made available at Boren, Osher & Luftman, LLP, 222 North Pacific Coast Highway, Suite 2222, El Segundo, CA 90245, thirty (30) days after service of these Requests.

In the event that any documents are withheld by Defendant due to a claim of privilege, Plaintiff expressly requests that a privilege log of all such documents be provided to Plaintiff concurrent with the production of documents.

Plaintiff further demands that Defendant serve a written response which shall be verified to this request in accordance with the provisions of Code of Civil Procedure section 2031.260. Finally, Defendant need not physically produce a requested item at the time and place indicated if Defendant attaches a copy of said requested item to the response and serves same within the required time therefore.

## INSTRUCTIONS

1.     In responding to this demand for production of documents, Defendant shall produce all documents in his possession, custody, or control, or in the possession, custody or control of his attorneys, accountants, investigators, adjusters, representatives, agents, or employees.

2.     Defendant shall produce not only the originals (or exact copies of the originals of all documents demanded), but also any copies of such documents which bear any notes

or markings not found on the originals and all preliminary, intermediate, final, or revised drafts of such documents.

3.      Defendant shall produce all documents and tangible things which are responsive in whole or in part to any of the following demands in full, without abridgement, abbreviation, or redaction of any kind.  If any documents cannot be produced in full, Defendant shall produce those documents to the extent possible and indicate by way of written response what portions of those documents are not produced and why those portions are not produced.

4.      If any documents demanded below no longer exist or cannot be located, Defendant shall set forth in the written response a complete statement of all circumstances surrounding the destruction, loss, or disappearance of each such document, including, without limitation, the following information:

(a)     a specific description of the document, including the general subject matter, the date the document was created and received, its author or signatory, its addressee and every other recipient, and its type or nature;

(b)     the date of its disposal;

(c)     the manner of its disposal;

(d)     the reason for its disposal;

(e)     the name(s), business, and home address(es) and telephone number(s) of the person(s) authorizing the disposal; and

(f)     the name(s), business, and home address(es) and telephone number(s) of the person(s) who disposed of the document.

5.      If Defendant is withholding any document responsive to this demand on the basis of a claimed privilege, Defendant shall state the following information by way of written response;

(a)     a specific description of the document, including its type or nature and general subject matter;

(b)     the date the document was created, executed, and received;

2

(c)     the author or authors of the document;

(d)     the address or addresses and the telephone number or telephone numbers of the author or authors of the document;

(e)     the addressee or addressees of the document;

(f)     the identity of all persons or entities copied on the document;

(g)     the title of the document;

(h)     the name, address and telephone number of the person having custody of the document;

(i)     the location of the document and the identity of its custodian; and

(j)     the type of privilege claimed as grounds for withholding the document.

6.     YOU are required to produce that portion of the document to which no claim of privilege has been made.

7.     These Requests for Production shall be deemed continuing in nature, and YOU are under a duty to supplement YOUR document production with any document requested herein that is unavailable upon the initial date for the production of documents.

8.     If YOU refer in your responses to any document already produced, and not supplied with YOUR response, please indicate by document number of the documents to which you refer.

## DEFINITIONS

1.     As used herein, the term "DOCUMENT" shall mean and refer to written, typed, printed and graphic materials of whatever kind or nature, including, but not limited to, COMMUNICATIONS, notes, memoranda, telexes, telecopies, publications, contracts, agreements, minutes, interoffice communications, offers, charts, logs, papers, records, reports, analyses, studies, books, calendars, diaries, statements, complaints, filings with any court, tribunal or governmental agency, internal investigations, plans, bylaws, corporate minutes, ledgers, transcripts, summaries, agendas, audits, work orders, repair orders, bills, invoices, receipts, estimates, financial records, financial statements, personnel files, instruction manuals, policy manuals, bulletins, accounting records, checks, check

3

stubs, check registers, cancelled checks, bank statements, money orders, negotiable instruments, photographs, transcriptions, any records of any statement, conversation, telephone call, meeting, event or activity, computer programs, data and data processing cards. DOCUMENT shall also mean and RELATE TO all writings, originals and duplicates as defined in Evidence Code sections 250, 255 and 266, whether in draft, or otherwise, including but not limited to copies and nonidentical copies (whether different from the originals because of notes or marks made on or attached to said copies, or otherwise).

2. As used herein, the term "COMMUNICATIONS" shall mean and refer to any oral or written exchange or transmission of words or ideas to another person or persons, whether direct or through one or more intermediaries, including but not limited to, all discussions, conversations, negotiations, conferences, meetings, speeches, statements, questions and/or any other audible transmissions, e-mail, computer disks, computer back-up tapes, all printed, typed handwritten, and/or other readable or viewable DOCUMENTS.

3. As used herein, the terms "YOU" or "YOUR" shall mean and refer to Defendant Aaron Sims and any person acting on his behalf including, but not limited to, agents, partners, ex-partners, servants, employees, attorneys and others who are in possession of or may have obtained information for, or on, his behalf.

4. As used herein, the term "RELATE TO" or "RELATING TO" means, in whole or in part, evidencing, constituting, containing, concerning, embodying, reflecting, referring or relating to, describing, discussing, mentioning, analyzing, identifying, stating, referring to, dealing with, or in any way mentioning or pertaining to.

5. As used herein, the term "STRANGER THINGS" shall mean and refer to the television series Stranger Things, which Plaintiff contends infringes on the TOTEM WORKS.

6. As used herein, the term "TOTEM SCREENPLAYS" shall mean and refer to the screenplays at issue in this action (USDC, C.D. Cal., Case No. 2:20-cv-06293-CBM-PLA).

4

7.     As used herein, the term "TOTEM CONCEPT ART" shall mean and refer to the concept art at issue in this action (USDC, C.D. Cal., Case No. 2:20-cv-06293-CBM-PLA).

8.     As used herein, the term "TOTEM WORKS" shall mean and refer to the TOTEM SCREENPLAYS and TOTEM CONCEPT ART.

9.     As used herein, the term "EVERGREEN" shall mean and refer to Evergreen Films, Inc., and any of its officers, directors, agents, managers, supervisors, employees, representatives, and/or employees.

10.     As used herein, the term "NETFLIX" shall mean and refer to Defendants Netflix, Inc., Netflix Streaming Services, Inc. and any of their officers, directors, agents, managers, supervisors, employees, representatives, and/or employees.

11.     As used herein, the term "21 LAPS, INC." shall mean and refer to Defendant 21 Laps, Inc. and any of its officers, directors, agents, managers, supervisors, employees, representatives, and/or employees.

12.     As used herein, the term "ASC" shall mean and refer to Aaron Sims Creative and any of its officers, directors, agents, managers, supervisors, employees, representatives, and/or employees.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

Copies of any and all TOTEM SCREENPLAYS YOU received from Jeffrey Kennedy.

**REQUEST FOR PRODUCTION NO. 2:**

Copies of any and all images, photographs, and/or drawings that YOU received from Jeffrey Kennedy in connection with YOUR work on the TOTEM WORKS.

**REQUEST FOR PRODUCTION NO. 3:**

Any and all COMMUNICATIONS between YOU and Jeffrey Kennedy that RELATE TO the TOTEM WORKS.

///

PLAINTIFF IRISH ROVER ENTERTAINMENT, LLC'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANT AARON SIMS

**REQUEST FOR PRODUCTION NO. 4:**

Any and all COMMUNICATIONS between YOU and Matt Duffer that RELATE TO the TOTEM WORKS.

**REQUEST FOR PRODUCTION NO. 5:**

Any and all COMMUNICATIONS between YOU and Matt Duffer that RELATE TO STRANGER THINGS.

**REQUEST FOR PRODUCTION NO. 6:**

Any and all COMMUNICATIONS between YOU and Ross Duffer that RELATE TO the TOTEM WORKS.

**REQUEST FOR PRODUCTION NO. 7:**

Any and all COMMUNICATIONS between YOU and Ross Duffer that RELATE TO STRANGER THINGS.

**REQUEST FOR PRODUCTION NO. 8:**

Any and all COMMUNICATIONS between YOU and NETFLIX that RELATE TO the TOTEM WORKS.

**REQUEST FOR PRODUCTION NO. 9:**

Any and all COMMUNICATIONS between YOU and NETFLIX that RELATE TO STRANGER THINGS.

**REQUEST FOR PRODUCTION NO. 10:**

Any and all COMMUNICATIONS between YOU and 21 LAPS, INC. that RELATE TO the TOTEM WORKS.

**REQUEST FOR PRODUCTION NO. 11:**

Any and all COMMUNICATION between YOU and 21 LAPS, INC. that RELATE TO STRANGER THINGS.

**REQUEST FOR PRODUCTION NO. 12:**

Any and all COMMUNICATIONS between YOU and EVERGREEN that RELATE TO the TOTEM WORKS.

///

**REQUEST FOR PRODUCTION NO. 13:**

Any and all COMMUNICATIONS between YOU and EVERGREEN that RELATE TO STRANGER THINGS.

**REQUEST FOR PRODUCTION NO. 14:**

Any and all COMMUNICATIONS between YOU and any employee or contractor of ASC that RELATE TO the TOTEM WORKS.

**REQUEST FOR PRODUCTION NO. 15:**

Any and all COMMUNICATIONS between YOU and any employee or contractor of ASC that RELATE TO STRANGER THINGS.

**REQUEST FOR PRODUCTION NO. 16:**

Any and all DOCUMENTS that RELATE TO any work performed by YOU and/or ASC in connection with the creation and development of the artwork and visual effects for the TOTEM SCREENPLAYS.

**REQUEST FOR PRODUCTION NO. 17:**

Any and all DOCUMENTS that RELATE TO any work performed by YOU and/or ASC in connection with the creation and development of the artwork and visual effects for STRANGER THINGS.

**REQUEST FOR PRODUCTION NO. 18:**

Any and all DOCUMENTS that RELATE TO any contracts or agreements that YOU and/or ASC entered into regarding any work performed RELATING TO the TOTEM WORKS.

**REQUEST FOR PRODUCTION NO. 19:**

Any and all DOCUMENTS that RELATE TO any contracts or agreements that YOU and/or ASC entered into regarding any work performed RELATING TO STRANGER THINGS.

**REQUEST FOR PRODUCTION NO. 20:**

Any and all DOCUMENTS that RELATE TO any compensation YOU and/or ASC received for YOUR work on the TOTEM WORKS.

7

**REQUEST FOR PRODUCTION NO. 21:**

Any and all DOCUMENTS that RELATE TO any compensation YOU and/or ASC received for YOUR work on STRANGER THINGS.

**REQUEST FOR PRODUCTION NO. 22:**

Any and all contracts or agreements that YOU and/or ASC entered into regarding compensation YOU and/or ASC received for screenplay concept art YOU provided to third parties from January 1, 2008 to the present.

**REQUEST FOR PRODUCTION NO. 23:**

Copies of YOUR appointment books, appointment logs or calendars, whether in paper or electronic format, from 2009 to 2015.

Dated: July 8, 2021                              BOREN, OSHER & LUFTMAN, LLP

Jeremy J. Osher
Brittanee A. Marksbury
Attorneys for Plaintiff,
IRISH ROVER ENTERTAINMENT, LLC

PLAINTIFF IRISH ROVER ENTERTAINMENT, LLC'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANT AARON SIMS

**PROOF OF SERVICE**

STATE OF CALIFORNIA          )
                             )   ss
COUNTY OF LOS ANGELES        )

    I am employed in the County of Los Angeles, State of California. I am over the age of 18 years of age and am not a party to this action. My business address is 222 North Pacific Coast Highway, Suite 2222, El Segundo, CA 90245.

    On July 8, 2021, I served the document(s) as described below on interested parties in this action as follows:

**PLAINTIFF IRISH ROVER ENTERTAINMENT, LLC'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANT AARON SIMS**

| ☒ | (Via email) I caused the transmission of the above-referenced document(s) to the email address set forth below. |
|---|---|
| ☒ | (Via U.S. Mail) by placing the above-named document(s) in a sealed envelope addressed as set forth below and then by placing such sealed envelope for collection and mailing with the United States Postal Service in accordance with Boren, Osher & Luftman, LLP's ordinary business practices. |

| | |
|---|---|
| Nathalie Russell, Esq.<br>Loeb and Loeb LLP<br>345 Park Avenue<br>New York, NY 10154<br>Email: nrussell@loeb.com | *Attorneys for Defendants Aaron Sims, Matt Duffer, Ross Duffer, Netflix, Inc., Netflix Streaming Services, Inc., and 21 Laps, Inc.* |
| David A. Grossman, Esq.<br>Loeb and Loeb LLP<br>10100 Santa Monica Boulevard<br>Suite 2200<br>Los Angeles, CA 90067-4120<br>Email: dgrossman@loeb.com | *Attorneys for Defendants Aaron Sims, Matt Duffer, Ross Duffer, Netflix, Inc., Netflix Streaming Services, Inc., and 21 Laps, Inc.* |

    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

    Executed on July 8, 2021, at El Segundo, California.

_____
Jon Austin Raymundo

**EXHIBIT C**

1 | DAVID GROSSMAN (SBN 211326)
dgrossman@loeb.com
2 | SAFIA GRAY HUSSAIN (SBN 251123)
nrussell@loeb.com
3 | LOEB & LOEB LLP
10100 Santa Monica Blvd., Suite 2200
4 | Los Angeles, CA  90067
Telephone: 310.282.2000
5 | Facsimile: 310.282.2200

6 | Attorneys for Defendants
AARON SIMS; MATT DUFFER; ROSS
7 | DUFFER; NETFLIX, INC.; NETFLIX
STREAMING SERVICES, INC.; and
8 | 21 LAPS, INC.

9

10 | UNITED STATES DISTRICT COURT

11 | CENTRAL DISTRICT OF CALIFORNIA

12

13 | IRISH ROVER ENTERTAINMENT, LLC, a California limited liability | Case No.: 2:20-cv-06293-CBM-PLA
14 | company, | Assigned to Hon. Consuelo B. Marshall
15 | Plaintiff,
16 | v.
17 | AARON SIMS, an individual; MATT DUFFER, an individual; ROSS | **DEFENDANT NETFLIX, INC.'S RESPONSES TO PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS, SET ONE**
18 | DUFFER, an individual; NETFLIX, INC., a Delaware corporation;
19 | NETFLIX STREAMING SERVICES, INC., a Delaware corporation; 21
20 | LAPS, INC., a California corporation; and DOES 1 through 50, inclusive, | First Amended Complaint Filed: October 12, 2020
21
22 | Defendants.
23
24
25
26
27
28

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

21066511.1
231804-10002

NETFLIX, INC.'S RESPONSES TO PLAINTIFF'S
REQUESTS FOR PRODUCTION OF
DOCUMENTS, SET ONE

PROPOUNDING PARTY:      PLAINTIFF IRISH ROVER ENTERTAINMENT, LLC

RESPONDING PARTY:       NETFLIX, INC.

SET NUMBER:             ONE

Defendant Netflix, Inc. ("Netflix" or "Responding Party") hereby responds and objects to Plaintiff Irish Rover Entertainment, LLC's ("Plaintiff") Requests for Production of Documents, Set One ("Requests") as follows:

## GENERAL OBJECTIONS

The following general objections apply to and are incorporated in each individual response herein, whether or not expressly incorporated by reference in such response.

1.      Responding Party objects to the Requests on the grounds, and to the extent, that they seek disclosure of documents or materials that are protected from discovery by the attorney-client privilege, by the common interest privilege, by the work product doctrine, or pursuant to any other applicable privilege or protection, or documents or information otherwise protected from discovery.  Responding Party will not undertake to produce any such privileged or protected documents or information, and nothing contained herein is intended as, or shall be deemed to be, a waiver of any attorney-client privilege, common interest privilege, attorney work product protection, or any other applicable privilege or protection from discovery.  In the event that protected information is inadvertently disclosed, Propounding Party and/or its counsel shall disregard that information for all purposes.

2.      Responding Party objects to the Requests on the grounds, and to the extent, that they seek documents or other materials that are not relevant to the claims and defenses asserted in this litigation, nor reasonably calculated to lead to the discovery of admissible evidence, and are overbroad, unduly burdensome, unreasonable, vexatious, harassing and oppressive.  Responding Party disavows any purported obligation to produce any documents or other materials that are not relevant

to the claims and defenses asserted in this litigation, nor reasonably calculated to lead to the discovery of admissible evidence.  Without limiting the foregoing, Responding Party particularly objects to the Requests, and to various specific requests contained therein, on the grounds that they are substantially overbroad as to time, including, without limitation, in that they fail to provide any reasonable parameters with respect to the time period encompassed by the Requests or the numerous requests contained therein.   Further, no response contained herein, and no agreement to produce documents in response to the Requests or any individual request, is intended to be, nor shall it be deemed or construed as, an admission that the categories of documents sought by the Requests or by any specific request contained therein, or any specific documents that may be produced, are relevant to this action or should be admitted into evidence in this action.  Further, Responding Party expressly disavows any obligation or undertaking not imposed by the Federal Rules of Civil Procedure, including, without limitation, any obligation to produce documents that, even if theoretically responsive to one or more requests, are beyond the scope of permissible discovery pursuant to Rule 26(b) of the Federal Rules of Civil Procedure.

3.      Responding Party generally objects to the Requests to the extent that they purport to require Responding Party to disclose documents and/or materials constituting or containing, in whole or in part, information that is protected from disclosure by rights of privacy, confidential data, trade secrets, proprietary or sensitive business information, or nonpublic information pertaining to Responding Party, its past or present personnel, or other persons or entities.  Responding Party further objects to the Requests to the extent that they purport to require Responding Party to disclose documents and/or materials containing confidential information belonging to its employees or any third parties.  To the extent that Responding Party is agreeing herein to produce any documents in response to the Requests that constitute or contain trade secrets or confidential, personal, proprietary, sensitive, or nonpublic

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

21066511.1
231804-10002

2

NETFLIX, INC.'S RESPONSES TO PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS, SET ONE

information, such documents will only be produced following the entry of an acceptable protective order by the Court.

4.     Responding Party objects to the Requests on the ground and to the extent that they purport to impose upon Responding Party an undue burden and unreasonable expense associated with efforts to produce, locate or preserve documents, including electronically stored information ("ESI"), that are not reasonably accessible, are duplicative of more accessible documents, or are duplicative of documents already in the possession of Plaintiff.

5.     Responding Party objects to the Requests insofar as they purport to require preservation and/or production of ESI that is not stored on Responding Party's active systems, but is stored on systems, backup tapes and other media that are no longer part of normal business operations.  Such ESI, to the extent any exists, is not reasonably accessible and likely is duplicative of ESI available from other more readily accessible sources.  Because of the lack of relevance of such ESI and the cost associated with searching, preserving and accessing these data sources, if any, Responding Party objects to the search of the above-described ESI sources in response to the Requests.

6.     Responding Party objects to the Requests insofar as they seek documents or information that are within the possession and control of Plaintiff.

7.     Responding Party objects to the Requests insofar as they seek documents or information that are within the possession and control of other Defendants.

8.     Responding Party objects to the Requests insofar as they seek documents or information attempting to prove negative statements or the absence of knowledge regarding a subject.

9.     Responding Party objects to the Requests on the ground that they are overbroad, unduly burdensome, vague and ambiguous insofar as they define "related to" and "relating to" to mean "evidencing, constituting, containing, concerning, embodying, reflecting, referring or relating to, describing, discussing, mentioning,

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

21066511.1
231804-10002

3

NETFLIX, INC.'S RESPONSES TO PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS, SET ONE

analyzing, identifying, stating, referring to, dealing with, or in any way mentioning or pertaining to."

10.     Responding Party objects to Plaintiff's definition of "TOTEM SCREENPLAYS" and "TOTEM CONCEPT ART" on the ground that this definition is vague and ambiguous, including because Plaintiff has failed to produce deposit copies of all allegedly infringed works at issue in this action.

11.     Responding Party also objects to the Requests to the extent that they purport to impose requirements on Responding Party beyond those that are provided for in the Federal Rules of Civil Procedure.

12.     Responding Party has not completed its investigation of the facts or its preparation for the hearing of this matter.  Consequently, the following responses are given without prejudice to Responding Party's right to amend, correct, supplement, or clarify these responses at a later date.  No admissions of any nature are implied or should be inferred from these responses.

13.     The General Objections apply to and are hereby incorporated into each of Responding Party's specific objections, set forth below.

## RESPONSES AND OBJECTIONS TO REQUESTS FOR PRODUCTION
## REQUEST FOR PRODUCTION NO. 1:

Any and all DOCUMENTS that RELATE TO YOUR involvement in the creation and development of STRANGER THINGS.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 1:

Netflix incorporates its General Objections as if set forth herein.  Netflix further objects to this Request as overbroad and unduly burdensome insofar as it seeks copies of "any and all" documents that "relate to" Netflix's involvement in the creation and development of *Stranger Things*.  Netflix further objects to this Request to the extent that it seeks documents that are not relevant to the claims and defenses asserted in this litigation, nor reasonably calculated to lead to the discovery of admissible evidence.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

21066511.1
231804-10002

4

NETFLIX, INC.'S RESPONSES TO PLAINTIFF'S
REQUESTS FOR PRODUCTION OF
DOCUMENTS, SET ONE

**REQUEST FOR PRODUCTION NO. 27:**

Any and all DOCUMENTS that RELATE TO contracts or agreements that YOU entered into RELATING TO STRANGER THINGS, including contracts or agreements regarding compensation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

Netflix incorporates its General Objections as if set forth herein.  Netflix further objects to this Request as overbroad and unduly burdensome insofar as it seeks "any and all" documents that "relate to" contracts or agreements Netflix entered into "relating to" *Stranger Things*.  Netflix further objects to this Request to the extent that it seeks documents that are not relevant to the claims and defenses asserted in this litigation, nor reasonably calculated to lead to the discovery of admissible evidence, as the contracts requested have no bearing on Plaintiff's specific copyright infringement claims in this lawsuit.  Netflix further objects to this Request to the extent that it seeks documents that constitute or contain trade secrets or confidential, personal, proprietary, sensitive, or nonpublic information, which to the extent that they are responsive and relevant, will only be produced following the entry of an acceptable protective order by the Court.

**REQUEST FOR PRODUCTION NO. 28:**

Any and all DOCUMENTS that RELATE TO any attempt to license, option, or otherwise exploit STRANGER THINGS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

Netflix incorporates its General Objections as if set forth herein.  Netflix further objects to this Request as overbroad and unduly burdensome insofar as it seeks "any and all" documents that "relate to any attempt" to license, option, or otherwise exploit *Stranger Things*.  Netflix further objects to this Request to the extent that it seeks documents that are not relevant to the claims and defenses asserted in this litigation, nor reasonably calculated to lead to the discovery of admissible evidence.  Netflix

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

21066511.1
231804-10002

20

NETFLIX, INC.'S RESPONSES TO PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS, SET ONE

further objects to this Request to the extent that it seeks documents that constitute or contain trade secrets or confidential, personal, proprietary, sensitive, or nonpublic information, which to the extent that they are responsive and relevant, will only be produced following the entry of an acceptable protective order by the Court.

Subject to and without waiving the foregoing or the General Objections, Netflix states that states that it will produce the original pitch materials that were submitted prior to the acquisition of *Stranger Things*.

**REQUEST FOR PRODUCTION NO. 29:**

Any and all DOCUMENTS that RELATE TO the production budgets for each season of STRANGER THINGS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

Netflix incorporates its General Objections as if set forth herein.  Netflix further objects to this Request on the grounds that it is overbroad and unduly burdensome insofar as it seeks the identification of the production budget for "each season" of *Stranger Things*.  Netflix further objects to this Request to the extent that it seeks information that is not relevant to the claims and defenses asserted in this litigation, nor reasonably calculated to lead to the discovery of admissible evidence, as the production budgets for individual seasons of *Stranger Things* have no bearing on Plaintiff's claims for copyright infringement.  Netflix further objects to this Request to the extent that it seeks documents that constitute or contain trade secrets or confidential, personal, proprietary, sensitive or nonpublic financial information, which to the extent that they are responsive and relevant, will only be produced following the entry of an acceptable protective order by the Court.

Subject to and without waiving the foregoing or the General Objections, Netflix states that it will produce documents sufficient to show its production costs for Season 1 of *Stranger Things*.

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

21066511.1
231804-10002

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

Netflix incorporates its General Objections as if set forth herein.  Netflix further objects to this Request as vague and ambiguous, overbroad and unduly burdensome insofar as it seeks a description of "any internal and/or third-party quantifications" of Netflix "streaming traffic that is attributable" to Stranger Things.  Netflix further objects to this Request to the extent that it seeks information that is not relevant to the claims and defenses asserted in this litigation, nor reasonably calculated to lead to the discovery of admissible evidence, as overall subscribers to a streaming service have no bearing on Plaintiff's claims for copyright infringement in this lawsuit.  Netflix further objects to this Request to the extent that it seeks documents that constitute or contain trade secrets or confidential, personal, proprietary, sensitive, or nonpublic information, which to the extent that they are responsive and relevant, will only be produced following the entry of an acceptable protective order by the Court.

Dated:  September 3, 2021

LOEB & LOEB LLP
DAVID GROSSMAN

By: _____ */s/ David Grossman* _____
David Grossman
Safia Gray Hussain
Attorneys for Defendants
AARON SIMS, MATT DUFFER, ROSS DUFFER, NETFLIX, INC., NETFLIX STREAMING SERVICES, INC., and 21 LAPS INC.

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

21066511.1
231804-10002

25

NETFLIX, INC.'S RESPONSES TO PLAINTIFF'S
REQUESTS FOR PRODUCTION OF
DOCUMENTS, SET ONE

# PROOF OF SERVICE

I, Valent Manssourian, the undersigned, declare that:

I am employed in the County of Los Angeles, State of California, over the age of 18, and not a party to this cause.  My business address is 10100 Santa Monica Blvd., Suite 2200, Los Angeles, CA  90067.

On September 3, 2021, I served a true copy of the foregoing **DEFENDANT NETFLIX, INC.'S RESPONSES TO PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS, SET ONE** on the parties in this cause as follows:

☑     *(VIA EMAIL)* I caused the transmission of the above-named document(s) to the email address set forth below, or on the attached service list.

☑     (*VIA U.S. MAIL*) by placing the above named document in a sealed envelope addressed as set forth below, or on the attached service list and by then placing such sealed envelope for collection and mailing with the United States Postal Service in accordance with Loeb & Loeb LLP's ordinary business practices

**Jeremy J. Osher, Esq.**
**Brittanee A. Marksbury**
**Boren, Osher and Luftman LLP**
**222 North Pacific Coast Highway Suite 2222**
**El Segundo, CA 90245**
**josher@bollaw.com**
**bmarksbury@bollaw.com**

I am readily familiar with Loeb & Loeb LLP's practice for collecting and processing correspondence for mailing with the United States Postal Service and Overnight Delivery Service.  That practice includes the deposit of all correspondence with the United States Postal Service and/or Overnight Delivery Service the same day it is collected and processed.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 3, 2021, at Los Angeles, California.

Valent Manssourian

Valent Manssourian

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

21066511.1
231804-10002

26

NETFLIX, INC.'S RESPONSES TO PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS, SET ONE

**EXHIBIT D**

1  DAVID GROSSMAN (SBN 211326)
   dgrossman@loeb.com
2  SAFIA GRAY HUSSAIN (SBN 251123)
   sghussain@loeb.com
3  LOEB & LOEB LLP
   10100 Santa Monica Blvd., Suite 2200
4  Los Angeles, CA  90067
   Telephone: 310.282.2000
5  Facsimile: 310.282.2200

6  Attorneys for Defendants
   AARON SIMS; MATT DUFFER; ROSS
7  DUFFER; NETFLIX, INC.; NETFLIX
   STREAMING SERVICES, INC.; and
8  21 LAPS, INC.

9

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12

13  IRISH ROVER ENTERTAINMENT,        Case No.: 2:20-cv-06293-CBM-PLA
    LLC, a California limited liability
14  company,                          Assigned to Hon. Consuelo B.
                                       Marshall
15             Plaintiff,

16        v.

17  AARON SIMS, an individual; MATT   **DEFENDANT AARON SIMS'S**
    DUFFER, an individual; ROSS       **RESPONSES TO PLAINTIFF'S**
18  DUFFER, an individual; NETFLIX,   **REQUESTS FOR PRODUCTION**
    INC., a Delaware corporation;     **OF DOCUMENTS, SET ONE**
19  NETFLIX STREAMING SERVICES,
    INC., a Delaware corporation; 21
20  LAPS, INC., a California corporation;  First Amended Complaint Filed:
    and DOES 1 through 50, inclusive,    October 12, 2020
21
               Defendants.
22

23

24

25

26

27

28

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

21066321.1
231804-10002

AARON SIMS'S RESPONSES TO PLAINTIFF'S
REQUESTS FOR PRODUCTION OF
DOCUMENTS, SET ONE

PROPOUNDING PARTY:     PLAINTIFF IRISH ROVER ENTERTAINMENT, LLC

RESPONDING PARTY:      AARON SIMS

SET NUMBER:            ONE

Defendant Aaron Sims, ("Sims" or "Responding Party") hereby responds and objects to Plaintiff Irish Rover Entertainment, LLC's ("Plaintiff") Requests for Production of Documents, Set One, ("Requests") as follows:

## GENERAL OBJECTIONS

The following general objections apply to and are incorporated in each individual response herein, whether or not expressly incorporated by reference in such response.

1.     Responding Party objects to the Requests on the grounds, and to the extent, that they seek disclosure of documents or materials that are protected from discovery by the attorney-client privilege, by the common interest privilege, by the work product doctrine, or pursuant to any other applicable privilege or protection, or documents or information otherwise protected from discovery. Responding Party will not undertake to produce any such privileged or protected documents or information, and nothing contained herein is intended as, or shall be deemed to be, a waiver of any attorney-client privilege, common interest privilege, attorney work product protection, or any other applicable privilege or protection from discovery. In the event that protected information is inadvertently disclosed, Propounding Party and/or its counsel shall disregard that information for all purposes.

2.     Responding Party objects to the Requests on the grounds, and to the extent, that they seek documents or other materials that are not relevant to the claims and defenses asserted in this litigation, nor reasonably calculated to lead to the discovery of admissible evidence, and are overbroad, unduly burdensome, unreasonable, vexatious, harassing and oppressive. Responding Party disavows any purported obligation to produce any documents or other materials that are not relevant

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

21066321.1
231804-10002

1

AARON SIMS'S RESPONSES TO PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS, SET ONE

to the claims and defenses asserted in this litigation.  Without limiting the foregoing, Responding Party particularly objects to the Requests, and to various specific requests contained therein, on the grounds that they are substantially overbroad as to time, including, without limitation, in that they fail to provide any reasonable parameters with respect to the time period encompassed by the Requests or the numerous requests contained therein.   Further, no response contained herein, and no agreement to produce documents in response to the Requests or any individual request, is intended to be, nor shall it be deemed or construed as, an admission that the categories of documents sought by the Requests or by any specific request contained therein, or any specific documents that may be produced, are relevant to this action or should be admitted into evidence in this action.  Further, Responding Party expressly disavows any obligation or undertaking not imposed by the Federal Rules of Civil Procedure, including, without limitation, any obligation to produce documents that, even if theoretically responsive to one or more requests, are beyond the scope of permissible discovery pursuant to Rule 26(b) of the Federal Rules of Civil Procedure.

3.      Responding Party generally objects to the Requests to the extent that they purport to require Responding Party to disclose documents and/or materials constituting or containing, in whole or in part, information that is protected from disclosure by rights of privacy, confidential data, trade secrets, proprietary or sensitive business information, or nonpublic information pertaining to Responding Party, its past or present personnel, or other persons or entities.  Responding Party further objects to the Requests to the extent that they purport to require Responding Party to disclose documents and/or materials containing confidential information belonging to its employees or any third parties.  To the extent that Responding Party is agreeing herein to produce any documents in response to the Requests that constitute or contain trade secrets or confidential, personal, proprietary, sensitive, or nonpublic information, such documents will only be produced following the entry of an acceptable protective order by the Court.

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

21066321.1
231804-10002

2

AARON SIMS'S RESPONSES TO PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS, SET ONE

4.      Responding Party objects to the Requests on the grounds and to the extent that they purport to impose upon Responding Party an undue burden and unreasonable expense associated with efforts to produce, locate or preserve documents, including electronically stored information ("ESI"), that are not reasonably accessible, are duplicative of more accessible documents, or are duplicative of documents already in the possession of Plaintiff.

5.      Responding Party objects to the Requests insofar as they purport to require preservation and/or production of ESI that is not stored on Responding Party's active systems, but is stored on systems, backup tapes and other media that are no longer part of normal business operations.  Such ESI, to the extent any exists, is not reasonably accessible and likely is duplicative of ESI available from other more readily accessible sources.  Because of the lack of relevance of such ESI and the cost associated with searching, preserving and accessing these data sources, if any, Responding Party objects to the search of the above-described ESI sources in response to the Requests.

6.      Responding Party objects to the Requests insofar as they seek documents or information that are within the possession and control of Plaintiff.

7.      Responding Party objects to the Requests insofar as they seek documents or information that are within the possession and control of other Defendants.

8.      Responding Party objects to the Requests insofar as they seek documents or information attempting to prove negative statements or the absence of knowledge regarding a subject.

9.      Responding Party objects to Requests on the grounds that they are overbroad, unduly burdensome, vague and ambiguous insofar as they define "related to" and "relating to" to mean "regarding, concerning, referring to, describing, evidencing and/or constituting."

10.     Responding Party objects to the Requests on the grounds that they are overbroad, unduly burdensome, vague and ambiguous insofar as they define "related

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

21066321.1
231804-10002

3

AARON SIMS'S RESPONSES TO PLAINTIFF'S
REQUESTS FOR PRODUCTION OF
DOCUMENTS, SET ONE

1  to" and "relating to" to mean "evidencing, constituting, containing, concerning,

2  embodying, reflecting, referring or relating to, describing, discussing, mentioning,

3  analyzing, identifying, stating, referring to, dealing with, or in any way mentioning or

4  pertaining to."

5      11.    Responding Party objects to Plaintiff's definition of "TOTEM

6  SCREENPLAYS" and "TOTEM CONCEPT ART" on the grounds that this definition

7  is vague and ambiguous, including because Plaintiff has failed to produce deposit

8  copies of all allegedly infringed works at issue in this action.

9      12.    Responding Party also objects to the Requests to the extent that they

10 purport to impose requirements on Responding Party beyond those that are provided

11 for in the Federal Rules of Civil Procedure.

12     13.    Responding Party has not completed his investigation of the facts or his

13 preparation for the hearing of this matter.  Consequently, the following responses are

14 given without prejudice to Responding Party's right to amend, correct, supplement,

15 or clarify these responses at a later date.  No admissions of any nature are implied or

16 should be inferred from these responses.

17     14.    The General Objections apply to and are hereby incorporated into each

18 of Responding Party's specific objections, set forth below.

19

20 **RESPONSES AND OBJECTIONS TO REQUESTS FOR PRODUCTION**

21 **REQUEST FOR PRODUCTION NO. 1:**

22     Copies of any and all TOTEM SCREENPLAYS YOU received from Jeffrey

23 Kennedy.

24 **RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

25     Sims incorporates his General Objections as if set forth herein.  Sims further

26 objects to this Request to the extent that it seeks documents that are already in

27 Plaintiff's possession or control.  Sims further objects to this Request to the extent

28 that it seeks documents that are not relevant to the claims and defenses asserted in this

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

21066321.1
231804-10002

4

AARON SIMS'S RESPONSES TO PLAINTIFF'S
REQUESTS FOR PRODUCTION OF
DOCUMENTS, SET ONE

1    Subject to and without waiving the foregoing or the General Objections, Sims

2    states that he will produce any responsive communications with Kennedy concerning

3    the TOTEM WORKS that are in his possession, custody, or control.

4

5    **REQUEST FOR PRODUCTION NO. 4:**

6    Any and all COMMUNICATIONS between YOU and Matt Duffer that

7    RELATE TO the TOTEM WORKS.

8    **RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

9    Sims incorporates his General Objections as if set forth herein.  Sims further

10   objects to this Request to the extent that it seeks documents protected by the attorney-

11   client privilege, common interest privilege, work-product protection, or other

12   applicable legal protections or privileges.

13   Subject to and without waiving the foregoing or the General Objections, Sims

14   states that he has no responsive non-privileged documents in his possession, custody,

15   or control.

16

17   **REQUEST FOR PRODUCTION NO. 5:**

18   Any and all COMMUNICATIONS between YOU and Matt Duffer that

19   RELATE TO STRANGER THINGS.

20   **RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

21   Sims incorporates his General Objections as if set forth herein.  Sims further

22   objects to this Request as overbroad and unduly burdensome insofar as it seeks "any

23   and all" communications between Sims and Matt Duffer that "relate to" *Stranger*

24   *Things*, as this request calls for years of communications relating to Sims' work with

25   Matt Duffer on *Stranger Things* without regard to subject matter.  Sims further objects

26   to this Request to the extent that it seeks documents that are not relevant to the claims

27   and defenses asserted in this litigation, nor reasonably calculated to lead to the

28   discovery of admissible evidence, as Sims' work on *Stranger Things* has nothing to

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

21066321.1
231804-10002

6

AARON SIMS'S RESPONSES TO PLAINTIFF'S
REQUESTS FOR PRODUCTION OF
DOCUMENTS, SET ONE

do with Plaintiff's TOTEM WORKS.  Sims further objects to this Request to the extent that it seeks documents protected by the attorney-client privilege, common interest privilege, work-product protection, or other applicable legal protections or privileges.  Sims further objects to this Request to the extent that it seeks documents that constitute or contain trade secrets or confidential, personal, proprietary, sensitive or nonpublic information, which to the extent that they are responsive and relevant, will only be produced following the entry of an acceptable protective order by the Court.

Subject to and without waiving the foregoing or the General Objections, Sims states that he will produce any responsive non-privileged communications with Matt Duffer concerning creative contributions to *Stranger Things* through October 2015.

**REQUEST FOR PRODUCTION NO. 6:**

Any and all COMMUNICATIONS between YOU and Ross Duffer that RELATE TO the TOTEM WORKS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Sims incorporates his General Objections as if set forth herein.  Sims further objects to this Request to the extent that it seeks documents protected by the attorney-client privilege, common interest privilege, work-product protection, or other applicable legal protections or privileges.

Subject to and without waiving the foregoing or the General Objections, Sims states that he has no responsive non-privileged documents in his possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 7:**

Any and all COMMUNICATIONS between YOU and Ross Duffer that RELATE TO STRANGER THINGS.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

21066321.1
231804-10002

AARON SIMS'S RESPONSES TO PLAINTIFF'S
REQUESTS FOR PRODUCTION OF
DOCUMENTS, SET ONE

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Sims incorporates his General Objections as if set forth herein.  Sims further objects to this Request as overbroad and unduly burdensome insofar as it seeks "any and all" communications between Sims and Ross Duffer that "relate to" *Stranger Things*, as this request calls for years of communications relating to Sims' work with Ross Duffer on *Stranger Things* without regard to subject matter.  Sims further objects to this Request to the extent that it seeks documents that are not relevant to the claims and defenses asserted in this litigation, nor reasonably calculated to lead to the discovery of admissible evidence, as Sims' work on *Stranger Things* has nothing to do with Plaintiff's TOTEM WORKS.  Sims further objects to this Request to the extent that it seeks documents protected by the attorney-client privilege, common interest privilege, work-product protection, or other applicable legal protections or privileges.  Sims further objects to this Request to the extent that it seeks documents that constitute or contain trade secrets or confidential, personal, proprietary, sensitive, or nonpublic information, which to the extent that they are responsive and relevant, will only be produced following the entry of an acceptable protective order by the Court.

Subject to and without waiving the foregoing or the General Objections, Sims states that he will produce any responsive non-privileged communications with Ross Duffer concerning creative contributions to *Stranger Things* through October 2015.

**REQUEST FOR PRODUCTION NO. 8:**

Any and all COMMUNICATIONS between YOU and NETFLIX that RELATE TO the TOTEM WORKS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Sims incorporates his General Objections as if set forth herein.  Sims further objects to this Request to the extent that it seeks documents protected by the attorney-

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

21066321.1
231804-10002

AARON SIMS'S RESPONSES TO PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS, SET ONE

1     Dated:  September 3, 2021                LOEB & LOEB LLP
2                                              DAVID GROSSMAN

3                                              By:    /s/ David Grossman
4                                                  David Grossman
                                                   Safia Gray Hussain
5                                                  Attorneys for Defendants
                                                   AARON SIMS, MATT DUFFER, ROSS
6                                                  DUFFER, NETFLIX, INC., NETFLIX
                                                   STREAMING SERVICES, INC., and 21
7                                                  LAPS INC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

21066321.1
231804-10002

19

AARON SIMS'S RESPONSES TO PLAINTIFF'S
REQUESTS FOR PRODUCTION OF
DOCUMENTS, SET ONE

**PROOF OF SERVICE**

I, Valent Manssourian, the undersigned, declare that:

I am employed in the County of Los Angeles, State of California, over the age of 18, and not a party to this cause.  My business address is 10100 Santa Monica Blvd., Suite 2200, Los Angeles, CA  90067.

On September 3, 2021, I served a true copy of the foregoing **DEFENDANT AARON SIMS'S RESPONSES TO PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS, SET ONE** on the parties in this cause as follows:

☑      *(VIA EMAIL)* I caused the transmission of the above-named document(s) to the email address set forth below, or on the attached service list.

☑      (*VIA U.S. MAIL*) by placing the above named document in a sealed envelope addressed as set forth below, or on the attached service list and by then placing such sealed envelope for collection and mailing with the United States Postal Service in accordance with Loeb & Loeb LLP's ordinary business practices

**Jeremy J. Osher, Esq.**
**Brittanee A. Marksbury**
**Boren, Osher and Luftman LLP**
**222 North Pacific Coast Highway Suite 2222**
**El Segundo, CA 90245**
**josher@bollaw.com**
**bmarksbury@bollaw.com**

I am readily familiar with Loeb & Loeb LLP's practice for collecting and processing correspondence for mailing with the United States Postal Service and Overnight Delivery Service.  That practice includes the deposit of all correspondence with the United States Postal Service and/or Overnight Delivery Service the same day it is collected and processed.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 3, 2021, at Los Angeles, California.

*Valent Manssou*

Valent Manssourian

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

21066321.1
231804-10002

20

AARON SIMS'S RESPONSES TO PLAINTIFF'S
REQUESTS FOR PRODUCTION OF
DOCUMENTS, SET ONE

**EXHIBIT E**

1  DAVID GROSSMAN (SBN 211326)
   dgrossman@loeb.com
2  SAFIA GRAY HUSSAIN (SBN 251123)
   sghussain@loeb.com
3  LOEB & LOEB LLP
   10100 Santa Monica Blvd., Suite 2200
4  Los Angeles, CA  90067
   Telephone: 310.282.2000
5  Facsimile: 310.282.2200

6  Attorneys for Defendants
   AARON SIMS; MATT DUFFER; ROSS
7  DUFFER; NETFLIX, INC.; NETFLIX
   STREAMING SERVICES, INC.; and
8  21 LAPS, INC.

9

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12

13  IRISH ROVER ENTERTAINMENT,        Case No.: 2:20-cv-06293-CBM-PLA
    LLC, a California limited liability
14  company,                          Assigned to Hon. Consuelo B.
                                       Marshall
15              Plaintiff,

16              v.                     **DISCOVERY MATTER**

17  AARON SIMS, an individual; MATT   **STIPULATED PROTECTIVE**
    DUFFER, an individual; ROSS        **ORDER**
18  DUFFER, an individual; NETFLIX,
    INC., a Delaware corporation;
19  NETFLIX STREAMING SERVICES,
    INC., a Delaware corporation; 21   First Amended Complaint Filed:
20  LAPS, INC., a California corporation;  October 12, 2020
    and DOES 1 through 50, inclusive,
21
                Defendants.
22

23

24

25

26

27

28

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

21126243.4
231804-10002

STIPULATED PROTECTIVE ORDER

# I.    PURPOSES AND LIMITATIONS

Discovery in this action is likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted.  Accordingly, the parties hereby stipulate to and petition the Court to enter the following Stipulated Protective Order.  The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles.  The parties further acknowledge, as set forth in Section XIII(C), below, that this Stipulated Protective Order does not entitle them to file confidential information under seal; Civil Local Rule 79-5 sets forth the procedures that must be followed and the standards that will be applied when a party seeks permission from the Court to file material under seal.

# II.   GOOD CAUSE STATEMENT

This action is likely to involve trade secrets and competitively-sensitive financial and market information for which special protection from public disclosure and from use for any purpose other than prosecution of this action is warranted. Such confidential and proprietary materials and information consist of, among other things, confidential business or financial information, information regarding confidential business practices, or other confidential research, development, or commercial information (including information implicating privacy rights of third parties), information otherwise generally unavailable to the public, or which may be privileged or otherwise protected from disclosure under state or federal statutes, court rules, case decisions, or common law, and confidential information that is particularly sensitive and has the potential to cause substantial harm if disclosed to an unauthorized party such as a competitor, including, without limitation, confidential information concerning business, product and/or strategic plans and

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

21126243.4
231804-10002

1

STIPULATED PROTECTIVE ORDER

financial information, trade secrets, intellectual property, unpublished screenplays, unpublished ideas and unpublished creative materials, and information subject to written non-disclosure or confidentiality agreements or a court or administrative order. Accordingly, to expedite the flow of information, to facilitate the prompt resolution of disputes over confidentiality of discovery materials, to adequately protect information the parties are entitled to keep confidential, to ensure that the parties are permitted reasonable necessary uses of such material in preparation for and in the conduct of trial, to address their handling at the end of the litigation, and serve the ends of justice, a protective order for such information is justified in this matter. It is the intent of the parties that information will not be designated as confidential for tactical reasons and that nothing be so designated without a good faith belief that it has been maintained in a confidential, non-public manner, and there is good cause why it should not be part of the public record of this case.

## III. DEFINITIONS

A. <u>Action</u>: This pending federal lawsuit entitled *Irish Rover Ent., LLC v. Aaron Sims et. al*., United States District Court for the Central District of California Case No. 2:20-cv-06293-CBM-PLA.

B. <u>Challenging Party</u>: A Party or Non-Party that challenges the designation of information or items under this Order.

C. <u>"CONFIDENTIAL" Information or Items</u>: Information (regardless of how it is generated, stored, or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c), and as specified above in the Good Cause Statement.

D. <u>Counsel</u>: Outside Counsel of Record and House Counsel (as well as their support staff).

E. <u>Designating Party</u>: A Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL."

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

21126243.4
231804-10002

STIPULATED PROTECTIVE ORDER

F.  Disclosure or Discovery Material:  All items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

G.  Expert:  A person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this Action.

H.  House Counsel:  Attorneys who are employees of a party to this Action. House Counsel does not include Outside Counsel of Record or any other outside counsel.

I.  Non-Party:  Any natural person, partnership, corporation, association, or other legal entity not named as a Party to this action.

J.  Outside Counsel of Record:  Attorneys who are not employees of a party to this Action but are retained to represent or advise a party to this Action and have appeared in this Action on behalf of that party or are affiliated with a law firm which has appeared on behalf of that party, and includes support staff.

K.  Party:  Any party to this Action, including all of its officers, directors, employees, consultants, retained experts and Outside Counsel of Record (and their support staffs).

L.  Producing Party:  A Party or Non-Party that produces Disclosure or Discovery Material in this Action.

M.  Professional Vendors:  Persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

///

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

21126243.4
231804-10002

3

STIPULATED PROTECTIVE ORDER

N.  Protected Material:  Any Disclosure or Discovery Material that is designated as "CONFIDENTIAL."

O.  Receiving Party:  A Party that receives Disclosure or Discovery Material from a Producing Party.

## IV.   SCOPE

A.  The protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material.

B.  Any use of Protected Material at trial shall be governed by the orders of the trial judge.  This Order does not govern the use of Protected Material at trial.

## V.   DURATION

Even after final disposition of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs.  Final disposition shall be deemed to be the later of (1) dismissal of all claims and defenses in this Action, with or without prejudice; and (2) final judgment herein after the completion and exhaustion of all appeals, rehearings, remands, trials, or reviews of this Action, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

## VI.   DESIGNATING PROTECTED MATERIAL

A.  Exercise of Restraint and Care in Designating Material for Protection

1.  Each Party or Non-Party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards.  The

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

21126243.4
231804-10002

4

STIPULATED PROTECTIVE ORDER

Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order.

2.     Mass, indiscriminate, or routinized designations are prohibited. Designations that are shown to be clearly unjustified or that have been made for an improper purpose (e.g., to unnecessarily encumber the case development process or to impose unnecessary expenses and burdens on other parties) may expose the Designating Party to sanctions.

3.     If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection, that Designating Party must promptly notify all other Parties that it is withdrawing the inapplicable designation.

B.     Manner and Timing of Designations

1.     Except as otherwise provided in this Order (*see*, e.g., Section B(2)(b) below), or as otherwise stipulated or ordered, Disclosure or Discovery Material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced.

2.     Designation in conformity with this Order requires the following:

      a.     For information in documentary form (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix at a minimum, the legend "CONFIDENTIAL" (hereinafter "CONFIDENTIAL legend"), to each page that contains protected material.  If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

21126243.4
231804-10002

STIPULATED PROTECTIVE ORDER

clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

b.   A Party or Non-Party that makes original documents available for inspection need not designate them for protection until after the inspecting Party has indicated which documents it would like copied and produced. During the inspection and before the designation, all of the material made available for inspection shall be deemed "CONFIDENTIAL." After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Order. Then, before producing the specified documents, the Producing Party must affix the "CONFIDENTIAL legend" to each page that contains Protected Material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

c.   For testimony given in depositions, that the Designating Party identify the Disclosure or Discovery Material on the record, before the close of the deposition all protected testimony.

d.   For information produced in some form other than documentary and for any other tangible items, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information is stored the legend "CONFIDENTIAL." If only a portion

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

21126243.4
231804-10002

6

STIPULATED PROTECTIVE ORDER

or portions of the information warrants protection, the Producing Party, to the extent practicable, shall identify the protected portion(s).

C.   Inadvertent Failure to Designate

    1.   If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material.  Upon timely correction of a designation, the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

## VII.   CHALLENGING CONFIDENTIALITY DESIGNATIONS

A.   Timing of Challenges

    1.   Any party or Non-Party may challenge a designation of confidentiality at any time that is consistent with the Court's Scheduling Order.

B.   Meet and Confer

    1.   The Challenging Party shall initiate the dispute resolution process under Local Rule 37-1 *et seq.*

C.   The burden of persuasion in any such challenge proceeding shall be on the Designating Party.  Frivolous challenges, and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties) may expose the Challenging Party to sanctions.  Unless the Designating Party has waived or withdrawn the confidentiality designation, all parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the Court rules on the challenge.

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

21126243.4
231804-10002

7

STIPULATED PROTECTIVE ORDER

# VIII. ACCESS TO AND USE OF PROTECTED MATERIAL

A.   Basic Principles

    1.   A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this Action only for prosecuting, defending, or attempting to settle this Action.  Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order.  When the Action has been terminated, a Receiving Party must comply with the provisions of Section XIV below.

    2.   Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

B.   Disclosure of "CONFIDENTIAL" Information or Items

    1.   Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

        a.   The Receiving Party's Outside Counsel of Record in this Action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this Action;

        b.   The officers, directors, and employees (including House Counsel) of the Receiving Party to whom disclosure is reasonably necessary for this Action;

        c.   Experts (as defined in this Order) of the Receiving Party to whom disclosure is reasonably necessary for this Action and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

21126243.4
231804-10002

8

STIPULATED PROTECTIVE ORDER

d. The Court and its personnel;

e. Court reporters and their staff;

f. Professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure is reasonably necessary for this Action and who have signed the "Acknowledgment and Agreement to be Bound" attached as Exhibit A hereto;

g. The author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information;

h. During their depositions, witnesses, and attorneys for witnesses, in the Action to whom disclosure is reasonably necessary provided: (i) the deposing party requests that the witness sign the "Acknowledgment and Agreement to Be Bound;" and (ii) they will not be permitted to keep any confidential information unless they sign the "Acknowledgment and Agreement to Be Bound," unless otherwise agreed by the Designating Party or ordered by the Court. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material may be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Stipulated Protective Order; and

i. Any mediators or settlement officers, and their supporting personnel, mutually agreed upon by any of the parties engaged in settlement discussions.

///
///

j.  Any other individual as to whom the Parties agree in writing that disclosure is appropriate.

## IX.  PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION

A.  If a Party is served with a subpoena or a court order issued in other litigation that compels disclosure of any information or items designated in this Action as "CONFIDENTIAL," that Party must:

1.  Promptly notify in writing the Designating Party. Such notification shall include a copy of the subpoena or court order;

2.  Promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order. Such notification shall include a copy of this Stipulated Protective Order; and

3.  Cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.

B.  If the Designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that court of its confidential material and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this Action to disobey a lawful directive from another court.

///

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

21126243.4
231804-10002

10

STIPULATED PROTECTIVE ORDER

## X.    A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION

A.    The terms of this Order are applicable to information produced by a Non-Party in this Action and designated as "CONFIDENTIAL."  Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order.  Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

B.    In the event that a Party is required, by a valid discovery request, to produce a Non-Party's confidential information in its possession, and the Party is subject to an agreement with the Non-Party not to produce the Non-Party's confidential information, then the Party shall:

1.    Promptly notify in writing the Requesting Party and the Non-Party that some or all of the information requested is subject to a confidentiality agreement with a Non-Party;

2.    Promptly provide the Non-Party with a copy of the Stipulated Protective Order in this Action, the relevant discovery request(s), and a reasonably specific description of the information requested; and

3.    Make the information requested available for inspection by the Non-Party, if requested.

C.    If the Non-Party fails to seek a protective order from this Court within 14 days of receiving the notice and accompanying information, the Receiving Party may produce the Non-Party's confidential information responsive to the discovery request.  If the Non-Party timely seeks a protective order, the Receiving Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the Court.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

21126243.4
231804-10002

11

STIPULATED PROTECTIVE ORDER

Absent a court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this Court of its Protected Material.

## XI.   UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

A.   If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Stipulated Protective Order, the Receiving Party must immediately (1) notify in writing the Designating Party of the unauthorized disclosures, (2) use its best efforts to retrieve all unauthorized copies of the Protected Material, (3) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (4) request such person or persons to execute the "Acknowledgment and Agreement to be Bound" that is attached hereto as Exhibit A.

## XII.   INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL

A.   When a Producing Party gives notice to the Receiving Party that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the Receiving Party are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B).  This provision is not intended to modify whatever procedure may be established in an e-discovery order that provides for production without prior privilege review.  Pursuant to Federal Rule of Evidence 502(d) and (e), insofar as the parties reach an agreement on the effect of disclosure of a communication or information covered by the attorney-client privilege or work product protection, the parties may incorporate their agreement in the Stipulated Protective Order submitted to the Court.

///

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

21126243.4
231804-10002

12

STIPULATED PROTECTIVE ORDER

## XIII. MISCELLANEOUS

A. Right to Further Relief

    1. Nothing in this Order abridges the right of any person to seek its modification by the Court in the future.

B. Right to Assert Other Objections

    1. By stipulating to the entry of this Protective Order, no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Stipulated Protective Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

C. Filing Protected Material

    1. A Party that seeks to file under seal any Protected Material must comply with Civil Local Rule 79-5. Protected Material may only be filed under seal pursuant to a court order authorizing the sealing of the specific Protected Material at issue. If a Party's request to file Protected Material under seal is denied by the Court, then the Receiving Party may file the information in the public record unless otherwise instructed by the Court.

## XIV. FINAL DISPOSITION

A. After the final disposition of this Action, as defined in Section V, within sixty (60) days of a written request by the Designating Party, each Receiving Party must return all Protected Material to the Producing Party or destroy such material. As used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries and any other format reproducing or capturing any of the Protected Material. Whether the Protected Material is returned or destroyed, the Receiving Party must submit a written certification to the

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

21126243.4
231804-10002

13

STIPULATED PROTECTIVE ORDER

Producing Party (and, if not the same person or entity, to the Designating Party) by the 60-day deadline that (1) identifies (by category, where appropriate) all the Protected Material that was returned or destroyed and (2) affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries, or any other format reproducing or capturing any of the Protected Material. Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work product, even if such materials contain Protected Material. Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order as set forth in Section V.

B.     Any violation of this Order may be punished by any and all appropriate measures including, without limitation, contempt proceedings and/or monetary sanctions.

**IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.**

Dated: September 15, 2021          BOREN, OSHER & LUFTMAN LLP
                                   JEREMY J. OSHER

                                   By:    */s/ Jeremy J. Osher*
                                        Jeremy J. Osher
                                        Attorneys for Plaintiff

Dated:  September 15, 2021         LOEB & LOEB LLP
                                   DAVID GROSSMAN

                                   By:    */s/ David Grossman*
                                        David Grossman
                                        Attorneys for Defendants

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

21126243.4
231804-10002

14

STIPULATED PROTECTIVE ORDER

# EXHIBIT A

## ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

I, _____ [print or type full name], of _____ _____ [print or type full address], declare under penalty of perjury that I have read in its entirety and understand the Stipulated Protective Order that was issue by the United States District Court for the Central District of California on [DATE] in the case of *Irish Rover Ent., LLC v. Aaron Sims et. al*., Case No. 2:20-cv-06293-CBM-PLA. I agree to comply with and to be bound by all the terms of this Stipulated Protective Order and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt. I solemnly promise that I will not disclose in any manner any information or item that is subject to this Stipulated Protective Order to any person or entity except in strict compliance with the provisions of this Order.

I further agree to submit to the jurisdiction of the United States District Court for the Central District of California for the purpose of enforcing the terms of this Stipulated Protective Order, even if such enforcement proceedings occur after termination of this action. I hereby appoint _____ [print or type full name] of _____ [print or type full address and telephone number] as my California agent for service of process in connection with this action or any proceedings related to enforcement of this Stipulated Protective Order.

Date: _____

City and State where sworn and signed: _____

Printed Name: _____

Signature: _____

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

21126243.4
231804-10002

15

STIPULATED PROTECTIVE ORDER

# EXHIBIT F



October 8, 2021

<u>**VIA ELECTRONIC TRANSMISSION**</u>

David Grossman
Safia Gray Hussain
Loeb & Loeb LLP
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA 90067

E-mail: dgrossman@loeb.com
E-mail: sghussain@loeb.com

   Re: *<u>Irish Rover Ent., LLC v. Aaron Sims et al.</u>*
     *Case No: 2:20-cv-06293-CBM-PLA*

Dear Counsel,

  This letter serves as an attempt to meet and confer with you regarding Defendant Netflix, Inc.'s Responses to Plaintiff's: (1) Interrogatories, Set One ("Interrogatories"); and (2) Requests for Production of Documents, Set One ("Requests"). Defendant's responses are deficient in numerous respects, as outlined in detail below.

## I. INTERROGATORIES

### a. Relevance Objection
*Interrogatory Nos. 6, 11, 12, 15*

  Under the Federal Rules of Civil Procedure, Plaintiff "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

  Defendant has objected to all of the foregoing interrogatories on the grounds that they are "not relevant to the claims and defenses asserted in this litigation, nor reasonably calculated to lead to the discovery of admissible evidence." First, Defendant cites the incorrect standard of relevance as the Federal Rules of Civil Procedure do not require discovery to be reasonably calculated to lead to the discovery of admissible evidence. See Fed. R. Civ. P. 26(b)(1); Comm. Notes to 2015 Amendment to Fed. R. Civ. P. 26(a). Second, given that the scope of discovery is broad and the



David Grossman, Esq.
October 8, 2021
Page 2 of 9

justification for withholding information must be specific, all of Defendants relevance objections are improper for the reasons identified below. See Fed. R. Civ. P. 33(b)(4).

### i.  Compensation Related to *Stranger Things*

Interrogatory No. 6 asks Defendant to identify compensation it provided to any of the other defendants and/or Monkey Massacre Productions that is related to *Stranger Things*.  Plaintiff is entitled to recover the actual damages suffered as a result of the alleged infringement and any profits of the defendants that are attributable to the infringement.  17 U.S.C. § 504(b).  Notably, the requested documents are relevant as they would provide evidence of profits the defendants made off of the infringing series.

### ii.  Information Regarding Netflix Subscriptions and Streaming Traffic

Interrogatory Nos. 11, 12 and 15 ask Defendant to state: (1) the number of monthly Netflix subscribers in the United States from 2015 through 2020; (2) the amount of revenue Defendant made from Netflix subscriptions in the United States from 2015 through 2019; and (3) the Netflix streaming traffic numbers in the United States from 2015 through 2019.  Defendant's answers to these interrogatories would provide information regarding the trends in Netflix subscriptions and streaming traffic in months leading up to and following the release of every season of *Stranger Things*.  Increases in subscriptions and streaming traffic after Defendant announced and/or released another season of *Stranger Things* would of course indicate profits which could be attributed to the series.  Ultimately, the requested documents provide evidence of profits that are attributable to *Stranger Things* and thus are directly relevant to Plaintiff's damages.

### b.  Trade Secret, Confidential, Personal, Proprietary, Sensitive or Non-Public Information Objection
*Request Nos. 6, 11, 12, 15*

Defendant's objection is without merit as "[t]here is no absolute privilege for trade secrets and similar confidential information."  *Paulsen v. Case Corp.*, 168 F.R.D. 285, 289 (C.D. Cal. 1996) (citing *Federal Open Market Committee v. Merrill*, 443 U.S. 340, 362 (1979)).  Defendant additionally has not shown that the requested information is confidential and/or proprietary, it has merely made the claim as a conclusory assertion.  However, to the extent Defendant truly believes that the information requested is confidential or private, those concerns are easily addressed by way of the parties' stipulated protective order, which was entered by the Court on September 15, 2021.

### c.  Vague, Ambiguous, Overbroad and Unduly Burdensome Objection
*Interrogatory Nos. 6, 11, 12, 15*

Defendant improperly objects on the basis that the above referenced Interrogatories are vague, ambiguous, overbroad and/or unduly burdensome.  "The party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Superior Communications v. Earhugger, Inc.*, 257 F.R.D. 215, 217

David Grossman, Esq.
October 8, 2021
Page 3 of 9

(C.D. Cal. 2009) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)); Fed. R. Civ. P. 33(b)(4) ("The grounds for objecting to an interrogatory must be stated with specificity."). Defendant does not provide any reasons which clarify, explain, or support why the Interrogatories are overbroad and unduly burdensome other than to conclusively claim them as such.  Instead, Defendant merely repeats the requests within the objections - this does not suffice.  In order to avoid discovery on the grounds that a request is unduly burdensome and/or overbroad the Defendant must overcome the burden of clarifying, explaining, and supporting said objections. *Superior Communications, supra,* 257 F.R.D. at p. 217.

### d.   Information is Publicly Available Objections
*Interrogatory No. 12*

Defendant's objects to Interrogatory No. 12 on the basis that the information requested is publicly available.  This objection is improper, however, as Defendant is obligated to provide any information responsive to Plaintiff's interrogatories that is readily available to it.  See *Fresenium Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, 222 F.R.D. 644, 651 (N.D. Cal. 2004) ("When responding to interrogatories, a party has a duty to respond with all the information under its custody and control.").  The information requested in Interrogatory No. 12 is undoubtedly readily available to Defendant.  Moreover, Defendant is in a far better position than Plaintiff to obtain the most accurate information regarding the amount of revenue it made from Netflix subscriptions from 2015 through 2019.

### e.   Interrogatory No. 1

Defendant failed to respond fully to Interrogatory No. 1.  See Fed. R. Civ. P.33(b)(3) ("Each interrogatory must…be answered separately and fully in writing under oath").  Interrogatory No. 1 asks Defendant to "IDENTIFY" all persons involved in the creation, development, registration, use, marketing and/or advertising of Stranger Things. Plaintiff defined the term "IDENTIFY" as follows:

"With respect to an individual, state the person's name, title at the time in question, employer and business address at the time in question, employer and business address at the time in question and dates of employment (if an employee of YOURS), and current or last known employer, business address, and home address"

Defendant provided an inadequate response when it responded to the interrogatory by simply stating "numerous artists, directors, writers and professionals were involved in the overall production" of the Stranger Things series.  Notably, this generic response does not provide any of the information which was requested (i.e., name, title, employer, etc.).  Therefore, please provide a supplemental response to this interrogatory immediately.

### f.   Interrogatory No. 5

Interrogatory No. 5 asks Defendant to identify all compensation that it received related to *Stranger Things*.  Defendant provided what appears to be a qualified response, stating: "[i]nsofar

David Grossman, Esq.
October 8, 2021
Page 4 of 9

as this Interrogatory seeks the identification of any compensation Netflix received directly from *Stranger Things*, Netflix states that it does not receive any compensation directly from Stranger Things." Please advise what constitutes compensation stemming "**directly**" from *Stranger Things*.

### g.   Interrogatory No. 8

Interrogatory No. 8 asks Defendant to identify all people who have performed or assisted with any analysis of the similarity, or lack of similarity, between the Totem works and *Stranger Things*. Defendant has objected to this interrogatory on the basis that it seeks premature expert discovery. To be clear, Plaintiff is not asking Defendant to disclose information regarding the actual analysis conducted – only the identity of individuals who have conducted non-expert analyses. Moreover, pursuant to Rule 26(a)(1)(A), Defendant is required to disclose the name, address and telephone number of each individual likely to have discoverable information such as the information sought under Interrogatory No. 8.

### h.   Interrogatory No. 9

Interrogatory No. 9 asks Defendant to describe all actions it took to investigate Jeffrey Kennedy's claims that *Stranger Things* infringes on the Totem works. Defendant has objected to this interrogatory on the grounds that "attorney-client privilege, common interest privilege, work-product protection, or other applicable legal protections or privileges" apply. To be clear, Plaintiff is not asking Defendant to disclose any confidential communications between itself and its attorney regarding the investigation into Jeffrey Kennedy's claims of infringement. Nor is Plaintiff asking Defendant to disclose actions taken by its attorney to investigate Jeffrey Kennedy's claims in anticipation of litigation. Based on these clarifications, please provide a supplemental response to this interrogatory immediately.

### i.   Interrogatory Nos. 13, 14, 16

Defendant responded to Interrogatory Nos. 13, 14 and 16 by stating it was "willing to meet and confer to discuss the production of information and/or documentation relating to the costs associated with Stranger Things." In the spirit of cooperative discovery, Plaintiff is similarly willing to discuss, and hopefully resolve, these issues when counsel partakes in the in-person conference required under Central District Local Rule 37-1.

### j.   Interrogatory No. 2

In the interest of cooperation, Plaintiff shall agree to narrow and rephrase Interrogatory No. 2 as follows:   IDENTIFY all PERSONS with knowledge or information RELATED TO the exploitation of STRANGER THINGS.

With respect to the Interrogatories, and to the extent Defendant will not agree to voluntarily remedy these deficiencies, we intend to file a motion to compel under Rule 37(a)(3)(B)(3) and (4) of the Federal Rules of Civil Procedure.

David Grossman, Esq.
October 8, 2021
Page 5 of 9

## II.  REQUESTS FOR PRODUCTION OF DOCUMENTS

### a.  Improperly Narrowed Responses
*Request Nos. 1, 2, 6, 9, 10, 15, 16, 19, 23, 25, 28-30, 32*

Defendant's objections and/or qualifiers unilaterally and improperly limit the scope of the above referenced Requests.

### i.  <u>Arbitrary Temporal Limitation of Requested Documents</u>

Defendant inexplicably and arbitrarily limited its responses to Request Nos. 1, 2, 6, 9, 19, 23 and 25 to October 2015:

- **Request No. 1:** Asks Defendant to produce "DOCUMENTS that RELATE TO YOUR involvement in the creation and development of STRANGER THINGS."
- **Request No. 2:** Asks Defendant to produce "DOCUMENTS that RELATE TO the creation and development of STRANGER THINGS."
- **Request No. 6:** Asks Defendant to produce "COMMUNICATIONS between YOU and Aaron Sims that RELATE TO STRANGER THINGS."
- **Request No. 9:** Asks Defendant to produce "COMMUNICATIONS between YOU and Ross Duffer and/or Matt Duffer that RELATE TO STRANGER THINGS."
- **Request No. 19:** Asks Defendant to produce "COMMUNICATION between YOU and 21 LAPS, INC. that RELATE TO STRANGER THINGS."
- **Request No. 23:** Asks Defendant to produce "COMMUNICATIONS between YOU and NETFLIX STREAMING that RELATE TO STRANGER THINGS."
- **Request No. 25:** Asks Defendant to produce "COMMUNICATIONS between and among any of YOUR employees, agents, or contractors that RELATE TO STRANGER THINGS.

Defendant additionally limited its responses to Request Nos. 29 and 32 to documents relating to season 1 of *Stranger Things* despite no such temporal limitation existing within the Requests:

- **Request No. 29:** Asks Defendant to produce "DOCUMENTS that RELATE TO the production budgets for each season of STRANGER THINGS."
- **Request No. 32:** Asks Defendant to produce "DOCUMENTS that RELATE TO the costs YOU have incurred that are associated with the streaming of STRANGER THINGS."

As you are well aware, Plaintiff's Complaint for Damages alleges that various elements from the copyrighted Totem screenplays and concept art were utilized within the *Stranger Things* series. These protected elements appeared throughout all three seasons of the series, the last of which aired in 2019. Limiting responsive documents through October 2015 and season 1 is therefore entirely inappropriate as there are likely relevant and responsive documents which were

David Grossman, Esq.
October 8, 2021
Page 6 of 9

created after October 2015 and season 1 which would help prove or disprove Plaintiff's causes of action and the corresponding damages.

### ii.   Production of Pilot Drafts and Versions

Request No. 10 asks Defendant to produce "DOCUMENTS that RELATE TO the script for the pilot episode for STRANGER THINGS." Defendant improperly narrowed its response to drafts and versions of the script for the pilot episode of *Stranger Things*. To the extent that there are additional responsive documents, such as notes or comments provided on the various drafts/versions of the pilot script, Defendant must produce these materials.

### iii.   Production of Original Pitch Materials

Defendant improperly narrowed its responses to Request Nos. 15 and 28 to the original pitch materials that were submitted to Netflix in connection with *Stranger Things*.

Request No. 15 asks Defendant to produce "DOCUMENTS that RELATE TO STRANGER THINGS that Matt Duffer and/or Ross Duffer, or anyone affiliated with either of them (e.g., agents), gave YOU prior to YOUR decision to purchase STRANGER THINGS." Based on Defendant's response, it is unclear whether Defendant was provided with more than just the original pitch materials prior to purchasing the series. To the extent that Defendant was provided with additional documents, please produce them immediately.

Request No. 28 asks Defendant to produce "DOCUMENTS that RELATE TO any attempt to license, option, or otherwise exploit STRANGER THINGS." As stated above, Plaintiff is entitled to recover the actual damages suffered as a result of the alleged infringement and any profits of the defendants that are attributable to the infringement. 17 U.S.C. § 504(b). The requested documents are clearly reasonably calculated to lead to the discovery of admissible evidence regarding Plaintiff's damages. Thus, to the extent that Defendant has responsive documents outside of the original pitch materials, please produce them immediately.

### iv.   Production of "Relevant" Kessler Lawsuit Documents

Request No. 16 asks Defendant to produce "copies of any DOCUMENTS that YOU produced in connection with the KESSLER LAWSUIT." Defendant provided a qualified response in which it stated it would produce any "relevant" documents which had been produced in the Kessler Lawsuit. Based on the relevance objections which Defendant has made thus far, it is clear the parties have a difference of opinion as to what is relevant; Plaintiff therefore takes issue with this response. Plaintiff's position is that all documents produced by Defendant in the Kessler Lawsuit must be produced in this action.

David Grossman, Esq.
October 8, 2021
Page 7 of 9

### b. Relevance Objection
*Request Nos. 11, 12, 27, 33, 34*

Under the Federal Rules of Civil Procedure, Plaintiff "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

Defendant has objected to all of the foregoing requests on the grounds that they are "not relevant to the claims and defenses asserted in this litigation, nor reasonably calculated to lead to the discovery of admissible evidence." Once again, Defendant cites the incorrect standard of relevance for federal court. See Fed. R. Civ. P. 26(b)(1); Comm. Notes to 2015 Amendment to Fed. R. Civ. P. 26(a). Moreover, given that the scope of discovery is broad, and the justification for withholding documents must be specific, simply objecting to these discovery requests on the basis that they are not relevant nor reasonably calculated to lead to the discovery of admissible evidence is insufficient. See Fed. R. Civ. P. 34(b)(2)(B). All of these objections are improper for the following reasons:

### i. <u>Documents Relating to Defendant's Purchase of *Stranger Things* & Contracts/Agreements Regarding *Stranger Things*</u>

Request Nos. 11 and 27 ask for documents which relate to: (1) Defendant's purchase of *Stranger Things,* including any agreements Defendant signed with Monkey Massacre Productions, Matt Duffer and/or Ross Duffer; and (2) contracts or agreements that Defendant entered into regarding *Stranger Things*, respectively. Defendant objected to Request No. 11 on the basis that "the acquisition of *Stranger Things* has no bearing on Plaintiff's claims for copyright infringement" and simply provided a boilerplate relevance objection to Request No. 27. Both of these objections lack merit, as the documents requested could provide insight into matters such as: (1) the ownership of the *Stranger Things* copyrights; (2) Defendant's potential to profit from the series; and (3) the level of supervision and/or control Defendant had over the series. This information is of course directly relevant to Plaintiff's claims of direct and vicarious copyright infringement. The requested documents are additionally reasonably calculated to lead to the discovery of admissible evidence regarding Plaintiff's damages.

### ii. <u>Documents Relating to Aaron Sims's Involvement in *Stranger Things*</u>

Request No. 12 asks for documents that relate to why Aaron Sims was not involved in Seasons 3 and 4 of *Stranger Things*. Defendant objected to this request on the basis that "Aaron Sims' work on subsequent seasons of *Stranger Things* has no relation to Plaintiff's claims that the creators of *Stranger Things* infringed his works." We are prepared to narrow the scope of this Request to documents relating to Season 3, only. We believe such documents are relevant, particularly if the reason for Sims' termination had anything to do with our client's copyrighted work.

David Grossman, Esq.
October 8, 2021
Page 8 of 9

### iii.   Documents Relating to Netflix Streaming Traffic

Request No. 33 asks Defendant for documents sufficient to show Netflix streaming traffic numbers in the United States from 2015 through 2019.  Request No. 34 asks for documents which relate to internal and/or third-party quantifications of the Netflix streaming traffic that is attributable to *Stranger Things*.  These documents provide information regarding the trends in streaming traffic in months leading up to and following the release of every season of *Stranger Things*.  Increases in streaming traffic after the release of a season of *Stranger Things* would indicate profits which could be attributed to the series.  Ultimately, the requested documents provide evidence of profits that are attributable to *Stranger Things* and thus are directly relevant to Plaintiff's damages.

### c.   Trade Secret, Confidential, Personal, Proprietary, Sensitive or Non-Public Information Objection
*Request Nos. 11, 12, 27, 33, 34*

Once again, Defendant's objection is without merit as "[t]here is no absolute privilege for trade secrets and similar confidential information." *Paulsen*, *supra,* 168 F.R.D. at p. 289 (citing *Federal Open Market Committee, supra,* 443 U.S. at p. 362).  Defendant additionally has not shown that the requested documents are confidential and/or proprietary, it has merely made the claim as a conclusory assertion.  However, to the extent Defendant truly believes that the documents requested are confidential or private, those concerns are easily addressed by way of the parties' stipulated protective order which was entered by the Court on September 15, 2021.

### d.   Vague, Ambiguous, Overbroad and Unduly Burdensome Objection
*Request Nos. 11, 12, 27, 33, 34*

Defendant objects on the basis that all of the above referenced Requests are overbroad and unduly burdensome without providing an adequate explanation to support its claim.  "The party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Superior Communications, supra*, 257 F.R.D. at p. 217 (citing *Blankenship, supra*, 519 F.2d at p. 429).  Defendant does not provide any reasons which clarify, explain, or support why Request Nos. 11, 12, or 27 are overbroad and unduly burdensome other than to conclusively claim them as such.  Instead, Defendant merely repeats the Requests within the objections – again, this does not suffice.  In order to avoid discovery on the grounds that a request is unduly burdensome and/or overbroad the Defendant must overcome the burden of clarifying, explaining, and supporting said objections. *Id.* at p. 217.

Surprisingly, Defendant additionally objects to Request Nos. 33 and 34 on the basis that they are vague and ambiguous.  Request Nos. 33 and 34 plainly ask Defendant to produce documents: (1) sufficient to show the Netflix streaming traffic numbers in the United States, by month, from 2015 through 2019; and (2) that relate to internal and/or third-party quantifications of the Netflix streaming traffic that is attributable to *Stranger Things*.  As it is entirely unclear which portion of these requests Defendant finds to be vague or ambiguous, Plaintiff invites Defendant to identify the language that it is struggling to comprehend.

David Grossman, Esq.
October 8, 2021
Page 9 of 9

      With respect to the Requests, and to the extent you will not agree to voluntarily remedy these deficiencies, we intend to file a motion to compel production in accordance with Rule 37(a)(3)(B)(iv) and (4) of the Federal Rules of Civil Procedure.

         *     *     *     *     *

      Pursuant to Central District Local Rule 37-1, Defendant has a duty to make a good faith effort to confer with Plaintiff to potentially eliminate the necessity for bringing a motion to compel and to eliminate as many of the disputes as possible.  Please provide us with dates in the next ten (10) days for a Zoom or telephonic meet and confer.

      Thank you in advance for your professional cooperation.

              Sincerely,
              BOREN, OSHER & LUFTMAN, LLP

              Jeremy J. Osher

**EXHIBIT G**



October 12, 2021

**<u>VIA ELECTRONIC TRANSMISSION</u>**

David Grossman
Safia Gray Hussain
Loeb & Loeb LLP
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA 90067

E-mail: dgrossman@loeb.com
E-mail: sghussain@loeb.com

> Re:    ***Irish Rover Ent., LLC v. Aaron Sims et al.***
>         *Case No: 2:20-cv-06293-CBM-PLA*

Dear Counsel,

This letter serves as an attempt to meet and confer with you regarding Defendant Aaron Sims's Responses to Plaintiff's: Responses to Plaintiff's: (1) Requests for Admission, Set One; (2) Interrogatories, Set One ("Interrogatories"); and (3) Requests for Production of Documents, Set One ("Requests").  Defendant's responses are deficient in numerous respects, as outlined in detail below.

## I.    REQUESTS FOR ADMISSION
*Request No. 6*

Request for Admission No. 6 asks Defendant to admit that during the period of 2009 to 2015, he discussed revision to the Totem screenplays with Jeffrey Kennedy.  Defendant provided an improper and qualified response by prefacing his admission with the following language: "Insofar as this Request seeks an admission that at some point between 2009 and 2015, Sims discussed certain concept art for a potential film based on the Totem screenplays."   Plaintiff's request clearly and directly inquires as to whether Defendant has discussed revisions to the Totem screenplays with Jeffrey Kennedy.  Please provide a proper supplemental response to this request as it is phrased.



David Grossman, Esq.
October 12, 2021
Page 2 of 8

## II.     INTERROGATORIES

### a.  Relevance Objection
*Interrogatory Nos. 9, 10*

Under the Federal Rules of Civil Procedure, Plaintiff "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

Defendant has objected to all of the foregoing interrogatories on the grounds that they are "not relevant to the claims and defenses asserted in this litigation, nor reasonably calculated to lead to the discovery of admissible evidence." First, Defendant cites the incorrect standard of relevance as the Federal Rules of Civil Procedure do not require discovery to be reasonably calculated to lead to the discovery of admissible evidence. See Fed. R. Civ. P. 26(b)(1); Comm. Notes to 2015 Amendment to Fed. R. Civ. P. 26(a). Second, given that the scope of discovery is broad and the justification for withholding information must be specific, all of Defendants relevance objections are improper for the reasons identified below. See Fed. R. Civ. P. 33(b)(4).

Interrogatory Nos. 9 and 10 ask Defendant to identify compensation which he and/or ASC: (1) received or will be entitled to receive in the future, relating to *Stranger Things*; and (2) received for screenplay concept art provided to third parties from January 1, 2008 to the present, respectively. Plaintiff is entitled to recover the actual damages suffered as a result of the alleged infringement and any profits of the defendants that are attributable to the infringement. 17 U.S.C. § 504(b). Notably, the requested documents are relevant as they would provide evidence of profits Defendant made off of the infringing series and establish how much he benefitted from the infringing series in comparison to other work he provided.

### b.  Trade Secret, Confidential, Personal, Proprietary, Sensitive or Non-Public Information Objection
*Interrogatory Nos. 9, 10*

Defendant's objection is without merit as "[t]here is no absolute privilege for trade secrets and similar confidential information." *Paulsen v. Case Corp.*, 168 F.R.D. 285, 289 (C.D. Cal. 1996) (citing *Federal Open Market Committee v. Merrill,* 443 U.S. 340, 362 (1979)). Defendant additionally has not shown that the requested information is confidential and/or proprietary, he has merely made the claim as a conclusory assertion. However, to the extent Defendant truly believes that the information requested is confidential or private, those concerns are easily addressed by way of the parties' stipulated protective order, which was entered by the Court on September 15, 2021.

### c.  Attorney-Client, Work Product and Common Interest Privilege
*Interrogatory Nos. 12, 13*

As Defendant is aware, the attorney-client privilege protects confidential communications between a lawyer and client from disclosure to third-parties. See Fed. R. Evid. 502. Importantly,

David Grossman, Esq.
October 12, 2021
Page 3 of 8

"[b]ecause it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Weil v. Inv./Indicators, Research and Mgmt., Inc.,* 647 F.2d 18, 24 (9th Cir. 1981). The attorney work-product doctrine similarly provides protection for tangible materials (or their intangible equivalent) which are prepared in anticipation of litigation or for trial.  Fed. R. Evid. 502.

Interrogatory No. 12 asks Defendant to describe all actions he took to investigate Jeffrey Kennedy's claims that *Stranger Things* infringes on the Totem works.  To be clear, Plaintiff is not asking Defendant to disclose any confidential communications between himself and his attorney regarding the investigation into Jeffrey Kennedy's claims of infringement.  Nor is Plaintiff asking Defendant to disclose actions taken by his attorney to investigate Jeffrey Kennedy's claims in anticipation of litigation.  Based on these clarifications, please provide supplemental responses to these interrogatories immediately.

Interrogatory No. 13 asks Defendant to identify any person whom he discussed Jeffrey Kennedy's claim that Stranger Thing infringes on the Totem works.  Notably, this interrogatory does not ask Defendant to disclose confidential communications between himself and his attorney or materials that were prepared in anticipation of litigation or for trial.  As such, the attorney-client privilege and attorney work-product doctrine do not apply.

### d.  Vague, Ambiguous, Overbroad and Unduly Burdensome Objection
*Interrogatory Nos. 9, 10, 12*

Defendant improperly objects on the basis that the above referenced Interrogatories are vague, ambiguous, overbroad and/or unduly burdensome.  "The party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Superior Communications v. Earhugger, Inc.*, 257 F.R.D. 215, 217 (C.D. Cal. 2009) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)); Fed. R. Civ. P. 33(b)(4) ("The grounds for objecting to an interrogatory must be stated with specificity."). Defendant does not provide any reasons which clarify, explain, or support why the Interrogatories are overbroad and unduly burdensome other than to conclusively claim them as such.  In order to avoid discovery on the grounds that a request is unduly burdensome and/or overbroad Defendant must overcome the burden of clarifying, explaining, and supporting said objections.  See *Superior Communications*, *supra*, 257 F.R.D. at p. 217.  Ultimately, Defendant must either clarify, explain and provide supporting evidence as to why Interrogatory Nos. 9 and 13 are overbroad and unduly burdensome or provide the requested information immediately.

### i.  <u>Compensation Received Relating to *Stranger Things*</u>

Interrogatory No. 9 asks Defendant to identify the compensation he and/or ASC received relating to *Stranger Things*. Although there is nothing vague or ambiguous about the term "relating to," Plaintiff will further clarify it in the spirit of cooperative discovery.  As used in the interrogatory, compensation received "relating to" Stranger Things means any compensation Defendant or ASC received which was in some way attributable to *Stranger Things*.

David Grossman, Esq.
October 12, 2021
Page 4 of 8

### i.  <u>Compensation Relating to Screenplay Concept Art</u>

Interrogatory No. 10 asks Defendant to identify all compensation which he and/or ASC received from screenplay concept art he provided to third parties.  As it is entirely unclear which portion of this interrogatory Defendant finds to be vague or ambiguous, Plaintiff invites Defendant to identify the language that it he struggling to comprehend.

### ii.  <u>Investigation of Jeffrey Kennedy's Claims</u>

Interrogatory No. 12 asks Defendant to describe action which he took to investigate Jeffrey Kennedy's claim that Stranger Things infringes on Totem.  In the spirit of cooperative discovery, Plaintiff will further define the term "investigate" as observing or inquiring into something in detail and/or making a detailed inquiry or systematic examination.

### e.  Interrogatory Propounded on Incorrect Party Objection
*Interrogatory Nos. 9, 10*

Defendant objects to Interrogatory Nos. 9 and 10 on the basis that they are improperly propounded on Defendant instead of ASC.  This objection is improper as responses to interrogatories are not limited to subjects within Defendant's personal knowledge. Defendant is obligated to provide any information responsive to Plaintiff's interrogatories that is readily available to him.  See *Fresenium Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, 222 F.R.D. 644, 651 (N.D. Cal. 2004) ("When responding to interrogatories, a party has a duty to respond with all the information under its custody and control.").  The information requested in Interrogatory Nos. 9 and 10 is almost certainly readily available to Defendant as ASC is his company.

### f.  Responses Referencing Defendant's Document Production
*Interrogatory Nos. 1, 3, 4, 5, 6, 7, 8, 14*

Defendant failed to adequately respond to Interrogatory Nos. 1, 3, 4, 5, 6, 7, 8 and 14 as he did not answer with the specificity required by Federal Rules of Civil Procedure, Rule 33, subdivision (d)(1). Pursuant to Rule 33, Defendant must "[specify] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could."  Defendant failed to do this when he simply referred Plaintiff to the documents to be produced in response to Request for Production Nos. 1, 2, 3, 5, 7, 9, 11, ad 17 without providing any specificity as to where within the fifty-three thousand seven hundred seventy-eight (53,778) page document production the responsive documents could be found.

### g.  Interrogatory No. 15

Interrogatory No. 15 asks Defendant to identify individuals with knowledge or information relevant to the claims asserted by Jeffrey Kennedy and this action and the defendants' responses and affirmative defense to those claims.  Defendant improperly narrowed the request to provide only the names of individuals who "have information relating to the creation of *Stranger Things*" and thus failed to respond fully to the interrogatory as is required by Rule 33 of the Federal Rules

David Grossman, Esq.
October 12, 2021
Page 5 of 8

of Civil Procedure.  See Fed. R. Civ. P. 33(b)(3) ("Each interrogatory must…be answered separately and fully in writing under oath").  Therefore, please provide a supplemental response to this interrogatory immediately.

With respect to the Interrogatories, and to the extent Defendant will not agree to voluntarily remedy these deficiencies, we intend to file a motion to compel under Rule 37(a)(3)(B)(3) and (4) of the Federal Rules of Civil Procedure.

## III.   REQUESTS FOR PRODUCTION OF DOCUMENTS

### a.   Improperly Narrowed Responses
*Request Nos. 5, 7, 9, 11, 15, 17*

Defendant's objections and/or qualifiers unilaterally and improperly limit the scope of the above referenced Requests.  More specifically, Defendant inexplicably and arbitrarily limited its responses to Request Nos. 5, 7, 9, 11, 15 and 17 to October 2015:

- **Request No. 5:**  Asks Defendant to produce "COMMUNICATIONS between YOU and Matt Duffer that RELATE TO STRANGER THINGS."
- **Request No. 7:**  Asks Defendant to produce "COMMUNICATIONS between YOU and Ross Duffer that RELATE TO STRANGER THINGS."
- **Request No. 9:**  Asks Defendant to produce "COMMUNICATIONS between YOU and NETFLIX that RELATE TO STRANGER THINGS."
- **Request No. 11:**  Asks Defendant to produce "COMMUNICATION between YOU and 21 LAPS, INC. that RELATE TO STRANGER THINGS."
- **Request No. 15:**  Asks Defendant to produce "COMMUNICATIONS between and any employees or contractor of ASC that RELATE TO STRANGER THINGS.
- **Request No. 17:**  Asks Defendant to produce "DOCUMENTS that RELATE TO any work performed by YOU and/or ASC in connection with the creation and development of the artwork and visual effects for STRANGER THINGS."

As you are well aware, Plaintiff's Complaint for Damages alleges that various elements from the copyrighted Totem screenplays and concept art were utilized within the *Stranger Things* series.  These protected elements appeared throughout all three seasons of the series, the last of which aired in 2019.  Limiting responsive documents through October is therefore entirely inappropriate as there are likely relevant and responsive documents which were created after October 2015 which would help prove or disprove Plaintiff's causes of action and the corresponding damages.

### b.   Relevance Objection
*Request Nos. 19, 21, 22, 23*

Under the Federal Rules of Civil Procedure, Plaintiff "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs

David Grossman, Esq.
October 12, 2021
Page 6 of 8

of the case…Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

Defendant has objected to all of the foregoing requests on the grounds that they are "not relevant to the claims and defenses asserted in this litigation, nor reasonably calculated to lead to the discovery of admissible evidence." Once again, Defendant cites the incorrect standard of relevance for federal court. See Fed. R. Civ. P. 26(b)(1); Comm. Notes to 2015 Amendment to Fed. R. Civ. P. 26(a). Moreover, given that the scope of discovery is broad, and the justification for withholding documents must be specific, simply objecting to these discovery requests on the basis that they are not relevant nor reasonably calculated to lead to the discovery of admissible evidence is insufficient. See Fed. R. Civ. P. 34(b)(2)(B). All of these objections are improper for the following reasons:

### i. Documents Relating to Contracts/Agreements Regarding *Stranger Things*

Request No. 19 asks for documents which relate to contracts or agreements that Defendant entered into regarding any work performed relating to *Stranger Things*. Defendant's relevance objection lacks merit, as the documents requested could provide insight into matters such as what work product Plaintiff was asked to provide and actually did provide to other named defendants. This information is of course directly relevant to Plaintiff's claims of direct copyright infringement. The requested documents are additionally reasonably calculated to lead to the discovery of admissible evidence regarding Plaintiff's damages.

### ii. Documents Relating to Plaintiff's Damages

Request Nos. 21 and 22 ask for: (1) documents which relate to compensation which Defendant and/or ASC received for their work on *Stranger Things*; and (2) contracts and agreements which Defendant and/or ASC entered into regarding compensation Defendant and/or ASC received for screenplay concept art provided to third parties, respectively. Plaintiff is entitled to recover the actual damages suffered as a result of the alleged infringement and any profits of the defendants that are attributable to the infringement. 17 U.S.C. § 504(b). The requested documents are relevant as they would provide evidence of profits Defendant made off of the infringing series and establish how much he benefitted from the infringing series in comparison to other work he provided.

### iii. Appointment Books, Logs or Calendars

Request No. 23 asks for copies of appointment books, logs or calendars from 2009 to 2015. These documents would show when Defendant met with Jeffrey Kennedy to discuss the Totem works, as well as when Defendant met with any other named defendants. This information would help provide a timeline of when and/or how certain aspects of the series were created and developed and are thus relevant to Plaintiff's claims of copyright infringement.

David Grossman, Esq.
October 12, 2021
Page 7 of 8

### c. Trade Secret, Confidential, Personal, Proprietary, Sensitive or Non-Public Information Objection
*Request Nos. 19, 21, 22*

Once again, Defendant's objection is without merit as "[t]here is no absolute privilege for trade secrets and similar confidential information." *Paulsen*, *supra*, 168 F.R.D. at p. 289 (citing *Federal Open Market Committee, supra*, 443 U.S. at p. 362). Defendant additionally has not shown that the requested documents are confidential and/or proprietary, it has merely made the claim as a conclusory assertion. However, to the extent Defendant truly believes that the documents requested are confidential or private, those concerns are easily addressed by way of the parties' stipulated protective order which was entered by the Court on September 15, 2021.

### d. Vague, Ambiguous, Overbroad and Unduly Burdensome Objection
*Request Nos. 19, 21, 22, 23*

Defendant objects on the basis that all of the above referenced Requests are overbroad and unduly burdensome without providing an adequate explanation to support its claim. "The party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Superior Communications, supra*, 257 F.R.D. at p. 217 (citing *Blankenship, supra*, 519 F.2d at p. 429). Defendant does not provide any reasons which clarify, explain, or support why Request Nos. 19, 21 22 are overbroad and unduly burdensome other than to conclusively claim them as such. Instead, Defendant merely repeats the Requests within the objections, this does not suffice. In order to avoid discovery on the grounds that a request is unduly burdensome and/or overbroad the Defendant must overcome the burden of clarifying, explaining, and supporting said objections. *Id.* at p. 217.

#### i. Request No. 19

Request No. 19 asks for documents which relate to any contract or agreements which Defendant and/or ASC entered into regarding any work performed relating to *Stranger Things*. Although there is nothing vague or ambiguous about the term "relating to," Plaintiff will further clarify it in the spirit of cooperative discovery. As used in the request, work performed "relating to" Stranger Things means any work Defendant or ASC performed which was in some way connected to or associated with the *Stranger Things* series.

#### ii. Request No. 22

Request No. 22 asks for contracts or agreements which Defendant and/or ASC entered into regarding compensation he and/or ASC received for concept art he provided to third parties. As it is entirely unclear which portion of this request Defendant finds to be vague or ambiguous, Plaintiff invites Defendant to identify the language that he is struggling to comprehend.

With respect to the Requests, and to the extent you will not agree to voluntarily remedy these deficiencies, we intend to file a motion to compel production in accordance with Rule 37(a)(3)(B)(iv) and (4) of the Federal Rules of Civil Procedure.

David Grossman, Esq.
October 12, 2021
Page 8 of 8

*     *     *     *     *

Pursuant to Central District Local Rule 37-1, Defendant has a duty to make a good faith effort to confer with Plaintiff to potentially eliminate the necessity for bringing a motion to compel and to eliminate as many of the disputes as possible.  Please provide us with dates in the next ten (10) days for a Zoom or telephonic meet and confer.

Thank you in advance for your professional cooperation.

Sincerely,
BOREN, OSHER & LUFTMAN, LLP

Jeremy J. Osher

**EXHIBIT H**



**DAVID GROSSMAN**
Partner and Deputy Chair,
Litigation

10100 Santa Monica Blvd.
Suite 2200
Los Angeles, CA  90067

**Direct**   310.282.2077
**Main**     310.282.2000
**Fax**      310.919.3943
dgrossman@loeb.com

Via E-mail

October 15, 2021

Jeremy J. Osher, Esq.
Brittanee Marksbury, Esq.
Boren, Osher & Luftman, LLP
222 N. Pacific Coast Highway, Suite 2200
El Segundo, CA 90245
josher@bollaw.com
bmarksbury@bollaw.com

Re:   *Irish Rover Ent., LLC v. Aaron Sims, et al.*, Case No. 2:20-cv-06293-CBM-PLA

Dear Counsel:

We write in response to Plaintiff's two identical letters dated October 8, 2021 regarding defendants Netflix Streaming Services, Inc.'s and Netflix, Inc.'s (collectively "Netflix") Responses to Plaintiff's First Set of Interrogatories (the "Interrogatories") and First Set of Requests for Production (the "RFPs").

It seems clear from Plaintiff's letters that it did not review the substantial document production made by Defendants on September 30, 2021 before sending its letters, as doing so presumably would have mooted numerous of Plaintiff's groundless arguments set forth therein; we encourage Plaintiff to complete its review before wasting resources on fruitless motion practice.  For example, Plaintiff demands the production of notes relating to screenplays for *Stranger Things*, but extensive notes and correspondence relating to those screenplays have already been provided. Further, Plaintiff is demanding documents produced in the "Kessler" lawsuit (without making any showing as to why documents produced in a separate litigation are necessarily relevant to the claims and defenses in this case), but those documents have already been produced.  Moreover, Plaintiff is demanding documents relating to Netflix' decision to acquire *Stranger Things*, even though the document production already contains the Duffers' pitch book, the trailer/sizzle reel that was created to pitch their ideas, and additional correspondence relating to the decision to acquire the series.  The failure to review and analyze defendants' document production prior to sending out a meet and confer letter is a violation of the obligation to meet and confer in good faith and defendants reserve the right to seek sanctions in connection with any motion to compel that plaintiff files.

This case is, and remains, entirely without legal or factual merit, and the document production provided by defendants demonstrates, beyond doubt, that Plaintiff's speculation and baseless allegations never should have been alleged in federal court.

Los Angeles   New York   Chicago   Nashville   Washington, DC   San Francisco   Beijing   Hong Kong   www.loeb.com

For the United States offices, a limited liability partnership including professional corporations. For Hong Kong office, a limited liability partnership.

21344273
231804-10002



Moreover, as to Plaintiff's Interrogatories and RFPs, Plaintiff has failed in the first instance to limit discovery to matter that is relevant to the parties' claims and defenses as mandated by Rule 26 of the Federal Rules of Civil Procedure: though Plaintiff conclusorily asserts throughout its letters that information or documents it seeks are relevant, it fails to explain how or why this is so or to offer any supporting authority for its hollow contentions.  For the reasons detailed below, Netflix's objections to the Interrogatories and RFPs at issue are well-founded and its responses thereto more than adequate.

With respect to Plaintiff's October 8, 2021 letters, as they raise identical purported issues regarding Netflix's objections and responses to Plaintiff's Interrogatories and RFPs, Netflix addresses both letters below.

## I.      Netflix's Relevance and Confidentiality Objections.

Although Netflix's relevance objections are more fully addressed with respect to specific discovery requests below, we note as an initial matter that Netflix did not, as Plaintiff erroneously contends, cite to the "incorrect" standard of relevance.  Rule 26 of the Federal Rule of Civil Procedure limits discovery to "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  *See also* Comm. Notes to 2015 Amendment to Fed. R. Civ. P. 26(a).  Netflix's responses properly reflect this standard; rather, it is *Plaintiff* that repeatedly relies on the "incorrect" standard throughout its letters, baldly asserting that the facially overbroad information and documents it seeks are somehow "reasonably calculated to lead to the discovery of admissible evidence."  *E.g.*, Oct. 8, 2021 Ltrs. at 6 (RFP No. 28), 7 (RFP Nos. 11 and 27).  For the reasons set forth below, Plaintiff is wrong.

Plaintiff is likewise mistaken that Netflix's objections based on trade secret, confidential, personal, proprietary, sensitive, or non-public information are "without merit."  As Plaintiff notes in its letters, the Court did not enter the parties' stipulated protective order until September 15, 2021, almost two weeks *after* Netflix served its responses to the Interrogatories and RFPs.  Netflix's assertion of this objection thus was (and remains) proper.

## II.     Interrogatories

        **No. 1.**  Contrary to Plaintiff's protests, this Interrogatory—which seeks the identity of "all" persons at three different corporate entities (one of which is not controlled by Netflix) who were in any way involved in the "creation, development, registration, use, marketing and/or advertising" of *Stranger Things* over several years, and approximately dozens episodes, regardless of their relation to the claims asserted in this case—is facially and hopelessly overbroad.  Plaintiff has not, and cannot, explain what possible relevance persons such as an advertising account manager, gaffer, lighting technician, make-up artist, etc., though all are involved in the production of the series and within the plain albeit unduly burdensome scope of the request, have to its claims.  Netflix already has identified the creators of the series in its response; if Plaintiff wishes to propose a targeted universe of persons that is relevant to its claims, Netflix will consider this Interrogatory further.



Jeremy J. Osher, Esq.
October 15, 2021
Page 3

**No. 2.**  While we appreciate Plaintiff's willingness to narrow this Interrogatory to the identity of persons with knowledge or information related to the exploitation of *Stranger Things*, even with this proposal the request continues to be overbroad and unduly burdensome for the reasons set forth above with respect to Interrogatory No. 1.  It is simply not the case that "all persons" with any knowledge or information "related to" the "exploitation" (itself an overbroad term) of a multi-year series are potential witnesses with *relevant* knowledge or information.  Regardless, Netflix is willing to discuss with Plaintiff ways in which to further narrow this Interrogatory to target information that is relevant to the parties' claims and defenses.

**No 5.**  As Plaintiff is aware, in exchange for a monthly fee, the Netflix service provides subscribers access to a robust streaming video on demand library.  Netflix does not charge its subscribers a separate fee to access particular titles or series, including *Stranger Things*.  As Netflix already has informed Plaintiff in its response to this Interrogatory, Netflix thus does not receive any compensation directly from making *Stranger Things* available on its service.

**No. 6.**  Plaintiff contends it is entitled to "any and all compensation" (whatever that undefined term is intended to include) Netflix provided to the other defendants and/or Monkey Massacre Productions because such information "would provide evidence of profits the defendants made off" *Stranger Things.*  Oct. 8, 2021 Ltrs. at 2.  As Plaintiff is presumably aware, "compensation" is not tantamount to "profits," yet Plaintiff tellingly has provided no explanation of how the former purportedly evidences the latter and thus is relevant to the "actual damages" Plaintiff claims to have incurred.  As but one example, the law is clear that salaries and wages, though arguably "compensation" within the scope of this Interrogatory, are not "profits" within the meaning of 17 U.S.C. § 504(b).  *See, e.g.*, *MCA, Inc. v. Wilson*, 677 F.2d 180, 186 (2nd Cir. 1981).  Plaintiff's overbroad request, untethered as it is from its claims, is all the more problematic given the sensitive nature of the information it seeks.  *See Pac. Coast Steel v. Leany*, No. 2:09-cv-02190, 2011 U.S. Dist. LEXIS 113848, at *19 (D. Nev. Sept. 30, 2011) (finding defendant's privacy interest in personal financial records outweighed plaintiffs' interests in receiving it, where plaintiff failed to demonstrate how the records would lead to relevant information).  If, however, Plaintiff can provide a legitimate explanation connecting "compensation" to its claimed damages, Netflix will consider this request further.

**Nos. 8 and 9.**  Neither of these overbroad Interrogatories are limited to the time period before the initiation of this action.  Certainly at least to the extent that they are intended to cover the period after Plaintiff's complaint was filed, they necessarily and improperly intrude into protected work product, and thus appear designed not to seek relevant information but to harass Netflix.  *See, e g., Smith v. Best Buy Stores, L.P.*, No. 4:16-cv-00296, 2017 U.S. Dist. LEXIS 130010, at *6 (D. Id. Aug. 14, 2017) (witness interview summaries prepared after complaint was filed constitute protected work product); *see also* Fed. R. Civ. P. 26(b)(3).  To the extent these Interrogatories are addressed to a pre-litigation period, this information already has been provided to Plaintiff in the form of written correspondence from Netflix's counsel, in which Plaintiff was advised that his frivolous claim—which is premised on nothing more than unfounded speculation, tortured reasoning to find so-called similarities between random elements scattered through the *Stranger Things* series and his work—has no merit.  At least some of that correspondence is within Plaintiff's as-yet incomplete production; we refer Plaintiff to it.

**Nos. 11, 12 and 13.**  Plaintiff's explanation of the relevance of Netflix's overall subscribers, revenues and streaming traffic to Plaintiff's claimed damages is tenuous at best.  As but one



example in Plaintiff's flawed logic, Netflix releases multiple new titles each month.  It thus is not accurate that "[i]ncreases in subscriptions and streaming traffic" "indicate profits which could be attributed to the series"; such damages theory is, at best, speculative.  17 U.S.C. § 504(b) (only profits attributable to the infringement are recoverable); *Mackie v. Riser*, 296 F.3d 909, 915 (9th Cir. 2002) (noting that courts will deny recovery to the copyright owner when an infringer's profits are only remotely and speculatively attributable to the infringement (citing 4 M. Nimmer, *Nimmer on Copyright*, § 14.03[A], at 14-19 (2001))).  Regardless, Netflix refers Plaintiff to Defendants' document production, which contains the requested information.  If, after reviewing Defendants' production, Plaintiff genuinely believes any of the requested information has not been provided, please specifically identify it.

**Nos. 13, 14 and 16.**  We remain willing and are prepared to discuss these Interrogatories during the parties' Rule 37-1 conference.

## III.   Requests for Production

**RFP Nos. 1, 2, 6, 9, 19, 23, 25, 29, 32.**  As you well know, scattered claimed similarities cannot serve as the basis for a claim for infringement.  *See, e.g.*, *Litchfield v. Spielberg*, 736 F.2d 1352, 1359 (9th Cir. 1984) (holding that "lists of similarities" are "inherently subjective and unreliable," especially when the "emphasize[] random similarities scattered throughout the works").  Yet this is all Plaintiff has set out in his FAC, especially with respect to seasons 2 and 3 of the series.  In fact, the allegedly infringing elements appear or were introduced in, or are derived from, season 1 of the series.  As such, the documents sought by RFP Nos. 1, 2, 6, 9, 19, 23, 25, 29, 32 with respect to the later seasons of *Stranger Things* are not relevant to Plaintiff's claims.  Notwithstanding the foregoing, if Plaintiff is able to identify allegedly infringing elements of the series that are unique to—and did not appear in and were not referenced in season 1—Netflix will consider these requests further.

**RFP No. 10.**  Again, it appears from Plaintiff's October 8, 2021 letters that it has not reviewed the documents produced by Defendants.  To the extent that any "notes or comments provided on the various drafts/versions of the pilot script" concern creative contributions to *Stranger Things* through October 2015, those documents have been produced.  Plaintiff has not specified or articulated the relevance of any other documents that "relate to the script for the pilot episode for *Stranger Things*."  If Plaintiff is able to provide a legitimate explanation of relevance for any other documents sought by this facially overbroad RFP, Netflix is willing to consider it.

**RFP No. 11 and 27.**  Though Plaintiff contends these RFPs are intended to seek documents evidencing (1) ownership of the *Stranger Things* copyright, (2) Netflix's "potential to profit" from the series, and (3) Netflix's supervision and/or control over the series, on their face these requests seek a disproportionately burdensome universe of documents; to wit, "[a]ny and all" documents related to Netflix's purchase of *Stranger Things*, and "[a]ny and all" documents related to any contracts or agreements Netflix entered into related to the series, regardless of subject matter.  Plaintiff's explanation of the purported limited relevance of these RFPs do not justify their expansive breadth.  But even as to this purported limited relevance, Plaintiff's explanation is flawed.  For example, though Plaintiff claims the requested documents may show Netflix's "potential to profit" from the series, Plaintiff is entitled only to recover those profits attributable to the infringement.  17 U.S.C. § 504(b).  Netflix's "potential to profit" does not inform this element of Plaintiff's cause of action, and such documents are therefore irrelevant to the



parties' claims and defenses.  Nonetheless, if Plaintiff is willing to make a proposal to narrow the scope of these RFPs, Netflix is willing to consider it.

**RFP No. 12.**  Tellingly, Plaintiff provides no explanation for and cites no legal authority to support its "belie[f]" that documents responsive to this RFP, relating to why Aaron Sims was not involved in Seasons 3 and 4 of *Stranger Things*, "are relevant" to its claims.  They are not.  For the avoidance of doubt, however, Mr. Sims' lack of involvement in these later seasons are unrelated to Plaintiff's work.

**RFP No. 15.**  Plaintiff similarly fails to offer any explanation of the relevance of "[a]ny and all" documents that in any way relate to *Stranger Things* that the Duffers or "anyone affiliated with either of them" gave to Netflix prior to its "decision to purchase" *Stranger Things*.  Netflix already has produced the original pitch materials provided by the Duffers in response to this request, which are the materials containing the creative elements of the series.  If Plaintiff is able to articulate the relevance of "any and all" "additional documents" provided to Netflix prior to its decision to purchase the series, we will consider it.

**RFP No. 16.**  This RFP on its face seeks documents that are unrelated and thus irrelevant to this litigation.  *E.g.*, *Strategic v. Figs, Inc.*, No. 19-2286-GW, 2020 U.S. Dist. LEXIS 138002, at *29 (C.D. Cal. May 28, 2020) (mere fact that defendant produced documents in a separate lawsuit involving same claim "does not necessarily make information discoverable here"; rather, "the Court must be persuaded that the requested documents are relevant to *this* case[]" (original emphasis)); *Chen v. Ampco Sys. Parking*, No. 08-CV-0422, 2009 U.S. Dist. LEXIS 71633, at *5 (S.D. Cal. Aug. 14, 2009) ("certain similarities" between instant case and four others, including allegations that defendant failed to pay wages to employees for all hours worked "are not enough to require a *carte blanche* production of all documents from the state cases"); *id.* at *8-9 ("[T]he fact that Ampco produced certain documents in the state cases does not necessarily make them discoverable in this case…Rather, Plaintiff must specifically ask for the documents he wants and be able to demonstrate that the information he seeks ins relevant to his claims in *this* case. (original emphasis)).  In any case, Netflix has produced the documents that the Duffers and Netflix produced in the separate *Kessler* action.

**RFP No. 28.**  Contrary to Plaintiff's unsound logic, it does not follow that documents relating to Netflix's "attempt to license, option, or otherwise exploit" the series would "lead to the discovery of admissible evidence."  As an initial matter, Plaintiff's overbroad RFP on its face includes even unrealized efforts "to license, option, or otherwise exploit" *Stranger Things*; Plaintiff does not and cannot explain how documents that relate to such *unrealized* efforts could possibly evidence "any profits of the defendants."  17 U.S.C. § 504(b) (only profits attributable to the infringement are recoverable).  In any case, Netflix has not licensed the Series for distribution on any other network or platform, and to the extent there are additional questions you may have regarding this request, we are willing to discuss them during the Rule 37-1 conference.

**RFP Nos. 33, 34.**  Plaintiff's explanation of the supposed relevance of this information is flawed for the same reason set forth in Netflix's response above to Interrogatory Nos. 11, 12 and 13; moreover, because subscribers may stream any title or series (repeatedly, if desired) for the same monthly charge, it is not the case that "[i]ncreases in streaming traffic" would "indicate profits which could be attributed to the series."  And contrary to Plaintiff's assertion, Netflix specifically identified in its responses what portions of these RFPs—which seek Netflix's monthly "streaming



Jeremy J. Osher, Esq.
October 15, 2021
Page 6

numbers" in the United States from 2015 to 2019 and "quantifications of Netflix streaming traffic" attributable to *Stranger Things*, respectively—are vague and ambiguous.  Plaintiff's RFPs appear to be premised on a misunderstanding of the information collected and maintained by Netflix.  As explained above, Netflix is a streaming service that provides its subscribers access to a video-on-demand library for a monthly charge; it does not charge its subscribers a separate fee to access particular titles or series.  Please provide a cogent explanation of the information Plaintiff seeks so that Netflix may consider these RFPs, and what data may actually be available.

Sincerely,

David Grossman
Partner and Deputy Chair, Litigation

**EXHIBIT I**



**SAFIA GRAY HUSSAIN**
Senior Counsel

10100 Santa Monica Blvd.
Suite 2200
Los Angeles, CA  90067

**Direct**   310.282.2183
**Main**    310.282.2000
**Fax**      310.919.3983
sghussain@loeb.com

Via E-mail

October 21, 2021

Jeremy J. Osher, Esq.
Brittanee Marksbury, Esq.
Boren, Osher & Luftman, LLP
222 N. Pacific Coast Highway, Suite 2200
El Segundo, CA 90245
josher@bollaw.com
bmarksbury@bollaw.com

Re:   _Irish Rover Ent., LLC v. Aaron Sims, et al._, Case No. 2:20-cv-06293-CBM-PLA

Dear Counsel:

We write in response to Plaintiff's letter dated October 12, 2021 regarding defendant Aaron Sims' ("Sims") Responses to Plaintiff's First Set of Requests for Admission (the "RFAs"), First Set of Interrogatories (the "Interrogatories") and First Set of Requests for Production (the "RFPs").

As we previously observed, Plaintiff has failed in the first instance to limit discovery to matter that is relevant to the parties' claims and defenses as mandated by Rule 26 of the Federal Rules of Civil Procedure.  To the extent that Plaintiff even attempts in its letter to claim that information or documents it seeks are relevant, as in its letters to the other Defendants, such claim is conclusory; Plaintiff fails to explain how or why this is so or to offer any supporting authority for its hollow contentions.  For the reasons detailed below, Sims' objections to the RFAs, Interrogatories and RFPs at issue are well-founded and his responses thereto more than adequate.

**I.       Sims' Relevance, Confidentiality and Privilege Objections**

Sims did not, as Plaintiff has now repeatedly erroneously contended, cite to the "incorrect" standard of relevance.  Rule 26 of the Federal Rules of Civil Procedure limits discovery to "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  _See also_ Comm. Notes to 2015 Amendment to Fed. R. Civ. P. 26(a).  Sims' objections properly reflect this standard, and are more fully addressed in response to specific discovery requests below.

Plaintiff is likewise mistaken that Sims' objection based on trade secret, confidential, personal, proprietary, sensitive, or non-public information are "without merit."  As Plaintiff notes in its letter,

For the United States offices, a limited liability partnership including professional corporations. For Hong Kong office, a limited liability partnership.

21381299
231804-10002



Jeremy J. Osher, Esq.
October 21, 2021
Page 2

the Court did not enter the parties' stipulated protective order until September 15, 2021, almost two weeks *after* Sims' served his responses to the discovery requests at issue. Sims' assertion of this objection thus was (and remains) proper.

Finally, Sims' objection to certain requests on the basis of the attorney-client privilege or work product doctrine is not improper. Notwithstanding Plaintiff's *post hoc* attempt to rewrite its overly broad requests, none are limited to non-privileged communications, documents, analyses, et cetera, or communications, documents, analyses, et cetera that occurred before litigation was reasonably anticipated. For example, the substantial majority of Plaintiff's RFPs seek "[a]ny and all" documents relating to the specified subject matter of the request and are not temporally limited. Plaintiff's contention that Sims' privilege objection is improper is all the more spurious in light of Plaintiff's assertion/refusal to produce similar information on the basis of the same objection. *E.g.*, Pl. Irish Rover Entmt., LLC's Responses to Def. Netflix, Inc.'s Document Requests (Set One), Nos. 6, 27, 30, 31, 32, 33.

## II.      Requests for Admission

**No. 6.**   Sims' substantive response to this RFA is necessitated by its inherent misrepresentation of documents that Plaintiff itself has produced. Specifically, those documents (which speak for themselves) show, and Sims does not dispute, that Jeffrey Kennedy provided him with various draft scripts. Sims, however, is neither a writer nor was engaged by Kennedy to revise those draft scripts; rather, Sims was engaged to provide certain concept art for a potential film based on the *Totem* screenplays. Sims' response accurately reflects this and is therefore proper.

## III.     Interrogatories

**No. 9.**   Plaintiff's purported clarification of this Interrogatory, which asks Sims to identify "[a]ny and all" compensation he and/or ASC has received or will receive in the future that is "in some way attributable" to *Stranger Things*, serves only to highlight the facial overbreadth of the request. As Plaintiff acknowledges, 17 U.S.C. section 504(b) limits recoverable damages to profits attributable to the infringement. Yet "compensation"—which Plaintiff did not define—is not tantamount to "profits." As but one example, the law is clear that salaries and wages, though arguably "compensation" within the scope of this Interrogatory, are not "profits" within the meaning of 17 U.S.C. § 504(b). *See, e.g.*, *MCA, Inc. v. Wilson*, 677 F.2d 180, 186 (2nd Cir. 1981). Plaintiff's overbroad request, untethered as it is from its claims, is all the more problematic given the sensitive nature of the information it seeks. *See Pac. Coast Steel v. Leany*, No. 2:09-cv-02190, 2011 U.S. Dist. LEXIS 113848, at *19 (D. Nev. Sept. 30, 2011) (finding defendant's privacy interest in personal financial records outweighed plaintiffs' interests in receiving it, where plaintiff failed to demonstrate how the records would lead to relevant information). If, however, Plaintiff can provide a legitimate explanation of the relevance of "compensation" to its claims and/or damages, Sims will consider this Interrogatory further.[1]

---

[1] As Plaintiff acknowledges, Sims need not provide information that is not under his custody and control. Oct. 12 Ltr. at 4. As to Interrogatory Nos. 9 and 10, Plaintiff does not cite to any authority that an individual named as a defendant in their individual capacity has custody or control over the corporate records of its third-party employer. To the contrary, a defendant "is not required to obtain discovery from third parties on

21381299
231804-10002



**No. 10.** The only purported relevance Plaintiff proffers for this Interrogatory—which demands that Sims identify "any and all" compensation he and/or ASC have received for screenplay concept art Sims provided to third parties from January 1, 2008 to the present—is that it would evidence how much Sims benefitted from the allegedly infringing series in comparison to other work he provided. What Plaintiff does not (and presumably cannot) explain, however, is what possible relevance such information has to the determination of "profits attributable to the infringement." 17 U.S.C. § 504(b). The "compensation" received for one work and the "compensation" received for entirely separate works has no relation to or bearing on the determination of profits for a particular project. Plaintiff's demand for "compensation" information is also overbroad and irrelevant for the reasons set forth in response to Interrogatory No. 9 above.

**Nos. 12 and 13.** Despite Plaintiff's attempts to cast its requests more narrowly than actually written in its letters, neither of these overbroad Interrogatories—which purport to require Sims to identify all actions he undertook to investigate Jeffrey Kennedy's infringement claims and all persons with whom he has discussed those claims—are limited to the time period before the initiation of this action. Certainly at least to the extent that they are intended to cover the period after Plaintiff's complaint was filed, the Interrogatories necessarily and improperly intrude into protected work product, and thus appear designed not to seek relevant information but to harass Sims. *See, e.g.*, *Smith v. Best Buy Stores, L.P.*, No. 4:16-cv-00296, 2017 U.S. Dist. LEXIS 130010, at *6 (D. Id. Aug. 14, 2017) (witness interview summaries prepared after complaint was filed constitute protected work product); *see also* Fed. R. Civ. P. 26(b)(3). Regardless of time period, however, Plaintiff's contention that the information sought is not protected from disclosure by applicable privileges rings hollow in light of Plaintiff's refusal to produce information concerning its analysis of Plaintiff's claims on the same grounds. *E.g.*, Pl. Irish Rover Entmt., LLC's Responses to Def. Netflix, Inc.'s Document Requests (Set One), Nos. 27, 30. Plaintiff cannot engage in a good faith meet and confer by taking entirely contradictory positions depending on whether the requests are propounded on Plaintiff, or on an adversary. Please confirm that Plaintiff is withdrawing these requests immediately.

**No. 15.** This Interrogatory, which purports to require Sims to identify "any and all" persons with knowledge or information "relevant to the claims asserted by Jeffrey Kennedy"[2] in this action and Defendants' responses and affirmative defense to those claims, on its face seeks information protected from disclosure by the attorney-client privilege and/or work product doctrine. Specifically, under any reasonable reading of this request, "claims" refers to those in Plaintiff's pleadings. The Interrogatory thus necessarily covers the period after Plaintiff's complaint was filed, and improperly intrudes into protected and privileged information. *See supra*, Interrogatory Nos. 12 and 13. Further, Sims already has identified Matt and Ross Duffer as having information relating to the creation of *Stranger Things*; Plaintiff has not articulated what other aspect of the series is relevant to its infringement claims. Although Sims will not endeavor to speculate what

---

plaintiff's behalf." *Harris v. Kernan*, No. 2:17-cv-0680, 2019 U.S. Dist. LEXIS 154425, at *7 (E.D. Cal. Sept. 10, 2019); *see also* Fed. R. Civ. Proc. 33(a) (interrogatories are limited to parties).

[2] Both throughout the discovery requests and letters to all Defendants, you have used "Plaintiff" and "Jeffrey Kennedy" interchangeably. For example, RFP No. 15 to Sims refers to "the claims asserted by Jeffrey Kennedy," but the named plaintiff in this action—which has asserted the claims in the First Amended Complaint—is Irish Rover Entertainment, Inc. Is it your position that the individual and the entity are one and the same? Please let us know so that we may proceed accordingly.



Plaintiff may deem "relevant to the claims asserted by Jeffrey Kennedy," if Plaintiff is able to clarify the information sought by this Interrogatory, Sims will consider it further.

**Nos. 1, 3, 4, 5, 6, 7, 8, 14.**  As we have previously noted, Plaintiff clearly had not reviewed Defendants' document production before sending its various letters regarding Defendants' discovery responses.  Plaintiff's claimed inability to determine from which documents the answers to these Interrogatories may be ascertained or derived thus strains credulity.  If, after Plaintiff completes its review, it legitimately cannot determine where in Defendants' production these documents are located, Sims will reconsider Plaintiff's demand for supplemental responses.

## IV.     Requests for Production

**Nos. 5, 7, 9, 11, 15, 17.**  As you well know, scattered claimed similarities cannot serve as the basis for a claim for infringement.  *See, e.g., Litchfield v. Spielberg,* 736 F.2d 1352, 1359 (9th Cir. 1984) (holding that "lists of similarities" are "inherently subjective and unreliable," especially when the "emphasize[] random similarities scattered throughout the works").  Yet this is all Plaintiff has set out in his First Amended Complaint, especially with respect to seasons 2 and 3 of the series (the latter of which Mr. Sims did not work on).  In fact, the allegedly infringing elements appear or were introduced in, or are derived from, season 1 of the series.  As such, the documents sought by RFP Nos. 5, 7, 9, 11, 15 and 17 with respect to the later seasons of *Stranger Things* are not relevant to Plaintiff's claims.  Notwithstanding the foregoing, if Plaintiff is able to identify allegedly infringing elements of the series that are unique to—and did not appear in and were not referenced in season 1—Sims will consider these requests further.

**No. 19.**  The purported relevance of "any and all" documents that in any way relate to "any contracts or agreements" that Sims and/or ASC entered into regarding "any work" performed relating to *Stranger Things* is, according to Plaintiff, that they "could provide insight" into "what work product" Sims was asked to provide to the other defendants.  Oct. 12 Ltr. at 6.  Setting aside that the universe of documents sought by this RFP is substantially and disproportionally broader than the "relevant" information identified by Plaintiff, it is once again clear from Plaintiff's letter that it did not review Defendants' document production: the "work product" Sims provided to Defendants already has been produced to Plaintiff.  Plaintiff's statements that the "work product" Sims "was asked to provide" "is of course directly relevant to Plaintiff's claims," and that the requested documents "are additionally reasonably calculated to lead to the discovery of admissible evidence regarding Plaintiff's damages" (the incorrect standard by its own contention), are entirely conclusorily.  If, however, Plaintiff is able to offer a cogent explanation for this information, and is willing to narrow its request, Sims will consider this RFP further.

**No. 21.**  Please refer to Sims' response to Interrogatory No. 9 above.

**No. 22.**  Please refer to Sims' response to Interrogatory No. 10 above.

**No. 23.**  Plaintiff's explanation of the relevance of the information sought by this RFP once again serves to demonstrate its facial overbreadth.  Though the request purports to demand copies of all Sims' electronic and hardcopy "appointment books, appointment logs or calendars" for a six-year period, Plaintiff appears to concede that only those entries showing when Sims met with Jeffrey Kennedy or the other named Defendants are purportedly relevant to providing a timeline of when and/or certain aspects of the series were created and/or developed.  Although



Sims disputes that such information necessarily would be ascertainable from the requested materials, and further encourages Plaintiff to review the documents produced by Defendants (which production already contains the foregoing information), if Plaintiff is willing to narrow the scope of this RFP, Sims will consider it further.

Sincerely,

Safia Gray Hussain
Senior Counsel

**EXHIBIT J**



November 12, 2021

**VIA ELECTRONIC TRANSMISSION**

David Grossman, Esq.
Safia Gray Hussain, Esq.
Loeb & Loeb LLP
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA 90067

E-mail: dgrossman@loeb.com
E-mail: sghussain@loeb.com

     Re:    ***Irish Rover Ent., LLC v. Aaron Sims et al.***
             *Case No: 2:20-cv-06293-CBM-PLA*

Dear Counsel,

This letter serves to memorialize our meet and confer call on October 28, 2021 regarding Defendants Netflix, Inc., Netflix Streaming Services, Inc., Matt Duffer, Ross Duffer, Aaron Sims, and 21 Laps, Inc.'s (collectively, "Defendants") written discovery responses to Plaintiff Irish Rover Entertainment, LLC's ("Plaintiff"): (1) Interrogatories, Set One ("Interrogatories"); (2) Requests for Admission, Set One; and (3) Requests for Production of Documents, Set One ("Requests"). We reached agreements on certain issues during our call and the purpose of this letter is to confirm those agreements and also to follow up on those "open" items that still require resolution.

Please discuss the issues below with your clients and provide us with supplemental and/or amended discovery responses along with a supplemental production of documents to the extent each is warranted.

**Netflix, Inc. & Netflix Streaming Services, Inc. ("Netflix")**

**I.**     **Interrogatories**

**Interrogatory Nos. 1** and **2** ask Netflix to identify all persons involved in or with knowledge or information related to the creation, development, registration, use, marketing, and/or advertising of Stranger Things. Plaintiff agreed to narrow these interrogatories such that Netflix may identify the person(s) most knowledgeable ("PMK") about these topics instead of all persons involved or with knowledge or information. You stated that Matt Thunell, Vice President of Original Series, is Netflix's PMK as to the creation and development of Stranger Things. You also stated that no one at Netflix is involved in the registration of Stranger Things. As to the use,

David Grossman
Safia Gray Hussain
November 12, 2021
Page 2 of 11

marketing, and/or advertising of Stranger Things, we agreed that Netflix can hold off on identifying a PMK until Netflix produces monetary figures related to those activities.

**Interrogatory No. 5** asks Netflix to identify any and all compensation that it has received related to Stranger Things. Plaintiff seeks a response in the form of actual dollar figures and is entitled to this information because it is necessary to analyze the amount of profit that Netflix has derived from Stranger Things. You stated that you are not aware of any metrics for revenue derived directly from Stranger Things and that only overall monthly revenue figures are available, regardless of the title on Netflix. You stated that you would nonetheless discuss with your client whether there are specific revenue figures available for Stranger Things. We find it hard to believe that Netflix does not track revenue associated with Stranger Things. Moreover, we have seen various articles that include revenue figures for various shows on the Netflix platform. One example is the article we sent you from the Hollywood Reporter that talked about the "impact value" of the recently released Chappelle special *Sticks & Stones*.

You also stated that Netflix will produce a one-sheet cost summary with different categories of costs related to Stranger Things season 1. You also said Netflix would provide information regarding revenue generated from commercial products.

**Interrogatory No. 6** asks Netflix to identify any and all compensation that it has provided to any of the Defendants and/or Monkey Massacre Productions related to Stranger Things. Netflix has not provided a response to this interrogatory and objected, in part, on the grounds that it is overbroad and unduly burdensome because it seeks identification of any and all compensation. On our call, you stated that Netflix would produce agreements memorializing Matt and Ross Duffer's acquisition and writing deal that they signed with Netflix related to Stranger Things. To the extent that Aaron Sims entered into a formal agreement with Netflix for his work related to Stranger Things, please produce the same.

**Interrogatory No. 8** asks Netflix to identify all persons who have analyzed the similarity, or lack thereof, between Totem and Stranger Things. Similarly, Interrogatory No. 9 asks Netflix to describe any actions that it took to investigate Plaintiff's infringement claims. You stated that Netflix does not have any information outside of that protected by the attorney-client privilege and/or attorney work-product doctrine.

**Interrogatory No. 11** asks Netflix to state the number of its monthly subscribers in the United States, by month, from 2015 through 2020. You stated that Netflix will provide this information.

**Interrogatory No. 12** asks Netflix to state the amount of its subscription revenue in the United States, by month, from 2015 through 2020. You stated that this information is in Netflix's initial production of documents.

**Interrogatory No. 15** asks Netflix to state its streaming traffic numbers in the United States, by month, from 2015 through 2019. You stated that you would discuss with your client whether it is willing to provide this information, i.e., streaming hours of Stranger Things and

David Grossman
Safia Gray Hussain
November 12, 2021
Page 3 of 11

streaming hours on Netflix as a whole.  Please advise. This information is critical to our damages analysis.

Interrogatory No. 13 asks Netflix to state all costs it has incurred associated with the streaming of Stranger Things.  Similarly, **Interrogatory No. 14** asks Netflix to state the production budget for each season of Stranger Things and **Interrogatory No. 16** asks Netflix to describe any internal and/or third-party quantifications of its streaming traffic that is attributable to Stranger Things.  As to each of these interrogatories, you stated that you will discuss with your client whether it is willing to provide responsive information in addition to the one-sheet cost summary noted above.  Please advise.

## II.   Requests for Production of Documents

As to **Request Nos. 1, 2, 6, 9, 19, 23, 25, 29**, and **32**, Netflix agreed to produce responsive documents and communications but unilaterally limited its production through October 2015.  You stated that Netflix limited its production of documents because principal photography for Stranger Things started in October 2015.  The scope of these Requests covers the entire Stranger Things series and the unilateral October 2015 limitation by Netflix is not acceptable.  Please produce responsive documents and communications for all four (4) seasons of Stranger Things.

**Request No. 10** asks Netflix to produce documents related to the script for the pilot episode of Stranger Things.  Plaintiff is particularly interested in communications and notes regarding changes to the script for the pilot episode.  You stated that Defendants' initial production of documents includes emails regarding the pilot episode.  To the extent that there are additional emails and/or notes, please produce them.

**Request No. 11** asks Netflix to produce documents related to its purchase of Stranger Things, including agreements that Netflix signed with Monkey Massacre Productions, Matt Duffer, and/or Ross Duffer.  Similarly, **Request No. 27** asks Netflix to produce all documents that relate to contracts or agreements that it entered into relating to Stranger Things.  Plaintiff agreed to narrow these Requests to the production of the actual agreements that Netflix signed with Monkey Massacre Productions, Matt Duffer, and/or Ross Duffer.  You stated that Netflix will produce its agreements with Matt Duffer and Ross Duffer.  To the extent that Netflix has a separate agreement with Monkey Massacre Production, please produce it.

**Request No. 12** asks Netflix to produce documents related to why Aaron Sims was not involved in Seasons 3 and 4 of Stranger Things.  Plaintiff agreed to withdraw this Request.

**Request No. 15** asks Netflix to produce all documents related to Stranger Things that Matt Duffer, Ross Duffer, or their affiliates gave to Netflix prior to its decision to purchase Stranger Things.  Netflix unilaterally limited its production to the original pitch materials it received in connection with Stranger Things, however, Plaintiff is also entitled to communications on this topic.  You stated that Netflix produced some responsive communications but indicated that there may be additional communications.  Accordingly, please either confirm that all responsive communications have already been produced or that Netflix will be supplementing its production.

David Grossman
Safia Gray Hussain
November 12, 2021
Page 4 of 11

**Request No. 16** asks Netflix to produce all documents that it produced in connection with the Kessler Lawsuit.  You stated that Netflix already produced all documents responsive to this Request.

**Request No. 28** asks Netflix to produce all documents related to any attempt to license, option, or otherwise exploit Stranger Things.  Plaintiff agreed to narrow this Request to documents related to Netflix's realized efforts to license, option, or otherwise exploit Stranger Things.  You stated that will look into Netflix's consumer products licensing, i.e., drive-through pop-up, merchandise, etc., and provide supplemental documentation of same.

<u>**Matt Duffer & Ross Duffer ("Duffers")**</u>

I.      <u>**Requests for Admission**</u>

**Request for Admission No. 6** asks the Duffers to admit that they and/or Monkey Massacre Productions provided funding for the production of Stranger Things.  The Duffers denied this request only in their individual capacities.  On our call, you stated that Monkey Massacre Productions did not provide funding for the production of Stranger Things.  Please provide a supplemental response confirming this information.

II.     <u>**Interrogatories**</u>

**Interrogatory No. 1** asks the Duffers to identify all persons who assisted them in the creation and development of Stranger Things.  The Duffers have not provided a response to this interrogatory and objected, in part, on the grounds that it is overbroad and unduly burdensome because it seeks identification of all persons who assisted them with creation and development. As with Interrogatory Nos. 1 and 2 to Netflix, which Plaintiff agreed to narrow such that Netflix may identify PMKs about the creation and development of Stranger Things, Plaintiff is also willing to narrow Interrogatory No. 1 to the Duffers such that they may identify, in lieu of all persons, PMKs from Monkey Massacre or other entities regarding the creation and development of Stranger Things.

**Interrogatory No. 10** asks the Duffers to identify any and all compensation that they and/or Monkey Massacre Productions received related to Stranger Things.  The Duffers have not provided a response to this interrogatory and objected, in part, on the grounds that it is overbroad and unduly burdensome because it seeks identification of any and all compensation.  In connection with our discussion regarding Interrogatory No. 6 to Netflix, Plaintiff is willing to narrow Interrogatory No. 10 to the Duffers such that they may identify only the compensation that they received from their acquisition and writing deal that they signed with Netflix related to Stranger Things.

**Interrogatory No. 13** asks the Duffers to identify all licensing deals that have existed or currently exist in relation to Stranger Things.  The Duffers have not provided a response to this

David Grossman
Safia Gray Hussain
November 12, 2021
Page 5 of 11

interrogatory.  On our call, you stated that the Duffers do not have information about any licensing deals related to Stranger Things.

**Interrogatory No. 14** asks the Duffers to identify any and all actions that they took to investigate Jeffrey Kennedy's claims that Stranger Things infringes on the Totem works. **Interrogatory No. 15** asks the Duffers to identify all persons with whom they discussed the infringement claims.  You stated that the only responsive information that the Duffers have is protected by the attorney-client privilege and/or the attorney work-product doctrine.

In response to **Interrogatory Nos. 4, 5, 7, 9**, and **11**, the Duffers referred Plaintiff to documents produced in response to certain Requests pursuant to Federal Rule of Civil Procedure 33(d).  For example, in response to Interrogatory No. 4, the Duffers referred Plaintiff to the documents produced in response to Requests Nos. 3-8.  However, on our call, you confirmed that neither you nor your clients have a chart showing which documents are responsive to which Requests.  Accordingly, the Duffers' responses do not comply with Rule 33(d) which requires a party to specify the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify the records as readily as the responding party could.  You acknowledged that you could review your clients' production of documents to procure this information.  Please do so in accordance with Rule 33(d).

### III.   <u>Requests for Production of Documents</u>

**Request No. 2** asks the Duffers to produce any and all communications between the two of them relating to the creation and development of Stranger Things.  The Duffers have not provided a response to this Request and objected, in part, on the grounds that it is overbroad and unduly burdensome because it seeks any and all communications between them.  The Duffers also objected on the grounds that this Request seeks documents that are already in Plaintiff's possession and control, or are publicly available and equally available to Plaintiff.  On our call, you stated that communications between the Duffers were not typically limited to just them and that responsive communications up to October 2015 have already been produced.  You also stated that you will (1) ask the Duffers whether there are additional communications between just the two of them before Netflix was involved; and (2) ask Aaron Sims whether there are additional communications between 2009 to 2014.  As noted above, the unilateral October 2015 limitation by Netflix is not acceptable.  Please produce all responsive communications.

**Request No. 9** asks the Duffers to produce any and all documents that relate to any trailer that they created for Stranger Things.  Similarly, **Request No. 10** asks the Duffers to produce any "look book" or "pitch book" that they created for Stranger Things.  On our call, you stated that the original pitch materials, i.e., trailer, look book, and sizzle real, and communications relating to the same have already been produced.

**Request No. 12** asks the Duffers to produce any and all documents that relate to any submission of Stranger Things to any third party.  The Duffers responded that they will produce the original pitch materials that were submitted to Netflix in connection with Stranger Things.  On our call, you stated that an agent representing the Duffers in or around 2014 handled submissions

David Grossman
Safia Gray Hussain
November 12, 2021
Page 6 of 11

and that pitch materials may have been submitted to one other company. With the exception of that one company, you stated that you are not aware of any other submissions because Stranger Things was not a finished product yet.

**Request No. 13** asks the Duffers to produce any and all documents that relate to scripts for any episode in season one of Stranger Things. The Duffers responded that they will produce original pitch materials that were submitted to Netflix in connection with Stranger Things, along with the script for the pilot episode. As with Request No. 10 to Netflix, which asks Netflix to produce documents related to the script for the pilot episode, Plaintiff is particularly interested in communications and notes regarding changes to the script for the pilot episode. You stated that Defendants' initial production of documents includes emails regarding the pilot episode.

**Request No. 17** asks the Duffers to produce documents that they produced in connection with the Kessler Lawsuit. We addressed this Request in our discussion regarding Request No. 16 to Netflix, wherein you stated all responsive, non-privileged documents that were produced in the Kessler Lawsuit are included in Defendants' initial production of documents.

**Request No. 22** asks the Duffers to produce any and all documents that relate to Netflix's purchase of Stranger Things. **Request No. 36** asks the Duffers to produce any and all documents that relate to contracts or agreements that they and/or Monkey Massacre Productions entered into relating to Stranger Things. As with Request Nos. 11 and 27 to Netflix, Plaintiff agreed to narrow these Requests to production of the actual agreements that the Duffers and/or Monkey Massacre Productions signed with Netflix. You stated that Netflix will produce its agreements with Matt Duffer and Ross Duffer. To the extent that Netflix has a separate agreement with Monkey Massacre Production, please produce it.

As to **Request Nos. 25, 27, 29, 31** and **33**, the Duffers have not provided responses and asserted only objections to these Requests. However, in your meet and confer letter dated October 19, 2021, you state that communications concerning "creative contributions" to Stranger Things through October 2015 and which are responsive to these Requests have already been produced. This statement is inconsistent with the fact that the Duffers have not provided responses to these Requests. On our call, you stated that the Duffers attempted to gather documents related to creative elements of Stranger Things, i.e., scripts, characters, plot, etc. With respect to what is meant by "creative contributions," you stated that it would be easier to describe what the Duffers did not produce. Please provide supplemental responses.

**Request No. 37** asks the Duffers to produce any and all documents that relate to any attempt to license, option, or otherwise exploit Stranger Things. As with Request No. 28 to Netflix, Plaintiff agrees to narrow this Request to documents related to the Duffers' realized efforts to license, option, or otherwise exploit Stranger Things.

**Request No. 38** asks the Duffers to produce any and all documents that relate to compensation that they and/or Monkey Massacre Productions received for Stranger Things. This Request may be resolved through the production of the Duffers' acquisition and writing deal

David Grossman
Safia Gray Hussain
November 12, 2021
Page 7 of 11

related to Stranger Things that they signed with Netflix. To the extent that Monkey Massacre Production has a separate agreement with Netflix, please produce the same.

**Aaron Sims ("Sims")**

I.      **Requests for Admission**

**Request for Admission No. 6** asks Sims to admit that between 2009 and 2015, he discussed revisions to the Totem screenplays with Jeffrey Kennedy. Sims' response that he discussed concept art for a potential film based on the Totem screenplays is not fully responsive to the call of this Request. On our call, you stated that it may be difficult to determine whether Sims discussed revisions to the screenplays because he is not a writer, but that you will discuss this issue further with your client. Please advise.

II.     **Interrogatories**

**Interrogatory No. 9** asks Sims to identify any and all compensation that he and/or Aaron Sims Creative ("ASC") received or will receive relating to Stranger Things. On our call, you stated that compensation received by Sims for concept art is entirely unrelated to the infringement claims in this case. Plaintiff is nevertheless entitled to the information, which will be subject to the Stipulated Protective Order entered in this case, and to arrive at his own conclusion regarding what is and what is not relevant. Please provide a supplemental response.

**Interrogatory No. 10** asks Sims to identify any and all compensation that he and/or ASC received for screenplay art that he provided to third parties from 2008 to present. Plaintifff agreed to withdraw this Interrogatory.

**Interrogatory No. 12** asks Sims to describe any and all actions he took to investigate Jeffrey Kennedy's claim that Stranger Things infringes on Totem. **Interrogatory No. 13** asks Sims to identify any person with whom he discussed Jeffrey Kennedy's infringement claim. As with Netflix and the Duffers, you confirmed on our call that any information responsive to these Interrogatories is protected by the attorney-client privilege and/or the attorney work-product doctrine.

**Interrogatory No. 15** asks Sims to identify any and all persons with knowledge or information relevant to Plaintiff's claims in this lawsuit and Defendants' responses and affirmative defenses to those claims. Sims' response that the Duffers have information relating to the creation of Stranger Things is not fully responsive to the call of this Interrogatory. On our call, you stated that you would consider amending this response. Please advise.

In response to **Interrogatory Nos. 1, 3, 4, 5, 6, 7, 8**, and **14**, Sims referred Plaintiff to documents produced in response to certain Requests pursuant to Federal Rule of Civil Procedure 33(d). As noted above, Sims' responses do not comply with Rule 33(d) which requires a party to specify the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify the records as readily as the responding party could. You acknowledged that

David Grossman
Safia Gray Hussain
November 12, 2021
Page 8 of 11

you could review your clients' production of documents to procure this information.  Please do so in accordance with Rule 33(d).

## III.   Requests for Production of Documents

**Request Nos. 5, 7, 9, 11**, and **15** ask Sims to produce his communications with the Duffers, Netflix, 21 Laps, and ASC related to Stranger Things.  **Request No. 17** asks Sims to produce documents that relate to any work he and/or ASC performed in connection with the creation and development of the artwork and visual effects for Stranger Things.  In response, Sims agreed to produce responsive non-privileged communications and documents concerning "creative contributions" to Stranger Things through October 2015.  With respect to what is meant by "creative contributions," you stated that it would be easier to describe what Sims did not produce.

**Request No. 19** asks Sims to produce any and all documents related to any contracts or agreements that he and/or ASC entered into regarding work performed relating to Stranger Things.  Sims has not provided a response to this Request and objected, in part, on the grounds that it is overbroad and unduly burdensome and seeks production of documents that will only be produced with a protective order in place.  Plaintiff agrees to narrow this Request to contracts or agreements that Sims and/or ASC entered into with Netflix for work relating to Stranger Things.

**Request No. 21** asks Sims to produce any and all documents that relate to the compensation he and/or ASC received for their work on Stranger Things.  Sims has not provided a response to this Request and objected, in part, on the grounds that it is overbroad and unduly burdensome and seeks production of documents that will only be produced with a protective order in place.  This Request may be resolved through the production of contracts or agreements that Sims and/or ASC entered into with Netflix for work relating to Stranger Things.

**Request No. 22** asks Sims to produce any and all contracts or agreements that he and/or ASC entered into for screenplay concept art provided to third parties from 2008 to present.  Plaintiff agrees to withdraw this Request.

**Request No. 23** asks Sims to produce his appointment books, logs, and/or calendars from 2009 to 2015.  Plaintiff agreed to narrow this Request to appointment records for Sims' meetings with Jeffrey Kennedy and/or any of the Defendants in this lawsuit.  You stated that you would discuss this issue with your client.  Please advise.

## 21 Laps, Inc. ("21 Laps")

## I.   Requests for Admission

**Request for Admission No. 1** asks 21 Laps to admit that it received information related to the Totem works prior to the release of Stranger Things.  21 Laps' response denying that it received any of the Totem works prior to the creation of Stranger Things is not fully responsive to the call of this Request.  On our call, you stated that 21 Laps can respond further if we agree to limit the

David Grossman
Safia Gray Hussain
November 12, 2021
Page 9 of 11

scope of the Request to season 1 of Stranger Things, which Plaintiff hereby agrees to do.  Please provide a supplemental response.

## II.    <u>Interrogatories</u>

With regard to 21 Laps' responses to **Interrogatory Nos. 1** and **2**, wherein it identified Shawn Levy, Dan Cohen, and Emily Morris as persons involved in and with knowledge of the creation and development of Stranger Things, you stated on our call that Dan Cohen is Shawn Levy's partner and that Emily Morris played less of a role in the production of Stranger Things.

In response to **Interrogatory No. 4**, 21 Laps referred Plaintiff to documents produced in response to Request Nos. 1 and 2 pursuant to Federal Rule of Civil Procedure 33(d).  As noted above, 21 Laps' response does not comply with Rule 33(d).  You acknowledged that you could review your clients' production of documents to procure this information.  Please do so in accordance with Rule 33(d).

**Interrogatory No. 5** asks 21 Laps to identify any and all compensation it has received related to Stranger Things.  **Interrogatory No. 6** asks 21 Laps to identify any and all compensation it has provided to the Defendants and/or Monkey Massacre Productions related to Stranger Things. You stated that any such compensation that 21 Laps has received or provided for work on Stranger Things is not relevant to this lawsuit.

**Interrogatory No. 8** asks 21 Laps to identify all persons who have analyzed the similarity, or lack of similarity, between the Totem works and Stranger Things.  **Interrogatory No. 9** asks 21 Laps to describe any and all actions that it took to investigate Plaintiff's infringement claims. On our call, you stated that the only responsive information that 21 Laps has is protected by the attorney-client privilege and/or attorney work-product doctrine.

**Interrogatory No. 10** asks 21 Laps to identify all persons who have knowledge or information related to Defendants' Answer to the First Amended Complaint in this action.  You stated that 21 Laps only has knowledge and information about said facts, claims, and defenses as a result of being named as a party to this lawsuit, i.e., it does not have any independent knowledge.

**Interrogatory No. 11** asks 21 Laps to state the production budget for each season of Stranger Things.  21 Laps asserted only objections to this Interrogatory.  The production budgets are clearly relevant to Defendants' profits and Plaintiff's damages because they are a component of Defendants' costs to produce the Stranger Things series.  While Plaintiff presumes that the production budget for Stranger Things season 1 will be included in the cost summary that Netflix agreed to provide, Plaintiff is entitled to the production budgets for seasons 2, 3, and 4 as well. Please provide a supplemental response.

## III.    <u>Requests for Production of Documents</u>

In response to **Request Nos. 1, 2, 6,** and **9**, 21 Laps agreed to produce documents concerning its "creative contributions" to Stranger Things through October 2015.  21 Laps has not

David Grossman
Safia Gray Hussain
November 12, 2021
Page 10 of 11

provided a response to Request No. 23, which seeks any and all communications between any of 21 Laps' employees, agents, or contractors that relate to Stranger Things.  On our call, you stated that these Requests are overbroad and unduly burdensome particularly because most of the work performed by 21 Laps is not related to what is shown on the screen.

**Request No. 13** asks 21 Laps to produce any and all documents that relate to any "look book" or "pitch book" that the Duffers created for Stranger Things.  **Request No. 14** asks 21 Laps to produce any and all documents that relate to any sizzle reel that the Duffers created for Stranger Things.  We addressed these issues in connection with our discussion regarding Request Nos. 9 and 10 to the Duffers, wherein you stated that the original pitch materials, i.e., trailer, look book, and sizzle real, and communications relating to the same have already been produced.

**Request No. 21** asks 21 Laps to produce any and all of its communications with Netflix related to Stranger Things.  21 Laps has not provided a response to this Request, however, in your meet and confer letter dated October 21, 2021, you state that Defendants have already produced communications concerning "creative contributions" to Stranger Things and that Plaintiff has not articulated the relevance of other communications between 21 Laps and Netflix.  These statements are inconsistent with the fact that 21 Laps has not provided a response to this Request.  Please provide a supplemental response.

**Request No. 25** asks 21 Laps to produce any and documents that relate to contracts or agreements that it entered into relating to Stranger Things.  On our call, I stated that Plaintiff seeks production of only the contracts themselves.  You stated that 21 Laps may have contracts for Shawn Levy's services and/or production services, but that they would not be produced because they are not relevant to this lawsuit as 21 Laps did not create the elements of Stranger Things.

**Request No. 26** asks 21 Laps to produce any and all documents that relate to any attempt to license, option, or otherwise exploit Stranger Things.  As with Request No. 28 to Netflix, Plaintiff agrees to narrow this Request to documents related to 21 Laps' realized efforts to license, option, or otherwise exploit Stranger Things.

**Request No. 27** asks 21 Laps to produce any and all documents that relate to the production budgets for each season of Stranger Things.  21 Laps asserts only objections to this Request.  As noted above, the production budgets are clearly relevant to Defendants' profits and Plaintiff's damages because they are a component of Defendants' costs to produce each season of the Stranger Things series.  Please produce supplemental documents responsive to this Request.

Please let me know if anything contained in this letter does not accurately reflect our meet and confer call on October 28, 2021.  Furthermore, please provide supplemental discovery responses and a supplemental production of documents, as each is warranted herein, no later than **December 17, 2021**.

David Grossman
Safia Gray Hussain
November 12, 2021
Page 11 of 11

Thank you in advance for your professional cooperation.

Sincerely,
BOREN, OSHER & LUFTMAN, LLP

Jeremy J. Osher

**EXHIBIT K**

| From: | David Grossman |
|---|---|
| To: | Jeremy J. Osher |
| Cc: | Safia Gray Hussain; Aaron M. Gladstein; Matthew Tom |
| Subject: | RE: IRE / Proposed Special Interrogatories re: "Impact Value" |
| Date: | Tuesday, November 30, 2021 5:56:11 PM |

Hi Jeremy,

On the rogs, 17 and 18 are generally consistent with what we had proposed, which is that there would be two rogs asking Netflix to (a) state the impact value and (b) describe how that value was arrived at.  We are proposing that as it relates to Season 1, so we have the same issue as with other discovery requests on that front.  So if you modify it to relate solely to Season 1, we would be OK with those two rogs.

The third interrogatory was not something we proposed and would get into more general discovery regarding underlying data and documents that we are not proposing be part of the resolution of this discovery dispute.

Just to reiterate, we would be willing to provide the response in less than 30 days, so if you can get the rogs out this week, we would try to get it to you in three weeks so that you have it before the holiday break.  And the proposal would be to resolve the damages discovery issues by providing the costs for season 1, the consumer products summary information, the Duffers' initial deal with Netflix, and the impact value info.

On Kennedy, that extension to Friday of this week is fine.  Thanks.

David Grossman
Loeb & Loeb LLP
10100 Santa Monica Blvd. Suite 2200
Los Angeles, CA 90067
Tel: 310.282.2077

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify the sender. Please destroy the original transmission and its attachments without reading or saving in any manner. Thank you, Loeb & Loeb LLP.

**From:** Jeremy J. Osher <josher@bollaw.com>
**Sent:** Tuesday, November 30, 2021 4:52 PM
**To:** David Grossman <dgrossman@loeb.com>
**Cc:** Safia Gray Hussain <sghussain@loeb.com>; Aaron M. Gladstein <agladstein@bollaw.com>;

Matthew Tom <mtom@bollaw.com>; Jeremy J. Osher <josher@bollaw.com>
**Subject:** RE: IRE / Proposed Special Interrogatories re: "Impact Value"

Hello David-

2 things.

First, can you let me know your thoughts on my email below.

Second, an we have until Friday for the response to the Kennedy subpoena?

Thanks,

Jeremy J. Osher, Esq.
Boren, Osher & Luftman, LLP
222 N. Pacific Coast Highway, Suite 2222
El Segundo, California 90245
Telephone: (310) 322-2021 ext. 225
email: josher@bollaw.com
web:  www.bollaw.com

*This message and any attached documents contain information from the law firm of Boren, Osher & Luftman, LLP that may be confidential and/or privileged.  If you are not the intended recipient, you may not read, copy, distribute, or use this information.  If you have received this transmission in error, please notify the sender immediately by reply email and then delete this message.*

---

**From:** Jeremy J. Osher
**Sent:** Monday, November 29, 2021 10:58 AM
**To:** 'David Grossman' <dgrossman@loeb.com>
**Cc:** Jeremy J. Osher <josher@bollaw.com>; Safia Gray Hussain <sghussain@loeb.com>; Aaron M. Gladstein <agladstein@bollaw.com>; Matthew Tom <mtom@bollaw.com>
**Subject:** IRE / Proposed Special Interrogatories re: "Impact Value"

Hello David-

Hope you had a great Thanksgiving holiday. I did. Low key family affair.

I got your voicemail about propounding interrogatories regarding "impact value". Before I send them out, I wanted to preview them with you to determine whether they are objectionable and resolve any issues on the front end. Here is what we are thinking:

**SPECIAL INTERROGATORY NO. 17:**

STATE the "impact value" for each season of STRANGER THINGS as determined by

YOU and/or NETFLIX STREAMING.

**SPECIAL INTERROGATORY NO. 18:**

With respect to YOUR response to Special Interrogatory No. 17, DESCRIBE the

calculation and/or methodology used to determine the "impact value" for each season of STRANGER THINGS.

**SPECIAL INTERROGATORY NO. 19:**

With respect to YOUR response to Special Interrogatory Nos. 17 and 18, IDENTIFY all DOCUMENTS YOU and/or NETFLIX STREAMING utilized and/or reviewed to determine the "impact value" for each season of STRANGER THINGS.

Happy to discuss.

Jeremy J. Osher, Esq.
Boren, Osher & Luftman, LLP
222 N. Pacific Coast Highway, Suite 2222
El Segundo, California 90245
Telephone: (310) 322-2021 ext. 225
email: josher@bollaw.com
web:   www.bollaw.com

*This message and any attached documents contain information from the law firm of Boren, Osher & Luftman, LLP that may be confidential and/or privileged.  If you are not the intended recipient, you may not read, copy, distribute, or use this information.  If you have received this transmission in error, please notify the sender immediately by reply email and then delete this message.*

**EXHIBIT L**



January 3, 2022

**VIA ELECTRONIC TRANSMISSION**

David Grossman
Safia Gray Hussain
Loeb & Loeb LLP
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA 90067

E-mail: dgrossman@loeb.com
E-mail: sghussain@loeb.com

       Re:    ***Irish Rover Ent., LLC v. Aaron Sims et al.***
               *Case No: 2:20-cv-06293-CBM-PLA*

Dear Counsel,

We are in receipt of the supplemental and amended discovery responses dated December 17, 2021 on behalf of your clients Netflix, Inc., Matt Duffer, Ross Duffer, Aaron Sims, and 21 Laps, Inc. (collectively, "Defendants").

Although Defendants provided supplemental and amended responses as to the Interrogatories, Set One ("Interrogatories") and Requests for Admission, Set One ("RFA"), Defendants failed to provide any supplemental or amended responses as to the Requests for Production of Documents, Set One ("Requests") despite the Requests being a primary topic of our prior meet and confer discussions. During our meet and confer, you agreed to supplement your clients' document production in various ways, including producing the production budget (for at least season 1), the Duffers and/or Monkey Massacre's agreement(s) with Netflix, and a summary of the revenue derived from Stranger Things licensing deals. We have yet to receive these documents. Moreover, you agreed to discuss with Aaron Sims whether he has any additional communications given there are significant gaps in time for the emails he did produce.

The purpose of this communication is to address certain deficiencies in the responses in the hopes that we can reasonably procure further code-compliant responses from your clients without the need for judicial intervention. This letter also follows up on the agreements that we reached during our meet and confer call on October 28, 2021 as memorialized in our letter to you dated November 12, 2021.

/ / /

/ / /

David Grossman
Safia Gray Hussain
January 3, 2022
Page 2 of 6

## October 2015 Discovery Cut-Off

### Netflix, Inc. & Netflix Streaming Services, Inc. ("Netflix")

As to **Request Nos. 1, 2, 6, 9, 19, 23,** and **25**, Netflix unilaterally limited its production of documents through October 2015. During our meet and confer call, you stated that Netflix limited its production because principal photography for Stranger Things started in October 2015. However, as you are aware, the First Amended Complaint alleges that various protected elements from the copyrighted Totem screenplays and concept art appeared throughout all three (3) seasons of the Stranger Thing series. The scope of these Requests therefore covers the entire Stranger Things series and the unilateral October 2015 limitation by Netflix is not acceptable. Respectfully, we are not required to prove infringement or to identify protected elements in order to obtain these documents.

As Netflix did not provide any supplemental or amended responses to the Requests, please let us know if additional responses are forthcoming. If Netflix intends to stand by its responses as submitted, we intend to seek the Court's assistance through a motion to compel.

### Matt Duffer & Ross Duffer ("Duffers")

As to **Request No. 2** seeking communications between the Duffers relating to the creation and development of Stranger Things, the Duffers asserted objections only without providing a substantive response. During our meet and confer call, you stated that responsive communications through October 2015 have already been produced. This statement is inconsistent with the fact that the Duffers responded to this Request with objections only. Furthermore, the October 2015 limitation is not acceptable.

As to **Request Nos. 25, 27, 29, 31,** and **33**, the Duffers asserted objections only without providing substantive responses. However, in your meet and confer letter dated October 19, 2021, you stated that communications concerning "creative contributions" to Stranger Things through October 2015 and which are responsive to these Requests have already been produced. This statement is inconsistent with the fact that the Duffers responded to these Requests with objections only. Furthermore, the October 2015 limitation is not acceptable.

As the Duffers did not provide any supplemental or amended responses to the Requests, please let us know if additional responses are forthcoming. If the Duffers intend to stand by their responses as submitted, we intend to seek the Court's assistance through a motion to compel.

### Aaron Sims ("Sims")

As to **Request Nos. 5, 7, 9, 11, 15,** and **17**, Sims unilaterally limited his production of documents through October 2015. Such limitation is not acceptable. As Sims did not provide any supplemental or amended responses to the Requests, please let us know if additional responses are forthcoming. If Sims intends to stand by his responses as submitted, we intend to seek the Court's assistance through a motion to compel.

David Grossman
Safia Gray Hussain
January 3, 2022
Page 3 of 6

<u>21 Laps, Inc.</u>

As to **Request Nos. 1, 2, 6,** and **9**, 21 Laps unilaterally limited its production of documents through October 2015. Such limitation is not acceptable. As 21 Laps did not provide any supplemental or amended responses to the Requests, please let us know if additional responses are forthcoming. If 21 Laps intends to stand by its responses as submitted, we intend to seek the Court's assistance through a motion to compel.

**<u>Agreements between Netflix, Duffers, and Sims</u>**

<u>Netflix</u>

**Interrogatory No. 6** asks Netflix to identify compensation that it has provided to any of the Defendants and/or Monkey Massacre Productions related to Stranger Things. In response, Netflix asserted objections only without providing a substantive response. However, during our meet and confer call, you stated Netflix would produce the agreement(s) memorializing the Duffers' acquisition and writing deal that they signed with Netflix relating to Stranger Things.

**Request No. 11** asks Netflix to produce documents related to its purchase of Stranger Things, including agreements that Netflix signed with the Duffers and/or Monkey Massacre Productions. Similarly, **Request No. 27** asks Netflix to produce all documents related to contracts or agreements that it entered into related to Stranger Things. During our meet and confer call, we agreed to narrow these requests to the production of the actual agreements that Netflix signed with the Duffers and/or Monkey Massacre Productions. Furthermore, you stated that Netflix would produce its agreements with the Duffers.

Netflix did not provide a supplemental response to Interrogatory No. 6 or any additional responses to the Requests. Nor did Netflix produce its agreement(s) with the Duffers despite your representation that it would. Accordingly, please let us know if additional responses and/or documents are forthcoming. If Netflix intends to stand by its response as submitted, we intend to seek the Court's assistance through a motion to compel.

<u>Duffers</u>

**Interrogatory No. 10** asks the Duffers to identify compensation that they and/or Monkey Massacre Productions received related to Stranger Things. In response, the Duffers asserted objections only. We agreed to narrow this interrogatory such that the Duffers may identify only the compensation that they received from their acquisition and writing deal that they signed with Netflix.

**Request No. 22** asks the Duffers to produce documents related to Netflix's purchase of Stranger Things. **Request No. 36** asks the Duffers to produce documents related to contracts or agreements that they and/or Monkey Massacre Productions entered into relating to Stranger Things. **Request No. 38** asks the Duffers to produce documents related to compensation that they and/or Monkey Massacre Productions received for Stranger Things. In response, the Duffers

David Grossman
Safia Gray Hussain
January 3, 2022
Page 4 of 6

asserted objections only.  We agreed that these requests may be resolved through the production
of the agreement(s) memorializing the Duffers' acquisition and writing deal that they signed with
Netflix relating to Stranger Things.

The Duffers did not provide a supplemental response to Interrogatory No. 10 or any
additional responses to the Requests.  Nor did the Duffers produce their agreement(s) with Netflix.
Accordingly, please let us know if additional responses and/or documents are forthcoming.  If the
Duffers intend to stand by their responses as submitted, we intend to seek the Court's assistance
through a motion to compel.

<u>Sims</u>

**Interrogatory No. 9** asks Sims to identify any and all compensation that he and/or Aaron
Sims Creative ("ASC") received or will receive relating to Stranger Things.  Although you stated
that the compensation Sims received for concept art is unrelated to the infringement claims in this
case, Plaintiff is nevertheless entitled to the information, which will be subject to the Stipulated
Protective Order, and to arrive at his own conclusion regarding relevance.  As Sims did not provide
a supplemental response to Interrogatory No. 9, please let us know if Sims intends to stand by his
response as submitted.

**Request No. 19** asks Sims to produce documents related to any contracts or agreements
that he and/or ASC entered into regarding work performed relating to Stranger Things.   **Request
No. 21** asks Sims to produce documents related to compensation he and/or ASC received for their
work on Stranger Things.  In response, Sims asserted objections only.  We agreed to narrow these
requests such that they may be resolved through the production of contracts and/or agreements that
Sims and/or ASC entered into with Netflix for work relating to Stranger Things.

**Request No. 23** asks Sims to produce his appointment books, logs, and/or calendars from
2009 to 2015.  We agreed to narrow this request such that it may be resolved through the
production of appointment records for Sims' meetings with Jeffrey Kennedy and/or any of the
Defendants in this lawsuit.  During our call, you stated that you would discuss this issue with your
client.

As Sims did not provide any additional documents or responses to the Requests, please let
us know if Sims intends to stand by his responses as submitted.  If so, we intend to seek the Court's
assistance through a motion to compel.

**<u>Stranger Things, Season 1 Discovery Cut-Off</u>**

<u>Netflix</u>

**Interrogatory No. 13** asks Netflix to state all costs it incurred associated with the
streaming of Stranger Things.  Similarly, **Interrogatory No. 14** asks Netflix to state the production
budget for each season of Stranger Things and **Interrogatory No. 16** asks Netflix to describe any
quantifications of its streaming traffic that is attributable to Stranger Things.  In its supplemental

David Grossman
Safia Gray Hussain
January 3, 2022
Page 5 of 6

responses, Netflix unilaterally limited the scope of information to be provided to only season 1 of Stranger Things.  The First Amended Complaint alleges that various protected elements from the copyrighted Totem screenplays and concept art appeared throughout all three (3) seasons of the Stranger Thing series.  Accordingly, it is improper for Netflix to limit its responses to only season 1.  If Netflix intends to stand by its supplemental responses as submitted, we intend to seek the Court's assistance through a motion to compel.

**Request No. 29** asks Netflix to produce documents related to the production budget for each season of Stranger Things.  **Request No. 32** asks Netflix to produce documents related to the costs it has incurred associated with the streaming of Stranger Things.  In response, Netflix agreed to produce documents sufficient to show production costs but unilaterally limited its production to season 1 of Stranger Things.  As an initial matter, we still have not received the production budget for season 1 despite your agreement to produce same. Moreover, for the reasons set forth above, it is improper for Netflix to limit its production of responsive documents to only season 1.

As Netflix did not provide any supplemental or amended responses to the Requests, please let us know if additional responses are forthcoming. If Netflix intends to stand by its responses as submitted, we intend to seek the Court's assistance through a motion to compel.

<u>21 Laps</u>

**Interrogatory No. 11** asks 21 Laps to state the production budget for each season of Stranger Things.  In its supplemental response, 21 Laps refers only to the production budget for season 1.  For the reasons set forth above, it is improper for 21 Laps to limits its response to only season 1.  If 21 Laps intends to stand by its supplemental response as submitted, we intend to seek the Court's assistance through a motion to compel.

## Licensing Agreements & Realized Efforts to Exploit Stranger Things

**Request No. 28** asks Netflix to produce documents related to any attempt to license, option, or otherwise exploit Stranger Things.  **Request No. 37** to the Duffers and **Request No. 26** to 21 Laps seek the same information. We agreed to narrow these requests to documents related to realized efforts to license, option, or exploit Stranger Things.  Although you stated that you would look into Netflix's consumer products licensing and provide supplemental documents of the same, no additional responses or documents have been provided.  Please let us know if additional responses and documents are forthcoming.  If not, we intend to seek the Court's assistance through a motion to compel.

## Stranger Things Scripts

With respect to the scripts included in Defendants' initial production of documents, there is no indication as to whether any of them are the final "shooting" scripts.  Moreover, Defendants have not provided any scripts for seasons 2 or 3.  These documents are clearly responsive to **Request Nos. 1** and **2** to Netflix, which seek all documents relating to the creation and

David Grossman
Safia Gray Hussain
January 3, 2022
Page 6 of 6

development of Stranger Things and Netflix's involvement therein, as well as **Request No. 1** to
the Duffers, which seek all documents relating to the creation and development of Stranger Things.

   Please let us know whether your clients' production includes the final "shooting" scripts
for season 1 (and identify the production numbers for these documents). If they were not included
in the production, we trust that you will have no objection to producing the final "shooting"
scripts for at least season 1. If Netflix or the Duffers are not willing to produce the final
"shooting" scripts for all episodes in seasons 1, 2, and 3, we will need to seek the Court's
assistance through a motion to compel.

   Once you have a chance to review this letter, please do let me know if you would like to
further meet and confer regarding these specific issues.  Thank you in advance for your
professional cooperation.

      Sincerely,
      BOREN, OSHER & LUFTMAN, LLP

      Jeremy J. Osher

**EXHIBIT M**



# BOREN OSHER & LUFTMAN LLP

January 7, 2022

**VIA ELECTRONIC MAIL**

David Grossman
Safia Gray Hussain
Loeb & Loeb LLP
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA 90067

E-mail: dgrossman@loeb.com
E-mail: sghussain@loeb.com

> Re:   ***Irish Rover Ent., LLC v. Aaron Sims et al.***
> *Case No: 2:20-cv-06293-CBM-PLA*

Dear Counsel,

We write in response to your letter dated January 5, 2022 regarding the parties' dispute as to damages discovery.

As an initial matter, we disagree with your statement that "all of Plaintiff's requests regarding alleged 'damages' information are an attempt to improperly burden Defendants". Plaintiff filed a copyright infringement action against your clients. In furtherance of our client's claims, we need discovery to quantify the damages to which our client is entitled if it prevails on its claims. We previously propounded written discovery that was designed to elicit information and documents for purposes of calculating damages. Now we are engaged in a meet and confer to try and resolve disputes that we have regarding your clients' responses and production. We do not see anything improper about how we are conducting ourselves in the discovery process. We certainly recognize that you and your clients have strong feelings about the merits of this case (as you have made clear in many of your communications to date). But that is not a legitimate basis for limiting our rights to take discovery.

You are correct that in response to our initial round of discovery, you proposed a compromise in an effort to streamline the damages discovery process. More specifically, you proposed providing budget/production cost information for Season 1, a summary of revenue derived from licensing (consumer products information), the Duffers' deal with Netflix, and the "impact value" for Season 1. However, we did not agree to accept this limited information in lieu of all damages discovery to which Plaintiff is entitled. Rather, during our October 28, 2021 conference, you proposed this framework, and we indicated that we would need to review the information/documentation provided and then evaluate—with the assistance of our damages expert—whether the information and documentation provided was sufficient for purposes of



David Grossman
Safia Gray Hussain
January 7, 2022
Page 2 of 4

calculating damages.[1] We certainly did not suggest that we would—or could—accept any proposal
before actually seeing the impact value information, production cost/budget info, Duffers' initial
deal, and consumer products summary information.

In response to our Second set of Interrogatories, your clients provided an "impact value"
figure (Interrogatory No. 17) and a cursory explanation of how that figure was calculated
(Interrogatory No. 18). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Quite frankly, it is difficult to
determine whether "impact value" is an appropriate measure for purposes of calculating damages
and, based on your clients' explanation, we have no way of knowing how this figure was even
calculated. We discussed your clients' responses with our damages expert, who has the same
concerns. It is for this reason we sent you our December 30, 2021 letter, in which we asked you
for further information regarding the impact value calculation and a statement from Netflix's
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

We do not believe that the requests set forth in our letter are unreasonable, particularly
where you are proposing to streamline and limit your clients' responses and document production
in exchange for our client's agreement that your proposal "resolves all written discovery damages
issues and disputes." Notably, we have not been provided with the cost/budget information,
consumer products summary information, or the Duffers' initial deal that was part of your
proposal. We cannot possibly agree to waive our client's discovery rights in exchange for
information and documents that may or may not have the information we need to properly evaluate
and calculate damages. This is particularly true where your clients are unwilling to make a
representation that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

It appears that the parties have reached an impasse with regard to "impact value" discovery
sought through **Interrogatory Nos. 17** and **18**. In addition to failing to provide data for Seasons 2
and 3 (addressed below), Plaintiff has no way of determining whether "impact value" can be used
in, or is even relevant to, its damages analysis. As Netflix makes clear in its responses, this ▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

However, even if Netflix were to provide metrics for streaming hours, this data would not be
sufficient to evaluate Netflix's internal calculations and analysis. Without this backup data, Netflix
is (intentionally so) making it impossible for Plaintiff's experts to properly evaluate Netflix's profit
derived from Stranger Things. It appears that Netflix is being intentionally vague and ambiguous
by asserting that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Accordingly, and in light of the fact that it was Netflix's proposal to
provide "impact value" data as part of a global resolution to damages discovery issues, Plaintiff
reasonably proposed that Netflix provide a sworn statement that ▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[1] Indeed, in your January 5 letter, you identify this as "Netflix's proposal"; not the parties'
agreement.



David Grossman
Safia Gray Hussain
January 7, 2022
Page 3 of 4

███████████████████████████████████████████ Given that Netflix appears to have
no interest in Plaintiff's proposal to resolve the dispute over **Interrogatory Nos. 17** and **18**,
Plaintiff intends to seek the Court's assistance through a motion to compel.

It also appears we will not be able to resolve our dispute as to Netflix's unfounded decision
to limit discovery—including damages discovery—to Season 1. As Plaintiff has made clear
throughout the meet and confer process, this limitation is unacceptable. Defendants' position that
Plaintiff must identify infringing elements that did not appear in and were not referenced in Season
1 in order to obtain discovery related to Seasons 2 and 3, is without merit. There is no law to
support this position, nor have you provided any despite previous discussions on this topic. Your
position appears to be that our client must prove copyright infringement before it is entitled to
discovery (including damages discovery) regarding Seasons 2 and 3. We disagree. This
information is relevant to the claims our client has asserted in this action with respect to all three
(3) seasons of Stranger Things and thus there is no basis for your clients to withhold this
information.  Similarly, and for the same reason, Defendants' position that it may unilaterally and
arbitrarily halt the scope of discovery at October 2015—the purported start of principal
photography for Season 1—is without merit. Given that the parties have made no progress in
resolving these global issues informally, Plaintiff intends to seek the Court's assistance through a
motion to compel.[2]

Plaintiff's final proposal to avoid immediate motion practice is for Netflix to provide the
following information no later than **January 13, 2022**: (1) production costs for all seasons of
Stranger Things; (2) consumer products information relating to the Stranger Things series; (3) the
Duffers' deal with Netflix; and (4) "impact value" for Seasons 2 and 3. Furthermore, as Plaintiff
has no way to determine whether the "impact value" data is relevant to its damages analysis,
Plaintiff also requires a sworn statement that this information is, in fact, Netflix's ███████████
███████████████████████ To be clear, this proposal is not offered as a global resolution
of all pending damages discovery disputes. However, this information, to which Plaintiff is
undoubtedly entitled, will allow Plaintiff to further analyze its damages and determine whether
additional information will be needed.

/ / /

/ / /

/ / /

---

[2] Plaintiff's motion(s) to compel will address the following interrogatories and requests:

- Netflix – Interrogatory Nos. 5, 6, 13, 14, 15, 16, 17, 18; Request Nos. 1, 2, 6, 9, 10, 11, 15, 19,
  23, 25, 27, 28, 29, 32
- Duffers – Interrogatory No. 10; Request Nos. 1, 2, 22, 25, 27, 29, 31, 33, 36, 37, 38
- Sims – Interrogatory No. 9; Request Nos. 5, 7, 9, 11, 15, 17, 19, 21, 23
- 21 Laps – Interrogatory Nos. 11; Request Nos. 1, 2, 6, 9, 21, 26, 27

David Grossman
Safia Gray Hussain
January 7, 2022
Page 4 of 4

Once you have a chance to review this letter, please do let me know if you would like to further meet and confer regarding these specific issues. Thank you in advance for your professional cooperation.

Sincerely,
BOREN, OSHER & LUFTMAN, LLP

Jeremy J. Osher



**EXHIBIT N**



**DAVID GROSSMAN**
Partner and Deputy Chair,
Litigation

10100 Santa Monica Blvd.
Suite 2200
Los Angeles, CA  90067

**Direct**  310.282.2077
**Main**  310.282.2000
**Fax**  310.919.3943
dgrossman@loeb.com

Via E-mail

January 10, 2022

Jeremy J. Osher, Esq.
Boren, Osher & Luftman LLP
222 N. Pacific Coast Highway, Suite 2200
El Segundo, CA 90245

Re:   _Irish Rover Ent., LLC v. Aaron Sims, et al._, Case No. 2:20-cv-06293-CBM-PLA

Dear Counsel:

We write in response to Plaintiff's letter dated January 3, 2022 regarding defendants Netflix, Inc. ("Netflix"), Matt Duffer, Ross Duffer, Aaron Sims, and 21 Laps, Inc.'s ("21 Laps") (collectively, "Defendants") supplemental responses to Plaintiff's First Set of Interrogatories (the "Interrogatories") and amended responses to Plaintiff's First Set of Requests for Admission (the "RFAs"), served on December 17, 2021.

Although Plaintiff appears to be requesting that certain defendants supplement their discovery responses to indicate that no further documents have been identified or produced, Defendants do not believe they are required to do so, and Plaintiff itself did not provide such supplemental discovery responses after meeting and conferring and asserting that no additional responsive documents exist.

Finally, the issue of Plaintiff's contention that there are "significant gaps in time" for Aaron Sims' emails was addressed during the parties' October 28, 2021 meet and confer call.  Defendants have identified, by Bates number, documents produced by Defendants within this so-called "gap[] in time", and Defendants have also explained that, considering when Sims ceased working on concept art for _Totem_ and when he began working on concept art for _Stranger Things_, it was not unexpected that Sims would not have a significant number of (if any) relevant emails during this period.  Regardless, we have verified with Sims that, with one limited exception discussed further below, all relevant communications and documents responsive to Plaintiff's requests that fall within the scope of Defendants' agreements to produce have been collected and produced.

**I.      Defendants' Production of Documents Relating to the Creation of the Series Through October 2015**

As you acknowledge, Plaintiff has now repeatedly been advised that Defendants, including the Duffers, already have produced communications concerning creative contributions to _Stranger Things_ through October 2015 that are responsive to Plaintiff's document requests.  _See also_ Oct. 19, 2021 Ltr. from S. Hussain to J. Osher.  A review of Defendants' substantial September 30, 2021 production would confirm as much.  To the extent that Plaintiff nonetheless implies that it

For the United States offices, a limited liability partnership including professional corporations. For Hong Kong office, a limited liability partnership.

21677424.1
231804-10002



intends to move to compel documents that were produced by Defendants more than three months ago, Defendants reserve the right to, and will seek sanctions in connection with, any such motion.

While Defendants have limited their production of documents to those concerning Season 1 of *Stranger Things*, Defendants have repeatedly invited Plaintiff to identify the allegedly infringing elements that did not appear in and were not referenced in Season 1 so that Defendants may consider Plaintiff's requests further. Despite Plaintiff's agreement, as part of the meet and confer process, to provide specific information regarding what elements of Plaintiff's work, if any, were supposedly "infringed" in Seasons 2 and 3 of *Stranger Things*, Plaintiff has failed and refused to do so. Instead, Plaintiff now appears to have retracted that agreement, stating for the first time that it has no obligation "to prove infringement or to identify allegedly protected elements[.]" That is not what Defendants requested. Plaintiff's retraction of its prior agreement (while concurrently making burdensome demands from Defendants) is a violation of its obligation to meet and confer in good faith, and Plaintiff's inability to identify allegedly infringed protected elements from Seasons 2 and 3 of the Series undermines Plaintiff's claimed relevance for additional discovery post-dating October 2015.

Nevertheless, in a continuing effort to meet and confer in good faith and resolve the parties' dispute with respect to Request Nos. 1, 2, 6, 9, 19, 23 and 25 to Netflix; Nos. 2, 25, 27, 29, 31 and 33 to the Duffers; Nos. 5, 7, 9, 11, 15 and 17 to Sims; and Nos. 1, 2, 6 and 9 to 21 Laps, if Plaintiff is able to identify unique elements in Seasons 2 and 3 of the Series, Defendants remain willing to consider Plaintiff's requests further.

## II.     Defendants' Provision of Costs and Other Documents Concerning Seasons 2 and 3

Again, Plaintiff's demand for documents and information concerning the costs, production budget, and streaming traffic quantifications for Seasons 2 and 3 of *Stranger Things*, while concurrently refusing to abide by its agreement, as part of the meet and confer process, to provide specific information regarding what elements of Plaintiff's work, if any, were supposedly "infringed" in these later seasons, is not well-taken. We thus refer Plaintiff to Defendants' position stated above in Section I. If Plaintiff is willing to reconsider its retraction of its prior representation and is able to identify unique elements in Seasons 2 and 3 of the Series, Defendants will further consider Interrogatories Nos. 13, 14 and 16 to Netflix, RFP Nos. 29 and 32 to Netflix, and Interrogatory No. 11 to 21 Laps.

## III.     Compensation and Licensing Agreements

While it is correct that the parties discussed the production of the Duffers' initial agreement with Netflix in response to Interrogatory No. 6 and RFP Nos. 11 and 27 to Netflix and Interrogatory No. 10 and RFP Nos. 22, 36 and 38 to the Duffers, as well as the consumer products summary information in response to RFP No. 28 to Netflix, No. 37 to the Duffers, and No. 26 to 21 Laps during the parties' October 28 meet and confer call, this information was offered as part of Defendants' attempt to reach resolution of all outstanding disputes concerning damages discovery. Thus, on November 30, 2021, we explained that "the proposal would be to resolve the damages discovery issues by providing the costs for season 1, the consumer products summary information, the Duffers' initial deal with Netflix, and the impact value info." Nov. 30, 2021 Email from D. Grossman to J. Osher. However, as evidenced by Plaintiff's December 30, 2021 letter and our January 5, 2022 response thereto, the parties are still meeting and conferring on the



damages issues.  As set forth in our January 5 letter, Defendants agreed to amend their prior proposal to provide: (1) the costs for Season 1, (2) the consumer products summary information, (3) the Duffers' initial deal with Netflix, and (4) the number of hours streamed by U.S. subscribers of Season 1 of *Stranger Things* and the corresponding total numbers of hours streamed by U.S. subscribers.

With respect to Sims' compensation and agreements with Netflix relating to *Stranger Things* in response to Interrogatory No. 9 and RFP Nos. 19 and 21 to Sims, we already represented during the parties' October 28 meet and confer call that Sims' compensation for the concept art is not tied to the profits or success of the Series.  Defendants previously invited Plaintiff to explain what relevance the requested information has to its infringement claims.  *E.g.*, Oct. 21, 2021 Ltr. from S. Hussain to J. Osher, at 2, 4.  Plaintiff has not done so, instead merely reiterating its conclusory assertions that it "is nevertheless entitled to the information."  During that discussion, Plaintiff's counsel stated that it would retract its request for Sims' financial compensation and take that request under further consideration.  It is unclear why, now, Plaintiff is again asking for this information but, as we previously stated, if Plaintiff is able to offer a cogent explanation for this information in light of our representations regarding Sims' compensation, Sims will consider this request further.

Finally, we have located a small number of appointment records for Sims' meetings with Jeffrey Kennedy and/or any of the Defendants from the period 2009 to 2015, and will produce those documents shortly.  We trust this resolves any outstanding issues with respect to RFP No. 23 to Sims.

## IV.   *Stranger Things* Scripts

Plaintiff concedes that Defendants' substantial document production includes the scripts for each episode of Season 1 of *Stranger Things*.  Plaintiff now demands that Defendants identify which of those scripts are the "final 'shooting' scripts" by "production number of the documents," yet Plaintiff has not demonstrated the relevance of this information so as to justify the burden – which is not required of Defendants under the Federal Rules – it purports to impose on Defendants.  *See* Fed. R. Civ. P. 34(b)(2)(E).

Here, the published works alleged to infringe Plaintiff's *Totem* screenplay are the final aired episodes of *Stranger Things*.  The Ninth Circuit has held that screenplays underlying a movie or television series, including drafts thereof, are irrelevant to whether the film or television series is infringing.  *See v. Durang*, 711 F.2d 141, 142 (9th Cir. Cal. 1983) (holding that it was not error to dismiss case without considering "early drafts of defendant's play on the theory they might reflect copying from plaintiff's play that was disguised or deleted in later drafts," because "[c]opying deleted or so disguised as to be unrecognizable is not copying").  Thus, while Defendants are willing to consider Plaintiff's requests concerning the "final 'shooting' scripts" for Season 1 of the Series further, Defendants first must understand the relevance of the information sought.



Jeremy J. Osher, Esq.
January 10, 2022
Page 4

Sincerely,

David Grossman
Partner and Deputy Chair, Litigation

**EXHIBIT O**



**DAVID GROSSMAN**
Partner and Deputy Chair,
Litigation

10100 Santa Monica Blvd.
Suite 2200
Los Angeles, CA  90067

**Direct**  310.282.2077
**Main**   310.282.2000
**Fax**    310.919.3943
dgrossman@loeb.com

Via E-mail

January 10, 2022

Jeremy J. Osher, Esq.
Boren, Osher & Luftman LLP
222 N. Pacific Coast Highway, Suite 2200
El Segundo, CA 90245

Re:   _Irish Rover Ent., LLC v. Aaron Sims, et al._, Case No. 2:20-cv-06293-CBM-PLA

Dear Counsel:

We write in response to Plaintiff's letter dated January 7, 2022 regarding the parties' dispute as
to damages discovery.

As a threshold matter, your claim that the continued prosecution of this lawsuit is proper is
incorrect.  There was no basis for the filing of this action, and several lawyers engaged by Jeffrey
Kennedy declined to file a lawsuit after reviewing his baseless claims.  We have provided detailed
information, from the beginning of this lawsuit, including documents and declarations submitted
in a completely separate lawsuit, in which another claimant alleged that his work was the "basis"
for _Stranger Things._  Even if there were legitimate questions regarding the merits of Mr. Kennedy's
claims at the inception of this lawsuit (and we do not believe that there were), after receiving and
reviewing tens of thousands of pages of documentation confirming the independent creation of
_Stranger Things,_ with no mention of Mr. Kennedy's _Totem_ work, and given that there is no legal
similarity between _Totem_ and _Stranger Things,_ it is absolutely clear, at this juncture, that there is
no good faith basis for the continued prosecution of Irish Rover/Jeff Kennedy's claims.

You are correct that I have raised the lack of merit of Mr. Kennedy's claims previously, including
when he and his prior counsel threatened to file suit for $800 million against Netflix, and also
threatened to initiate a federal prosecution against Netflix unless it paid an extortionate amount
to him.  A few months after that threat letter was sent, this lawsuit was filed by new counsel, but
the pending action contains the very same baseless claims that Mr. Kennedy previously asserted.
We fundamentally disagree regarding the appropriateness of Irish Rover's continued burdensome
discovery demands in light of the nature of this litigation.

In terms of the discovery meet and confer, Netflix did not propose Netflix's internal impact value
metric as a method of determining Irish Rover's damages.  During the October 28 meet and confer
phone call, we discussed providing information relating to consumer products licenses,
compensation paid to others that worked on _Stranger Things,_ and budget/cost information relating
to the series.  The parties also discussed overall streaming data, and defendants did not agree,
at that time, to produce Netflix's streaming data.  During that October 28 call, we also reiterated
that there is no traditional "profit" data for individual Netflix shows, and explained that the

Los Angeles   New York   Chicago   Nashville   Washington, DC   San Francisco   Beijing   Hong Kong   www.loeb.com

For the United States offices, a limited liability partnership including professional corporations. For Hong Kong office, a limited liability partnership.

21695959
231804-10002



streaming platform receives subscription revenue and provides all of its content to all of its subscribers for the same price. Thus, there is no profit information for individual content on the platform.

During that call, you raised, for the first time, the issue of impact value, and in discussing this issue, you explained that the impact value metric had been the subject of several recent news articles. In fact, after that call, you forwarded one of those articles to me to illustrate the information you were referencing during the meet and confer. Approximately a week later, I called to advise you that, as part of a compromise of the ongoing damages meet and confer, Netflix would be willing to provide the impact value data that you had requested. During that call, you said you wanted to understand how impact value was calculated, and we ultimately proposed that you send an interrogatory requesting the impact value for Season 1 of *Stranger Things*, and another interrogatory asking for the method of calculating that metric. Thereafter, you propounded interrogatories that went beyond that proposal, and which we objected to, by inquiring about impact value for Seasons 2 and 3. Nevertheless, and in response to those interrogatories, as we had proposed, Netflix provided the impact value for Season 1, and also included a detailed explanation of how impact value is calculated.

Your current letter claims that Plaintiff is entitled to a declaration in which a Netflix representative defines impact value in a way that would benefit Plaintiff (by referring to that metric as ███████. Plaintiff is not entitled to receive any such declaration, and any motion to compel based on the lack of such a declaration would be premature and improper. Moreover, as set forth herein, it appears that you are working under a number of misconceptions regarding the factual history of this matter. Netflix never represented that ████████ ████████ and impact value was provided to Plaintiff only after you raised it during the parties' prior discovery meet and confer (involving a different set of discovery requests).

With regard to subsequent seasons of *Stranger Things*, we have been clear that Plaintiff's allegations, and Mr. Kennedy's existing work, do not support broad-based discovery into each and every season of *Stranger Things*. While his claim that the initial season of *Stranger Things* infringed his work is baseless, it is difficult to understand how <u>any</u> of the plots or characters contained in subsequent seasons of the series are the proper subject of discovery in this case. That is the reason that we requested that Plaintiff provide the evidentiary basis for its request that discovery be expanded to subsequent seasons. Thus, on Friday December 3, I wrote to you, confirming that: "You had agreed, separately as part of the meet and confer process to identify allegedly infringing elements in Seasons 2 and 3 that are not included in Season 1, and that may help in resolving this."

It has been well over a month and, instead of providing the information we agreed on during the meet and confer process, you are now refusing to provide any such information, while concurrently threatening to move to compel on the very issues that you have stopped meeting and conferring over. This is not acceptable. If you have a factual, good-faith basis for your request for information relating to subsequent seasons of *Stranger Things*, you should provide it without further delay. If you chose to go to Court without doing so, we will object and will advise the Court of your refusal to abide by your agreement, and of your clear lack of any basis for the discovery sought.



You have provided a list of dozens of discovery requests that you are now threatening to move to compel on, but you have not specified what, if any, remaining issues relate to those requests. After the service of the initial set of discovery requests, the parties met and conferred, and in addition to the tens of thousands of pages produced, Defendants provided supplemental discovery responses addressing numerous additional questions that Plaintiff had raised.[1]  It is unclear what, if any issues, remain under discussion relating to Defendants, with the exceptions of the damages issues raised in your January 7 letter and the issue relating to discovery regarding subsequent seasons.

With regard to damages, Netflix proposes that it will provide the consumer products licensing information previously discussed, costs for the first season, the Duffers' contract, and streaming information (through the date of the lawsuit, Netflix would provide the number of hours of the first season of *Stranger Things* streamed by United States' subscribers along with total hours streamed by those same subscribers).[2]

Regarding discovery relating to subsequent seasons of *Stranger Things*, again, if Plaintiff agrees to provide a basis, as discussed and agreed-to, for the disclosure of information and documentation relating to subsequent seasons, we are willing to conduct additional, targeted searches for responsive documents.  If you choose to file a motion with the Court without properly meeting and conferring with regard to the newly-propounded interrogatories, or regarding the dozens of discovery requests that you have identified, but for which disputes have long since been resolved, Defendants will request sanctions from the Court in connection with any such attempted motion.

Sincerely,

David Grossman
Partner and Deputy Chair, Litigation

---

[1] This is in stark contrast to Plaintiff, whose principal, Jeffrey Kennedy, has withheld virtually all of his emails during the relevant time period – with the only explanation given being that his AOL email account, at some unknown point in the past, was the subject of a virus.

[2] Plaintiff raised the issue of impact value, and Netflix agreed to provide it, but never represented that ███████████████████████████████████████ It is █████████ that was the subject of recent press, and that Plaintiff thereafter sought in this case.  Plaintiff's original discovery requests sought streaming data, not impact value, and Netflix agreed to provide impact value when that was requested, in lieu of streaming data.  As Plaintiff appears to be dissatisfied with the provision of impact value data, the parties should resolve the discovery damages dispute based on the original request for streaming data.

**EXHIBIT P**



January 14, 2022

**VIA ELECTRONIC MAIL**

David Grossman
Safia Gray Hussain
Loeb & Loeb LLP
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA 90067

E-mail: dgrossman@loeb.com
E-mail: sghussain@loeb.com

Re:     *Irish Rover Ent., LLC v. Aaron Sims et al.*
         *Case No: 2:20-cv-06293-CBM-PLA*

Dear Counsel,

        We write in response to your letter dated January 10, 2022 regarding the parties' disputes as to damages discovery.

        As you know, our initial round of written discovery included interrogatories and document requests that were designed to elicit discovery that we could use to establish damages if our client proved infringement. Throughout our meet and confer efforts, you have attempted to secure our agreement to limit the scope of the damages discovery to which our client is entitled. More specifically, you agreed to provide information and documents that clearly are relevant, i.e., budget/cost information for Season 1, consumer summary information, the Duffers' initial deal, and impact value information, but only on the condition that our client waives its right to obtain any other relevant information and documents. Thus, for example, you proposed giving us a "consumer product licensing information summary" but only if we agreed to waive our right to obtain copies of the product licensing agreements underlying the summary and any backup financial information supporting the figures included in the summary. Similarly, you agreed to provide us with budget/cost information (for Season 1 only), but only if our client waives its right to obtain backup documentation regarding whatever budget/cost information you provide.

        The problem with your proposal is that we cannot waive our client's right to damages discovery without having an opportunity to see and understand what it is you are proposing to disclose and, in consultation with our client and consultants, determine whether the disclosures are adequate for purposes of calculating damages and/or rendering expert opinions on damages. You would have our client accept that the items you are agreeing to provide are sufficient for determining damages and that by providing this information, our client would have no right to take any further damages discovery in this case. We do not believe that conditioning your disclosure of



David Grossman
Safia Gray Hussain
January 14, 2022
Page 2 of 5

unseen and yet clearly relevant information on our agreement to waive rights to other relevant damages discovery is reasonable. Thus, we cannot agree to your proposal.

For the one item in your proposal about which you actually did disclose some information, i.e., impact value, you now suggest that you only provided this information because we requested it and your position appears to be that this information is not relevant to the issue of damages. Your position is disingenuous given the conversations we have had, and the representations you have made, about impact value discovery.

You are correct that we raised the issue of impact value during our meet and confer call on October 28, 2021. More specifically, and as recounted in our November 12, 2021 letter (at p. 2), we were discussing the issue of how Netflix measures revenue derived from *Stranger Things* in connection with Special Interrogatory No. 5. You indicated that you were not aware of any internal metrics used by Netflix to measure revenue from *Stranger Things*. We suggested, based on recent articles that we had seen involving other Netflix titles (e.g., Squid Games), that we did not think that it is possible that Netflix does not measure revenue from the individual titles on its streaming platform. We mentioned the articles regarding impact value, which appeared to be an internal metric Netflix used to evaluate profitability. Admittedly, at that time, we did not understand what impact value measured or how it is calculated by Netflix.

During the October 28 meet and confer, you agreed to provide consumer products licensing information, budget/cost information, the Duffers' deal with Netflix, and you said you would talk to Netflix about producing streaming data. You made it clear during our call that you were attempting to develop a proposal for resolving all damages discovery in exchange for some (but not all) relevant information and documents. No agreement was reached during our October 28 call as to any global resolution of the pending damages discovery issues. However, during my follow-up call with you on November 10, 2021, you told me that you had a "surprisingly good resolution to key issues" regarding damages discovery. Specifically, you suggested that as part of a global resolution of all pending damages discovery, you would provide impact value information for *Stranger Things* in lieu of streaming data, in addition to the items you agreed to provide during our October 28, 2021 meet and confer (i.e., consumer product licensing information, budget/cost information, Duffers' deal). We did not reach an agreement on a global resolution because I did not have enough of an understanding of impact value. We then discussed my client propounding targeted interrogatories regarding impact value.

On November 24, 2021, you left me a voicemail message advising me that you had talked to your client about impact value, that your understanding was that ████████████████████ ████████████████████ You told me that we should propound an interrogatory asking for the impact value number and for an explanation of what it is based on" and "how it is comprised". We then propounded interrogatories asking for the impact value figures and the description of the calculation/methodology used to determine those figures. The clear implication based on your proposal to resolve all damages discovery issues by providing, among other things, impact value information, was that impact value was directly relevant to the issue of damages and that impact value, along with the other damages discovery you agreed to provide, would allow our damages expert to analyze and opine on damages attributable to the alleged infringement. There



David Grossman
Safia Gray Hussain
January 14, 2022
Page 3 of 5

is no other logical explanation for your proposal. Either you believe impact value is relevant to the
issue of determining copyright infringement damages (which is why you included it in a proposal
to resolve damages discovery) or you offered information that you knew was not relevant to
damages in an intentional effort to prevent us from obtaining relevant damages discovery.

Based on discussions with our consultant, and our belief that you would not offer impact
value information as part of a good faith proposal to resolve damages discovery issues unless it
was in fact relevant, we believe that impact value is relevant to the issue of damages. For this
reason, we requested additional information in our letter of December 30, 2021 to help us better
understand the methodology behind impact value and to see how your client's
. As we explained in our December
10 letter, Netflix's cursory explanation of how impact value is calculated (*see* Netflix's Response
to Interrogatory No. 18)

We have no way of knowing how this figure was
calculated. This serves as a prime example of why we did not agree to accept the limited
information you proposed as a global resolution to damages discovery issues without first
evaluating the information itself and determining whether additional information will be needed.

In addition to requesting additional information about the impact value calculation, we
asked your client to confirm, in the form of a Declaration, that impact value is
You refused to
provide such a Declaration (and ignored our request for additional information regarding the
impact value calculation); instead in your January 10 letter, you now appear to be backtracking in
terms of your prior representation that impact value is relevant to calculating damages. To be clear,
we have no intention of asking the Court to compel your client to provide a sworn declaration
regarding impact value. That is something we included in our meet and confer letter as part of a
proposal to resolve the dispute over the impact value information you provided. However, because
impact value does appear to be relevant, we hereby renew our request for the additional
information that we requested in our December 30, 2021 meet and confer letter.

The other significant issue raised in your meet and confer letter is Defendants' continued
refusal to provide discovery regarding Seasons 2 and 3 of *Stranger Things*. We have been very
clear throughout the discovery process, including in all of our written communications, that we
disagree with your unilateral attempt to limit discovery to just Season 1 (as well as your unilateral
October 2015 cutoff for discovery). We have been equally clear that there is no obligation that we
identify "unique" infringing elements in Seasons 2 and 3, in order to obtain discovery, although
we have pointed out to you that First Amended Complaint ("FAC") alleges substantial similarities
and infringement upon numerous protected elements, including characters, plot, sequence, themes,
setting, tone, and dialogue, **throughout the *entire* Stranger Things series**. See, e.g., FAC, ¶¶ 71,
73, 74, 95, 113, 137, including elements in Seasons 2 and 3. See, e.g., FAC, ¶¶ 82, 85, 86, 89, 93,
147, 154. Thus, even though we do not agree with the conditions you seek to impose on our right
to discovery, the FAC clearly identifies infringing elements that appear in Seasons 2 and 3.

David Grossman
Safia Gray Hussain
January 14, 2022
Page 4 of 5

In your most recent meet and confer letters, you repeatedly suggest that we promised to identify unique, infringing elements from Seasons 2 and 3 and that we somehow agreed with your position that you have no obligation to provide discovery regarding anything other than Season 1 unless and until we make good on the purported promise. This is not correct. To be clear, during our meet and confer call on October 28, you requested that our client identify infringing elements in Seasons 2 and 3. We agreed to discuss the matter internally, which we did. We did not—nor do we now—agree with the conditions you seek to impose on our right to discovery. Notably, we sent you a detailed letter after the October 28 meet and confer that does not mention the purported agreement; in fact, we clearly asked Defendants to "produce responsive documents and communication for all four (4) seasons of Stranger Things." See Nov. 12 letter. Thus, it cannot be said that "Plaintiff now appears to have retracted that agreement" since Plaintiff never agreed to do so in the first place. A proposal without acceptance cannot be considered an agreement, no matter how you try to spin it.

In your January 10 letter regarding damages discovery, you argue that a motion to compel would be premature at this juncture because we have not adequately met and conferred with you. The months of back-and-forth on this topic clearly indicate otherwise. Moreover, you have made it abundantly clear in your meet and confer correspondence that you have no intention of providing us with the damages discovery to which we are entitled, including damages discovery for Seasons 2 and 3 and additional information regarding impact value for Seasons 1, 2 and 3. You also have made it clear that you will not produce the consumer products licensing information, budget/cost information, and the Duffers' agreements with Netflix unless we agree to your global resolution of damages discovery issues, i.e., if we agree to accept a small subset of relevant information in exchange for a waiver of rights as to any future damages discovery that we may require. If we are wrong in any of these regards, please let us know. There is no point in prolonging the meet and confer as to these issues if we already know that you will never agree to provide this information/documentation.

Although we may not be able to resolve all of the damages discovery issues, we do think there are some issues that can readily be resolved now. Specifically:

1. Impact value information: This is discussed above, and in our December 30, 2021 letter. Although we may need to involve the Court in the determination of whether we are entitled to impact value information for Seasons 2 and 3, you should at a minimum produce the additional information that we requested in our December 30 letter for Season 1 now.

2. Consumer products licensing information: There is no dispute this information is relevant and you previously agreed to provide it. We also need to see the underlying licensing agreements so that we can evaluate the figures included in your summary and so that we have an understanding of the terms/duration of these agreements.

3. Production budget/cost information: There is no dispute this information is relevant and that we are entitled to it for purposes of our damages analysis. You agreed to provide this information, at least for Season 1, during the meet and confer process and



David Grossman
Safia Gray Hussain
January 14, 2022
Page 5 of 5

more recently in Netflix's Supplemental Response to Special Interrogatory No. 13. Although we may need to involve the Court in the determination of whether we are entitled to budget/cost information for Seasons 2 and 3, you should at a minimum produce this information for Season 1 now.

4. Duffer Brothers/Monkey Massacre agreement(s) with Netflix:  During our meet and confer, you argued that Sims' agreement is not relevant but that the Duffer Brothers' initial agreement(s) would be relevant and you agreed to produce the agreement(s). We would like the initial agreement and any subsequent agreement between the Duffer Brothers/Monkey Massacre and Netflix regarding *Stranger Things*.

5. Streaming figures: We previously requested streaming data for 2015 to the present (i.e., the number of hours viewed across the Netflix platform for all titles as well as the number of hours that subscribers viewed *Stranger Things* for all three seasons). These figures clearly are relevant and there can be no dispute that Netflix closely tracks these numbers. It will not be difficult for your clients to provide this information. We would like the information for all three seasons.

To be clear, we are not saying that if you provide this information, we are waiving rights to other relevant discovery. Instead, our position is that there is no basis for withholding this information or conditioning its disclosure on a global resolution.

Please confirm that this information will be produced by January 21, 2022. If you are not willing to provide it, then our position is that we have exhausted the meet and confer process and we will proceed accordingly.

Once you have a chance to review this letter, please do let me know if you would like to further meet and confer regarding these specific issues. Thank you in advance for your professional cooperation.

Sincerely,
BOREN, OSHER & LUFTMAN, LLP

Jeremy J. Osher



**EXHIBIT Q**



January 14, 2022

**<u>VIA ELECTRONIC MAIL</u>**

David Grossman
Safia Gray Hussain
Loeb & Loeb LLP
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA 90067

E-mail: dgrossman@loeb.com
E-mail: sghussain@loeb.com

   Re:  ***<u>Irish Rover Ent., LLC v. Aaron Sims et al.</u>***
       *Case No: 2:20-cv-06293-CBM-PLA*

Dear Counsel,

  We write in response to your letter dated January 10, 2022 regarding the parties' disputes as to Defendants' supplemental and amended discovery responses.

  As we made clear in our January 3, 2022 letter, the overarching issues with respect to Defendants' discovery responses are (1) the October 2015 discovery cut-off; and (2) the Stranger Things, Season 1 discovery cut-off.   As you acknowledge, Defendants "have produced communications concerning creative contributions to *Stranger Things* through October 2015" and "have limited their production of documents to those concerning Season 1 of *Stranger Things*[.]" We have been very clear throughout the discovery process, including in all of our written communications, that we disagree with Defendants' unilateral attempt to limit discovery through October 2015 and to Season 1 only.   Frankly, neither limitation is appropriate or justified in light of the issues and allegations in this case addressing the entire Stranger Things series.

  In your January 10 letter regarding Defendants' supplemental and amended discovery responses, you repeatedly suggest that we promised to identify unique, infringing elements from Seasons 2 and 3 and that we somehow agreed with your position that you have no obligation to provide additional discovery post-dating October 2015 unless and until we make good on this purported promise.   To be clear, during our meet and confer call on October 28, you requested that our client identify infringing elements in Seasons 2 and 3.   We agreed to discuss the matter internally, which we did.   We did not—nor do we now—agree with the conditions you seek to impose on our right to discovery.   Notably, we sent you a detailed letter after the October 28 meet and confer that does not mention the purported agreement; in fact, we clearly asked Defendants to "produce responsive documents and communications for all four (4) seasons of Stranger Things." See Nov. 12 letter.   Thus, it cannot be said that "Plaintiff now appears to have retracted that agreement" since Plaintiff never agreed to do so in the first place.

David Grossman
Safia Gray Hussain
January 14, 2022
Page 2 of 3

We have also been clear that we have no obligation to identify "unique" infringing elements in Seasons 2 and 3, in order to obtain discovery, although we have pointed out to you that the First Amended Complaint ("FAC") alleges substantial similarities and infringement upon numerous protected elements, including characters, plot, sequence, themes, setting, tone, and dialogue, **throughout the _entire_ Stranger Things series**. See, e.g., FAC, ¶¶ 71, 73, 74, 95, 113, 137, including elements in Seasons 2 and 3. See, e.g., FAC, ¶¶ 82, 85, 86, 89, 93, 147, 154. Thus, even though we do not agree with the conditions you seek to impose on our right to discovery, the FAC clearly identifies infringing elements that appear in Seasons 2 and 3.

In the same January 10 letter, you also argue that if Plaintiff "intends to move to compel documents that were produced by Defendants more than three months ago, Defendants reserve the right to, and will seek sanctions in connection with, any such motion." To be clear, we do not intend to move to compel Defendants to produce documents that have already been provided. Rather, we intend to move to compel discovery beyond Defendants' unilateral October 2015 and Season 1 cut-offs. Thus, we will ask the Court to decide the critical issues that have been the subject of this now months' long meet and confer process—whether Plaintiff is entitled to discovery beyond October 2015 and as to Seasons 2 and 3.[1]

Despite extensive meet and confer efforts thus far, it appears that the parties have reached an impasse on these overarching issues, i.e., October 2015 cutoff and Season 1 cutoff. If we are mistaken in this regard, in that Defendants will provide the necessary supplemental discovery responses and responsive documents pertaining to the latter seasons, then please confirm as much immediately. If you are not willing to provide the necessary discovery, then our position is that we have exhausted the meet and confer process and we will proceed accordingly. There is no use in prolonging this exercise if the parties have truly reached an impasse.

With regard to Aaron Sims' emails, your clients' document production includes emails from August 2010 and November 2017 but there are no emails in between those dates. See DEFS_0006009 [email from Kennedy to Sims dated August 9, 2010] and DEFS_0006011 [email from Kennedy to Sims dated November 14, 2017]. Frankly, it seems strange that there would be no responsive communications by Sims in the interim period, including responsive communications between Sims and our client and between Sims and the other Defendants, or any of them. Thus, in our January 3 letter, we raised the issue of whether Sims has any additional communications given the significant gap in time for the emails he did produce. To be clear, the significant gap in time that we are referring to is from August 2010 to November 2017.

During our meet and confer on October 28, Safia identified documents in the mid-3500 bates range as communications by Sims between 2009 and 2014. However, we reviewed the documents and there are no communications by Sims between August 2010 and November 2017. Nevertheless, in your January 3 letter, you state that "we have verified with Sims that … all relevant communications and documents responsive to Plaintiff's requests that fall within the

---

[1] The discovery requests at issue for purposes of Plaintiff's anticipated motion to compel are identified in footnote 2 of my January 7, 2022 letter. The remaining issues as to those interrogatories and requests are set forth in my January 3, 2022 letter.

David Grossman
Safia Gray Hussain
January 14, 2022
Page 3 of 3

scope of Defendants' agreements to produce have been collected and produced." Accordingly, please confirm that all responsive communications by Sims have already been produced and that Sims has no additional responsive communications between August 2010 and November 2017. To the extent the "scope of Defendants' agreement to produce" as to Sims' emails is limited only to so-called "creative contributions", our client's position is that this unilateral limitation is improper and requires an explanation as to what "creative contributions" means in order to consider the issue further. We believe that we are entitled to any communications between and among Sims, our client, and/or any other Defendant between August 2010 and November 2017, not just a subset that you are characterizing as "creative contribution" emails.

Finally, with regard to the final shooting scripts for all four (4) seasons of Stranger Things, it may be the case that early drafts of scripts may not be relevant for purposes of our client's infringement analysis.  The *Durang* case cited in your January 10 letter appears to support that proposition. But we are not asking for early draft scripts. Instead, we would like the final shooting scripts, which are directly relevant to the issues in this case and, equally important, will greatly assist our client and our expert in evaluating whether *Stranger Things* infringes on *Totem*. We do not belong that *Durang* precludes us from seeking the final shooting scripts. We also do not think that the request is overly burdensome as the scripts should be readily available. Please let me know if Defendants are willing to produce the final shooting scripts for every episode in all four (4) seasons.

Thank you in advance for your professional cooperation.

Sincerely,
BOREN, OSHER & LUFTMAN, LLP

Jeremy J. Osher

**EXHIBIT R**



**DAVID GROSSMAN**
Partner and Deputy Chair,
Litigation

10100 Santa Monica Blvd.
Suite 2200
Los Angeles, CA 90067

**Direct** 310.282.2077
**Main** 310.282.2000
**Fax** 310.919.3943
dgrossman@loeb.com

Via E-mail

January 20, 2022

Jeremy J. Osher, Esq.
Boren, Osher & Luftman LLP
222 N. Pacific Coast Highway, Suite 2200
El Segundo, CA 90245

Re: *Irish Rover Ent., LLC v. Aaron Sims, et al.*, Case No. 2:20-cv-06293-CBM-PLA

Dear Counsel:

We write in response to Plaintiff Irish Rover Entertainment, LLC's ("Plaintiff") two letters dated January 14, 2022, concerning (1) the outstanding damages discovery disputes, and (2) Defendants' supplemental and amended discovery responses.

First, we will reiterate what we have told you several times: there is no profit or revenue for individual Netflix shows. Because Netflix is a streaming platform that receives subscription revenue and provides all of its content to all of its subscribers for the same price, there is no profit or revenue information for individual content on the platform, including for *Stranger Things*. We have worked with you to provide information that you have requested, and will continue to do so in good faith, taking into account the relevance of the requested information to the claims, while attempting to avoid disproportionate burdens considering the needs of this case.

That said, in hopes of resolving the parties' dispute with respect to damages discovery, Defendants propose to provide an amended response to Plaintiff's Interrogatory No. 18 to provide additional detail concerning the calculation of the "impact value" set forth in response to Interrogatory No. 17, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Netflix further proposes that it will provide the consumer products licensing revenue previously discussed. Netflix will also provide the costs for the first three seasons of the Series, as well as the Duffers' initial contract. Netflix will additionally provide streaming information (Netflix would provide the number of hours of the first season of *Stranger Things* streamed in the United States along with total hours streamed, through the date of the lawsuit).

We have attempted to come to an agreement regarding overall damages discovery so as to avoid spending undue time and cost on these issues. Your letter objects to the foreclosure of further damages discovery in advance of your receiving and reviewing documents and information that are yet to be produced. In order to address Plaintiff's concerns about prospectively waiving its right to take additional damages discovery, Defendants will agree that providing the foregoing information and documents does not limit Plaintiff's ability to take further relevant damages discovery, nor Defendants' rights to object to that discovery. Thus, after you receive and review the information we are gathering and intend to produce by the end of this month, you will not be

For the United States offices, a limited liability partnership including professional corporations. For Hong Kong office, a limited liability partnership.



precluded from seeking additional information or clarification regarding the documents and information provided.

Second, with respect to Plaintiff's letter concerning Defendants' supplemental and amended discovery responses, we do not agree with Plaintiff's claim that Aaron Sims has not produced documents between August 2010 and November 2017. Sims has, in fact, produced hundreds of emails and documents within this time period. *See* DEFS_0008263 to DEFS_8803. Plaintiff is also mistaken that he is "entitled to any communications between and among Sims, our client, and/or any other Defendant between August 2010 and November 2017."

To be clear, Sims already has produced all communications with Plaintiff/Jeffrey Kennedy and all documents concerning the *Totem* works that were located following a diligent search and reasonable inquiry, and previously confirmed that there are no communications with the other Defendants concerning the *Totem* works. *See* Def. Aaron Sims' Resps. to Pl.'s Requests for Prod. of Documents, Set One, served Sept. 3, 2021. With respect to Sims' communications with the other Defendants regarding *Stranger Things*, it is simply not the case that all communications concerning the development and production of a multi-season television series are relevant to the parties' claims or defenses or proportional to the needs of the case. Sims therefore agreed to, and did, produce communications concerning his creative contributions to Season 1 of the Series; meaning, his input or commentary on the creative development of the Series (as compared to, for example, staffing, general administrative matters, etc.). It does not appear that Plaintiff has previously raised this issue with respect to Sims' production. *See, e.g.,* Oct. 12, 2021 Ltr. from J. Osher to D. Grossman. If, however, Plaintiff is able to articulate a well-founded explanation of the relevance of broader categories of communications, Defendants will consider it.

Finally, while Defendants acknowledge that Plaintiff's First Amended Complaint ("FAC") summarily alleges "substantial similarities and infringements" in Seasons 2 and 3 of *Stranger Things*, the cited paragraphs do not identify allegedly infringing elements that did not appear in and were not referenced in Season 1. *E.g.,* FAC ¶ 82 (alleging Joyce "*continue[s]* her quest to save her son" (emphasis added)); ¶ 93 (including alleged "sequence[s] of events" in Season 1). Nevertheless, in an effort to reach resolution on this issue, Defendants will agree to produce Sims' non-privileged documents, internal emails, and emails with the other Defendants concerning his creative contributions, if any, to *Stranger Things* through April of 2018, when production began (and therefore content was effectively finalized) for the third season. In addition, Netflix will agree to conduct electronic searches for documents, internal communications, and communications with other Defendants concerning *Stranger Things* that also contain the terms "Totem," "Azrael," "Jeff/rey Kennedy," jeffreykennedy1@aol.com, jeffreykennedy1@gmail.com, "Jackson Chance," "Autumn Chance," "Nerowe," "Agent Miller," "Sam Miller," "Kimi," "Blackwolf," "Lynx," "Agent Cho," "Thunderbear," "Shaman," or "dreamcatcher," and will produce non-privileged documents that are responsive to Plaintiff's document requests through April of 2018. Though Defendants believe the foregoing search terms are sufficient to capture documents and communications with any relation to Plaintiff's claims, if Plaintiff wishes to propose additional search terms, we will consider them. For the avoidance of doubt, Defendants' proposal is merely a compromise offer to resolve the parties' dispute, and is not, and should not be construed as, a concession regarding the relevance of the foregoing documents to the parties' claims and defenses.



Further, while Plaintiff has not provided any basis for the production of "shooting scripts" in connection with a lawsuit that alleges infringement of an already-aired television series, Defendants will further agree to locate and produce the final scripts for Seasons 1-3 of the Series.

Please feel free to call me anytime if you would like to discuss any of the foregoing.

Sincerely,

David Grossman
Partner and Deputy Chair, Litigation

**EXHIBIT S**

**By Type/Ledger Account (CP Accounts Only)**

| Quarter - Year | (All) |
| --- | --- |



**Sum of Amount in USD (Flipped)**

| Ledger Account | Total |
| --- | --- |

**Grand Total**

**By ST Project (CP Accounts Only)**

| Quarter - Year | (All) |
| --- | --- |
| Ledger Account | (Multiple Items) |

**Sum of Amount in USD (Flipped)**

| Project | Total |
| --- | --- |

**Grand Total**

DEFS_0053849

**EXHIBIT T**

| | |
|---|---|
| **From:** | Jeremy J. Osher |
| **To:** | David Grossman |
| **Cc:** | Jeremy J. Osher; Matthew Tom; Safia Gray Hussain; Aaron M. Gladstein |
| **Subject:** | FW: Irish Rover Entertainment, LLC v. Aaron Sims, et al. |
| **Date:** | Friday, February 18, 2022 4:58:00 PM |
| **Attachments:** | DEFS_0053849.pdf |
| | DEFS_0061520.pdf |
| | DEFS_0061521.pdf |
| | Stranger Things Licensee Workbook 12 13 19.xlsx |

Hello David –

I appreciate the follow up.

With regard to Safia's question, I confirmed that Jeff searched his AOL and Gmail accounts in response to Defendants' discovery requests and subpoena.  Jeff did not search his AEG account because he does not have access to it.  He lost access to his AEG account when he left the company.  It is for that reason that he has subpoenaed AEG.

Regarding licensing revenue, I was expecting more information. I cannot tell whether the information provided captures all licensing deals, and whether the amounts include all revenue to date. Also, I have attached a non-exhaustive list of licensees that we were able to pull together based on our research—do the numbers provided include revenue from these deals?  How many other licensees are there? Are you able to provide reports of licensing revenue that break down the numbers by licensing deal?

Regarding impact value, please do let me know whether Netflix will provide impact values for Seasons 2 and 3.

I also have some follow up questions with regard to the supplemental documents that Netflix produced recently:

- DEFS_0053849 appears to be a consumer products summary for Stranger Things.  Is there a date range associated with these numbers?  I'd like to know the start and end dates, which are relevant to Plaintiff's damages analysis.  Let me know if your client will provide this information.

- DEFS_0061520 & 0061521 appear to be summaries of Netflix's assets and liabilities.  Which RFP(s) are these documents responsive to?  Do these numbers pertain to Netflix as a whole or to Stranger Things specifically? Is there a date associated with these numbers? Without any context, it is difficult to understand these documents.

Jeremy J. Osher, Esq.
Boren, Osher & Luftman, LLP
222 N. Pacific Coast Highway, Suite 2222
El Segundo, California 90245
Telephone: (310) 322-2021 ext. 225
email: josher@bollaw.com

web:  www.bollaw.com

*This message and any attached documents contain information from the law firm of Boren, Osher & Luftman, LLP*
*that may be confidential and/or privileged.  If you are not the intended recipient, you may not read, copy, distribute,*
*or use this information.  If you have received this transmission in error, please notify the sender immediately by*
*reply email and then delete this message.*

---

**From:** David Grossman <dgrossman@loeb.com>
**Sent:** Thursday, February 17, 2022 5:38 PM
**To:** Safia Gray Hussain <sghussain@loeb.com>; Jeremy J. Osher <josher@bollaw.com>
**Cc:** Matthew Tom <mtom@bollaw.com>; Aaron M. Gladstein <agladstein@bollaw.com>
**Subject:** RE: Irish Rover Entertainment, LLC v. Aaron Sims, et al.

Jeremy – we are working on the below-referenced searches w/your additional search terms, and
also on locating any additional Aaron Sims documents.
I think we have resolved most of the issues on the defendants' end.  I think the main outstanding
issue is the impact value for seasons 2 and 3?  Can you let me know if that is correct?

And can you also let me know about Safia's question below?  I would like to try to wrap up
document discovery in the upcoming weeks, understanding that neither side is waiving rights to ask
for more.  Thanks.

David Grossman
Loeb & Loeb LLP
10100 Santa Monica Blvd. Suite 2200
Los Angeles, CA 90067
Tel: 310.282.2077

---

**From:** Safia Gray Hussain <sghussain@loeb.com>
**Sent:** Friday, February 11, 2022 1:40 PM
**To:** Jeremy J. Osher <josher@bollaw.com>; David Grossman <dgrossman@loeb.com>
**Cc:** Matthew Tom <mtom@bollaw.com>; Aaron M. Gladstein <agladstein@bollaw.com>
**Subject:** RE: Irish Rover Entertainment, LLC v. Aaron Sims, et al.

Hi Jeremy –

We expect to produce additional damages-related documents today.  We are still discussing with our
client the issue of impact value for Seasons 2 and 3.

Thank you for the corrections to Mr. Kennedy's AOL and Gmail email addresses as search terms, as
well as the additional search term of Mr. Kennedy's AEG Worldwide email address.  Can you please
confirm that all three email addresses were searched for documents responsive to Defendants'
discovery requests, as well as to the subpoena issued to Mr. Kennedy?

Thank you,

| Licensee # | Licensee | Website | Use of License | Contact Name | Contact Email |
|---|---|---|---|---|---|
| 1 | 47' Brand | https://www.47brand.com/collections/stranger-things | Hats | TBD | TBD |
| 2 | Barnes and Noble | https://www.barnesandnoble.com/b/stranger-things-collection/_/N-2oamZ15Z16Z19 | Calendars, Games | TBD | TBD |
| 3 | Baskin Robbins | https://news.baskinrobbins.com/blog/watch-party-guide-stranger-things-baskin-robbins | Ice Cream | TBD | TBD |
| 4 | Big Mouth Inc | https://bigmouthinc.com/collections/officially-licensed/products/stranger-things%E2%84%A2-sensory-deprivation-pool | Deprivation Pool | TBD | TBD |
| 5 | Bonus XP | https://bonusxp.com/2019/07/stranger-things-3-the-game-arrives/ | Video Game | TBD | TBD |
| 6 | Boxlunch | https://www.boxlunch.com/search?q=stranger%20things&prefn1=license&prefv1=STRANGER%20THINGS | Apparel | TBD | TBD |
| 7 | Burger King | https://www.cnn.com/2019/06/13/business/burger-king-stranger-things/index.html | Upside Down Whopper | TBD | TBD |
| 8 | Chicago Cubs | https://www.adweek.com/digital/the-chicago-cubs-and-snapchat-teamed-up-on-some-ar-stranger-things/ | Stranger Things Night | TBD | TBD |
| 9 | Coca-Cola | https://www.target.com/p/coca-cola-and-stranger-things-16-fl-oz-limited-edition-can/-/A-15515097 | Coke | TBD | TBD |
| 10 | Dark Horse Comics | https://www.darkhorse.com/Comics/3002-817/Stranger-Things-1 | Comic Books | TBD | TBD |
| 11 | Elo7 | https://www.elo7.com.br/lista/poster-stranger-things?nav=sch_pd_rq_hd_1_a&rsp=a#crq=a | Apparel, Games | TBD | TBD |
| 12 | Epic Games | https://www.epicgames.com/fn/9078-4540-3886 | Video Game | TBD | TBD |
| 13 | Fun.com | https://www.fun.com/stranger-things-gifts.html?q=stranger%20things | Collectibles | TBD | TBD |
| 14 | Funko | https://www.funko.com/products?productCategories=all&productBrands=fandoms&licenses=stranger-things | Collectibles | TBD | TBD |
| 15 | H&M | https://www2.hm.com/en_us/life/culture/inside-h-m/hm-x-stranger-things.html | Apparel | TBD | TBD |
| 16 | Hasbro | https://shop.hasbro.com/en-us/search?search=stranger+things | Games | TBD | TBD |
| 17 | Hot Topic | https://www.hottopic.com/pop-culture/shop-by-license/stranger-things/ | Apparel | TBD | TBD |
| 18 | Hybrid Apparel | https://www.target.com/c/graphic-tees-t-shirts-men-s-clothing/hybrid-apparel/-/N-55cxiZy1nnb | Apparel | TBD | TBD |
| 19 | Kohls | https://www.kohls.com/catalog/stranger-things.jsp?CN=PersonaGroup:Stranger%20Things | Apparel | TBD | TBD |
| 20 | LEGO | https://www.lego.com/en-us/search?q=stranger%20things | LEGOs | TBD | TBD |
| 21 | Levi's | https://www.levi.com/US/en_US/levis-x-stranger-things/c/levi_clothing_stranger_things_us | Apparel | TBD | TBD |
| 22 | Madrid Skateboarding | https://www.madridskateboards.com/search?q=stranger+things | Skateboards | TBD | TBD |
| 23 | McFarlane Toys | https://mcfarlane.com/toys/brands/stranger-things/ | Toys | TBD | TBD |
| 24 | Microsoft | https://www.microsoft.com/inculture/stranger-things/ | Games | TBD | TBD |
| 25 | MLB | https://www.mlb.com/tickets/stranger-things | Tickets / Hats | TBD | TBD |
| 26 | Next Games | https://www.nextgames.com/company-release/next-games-announces-mobile-game-based-on-the-hit-netflix-original-stranger-things-set-for-2020-launch-1560366252-775/ | Video Game | TBD | TBD |
| 27 | Nike | https://www.nike.com/us/en_us/c/stranger-things | Shoes, Apparel | TBD | TBD |
| 28 | Observe Books (UK) | https://obversebooks.co.uk/product/04-stranger-her/ | Books | TBD | TBD |
| 29 | Penguin Random House Publishing | https://www.penguinrandomhouse.com/the-read-down/the-stranger-things-book-list | Books | TBD | TBD |
| 30 | Polaroid | https://eu.polaroidoriginals.com/collections/stranger-things | Cameras | TBD | TBD |
| 31 | Pyramid International | https://www.pyramidinternational.com/brand/stranger-things | Various Products | TBD | TBD |
| 32 | Reebox | https://www.reebok.com/us/stranger_things_2 | Shoes | TBD | TBD |
| 33 | Schwinn Bicycles | https://www.schwinnbikes.com/en/usa/blog/schwinn-insider-stranger-things-edition | Bikes | TBD | TBD |
| 34 | Secret Cinema | https://tickets.secretcinema.org/stranger-things | Tickets, Experience | TBD | TBD |
| 35 | Shutterstock | https://www.shutterstock.com/search/stranger+things | Images | TBD | TBD |
| 36 | Snapchat | https://www.fastcompany.com/90148639/snapchats-stranger-things-lens-is-the-first-of-its-kind | Virtual Lenses | TBD | TBD |
| 37 | Sony Interactive Entertainment | https://www.playstation.com/en-us/games/stranger-things-3-the-game-ps4/ | Video Game | TBD | TBD |
| 38 | Target | https://www.target.com/c/stranger-things/casio/-/N-s5c9yZ5y3ln?Nao=0 | Various Apparel and Games | TBD | TBD |
| 39 | Trends International | https://www.trendsinternational.com/bm6517.html | Posters, Bookmarks | TBD | TBD |
| 40 | Walmart | https://www.walmart.com/cp/stranger-things/ | Apparel, Toys, Board Games | TBD | TBD |

**EXHIBIT U**

| From: | David Grossman |
|---|---|
| To: | Jeremy J. Osher |
| Cc: | Matthew Tom; Safia Gray Hussain; Aaron M. Gladstein |
| Subject: | RE: Irish Rover Entertainment, LLC v. Aaron Sims, et al. |
| Date: | Friday, February 25, 2022 5:24:01 PM |

Jeremy,

On the questions you raise below, DEF 61520 is the cost summary for ST Season 2.  DEF 61521 is the cost summary for ST Season 3.  We can provide amended versions of those with headings indicating that those cost summaries relate to those seasons so that it will be easier to deal with going forward if those documents are individually reviewed or referenced.  Let me know if you would like us to do so.

The document bates numbered DEF 53849 is the consumer products summary through the end of 2021.  With regard to your attached list of potential licensees, some of these may be distributors (like Target/Walmart) as opposed to direct licensees.  I do not understand how the number of licensees or the specific revenues from individual licensees could relate to your client's damages claims, but those questions can be raised in deposition.  My understanding is that these are the consumer products revenues relating to the series, and you can also inquire at deposition regarding which of the companies you identified are licensees as opposed to distributors of licensed products.

As you know, I am trying to get through this stage of document discovery so that we can move forward (without waiving our respective rights to request additional information from the other side).  I previously asked what plaintiff's theory was that entitled it to the information it is requesting, including impact value relating to seasons 2 and 3.  While we have not received a response, and as I have explained previously, we do not believe there is any basis for Irish Rover requesting the discovery it is seeking because it has not identified any infringing elements in seasons 2 & 3, as a compromise, Netflix will agree to provide impact value for Seasons 2 & 3 so long as that is the last remaining issue in this round of discovery.

Let me know if we have an agreement on that and we will provide you with the revised cost summary docs (if you would like) and the impact value information.  Thanks.

David Grossman
Loeb & Loeb LLP
10100 Santa Monica Blvd. Suite 2200
Los Angeles, CA 90067
Tel: 310.282.2077

**From:** Jeremy J. Osher <josher@bollaw.com>
**Sent:** Friday, February 18, 2022 4:57 PM
**To:** David Grossman <dgrossman@loeb.com>
**Cc:** Jeremy J. Osher <josher@bollaw.com>; Matthew Tom <mtom@bollaw.com>; Safia Gray Hussain

<sghussain@loeb.com>; Aaron M. Gladstein <agladstein@bollaw.com>

**Subject:** FW: Irish Rover Entertainment, LLC v. Aaron Sims, et al.

Hello David –

I appreciate the follow up.

With regard to Safia's question, I confirmed that Jeff searched his AOL and Gmail accounts in response to Defendants' discovery requests and subpoena. Jeff did not search his AEG account because he does not have access to it. He lost access to his AEG account when he left the company. It is for that reason that he has subpoenaed AEG.

Regarding licensing revenue, I was expecting more information. I cannot tell whether the information provided captures all licensing deals, and whether the amounts include all revenue to date. Also, I have attached a non-exhaustive list of licensees that we were able to pull together based on our research—do the numbers provided include revenue from these deals? How many other licensees are there? Are you able to provide reports of licensing revenue that break down the numbers by licensing deal?

Regarding impact value, please do let me know whether Netflix will provide impact values for Seasons 2 and 3.

I also have some follow up questions with regard to the supplemental documents that Netflix produced recently:

- DEFS_0053849 appears to be a consumer products summary for Stranger Things. Is there a date range associated with these numbers? I'd like to know the start and end dates, which are relevant to Plaintiff's damages analysis. Let me know if your client will provide this information.

- DEFS_0061520 & 0061521 appear to be summaries of Netflix's assets and liabilities. Which RFP(s) are these documents responsive to? Do these numbers pertain to Netflix as a whole or to Stranger Things specifically? Is there a date associated with these numbers? Without any context, it is difficult to understand these documents.

Jeremy J. Osher, Esq.
Boren, Osher & Luftman, LLP
222 N. Pacific Coast Highway, Suite 2222
El Segundo, California 90245
Telephone: (310) 322-2021 ext. 225
email: josher@bollaw.com
web:  www.bollaw.com

*This message and any attached documents contain information from the law firm of Boren, Osher & Luftman, LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply email and then delete this message.*

# EXHIBIT V

| | |
|---|---|
| **From:** | Jeremy J. Osher |
| **To:** | David Grossman |
| **Cc:** | Safia Gray Hussain; Matthew Tom; Aaron M. Gladstein |
| **Subject:** | RE: Irish Rover Entertainment, LLC v. Aaron Sims, et al. |
| **Date:** | Monday, March 7, 2022 9:17:15 AM |
| **Attachments:** | DEFS_0051868.xlsx |
| | DEFS_0053850.tif |
| | DEFS_0053851.tif |

David —

I appreciate the clarification on the documents.  I would like to have amended versions of DEF 61520 and 61521 indicating that they are the cost summaries for ST Seasons 2 and 3, respectively.  This will avoid further confusion and ambiguity going forward.

Regarding the production of impact value figures for Seasons 2 and 3, it should not be contingent on resolution of issues regarding this round of discovery—please produce these figures as soon as possible.

There are some additional issues with this round of discovery:

1.  Licensee Information.  We would like an all-inclusive list of Netflix's individual licensees regarding Stranger Things and the revenue each has received from the deals with each licensee.  We also would like copies of the underlying agreements with each licensee for the period 2015 to the present.  The consumer products summary in DEF 53849 only provides numbers and I cannot tell whether those number capture all licensing deals. Moreover, without having the actual agreements, I have no way of knowing how the deals are structured in terms of compensation, which is important for purposes of damages.

2.  Loan Out Agreements.  DEFS 53791-814 appears to be a draft Loan Out Agreement between Monkey Massacre Productions and Camp Hero Productions, LLC.  DEFS 53815-47 appears to be a draft Loan Out Agreement between Monkey Massacre Productions and Storybuilders, LLC.  Neither agreement is signed and both contain redline revisions.  Please let me know if there are final, executed versions of these agreements and if so, whether they will be produced.  Additionally, please let me know what Netflix's relationship is with Camp Hero Productions, LLC and Storybuilders, LLC.

3.  DEF_0051868. For the attached spreadsheet (DEF_0051868), we would like to have these figures (Revenue/Paid Memberships) from 2010 through the present and worldwide.

4.  DEF_0053850-53851. For the attached running totals (DEF_0053850-53851), we would like to have these figures for Seasons 2 and 3. We also would like to have the figures from 2010 to the present and worldwide.

I'm happy to discuss these issues further.

Jeremy J. Osher, Esq.

**Boren, Osher & Luftman, LLP**
222 N. Pacific Coast Highway, Suite 2222
El Segundo, California 90245
Telephone: (310) 322-2021 ext. 225
email: josher@bollaw.com
web:  www.bollaw.com

*This message and any attached documents contain information from the law firm of Boren, Osher & Luftman, LLP*
*that may be confidential and/or privileged.  If you are not the intended recipient, you may not read, copy, distribute,*
*or use this information.  If you have received this transmission in error, please notify the sender immediately by*
*reply email and then delete this message.*

---

**From:** David Grossman <dgrossman@loeb.com>
**Sent:** Friday, February 25, 2022 5:24 PM
**To:** Jeremy J. Osher <josher@bollaw.com>
**Cc:** Matthew Tom <mtom@bollaw.com>; Safia Gray Hussain <sghussain@loeb.com>; Aaron M.
Gladstein <agladstein@bollaw.com>
**Subject:** RE: Irish Rover Entertainment, LLC v. Aaron Sims, et al.

Jeremy,

On the questions you raise below, DEF 61520 is the cost summary for ST Season 2.  DEF
61521 is the cost summary for ST Season 3.  We can provide amended versions of those with
headings indicating that those cost summaries relate to those seasons so that it will be easier to deal
with going forward if those documents are individually reviewed or referenced.  Let me know if you
would like us to do so.

The document bates numbered DEF 53849 is the consumer products summary through the
end of 2021.  With regard to your attached list of potential licensees, some of these may be
distributors (like Target/Walmart) as opposed to direct licensees.  I do not understand how the
number of licensees or the specific revenues from individual licensees could relate to your client's
damages claims, but those questions can be raised in deposition.  My understanding is that these are
the consumer products revenues relating to the series, and you can also inquire at deposition
regarding which of the companies you identified are licensees as opposed to distributors of licensed
products.

As you know, I am trying to get through this stage of document discovery so that we can
move forward (without waiving our respective rights to request additional information from the
other side).  I previously asked what plaintiff's theory was that entitled it to the information it is
requesting, including impact value relating to seasons 2 and 3.  While we have not received a
response, and as I have explained previously, we do not believe there is any basis for Irish Rover
requesting the discovery it is seeking because it has not identified any infringing elements in seasons
2 & 3, as a compromise, Netflix will agree to provide impact value for Seasons 2 & 3 so long as that is
the last remaining issue in this round of discovery.

Let me know if we have an agreement on that and we will provide you with the revised cost

**EXHIBIT W**

| From: | David Grossman |
|---|---|
| To: | Jeremy J. Osher |
| Cc: | Safia Gray Hussain; Matthew Tom; Aaron M. Gladstein |
| Subject: | RE: Irish Rover Entertainment, LLC v. Aaron Sims, et al. |
| Date: | Friday, March 11, 2022 11:58:27 AM |

Jeremy,

We will be providing amended versions of 61520 and 61521 as proposed so that it is clear what seasons those documents relate to.

With respect to your (1), Netflix does not agree to provide every single license agreement relating to its consumer licensing for the Stranger Things series. We do not believe there is a factual or legal basis for that request; and those agreements are extensive and many contain confidentiality clauses. The existence of a protective order in this case does not resolve these concerns, and there has not been any articulation of the legal basis for this request. Netflix would be willing to submit a declaration or provide a representation regarding the consumer products revenues, which could confirm the overall amount and what those amounts relate to. Let me know if we can agree to that proposal.

Regarding (2), the Monkey Massacre agreements, the answer is that yes, our understanding is that those are the final documents.

Regarding (3), Netflix would agree to provide supplemental documents that will show the revenue/paid memberships from 2015 through 2021. You have requested that data going back to 2010, but you have not provided a basis for that request, and while Netflix has agreed to provide information going back to 2015 as a compromise on some issues, 2010 is a decade before this lawsuit was filed and well outside of the scope of permissible discovery.

Lastly, on (4), Netflix will agree to provide figures for S2 & S3 to align with the figures provided for S1. That data will not go back to 2010, both for the reasons set forth above, and because the series did not air until 2016.

Again, with respect to impact value for seasons 2 and 3, the offer remains that Netflix will agree to provide those figures as a compromise to conclude the issues relating to the current discovery requests.

As an update, we have also been working through the search terms provided and are reviewing a substantial number of documents. If we can reach agreement on the above, I believe we will be able to provide a supplemental production by the end of next week, which will also include documents located from the current search.

David Grossman
Loeb & Loeb LLP
10100 Santa Monica Blvd. Suite 2200
Los Angeles, CA 90067
Tel: 310.282.2077

**From:** Jeremy J. Osher <josher@bollaw.com>
**Sent:** Monday, March 7, 2022 9:17 AM
**To:** David Grossman <dgrossman@loeb.com>
**Cc:** Safia Gray Hussain <sghussain@loeb.com>; Matthew Tom <mtom@bollaw.com>; Aaron M. Gladstein <agladstein@bollaw.com>
**Subject:** RE: Irish Rover Entertainment, LLC v. Aaron Sims, et al.

David –

I appreciate the clarification on the documents.  I would like to have amended versions of DEF 61520 and 61521 indicating that they are the cost summaries for ST Seasons 2 and 3, respectively.  This will avoid further confusion and ambiguity going forward.

Regarding the production of impact value figures for Seasons 2 and 3, it should not be contingent on resolution of issues regarding this round of discovery—please produce these figures as soon as possible.

There are some additional issues with this round of discovery:

1)  Licensee Information.  We would like an all-inclusive list of Netflix's individual licensees regarding Stranger Things and the revenue each has received from the deals with each licensee.  We also would like copies of the underlying agreements with each licensee for the period 2015 to the present.  The consumer products summary in DEF 53849 only provides numbers and I cannot tell whether those number capture all licensing deals. Moreover, without having the actual agreements, I have no way of knowing how the deals are structured in terms of compensation, which is important for purposes of damages.

2)  Loan Out Agreements.  DEFS 53791-814 appears to be a draft Loan Out Agreement between Monkey Massacre Productions and Camp Hero Productions, LLC.  DEFS 53815-47 appears to be a draft Loan Out Agreement between Monkey Massacre Productions and Storybuilders, LLC.  Neither agreement is signed and both contain redline revisions.  Please let me know if there are final, executed versions of these agreements and if so, whether they will be produced.  Additionally, please let me know what Netflix's relationship is with Camp Hero Productions, LLC and Storybuilders, LLC.

3)  DEF_0051868. For the attached spreadsheet (DEF_0051868), we would like to have these figures (Revenue/Paid Memberships) from 2010 through the present and worldwide.

4)  DEF_0053850-53851. For the attached running totals (DEF_0053850-53851), we would like to have these figures for Seasons 2 and 3. We also would like to have the figures from 2010 to the present and worldwide.

I'm happy to discuss these issues further.

**EXHIBIT X**

| | |
|---|---|
| **From:** | Jeremy J. Osher |
| **To:** | David Grossman |
| **Cc:** | Safia Gray Hussain; Matthew Tom; Aaron M. Gladstein; Jeremy J. Osher |
| **Subject:** | FW: Irish Rover Entertainment, LLC v. Aaron Sims, et al. |
| **Date:** | Tuesday, March 15, 2022 10:11:15 AM |

David —

Thank you for your response.

As an initial mater, there is no basis for withholding the impact value information for Seasons 2 and 3 and making production of same contingent on resolution of other issues. The information is directly responsive to Interrogatory 17, is relevant to the damages analysis, and we will not agree to accept the information as a compromise of and/or subject to any limitation on other unrelated discovery issues. Similarly, you already agreed to supplement your production utilizing the agreed-upon search terms. Based on your email below, these documents should be available by the end of this week and we look forward to receiving them. We will not agree to accept these documents as a compromise of and/or subject to any limitation on other unrelated discovery issues.

With regard to (1), the structure of the licensing deals is directly relevant to the damages analysis because it goes to both the licensing revenues that Netflix has already received and revenues that Netflix will receive in the future. The legal basis is simply that the information is related to damages. Although I appreciate the consumer products summary that Netflix produced, my client is also entitled to see the agreements underlying those figures. The fact that the agreements are extensive is not a basis for withholding them. The confidential nature of the agreements is addressed by the protective order. I'm not sure what you mean when you say that the protective order does not resolve these concerns. We are not willing to accept the proposed declaration in lieu of the agreements. Please let us know if Netflix will produce them.

With regard to (2), please let me know what Netflix's relationship is with Camp Hero Productions, LLC and Storybuilders, LLC. It seems odd that final documents would contain redline revisions and not be signed.

With regard to both (3) and (4), thank you for agreeing to provide information through the end of 2021. With regard to (3), the revenue/paid memberships figures going back to 2010 are related to damages. We would like to see the impact that the Stranger Things series had on the Netflix platform as a whole and the change in revenues/paid memberships over time is related to that analysis, e.g., we need to be able to compare revenue/paid memberships in the years prior to Stranger Things with the same information after Seasons 1, 2, and 3. As a compromise, we are willing to narrow the request to US and worldwide figures from 2012 through the present.

With regard to (4), the same reasoning applies. The change in streaming hours, over time, is related to the impact that Stranger Things had on the Netflix platform as a whole. We are willing to narrow the request to US and worldwide figures from 2012 through the present.

If you are only willing to provide additional information/documents in response to some but not all

of these issues, please specify. Again, we do not believe it is appropriate for you to condition production of relevant information and documents on our agreement as to other categories of information and documents that you do not agree is relevant.

Please provide us with your response to this email by Thursday so that we can move forward with a discovery motion if there are any responses to interrogatories or document requests that you are unwilling to supplement.

Jeremy J. Osher, Esq.
Boren, Osher & Luftman, LLP
222 N. Pacific Coast Highway, Suite 2222
El Segundo, California 90245
Telephone: (310) 322-2021 ext. 225
email: josher@bollaw.com
web: www.bollaw.com

*This message and any attached documents contain information from the law firm of Boren, Osher & Luftman, LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply email and then delete this message.*

**From:** David Grossman <dgrossman@loeb.com>
**Sent:** Friday, March 11, 2022 11:58 AM
**To:** Jeremy J. Osher <josher@bollaw.com>
**Cc:** Safia Gray Hussain <sghussain@loeb.com>; Matthew Tom <mtom@bollaw.com>; Aaron M. Gladstein <agladstein@bollaw.com>
**Subject:** RE: Irish Rover Entertainment, LLC v. Aaron Sims, et al.

Jeremy,

We will be providing amended versions of 61520 and 61521 as proposed so that it is clear what seasons those documents relate to.

With respect to your (1), Netflix does not agree to provide every single license agreement relating to its consumer licensing for the Stranger Things series. We do not believe there is a factual or legal basis for that request; and those agreements are extensive and many contain confidentiality clauses. The existence of a protective order in this case does not resolve these concerns, and there has not been any articulation of the legal basis for this request. Netflix would be willing to submit a declaration or provide a representation regarding the consumer products revenues, which could confirm the overall amount and what those amounts relate to. Let me know if we can agree to that proposal.

Regarding (2), the Monkey Massacre agreements, the answer is that yes, our understanding is that those are the final documents.

Regarding (3), Netflix would agree to provide supplemental documents that will show the

**EXHIBIT Y**

| | |
|---|---|
| **From:** | Safia Gray Hussain |
| **To:** | David Grossman; Jeremy J. Osher |
| **Cc:** | Matthew Tom; Aaron M. Gladstein |
| **Subject:** | RE: Irish Rover Entertainment, LLC v. Aaron Sims, et al. |
| **Date:** | Wednesday, March 30, 2022 12:25:37 PM |

Jeremy,

Further to the below, Netflix has now produced the documents that hit on the search terms agreed to by the parties that also relate to Seasons 2 or 3 of *Stranger Things*, as well as replacement copies of DEFS_0061520 and DEFS_0061521.  Although we continue to believe that plaintiff's request for revenue/paid memberships going back to 2012 is overbroad and irrelevant to its damages analysis, to resolve this issue, Netflix also will produce documents sufficient to show these domestic and worldwide figures from 2012 to 2021.

With respect to the streaming hours, plaintiff's purported rationale for this information dating back to 2012—four years before the Series aired—is simply too tenuous.  Plaintiff has not explained how *Stranger Things*, standing alone, necessarily accounts for "[t]he change in streaming hours, over time" on Netflix's platform as a whole (as opposed to, for example, the release of other programming in the same period, expansion of the platform's content, transition to streaming from DVD rentals, etc.).  Regardless, in an effort to reach compromise, Netflix would agree to provide these domestic and worldwide figures from 2015 to the present.

Netflix also cannot agree to produce every single license agreement relating to its consumer licensing for the Series.  The only purported relevance of this information offered by plaintiff is that the agreements would show the revenues Netflix has and will receive.  However, a summary of the consumer products revenues received by Netflix has already been produced, and Netflix previously stated its willingness to submit a declaration or provide a representation regarding the CP revenues, which could confirm the overall amount and what those amounts relate to. Plaintiff's burdensome demand to see dozens of underlying agreements, containing confidential information of third parties, to obtain the same information is not justified by the limited—if any—utility and relationship of the agreements to plaintiff's damages analysis.

As to the impact value for Seasons 2 and 3, you have not responded to Netflix's offer as clarified below.  To reiterate, with respect to impact value for Seasons 2 and 3, the offer remains that Netflix will agree to provide those figures as a compromise to conclude the issues relating to the current discovery requests.

Finally, we have confirmed with Aaron Sims that neither he nor ASC have any additional, non-privileged documents responsive to plaintiff's requests.

I believe this addresses all of the presently outstanding discovery issues, but please let us know if that is incorrect.

Thank you,
Safia

**Safia Gray Hussain**
*Partner*



10100 Santa Monica Blvd., Suite 2200 | Los Angeles, CA 90067
**Direct Dial:** 310.282.2183 | **Fax:** 310.919.3983 | **E-mail:** sghussain@loeb.com
**Los Angeles | New York | Chicago | Nashville | Washington, DC | San Francisco | Beijing | Hong Kong |**
**www.loeb.com**

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages
attached to it may contain confidential information that is legally privileged. If you are not the intended
recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any
disclosure, copying, distribution or use of any of the information contained in or attached to this transmission
is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify the
sender. Please destroy the original transmission and its attachments without reading or saving in any
manner. Thank you, Loeb & Loeb LLP.

**From:** David Grossman <dgrossman@loeb.com>
**Sent:** Thursday, March 17, 2022 4:59 PM
**To:** Jeremy J. Osher <josher@bollaw.com>
**Cc:** Safia Gray Hussain <sghussain@loeb.com>; Matthew Tom <mtom@bollaw.com>; Aaron M.
Gladstein <agladstein@bollaw.com>
**Subject:** RE: Irish Rover Entertainment, LLC v. Aaron Sims, et al.

Jeremy,

I think you misunderstood regarding the document search.  I was not conditioning our
production of documents from the recent search on anything – we are working on that and have
located documents, although nearly all of the hits on the search terms did not end up relating to this
case.  I believe we will be able to produce the results of that document search tomorrow.

On the other issues, you raise, I think we can compromise to 2012 on some issues you have
requested additional data for.  I cannot provide a conclusive answer yet on the questions you have
raised as my client has been unavailable this week, but I expect to be able to do so next week.

David Grossman
Loeb & Loeb LLP
10100 Santa Monica Blvd. Suite 2200
Los Angeles, CA 90067
Tel: 310.282.2077

**From:** Jeremy J. Osher <josher@bollaw.com>

# EXHIBIT Z

| | |
|---|---|
| **From:** | Jeremy J. Osher |
| **To:** | Safia Gray Hussain |
| **Cc:** | Matthew Tom; Jeremy J. Osher; David Grossman; Aaron M. Gladstein |
| **Subject:** | RE: Irish Rover Entertainment, LLC v. Aaron Sims, et al. |
| **Date:** | Wednesday, April 13, 2022 5:33:49 PM |

Hello Safia –

I hope this finds you well.

I am following up on your March 30th correspondence.

As an initial matter with respect to impact value, I have been clear that we will not accept the figures for Seasons 2 and 3 as a compromise of and/or subject to any limitation on other unrelated discovery issues. As I have stated numerous times now, there is no basis for withholding the figures and making their production contingent on resolution of other issues. As we have spent considerable time meeting and conferring on the impact value issue, this will serve as my final request for Netflix to provide the figures. Please confirm whether Netflix is willing to do so. If not, then we will consider the meet and confer completed as to the impact value issue and will proceed a motion to compel.

With respect to revenue/paid memberships, I appreciate Netflix's agreement to produce documents sufficient to show domestic and worldwide figures from 2012 to present. However, with respect to domestic and worldwide streaming figures, Netflix has proposed providing these figures only for 2015 to present. I must reiterate my request for the same from 2012 to present. The burden on Netflix to produce these additional figures is de minimis and there is no harm to Netflix in producing them. On the other hand, plaintiff is entitled to review this information as part of its damages analysis. Specifically, the figures from 2012 to 2015 will indicate the increase in streaming that Netflix experienced prior to the release to *Stranger Things*, which will serve as a benchmark to compare the increase in streaming after the release of *Stranger Things*. Please let me know if Netflix will produce the streaming figures from 2012 to present.

With respect to consumer products licensing agreement, plaintiff is entitled to the underlying agreements. These agreements will provide further detail on the consumer products sold as well as how the licensing deals were structured (i.e., what types and quantities of consumer products were sold, were the deals front/back loaded, what percentage of revenues Netflix receives, term of deal, etc.). This information is relevant to the damages analysis. Plaintiff is also entitled to know what specific elements of *Stranger Things* were licensed out and how those elements were used in the consumer products. This information from the licensing deals is directly relevant to plaintiff's damages analysis because it goes to show what scope of Netflix's licensing profits are attributable to the alleged infringement. On the other hand, the deals may show that the licensing profits are attributable to factors other than the copyrighted work. This analysis cannot be completed with the top line dollar summary and proposed declaration confirming what those dollar amounts relate to. Any concerns regarding confidentiality are sufficiently addressed by the protective order in this case. Accordingly, I request that Netflix re-consider its position on producing the licensing agreements. As with the impact value issue, we have spent a considerable amount of time meeting and conferring. I appreciate your attempts to compromise on the issue but we believe we are entitled to see the

actual agreements. Please confirm whether Netflix is willing to disclose these agreements, subject of course to the protective order. If not, then we will consider the meet and confer completed as to the consumer products licensing issue and will proceed with a motion to compel.

Thank you,

Jeremy J. Osher, Esq.
Boren, Osher & Luftman, LLP
222 N. Pacific Coast Highway, Suite 2222
El Segundo, California 90245
Telephone: (310) 322-2021 ext. 225
email: josher@bollaw.com
web: www.bollaw.com

*This message and any attached documents contain information from the law firm of Boren, Osher & Luftman, LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply email and then delete this message.*

---

**From:** Safia Gray Hussain <sghussain@loeb.com>
**Sent:** Wednesday, March 30, 2022 12:25 PM
**To:** David Grossman <dgrossman@loeb.com>; Jeremy J. Osher <josher@bollaw.com>
**Cc:** Matthew Tom <mtom@bollaw.com>; Aaron M. Gladstein <agladstein@bollaw.com>
**Subject:** RE: Irish Rover Entertainment, LLC v. Aaron Sims, et al.

Jeremy,

Further to the below, Netflix has now produced the documents that hit on the search terms agreed to by the parties that also relate to Seasons 2 or 3 of *Stranger Things*, as well as replacement copies of DEFS_0061520 and DEFS_0061521. Although we continue to believe that plaintiff's request for revenue/paid memberships going back to 2012 is overbroad and irrelevant to its damages analysis, to resolve this issue, Netflix also will produce documents sufficient to show these domestic and worldwide figures from 2012 to 2021.

With respect to the streaming hours, plaintiff's purported rationale for this information dating back to 2012—four years before the Series aired—is simply too tenuous. Plaintiff has not explained how *Stranger Things*, standing alone, necessarily accounts for "[t]he change in streaming hours, over time" on Netflix's platform as a whole (as opposed to, for example, the release of other programming in the same period, expansion of the platform's content, transition to streaming from DVD rentals, etc.). Regardless, in an effort to reach compromise, Netflix would agree to provide these domestic and worldwide figures from 2015 to the present.

Netflix also cannot agree to produce every single license agreement relating to its consumer licensing for the Series. The only purported relevance of this information offered by plaintiff is that

**EXHIBIT AA**

| From: | Safia Gray Hussain |
|---|---|
| To: | Jeremy J. Osher |
| Cc: | Matthew Tom; David Grossman; Aaron M. Gladstein |
| Subject: | RE: Irish Rover Entertainment, LLC v. Aaron Sims, et al. |
| Date: | Tuesday, April 19, 2022 4:51:27 PM |

Jeremy,

We write in response to your email of April 13, 2022, regarding the remaining damages discovery issues.

We are disappointed by plaintiff's unwillingness to consider reasonable compromises to fully resolve the outstanding disputes regarding damages discovery, including with respect to the impact value for seasons 2 and 3 of *Stranger Things*—and especially in light of plaintiff's failure and refusal to identify any infringing elements in seasons 2 & 3 of the Series that did not appear in or were not derived from season 1.  While we do not consider the statement that the information sought is "relevant to the damages analysis" to be a good-faith attempt to meet and confer, regardless, in hopes of finally moving forward from this round of discovery, and to avoid burdening the Court with wasteful motion practice, Netflix will agree to provide the impact value for seasons 2 and 3.

Again, the streaming information requested is well outside the scope of the discoverable damages period and Netflix does not agree that the requested data will somehow "indicate the increase in streaming that Netflix experienced prior to the release to *Stranger Things*, which will serve as a benchmark to compare the increase in streaming after the release of *Stranger Things*."  Nonetheless, in an effort to put this issue to rest, Netflix will agree to provide this information.

Netflix cannot agree, however, to produce all of the underlying consumer products licensing agreements for the Series.  Netflix does not agree that Plaintiff has explained how that information is relevant to copyright infringement damages.  The de minimis relevance (if any) of this information is far outweighed by the burden on Netflix of collecting and producing the underlying agreements, which contain confidential information of third parties in this lawsuit.  Further, Plaintiff's unpublished screenplay, *Totem*, is not substantially similar to *Stranger Things*, no character in *Stranger Things* is even arguably similar to any of the characters in *Totem*, and there is no basis for the assertion that individual consumer products licensing agreements will be relevant to this case. These agreements relate to toys, clothes and merchandise that have no bearing on anything in plaintiff's screenplay, and are far beyond the scope of permissible discovery.

Finally, we again note that plaintiff continues to press for damages discovery notwithstanding its (and its principal, Jeffrey Kennedy's) failure and claimed inability to produce communications relating and relevant to its claim, as well as to Defendants' defenses—including, but not limited to, Kennedy's submissions of his work to dozens of companies and writing competitions—on the purported basis of a virus that somehow deleted his emails.  As we are not aware of a PC-based virus that could delete emails stored on a web-based platform, and Kennedy continued to use the AOL account at least until 2020 (i.e., IRISH 100082), we would appreciate additional details regarding the nature of the claimed virus and plaintiff's (and Kennedy's) efforts to recover, maintain and collect emails for purposes of this litigation.  For example, when did this virus occur?  Did plaintiff engage a

third-party vendor to conduct a forensic analysis of the computer and email account, and/or to collect emails?  Kennedy's document production also includes at least one email forwarded to mkenn1058@aol.com; please confirm that plaintiff and Kennedy searched this email address for additional responsive documents.  Additionally, given that (1) plaintiff was able to identify dozens of email addresses relating to such submissions in a written discovery response, and (2) plaintiff's document production includes photographs/scans of hard copy documents dating back over a decade (i.e., IRISH 01352, IRISH 01672), Defendants have reason to believe that plaintiff and Kennedy maintained hard copies of *Totem*-related materials that have not been produced in this litigation.  Please confirm that plaintiff and Kennedy have searched for, and produced, all hard copy documents responsive to Defendants' document requests and subpoena.  In short, plaintiff's and Kennedy's meager document productions—and explanations therefor—remain woefully deficient; Defendants reserve the right to seek all appropriate remedies against plaintiff in connection with its failure to produce relevant documents.

Thank you,
Safia

---

**From:** Jeremy J. Osher <josher@bollaw.com>
**Sent:** Tuesday, April 19, 2022 11:49 AM
**To:** Safia Gray Hussain <sghussain@loeb.com>
**Cc:** Matthew Tom <mtom@bollaw.com>; David Grossman <dgrossman@loeb.com>; Aaron M. Gladstein <agladstein@bollaw.com>; Jeremy J. Osher <josher@bollaw.com>
**Subject:** RE: Irish Rover Entertainment, LLC v. Aaron Sims, et al.

Hello Safia-

Following up on this.

Hope all is well.

Jeremy J. Osher, Esq.
Boren, Osher & Luftman, LLP
222 N. Pacific Coast Highway, Suite 2222
El Segundo, California 90245
Telephone: (310) 322-2021 ext. 225
email: josher@bollaw.com
web:  www.bollaw.com

*This message and any attached documents contain information from the law firm of Boren, Osher & Luftman, LLP that may be confidential and/or privileged.  If you are not the intended recipient, you may not read, copy, distribute, or use this information.  If you have received this transmission in error, please notify the sender immediately by reply email and then delete this message.*

# EXHIBIT BB

| From: | Jeremy J. Osher |
|---|---|
| To: | Safia Gray Hussain |
| Cc: | Matthew Tom; David Grossman; Aaron M. Gladstein; Jeremy J. Osher |
| Subject: | RE: Irish Rover Entertainment, LLC v. Aaron Sims, et al. |
| Date: | Tuesday, May 24, 2022 9:38:41 PM |

Hello Safia-

I hope that you and David are doing well.

I write to follow up on our ongoing meet and confer regarding Defendants' production of documents.

First, we appreciate your client's agreement to disclose impact value information for Seasons 2 and 3. Although David did not say in his May 4th email, we assume that you will provide a supplemental interrogatory response with the impact value information provided in that email. Please confirm.

Second, we have reviewed the entirety of your clients' document production and we did not see: (1) contracts between Aaron Sims/Aaron Sims Company and Netflix; or (2) Aaron Simms/Aaron Sims contract with Evergreen (it was not included in production, only an email quote from JC at Evergreen for part of his work). We would like to receive these documents, which clearly are responsive to document requests that were propounded on Defendants. We also did not see any agreements between 21 Laps and Netflix regarding its work on Stranger Things. Please provide a copy of any such agreements. We do know that in 2017, Shawn Levy signed a four-year, seven-figure deal with Netflix—was that through 21 Laps? If so, we would like a copy of that agreement.

Third, with respect to agreements between the Duffer Brothers (or their entity Monkey Massacre) and Netflix that would cover work performed on Stranger Things, our understanding is that in 2019, the Duffer Brothers signed a 9-figure production deal with Netflix (see https://www.hollywoodreporter.com/tv/tv-news/stranger-things-renewed-season-4-at-netflix-duffer-brothers-ink-rich-netflix-deal-1222143/). We believe that this agreement is responsive to our client's outstanding discovery and should be produced. To date, we have only been provided with an unsigned version of the Duffers' initial Netflix deal. To the extent there is a signed version of this initial agreement, please produce it. We also would like confirmation that there have only been two agreements between the Duffers/their entity(ies) and Netflix to date that would cover work on Stranger Things.

Finally, we have reviewed the email communications that your clients have produced to date in response to our clients' documents requests. We would like copies of any communications between Aaron Sims and either of the Duffer Brothers regarding Seasons 1, 2 or 3. We believe you may already have produced such emails with regarding to Season 1 (please confirm). But we believe any communications between Sims and the Duffers, regarding any season of Stranger things, are relevant (we are assuming there are none with respect to Season 4 but please confirm).

This should resolve the initial round of discovery, with the exception of the consumer products licensing agreements, about which we have exhausted our meet and confer efforts.

Please let us know by Monday, May 30th whether you will produce these documents pursuant to the
protective order in this case.

Jeremy J. Osher, Esq.
Boren, Osher & Luftman, LLP
222 N. Pacific Coast Highway, Suite 2222
El Segundo, California 90245
Telephone: (310) 322-2021 ext. 225
email: josher@bollaw.com
web:  www.bollaw.com

*This message and any attached documents contain information from the law firm of Boren, Osher & Luftman, LLP
that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute,
or use this information. If you have received this transmission in error, please notify the sender immediately by
reply email and then delete this message.*

---

**From:** Safia Gray Hussain <sghussain@loeb.com>
**Sent:** Tuesday, April 19, 2022 4:51 PM
**To:** Jeremy J. Osher <josher@bollaw.com>
**Cc:** Matthew Tom <mtom@bollaw.com>; David Grossman <dgrossman@loeb.com>; Aaron M.
Gladstein <agladstein@bollaw.com>
**Subject:** RE: Irish Rover Entertainment, LLC v. Aaron Sims, et al.

Jeremy,

We write in response to your email of April 13, 2022, regarding the remaining damages discovery
issues.

We are disappointed by plaintiff's unwillingness to consider reasonable compromises to fully resolve
the outstanding disputes regarding damages discovery, including with respect to the impact value
for seasons 2 and 3 of *Stranger Things*—and especially in light of plaintiff's failure and refusal to
identify any infringing elements in seasons 2 & 3 of the Series that did not appear in or were not
derived from season 1.  While we do not consider the statement that the information sought is
"relevant to the damages analysis" to be a good-faith attempt to meet and confer, regardless, in
hopes of finally moving forward from this round of discovery, and to avoid burdening the Court with
wasteful motion practice, Netflix will agree to provide the impact value for seasons 2 and 3.

Again, the streaming information requested is well outside the scope of the discoverable damages
period and Netflix does not agree that the requested data will somehow "indicate the increase in
streaming that Netflix experienced prior to the release to *Stranger Things*, which will serve as a
benchmark to compare the increase in streaming after the release of *Stranger Things*."  Nonetheless,
in an effort to put this issue to rest, Netflix will agree to provide this information.

Netflix cannot agree, however, to produce all of the underlying consumer products licensing agreements for the Series.  Netflix does not agree that Plaintiff has explained how that information is relevant to copyright infringement damages.  The de minimis relevance (if any) of this information is far outweighed by the burden on Netflix of collecting and producing the underlying agreements, which contain confidential information of third parties to this lawsuit.  Further, Plaintiff's unpublished screenplay, *Totem*, is not substantially similar to *Stranger Things*, no character in *Stranger Things* is even arguably similar to any of the characters in *Totem*, and there is no basis for the assertion that individual consumer products licensing agreements will be relevant to this case.  These agreements relate to toys, clothes and merchandise that have no bearing on anything in plaintiff's screenplay, and are far beyond the scope of permissible discovery.

Finally, we again note that plaintiff continues to press for damages discovery notwithstanding its (and its principal, Jeffrey Kennedy's) failure and claimed inability to produce communications relating and relevant to its claim, as well as to Defendants' defenses—including, but not limited to, Kennedy's submissions of his work to dozens of companies and writing competitions—on the purported basis of a virus that somehow deleted his emails.  As we are not aware of a PC-based virus that could delete emails stored on a web-based platform, and Kennedy continued to use the AOL account at least until 2020 (i.e., IRISH 100082), we would appreciate additional details regarding the nature of the claimed virus and plaintiff's (and Kennedy's) efforts to recover, maintain and collect emails for purposes of this litigation.  For example, when did this virus occur?  Did plaintiff engage a third-party vendor to conduct a forensic analysis of the computer and email account, and/or to collect emails?  Kennedy's document production also includes at least one email forwarded to [mkenn1058@aol.com](mailto:mkenn1058@aol.com); please confirm that plaintiff and Kennedy searched this email address for additional responsive documents.  Additionally, given that (1) plaintiff was able to identify dozens of email addresses relating to such submissions in a written discovery response, and (2) plaintiff's document production includes photographs/scans of hard copy documents dating back over a decade (i.e., IRISH 01352, IRISH 01672), Defendants have reason to believe that plaintiff and Kennedy maintained hard copies of *Totem*-related materials that have not been produced in this litigation.  Please confirm that plaintiff and Kennedy have searched for, and produced, all hard copy documents responsive to Defendants' document requests and subpoena.  In short, plaintiff's and Kennedy's meager document productions—and explanations therefor—remain woefully deficient; Defendants reserve the right to seek all appropriate remedies against plaintiff in connection with its failure to produce relevant documents.

Thank you,
Safia

---

**From:** Jeremy J. Osher <[josher@bollaw.com](mailto:josher@bollaw.com)>
**Sent:** Tuesday, April 19, 2022 11:49 AM
**To:** Safia Gray Hussain <[sghussain@loeb.com](mailto:sghussain@loeb.com)>
**Cc:** Matthew Tom <[mtom@bollaw.com](mailto:mtom@bollaw.com)>; David Grossman <[dgrossman@loeb.com](mailto:dgrossman@loeb.com)>; Aaron M. Gladstein <[agladstein@bollaw.com](mailto:agladstein@bollaw.com)>; Jeremy J. Osher <[josher@bollaw.com](mailto:josher@bollaw.com)>
**Subject:** RE: Irish Rover Entertainment, LLC v. Aaron Sims, et al.

# EXHIBIT CC

| | |
|---|---|
| **From:** | Safia Gray Hussain |
| **To:** | Jeremy J. Osher |
| **Cc:** | Matthew Tom; David Grossman; Aaron M. Gladstein |
| **Subject:** | Re: Irish Rover Entertainment, LLC v. Aaron Sims, et al. |
| **Date:** | Friday, June 3, 2022 6:19:33 PM |

Jeremy,

Further to my email from Monday, we write in response to your May 24, 2022 email.

First, although Netflix continues to dispute the relevance of the impact value metric for seasons 2 and 3 of *Stranger Things* to any cognizable damages analysis, and although – as you note below – we have already provided this information to Plaintiff in an email dated May 4, Netflix will agree to provide it again in a written response to Plaintiff's Interrogatory No. 17.

Second, Defendants dispute that Aaron Sims' agreement with Netflix regarding the concept art he created for *Stranger Things* has been part of any "ongoing" meet and confer discussions. In fact, this agreement has not been discussed since January 14, 2022, when, by letter of that date, Plaintiff reiterated Defendants' October 28, 2021 representation that Sims' compensation for this concept art is not tied to the profits or success of the Series and position that the agreement is not relevant to Plaintiff's claims of infringement. Plaintiff has been silent as to this agreement in the intervening four months, and Defendants' position has not changed. (We note, further, that Plaintiff has never responded to Defendants' repeated requests for an explanation of its relevance to Plaintiff's claims.) With respect to Sims' contract with Evergreen regarding *Totem*, after conducting a diligent search and a reasonable inquiry, Sims has been unable to locate any such agreement and does not believe that such agreement ever existed. To the extent such an agreement does exist, presumably it would be in your client's possession, custody, or control, as it relates to Plaintiff's work.

Agreements between 21 Laps and Netflix regarding *Stranger Things* likewise have not been part of any "ongoing" meet and confer discussions; Plaintiff has not raised this issue since the parties' October 28, 2021 telephonic meet and confer, nearly seven months ago, when we explained that 21 Laps neither created the creative elements that allegedly infringe Plaintiff's work and that its compensation is not tied to the Series' revenues and profits. Though we are still looking into the agreement between Shawn Levy and Netflix, to the extent that agreement was through 21 Laps and is similarly disconnected from the Series' revenues and profits, the foregoing applies. To the extent that the agreement was not through 21 Laps, it is plainly not responsive to any of Plaintiff's requests.

Third, we are still discussing the issue of the Duffers' agreements with our client, and will provide a substantive response early next week.

Finally, with respect to Sims' email communications with the Duffers, as we previously represented, Sims did very little on Season 2 of the Series and was not involved in Seasons 3 or 4. We have, however, located some additional documents and will produce those.

Regards,
Safia

On May 24, 2022, at 9:38 PM, Jeremy J. Osher <josher@bollaw.com> wrote:

Hello Safia-

I hope that you and David are doing well.

I write to follow up on our ongoing meet and confer regarding Defendants' production of documents.

First, we appreciate your client's agreement to disclose impact value information for Seasons 2 and 3. Although David did not say in his May 4th email, we assume that you will provide a supplemental interrogatory response with the impact value information provided in that email. Please confirm.

Second, we have reviewed the entirety of your clients' document production and we did not see: (1) contracts between Aaron Sims/Aaron Sims Company and Netflix; or (2) Aaron Simms/Aaron Sims contract with Evergreen (it was not included in production, only an email quote from JC at Evergreen for part of his work). We would like to receive these documents, which clearly are responsive to document requests that were propounded on Defendants. We also did not see any agreements between 21 Laps and Netflix regarding its work on Stranger Things. Please provide a copy of any such agreements. We do know that in 2017, Shawn Levy signed a four-year, seven-figure deal with Netflix—was that through 21 Laps? If so, we would like a copy of that agreement.

Third, with respect to agreements between the Duffer Brothers (or their entity Monkey Massacre) and Netflix that would cover work performed on Stranger Things, our understanding is that in 2019, the Duffer Brothers signed a 9-figure production deal with Netflix (see https://www.hollywoodreporter.com/tv/tv-news/stranger-things-renewed-season-4-at-netflix-duffer-brothers-ink-rich-netflix-deal-1222143/). We believe that this agreement is responsive to our client's outstanding discovery and should be produced. To date, we have only been provided with an unsigned version of the Duffers' initial Netflix deal. To the extent there is a signed version of this initial agreement, please produce it. We also would like confirmation that there have only been two agreements between the Duffers/their entity(ies) and Netflix to date that would cover work on Stranger Things.

Finally, we have reviewed the email communications that your clients have produced to date in response to our clients' documents requests. We would like copies of any communications between Aaron Sims and either of the Duffer Brothers regarding Seasons 1, 2 or 3. We believe you may already have produced such emails with

# EXHIBIT DD

| **From:** | Jeremy J. Osher |
|---|---|
| **To:** | Safia Gray Hussain |
| **Cc:** | Jeremy J. Osher; Aaron M. Gladstein; Matthew Tom; David Grossman |
| **Subject:** | RE: Irish Rover Entertainment, LLC v. Aaron Sims, et al. |
| **Date:** | Wednesday, June 8, 2022 9:33:06 PM |

Hello Safia —

Thank you for the response on Friday. This email follows up on the issues that remain outstanding.

First, we received the supplemental responses to Special Interrogatory Nos. 17 and 18. We have significant concerns about these responses, including the

These disclosures suggest that Netflix has severely underreported impact value for Seasons 1, 2, and 3 in its responses to Special Interrogatories Nos. 17 and 18. We will address this further under separate cover.

Second, with regard to Sims' agreement with Netflix, we maintain our position that the agreement is directly relevant because it goes to (1) Sims' compensation and profit attributable to the alleged infringement; and (2) Netflix's expenses in producing Stranger Things. To be clear, my letter dated January 14, 2022 merely reiterated Defendants' position that the agreement is not relevant. The fact that we have not discussed this specific agreement recently does not preclude us from raising it now. Please confirm that the agreement will be produced. If you are not willing to provide it, then our position is that we have exhausted the meet and confer process and we will proceed accordingly. With regard to Sims' agreement with Evergreen, we find it hard to believe that no such agreement ever existed. Nevertheless, we ask that Sims state in a written discovery response that he has been unable to locate any such agreement following a diligent search and reasonable inquiry.

The same reasoning applies to the agreements between 21 Laps and Netflix. Although we have not discussed these agreements recently, they remain responsive to Plaintiff's document requests and relevant to Plaintiff's damages. Plaintiff is entitled to know Netflix's production expenses, which will be reflected in the agreements with 21 Laps. The same would apply to agreements between Shawn Levy and Netflix. Please confirm that these agreements will be produced. If not, our position is that we have exhausted the meet and confer process and we will proceed accordingly.

Third, please let us know your position with regard to the agreements between the Duffer Brothers (or their entity Monkey Massacre) and Netflix. Our position is that these agreements should be produced immediately. I note that during our initial meet and confer call on October 28, Mr. Grossman stated that Netflix would produce its agreements with the Duffer Brothers. To date, however, we have only been provided with an unsigned version of the Duffers' initial deal. Please confirm that these agreements will be produced. If not, our position is that we have exhausted the meet and confer process and we will proceed accordingly.

Fourth, we look forward to reviewing the additional email communications between Sims and the Duffer Brothers. Upon those documents being produced, we would like confirmation that all

communications related to Stranger Things as between Sims and the Duffers have been produced.

Finally, after reviewing the documents that have been produced thus far by Defendants, including those produced in connection with the "key word" searches previously performed, we have determined that it is critical for us to have all of the communications between and among the Defendants regarding the development of Stranger Things Seasons 1, 2, and 3, and any communications between the Duffer Brothers and any third party regarding the development of Stranger Things. These documents clearly are relevant and are responsive to numerous document requests that already have been propounded.

As you know, there is a protective order in place in this action and so any concerns regarding confidentiality, trade secrets, etc., already have been addressed by the parties.

Please let us know your response to these issues by Friday.

Jeremy J. Osher, Esq.
Boren, Osher & Luftman, LLP
222 N. Pacific Coast Highway, Suite 2222
El Segundo, California 90245
Telephone: (310) 322-2021 ext. 225
email: josher@bollaw.com
web:  www.bollaw.com

*This message and any attached documents contain information from the law firm of Boren, Osher & Luftman, LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply email and then delete this message.*

---

**From:** Safia Gray Hussain <sghussain@loeb.com>
**Sent:** Friday, June 3, 2022 6:19 PM
**To:** Jeremy J. Osher <josher@bollaw.com>
**Cc:** Matthew Tom <mtom@bollaw.com>; David Grossman <dgrossman@loeb.com>; Aaron M. Gladstein <agladstein@bollaw.com>
**Subject:** Re: Irish Rover Entertainment, LLC v. Aaron Sims, et al.

Jeremy,

Further to my email from Monday, we write in response to your May 24, 2022 email.

First, although Netflix continues to dispute the relevance of the impact value metric for seasons 2 and 3 of *Stranger Things* to any cognizable damages analysis, and although – as you note below – we have already provided this information to Plaintiff in an email dated May 4, Netflix will agree to provide it again in a written response to Plaintiff's Interrogatory No. 17.

Second, Defendants dispute that Aaron Sims' agreement with Netflix regarding the concept art he created for *Stranger Things* has been part of any "ongoing" meet and confer discussions. In fact, this agreement has not been discussed since January 14, 2022, when, by letter of that

date, Plaintiff reiterated Defendants' October 28, 2021 representation that Sims' compensation
for this concept art is not tied to the profits or success of the Series and position that the
agreement is not relevant to Plaintiff's claims of infringement.  Plaintiff has been silent as to
this agreement in the intervening four months, and Defendants' position has not changed.  (We
note, further, that Plaintiff has never responded to Defendants' repeated requests for an
explanation of its relevance to Plaintiff's claims.)  With respect to Sims' contract with
Evergreen regarding *Totem*, after conducting a diligent search and a reasonable inquiry, Sims
has been unable to locate any such agreement and does not believe that such agreement ever
existed.  To the extent such an agreement does exist, presumably it would be in your client's
possession, custody, or control, as it relates to Plaintiff's work.

Agreements between 21 Laps and Netflix regarding *Stranger Things* likewise have not been
part of any "ongoing" meet and confer discussions; Plaintiff has not raised this issue since the
parties' October 28, 2021 telephonic meet and confer, nearly seven months ago, when we
explained that 21 Laps neither created the creative elements that allegedly infringe Plaintiff's
work and that its compensation is not tied to the Series' revenues and profits.  Though we are
still looking into the agreement between Shawn Levy and Netflix, to the extent that agreement
was through 21 Laps and is similarly disconnected from the Series' revenues and profits, the
foregoing applies.  To the extent that the agreement was not through 21 Laps, it is plainly not
responsive to any of Plaintiff's requests.

Third, we are still discussing the issue of the Duffers' agreements with our client, and will
provide a substantive response early next week.

Finally, with respect to Sims' email communications with the Duffers, as we previously
represented, Sims did very little on Season 2 of the Series and was not involved in Seasons 3
or 4.  We have, however, located some additional documents and will produce those.


Regards,
Safia



On May 24, 2022, at 9:38 PM, Jeremy J. Osher <josher@bollaw.com> wrote:



Hello Safia-

I hope that you and David are doing well.

I write to follow up on our ongoing meet and confer regarding Defendants' production
of documents.

First, we appreciate your client's agreement to disclose impact value information for
Seasons 2 and 3. Although David did not say in his May 4th email, we assume that you
will provide a supplemental interrogatory response with the impact value information
provided in that email. Please confirm.

**EXHIBIT EE**

| From: | Safia Gray Hussain |
|---|---|
| To: | Jeremy J. Osher |
| Cc: | Aaron M. Gladstein; Matthew Tom; David Grossman |
| Subject: | RE: Irish Rover Entertainment, LLC v. Aaron Sims, et al. – CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER |
| Date: | Friday, June 10, 2022 5:44:25 PM |

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Jeremy,

We write in response to your email dated June 8, 2022.  As a preliminary matter, we note that we received your email raising multiple purported discovery issues at 9:33 PM Wednesday night, and that it demanded a response within an abbreviated time period of less than 48 hours.  Given that most of these issues have been unaddressed by Plaintiff for months, it is clear that there is no urgency to these requests.  It further appears that Plaintiff is not meeting and conferring in a legitimate effort to resolve outstanding discovery disputes, but instead is utilizing the meet and confer process to extract an ever-shifting and increasingly burdensome universe of documents.  For example, and as discussed further below, the parties already met and conferred and reached resolution with respect to emails and documents concerning Seasons 2 and 3 of *Stranger Things* months ago, yet, having finally reviewed Defendants' production made in accordance with that compromise agreement – and, unsurprisingly, finding no evidence of misappropriation – Plaintiff has moved the goal posts once again and now demands more.  This is improper, and to the extent that Plaintiff pursues motion practice on these issues, Defendants will raise this with the Magistrate. Defendants respond to each of the issues raised in your email below as follows:

First, we have repeatedly advised Plaintiff that ▮

▮

▮

▮ To the extent that Plaintiff still
believes it needs to "address this further," it may do so in deposition.

Second, Defendants continue to dispute the relevance of Netflix's agreements with Aaron Sims, 21 Laps and Shawn Levy to Plaintiff's claimed damages.  In fact, Plaintiff's only argument to support its demand is a conclusory assertion that these agreements somehow evidence Netflix's expenses in producing *Stranger Things*.  While this strained claim of relevance is dubious at best, in an effort to reach resolution, Defendants will agree to search for the agreements between Netflix and Sims, 21 Laps, and Shawn Levy related to the production of *Stranger Things*.  With respect to the agreement between Sims and Evergreen relating to *Totem*, we likewise find it hard to believe that, to the extent that any such agreement existed, your client did not maintain or does not have access to it separate from his virus-afflicted emails.  Regardless, Sims will provide a written discovery response stating that he was unable to locate that agreement following a diligent search and a reasonable inquiry.  Given that Plaintiff has taken the position that an amended/supplemental discovery response is required when responsive documents cannot be located, please confirm that Plaintiff will provided a written discovery response stating that it has been unable to locate pre-2014 emails and documents responsive to Defendants' discovery requests following a diligent search and a reasonable inquiry.

Third, as David advised you on March 11, it is our understanding that the versions of the Duffers' initial deal that have been produced are the final documents.  Defendants dispute that the subsequent agreement referenced in your email is relevant to Plaintiff's claims or within the scope

of documents Defendants agreed to produce. As the article you cite notes, that agreement was signed in 2019; ███████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████████████████

███████████████████████████ Nonetheless, in an attempt to reach resolution on this issue, Defendants will agree to produce the 2019 agreement between the Duffers and Netflix.

Fourth, we can confirm that, following the forthcoming production of additional email communications between Sims and the Duffers, all communications between Sims and the Duffers concerning Sims' creative contributions to *Stranger Things* that were located after a diligent search and a reasonable inquiry will have been produced.

Fifth, Plaintiff's demand that Defendants produce every communication concerning the "development" of Seasons 1, 2 and 3 of the Series reneges on a compromise agreement reached by the parties nearly four months ago. On its face, this demand calls for documents beyond the scope of Plaintiff's claims and not proportionate to the needs of the case; Plaintiff has not even attempted to explain the relevance of the documents it now seeks – which would at least encompass every email concerning more than 25 episodes produced over a three-year time period. (We note also that while Plaintiff claims such documents are "responsive to numerous document requests that already have been propounded[,]" Plaintiff does not identify those requests.)

Moreover, Defendants already have produced emails concerning the creative contributions to Season 1 of the Series. On January 20, 2022, Defendants proposed a "compromise offer to resolve the parties' dispute" concerning documents and communications related to Seasons 2 and 3, notwithstanding Plaintiff's inability to identify any allegedly protectable expression that was supposedly infringed in connection with these later seasons. Specifically, Netflix proposed conducting electronic searches for documents, internal communications, and emails with the other Defendants concerning *Stranger Things* that also included specified search terms. Defendants agreed to produce documents located after that search that were responsive to Plaintiff's document requests through April 2018. Plaintiff agreed to that proposal on February 11, and Defendants thereafter produced such documents in accordance with and in reliance on that agreement. Plaintiff's attempt to now back-track on that agreement to extract ever-more burdensome discovery from Defendants – who have already produced more than 62,000 pages of documents that confirm the independent creation of the Series – is entirely improper. Plaintiff's self-described "Native American ghost story," which is imbued with Native American folklore and Christian ideology, has nothing in common with *Stranger Things'* characters and story and there is no legal or factual justification for extending the already burdensome written discovery to additional seasons, and beyond the agreed-upon search parameters.

Regard,

Safia

---

**From:** Jeremy J. Osher <josher@bollaw.com>
**Sent:** Wednesday, June 8, 2022 9:33 PM
**To:** Safia Gray Hussain <sghussain@loeb.com>
**Cc:** Jeremy J. Osher <josher@bollaw.com>; Aaron M. Gladstein <agladstein@bollaw.com>; Matthew Tom <mtom@bollaw.com>; David Grossman <dgrossman@loeb.com>
**Subject:** RE: Irish Rover Entertainment, LLC v. Aaron Sims, et al.

Hello Safia –

Thank you for the response on Friday. This email follows up on the issues that remain outstanding.

First, we received the supplemental responses to Special Interrogatory Nos. 17 and 18. We have significant concerns about these responses, including the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. These disclosures suggest that Netflix has severely underreported impact value for Seasons 1, 2, and 3 in its responses to Special Interrogatories Nos. 17 and 18. We will address this further under separate cover.

Second, with regard to Sims' agreement with Netflix, we maintain our position that the agreement is directly relevant because it goes to (1) Sims' compensation and profit attributable to the alleged infringement; and (2) Netflix's expenses in producing Stranger Things. To be clear, my letter dated January 14, 2022 merely reiterated Defendants' position that the agreement is not relevant. The fact that we have not discussed this specific agreement recently does not preclude us from raising it now. Please confirm that the agreement will be produced. If you are not willing to provide it, then our position is that we have exhausted the meet and confer process and we will proceed accordingly. With regard to Sims' agreement with Evergreen, we find it hard to believe that no such agreement ever existed. Nevertheless, we ask that Sims state in a written discovery response that he has been unable to locate any such agreement following a diligent search and reasonable inquiry.

The same reasoning applies to the agreements between 21 Laps and Netflix. Although we have not discussed these agreements recently, they remain responsive to Plaintiff's document requests and relevant to Plaintiff's damages. Plaintiff is entitled to know Netflix's production expenses, which will be reflected in the agreements with 21 Laps. The same would apply to agreements between Shawn Levy and Netflix. Please confirm that these agreements will be produced. If not, our position is that we have exhausted the meet and confer process and we will proceed accordingly.

Third, please let us know your position with regard to the agreements between the Duffer Brothers (or their entity Monkey Massacre) and Netflix. Our position is that these agreements should be produced immediately. I note that during our initial meet and confer call on October 28, Mr. Grossman stated that Netflix would produce its agreements with the Duffer Brothers. To date, however, we have only been provided with an unsigned version of the Duffers' initial deal. Please confirm that these agreements will be produced. If not, our position is that we have exhausted the meet and confer process and we will proceed accordingly.

Fourth, we look forward to reviewing the additional email communications between Sims and the Duffer Brothers. Upon those documents being produced, we would like confirmation that all communications related to Stranger Things as between Sims and the Duffers have been produced.

Finally, after reviewing the documents that have been produced thus far by Defendants, including those produced in connection with the "key word" searches previously performed, we have

determined that it is critical for us to have all of the communications between and among the Defendants regarding the development of Stranger Things Seasons 1, 2, and 3, and any communications between the Duffer Brothers and any third party regarding the development of Stranger Things. These documents clearly are relevant and are responsive to numerous document requests that already have been propounded.

As you know, there is a protective order in place in this action and so any concerns regarding confidentiality, trade secrets, etc., already have been addressed by the parties.

Please let us know your response to these issues by Friday.

Jeremy J. Osher, Esq.
Boren, Osher & Luftman, LLP
222 N. Pacific Coast Highway, Suite 2222
El Segundo, California 90245
Telephone: (310) 322-2021 ext. 225
email: josher@bollaw.com
web:  www.bollaw.com

*This message and any attached documents contain information from the law firm of Boren, Osher & Luftman, LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply email and then delete this message.*

---

**From:** Safia Gray Hussain <sghussain@loeb.com>
**Sent:** Friday, June 3, 2022 6:19 PM
**To:** Jeremy J. Osher <josher@bollaw.com>
**Cc:** Matthew Tom <mtom@bollaw.com>; David Grossman <dgrossman@loeb.com>; Aaron M. Gladstein <agladstein@bollaw.com>
**Subject:** Re: Irish Rover Entertainment, LLC v. Aaron Sims, et al.

Jeremy,

Further to my email from Monday, we write in response to your May 24, 2022 email.

First, although Netflix continues to dispute the relevance of the impact value metric for seasons 2 and 3 of *Stranger Things* to any cognizable damages analysis, and although – as you note below – we have already provided this information to Plaintiff in an email dated May 4, Netflix will agree to provide it again in a written response to Plaintiff's Interrogatory No. 17.

Second, Defendants dispute that Aaron Sims' agreement with Netflix regarding the concept art he created for *Stranger Things* has been part of any "ongoing" meet and confer discussions. In fact, this agreement has not been discussed since January 14, 2022, when, by letter of that date, Plaintiff reiterated Defendants' October 28, 2021 representation that Sims' compensation for this concept art is not tied to the profits or success of the Series and position that the agreement is not relevant to Plaintiff's claims of infringement. Plaintiff has been silent as to this agreement in the intervening four months, and Defendants' position has not changed. (We

# EXHIBIT FF

| From: | Jeremy J. Osher |
|---|---|
| To: | Safia Gray Hussain |
| Cc: | Jeremy J. Osher; David Grossman; Aaron M. Gladstein; Matthew Tom |
| Subject: | FW: Irish Rover Entertainment, LLC v. Aaron Sims, et al. - CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER |
| Date: | Sunday, June 12, 2022 3:41:25 PM |

Hello Safia-

Thank you for your response. There are a number of statements in your email that we dispute. The purpose of this email, however, is not to address these statements. Instead, and for the moment, I simply want to confirm what you appear to be saying with respect to some of the disputed categories of discovery.

1. **Netflix's agreements with Aaron Sims, 21 Laps and Shawn Levy**: You say that "in an effort to reach resolution, Defendants will agree to search for the agreements between Netflix and Sims, 21 Laps, and Shawn Levy related to the production of *Stranger Things*". We assume you also are agreeing to produce any such agreements that are located pursuant to your search. Please confirm.

2. **Sim/ASC and Evergreen Agreement:** You will produce a response stating that this agreement cannot be located. We will provide you with a response re: Plaintiff's pre-2014 emails and documents.

3. **Duffers 2019 Agreement:** You agreed to produce this agreement.

4. **Sims/Duffers Communications:** You say that after your forthcoming production, "all communications between Sims and the Duffers concerning Sims' creative contributions to *Stranger Things*" (located after a diligent search) will have been produced. Our discovery request seek all communications between Sims and the Duffers regarding *Stranger Things*. We cannot tell what documents, if any, you are excluding from your production based on what appears to be limiting language (i.e., communications concerning "Sims' creative contributions"). Please confirm that you are in fact producing all communications between Aaron Sims and the Duffers regarding *Stranger Things*. If not, we need a better understanding of how you are distinguishing between communications that do concern and that do not concern Sims' creative contributions.

Please provide the requested confirmation with regard to Nos. 1 and 4. Also, let us know when you will producing the documents responsive to No. 1, 3, and 4.

Thank you,

Jeremy J. Osher, Esq.
Boren, Osher & Luftman, LLP
222 N. Pacific Coast Highway, Suite 2222
El Segundo, California 90245
Telephone: (310) 322-2021 ext. 225
email: josher@bollaw.com

web: www.bollaw.com

*This message and any attached documents contain information from the law firm of Boren, Osher & Luftman, LLP
that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute,
or use this information. If you have received this transmission in error, please notify the sender immediately by
reply email and then delete this message.*

**From:** Safia Gray Hussain <sghussain@loeb.com>
**Sent:** Friday, June 10, 2022 5:44 PM
**To:** Jeremy J. Osher <josher@bollaw.com>
**Cc:** Aaron M. Gladstein <agladstein@bollaw.com>; Matthew Tom <mtom@bollaw.com>; David
Grossman <dgrossman@loeb.com>
**Subject:** RE: Irish Rover Entertainment, LLC v. Aaron Sims, et al. - CONFIDENTIAL PURSUANT TO
PROTECTIVE ORDER

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Jeremy,

We write in response to your email dated June 8, 2022. As a preliminary matter, we note that we
received your email raising multiple purported discovery issues at 9:33 PM Wednesday night, and
that it demanded a response within an abbreviated time period of less than 48 hours. Given that
most of these issues have been unaddressed by Plaintiff for months, it is clear that there is no
urgency to these requests. It further appears that Plaintiff is not meeting and conferring in a
legitimate effort to resolve outstanding discovery disputes, but instead is utilizing the meet and
confer process to extract an ever-shifting and increasingly burdensome universe of documents. For
example, and as discussed further below, the parties already met and conferred and reached
resolution with respect to emails and documents concerning Seasons 2 and 3 of *Stranger Things*
months ago, yet, having finally reviewed Defendants' production made in accordance with that
compromise agreement – and, unsurprisingly, finding no evidence of misappropriation – Plaintiff has
moved the goal posts once again and now demands more. This is improper, and to the extent that
Plaintiff pursues motion practice on these issues, Defendants will raise this with the
Magistrate. Defendants respond to each of the issues raised in your email below as follows:

First, we have repeatedly advised Plaintiff that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ To the extent that Plaintiff still
believes it needs to "address this further," it may do so in deposition.

Second, Defendants continue to dispute the relevance of Netflix's agreements with Aaron Sims, 21
Laps and Shawn Levy to Plaintiff's claimed damages. In fact, Plaintiff's only argument to support its
demand is a conclusory assertion that these agreements somehow evidence Netflix's expenses in
producing *Stranger Things*. While this strained claim of relevance is dubious at best, in an effort to
reach resolution, Defendants will agree to search for the agreements between Netflix and Sims, 21
Laps, and Shawn Levy related to the production of *Stranger Things*. With respect to the agreement

# EXHIBIT GG

| From: | Safia Gray Hussain |
|---|---|
| To: | Jeremy J. Osher |
| Cc: | David Grossman; Aaron M. Gladstein; Matthew Tom |
| Subject: | RE: Irish Rover Entertainment, LLC v. Aaron Sims, et al. - CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER |
| Date: | Friday, June 17, 2022 3:08:23 PM |

Hi Jeremy,

We write in response to your email dated June 12, 2022 as follows:

1. Your assumption is correct.

2. You should have received an electronic service copy of Sims' supplemental responses earlier today.  Thank you for confirming that Plaintiff will provide written discovery responses re: Plaintiff's pre-2014 emails and documents; please let us know when we can expect it.

3. Correct.

4. "Creative contributions" has the same meaning as used in Defendants' responses to Plaintiff's discovery requests, as discussed during the parties' October 28, 2021 telephonic meet and confer.

Defendants are endeavoring to produce documents corresponding to Nos. 1, 3 and 4 above next week.

Regards,
Safia

**Safia Gray Hussain**
*Partner*
*(Pronouns:she/her)*



10100 Santa Monica Blvd., Suite 2200 | Los Angeles, CA 90067
**Direct Dial:** 310.282.2183 | **Fax:** 310.919.3983 | **E-mail:** sghussain@loeb.com
**Los Angeles | New York | Chicago | Nashville | Washington, DC | San Francisco | Beijing | Hong Kong |**
**www.loeb.com**

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify the sender. Please destroy the original transmission and its attachments without reading or saving in any manner. Thank you, Loeb & Loeb LLP.

**From:** Jeremy J. Osher <josher@bollaw.com>
**Sent:** Sunday, June 12, 2022 3:41 PM
**To:** Safia Gray Hussain <sghussain@loeb.com>
**Cc:** Jeremy J. Osher <josher@bollaw.com>; David Grossman <dgrossman@loeb.com>; Aaron M.
Gladstein <agladstein@bollaw.com>; Matthew Tom <mtom@bollaw.com>
**Subject:** FW: Irish Rover Entertainment, LLC v. Aaron Sims, et al. - CONFIDENTIAL PURSUANT TO
PROTECTIVE ORDER

Hello Safia-

Thank you for your response. There are a number of statements in your email that we dispute. The
purpose of this email, however, is not to address these statements. Instead, and for the moment, I
simply want to confirm what you appear to be saying with respect to some of the disputed
categories of discovery.

1. **Netflix's agreements with Aaron Sims, 21 Laps and Shawn Levy**: You say that "in an effort to
   reach resolution, Defendants will agree to search for the agreements between Netflix and
   Sims, 21 Laps, and Shawn Levy related to the production of *Stranger Things*". We assume you
   also are agreeing to produce any such agreements that are located pursuant to your search.
   Please confirm.

2. **Sim/ASC and Evergreen Agreement:** You will produce a response stating that this agreement
   cannot be located. We will provide you with a response re: Plaintiff's pre-2014 emails and
   documents.

3. **Duffers 2019 Agreement:** You agreed to produce this agreement.

4. **Sims/Duffers Communications:** You say that after your forthcoming production, "all
   communications between Sims and the Duffers concerning Sims' creative contributions to
   *Stranger Things*" (located after a diligent search) will have been produced. Our discovery
   request seek all communications between Sims and the Duffers regarding *Stranger Things*.
   We cannot tell what documents, if any, you are excluding from your production based on
   what appears to be limiting language (i.e., communications concerning "Sims' creative
   contributions"). Please confirm that you are in fact producing all communications between
   Aaron Sims and the Duffers regarding *Stranger Things*. If not, we need a better understanding
   of how you are distinguishing between communications that do concern and that do not
   concern Sims' creative contributions.

Please provide the requested confirmation with regard to Nos. 1 and 4. Also, let us know when you
will producing the documents responsive to No. 1, 3, and 4.

Thank you,

Jeremy J. Osher, Esq.

**EXHIBIT HH**

| | | | |
|---|---|---|---|
| 47' Brand | Eggo | Madrid Skateboarding | Secret Cinema |
| 7 Eleven | Elo7 | Major League Baseball (MLB) | Sharp |
| A2 Jackets | Epic Games | McFarlane Toys | Shutterstock |
| Adidas | Fanatics | MeUndies | Skittles |
| Amazon | Firebox | Microsoft | Smirnoff |
| Atari | Five Below | Miller Beer | Snapchat |
| Barnes and Noble | Forever 21 | Minute Maid | Sony Interactive Entertainment |
| Baskin Robbins | Fun.com | Next Games | Sony Walkman |
| Belk | Funko | Nike | Sour Patch Kids |
| Best Buy | GameStop | Observe Books (UK) | Spirit Halloween |
| Big Lots | GAP | Old Navy | Spotify (Soundtrack Sales) |
| Big Mouth Inc | Garbage Pail Kids | Oriental Trading Company | Stranger Things - Drive Through Experience (Los Angeles) |
| Birthday Direct | Google Play | PacSun | Stranger Things - Retail Pop Up Stores (Los Angeles, New York City, Chicago, Dallas) |
| Bonanza | H&M | Party City | Stranger Things Experience - Fever Exhibit (New York, San Francisco, London) |
| Bonus XP | Hasbro Gaming | Penguin Random House Publishing | Target |
| Box Lunch | Hawaiian Tropic | Pentax | TeePublic |
| Burger King | Hot Topic | Polaroid | Tilly's |
| Cadillac | Hybrid Apparel | Pop in a Box US | Trends International |

| | | | Universal Studios - Halloween Horror Nights (Hollywood, Orlando, Singapore) |
|---|---|---|---|
| Casio | JC Penny | Pringles | |
| Chevrolet | JIF Peanut Butter | Pyramid International | Urban Outfitters |
| Chicago Cubs | Kellogg's | Quick Silver | Walmart |
| Coca-Cola | Kohls | Radio Shack | Wayfair |
| Culture Kings US | Lego | Reddit | Wizards of the Coast |
| Dark Horse Comics | Levi's | Reebok | Zavvi US |
| Dicks Sporting Good | Lokai | Sanyo | |
| Dominos | MAC Cosmetics | Schwinn Bicycles | |
| Doritos | Macy's | Seas Stock X | |

**EXHIBIT II**

**FILED**
Superior Court of California
County of Los Angeles

02/25/2021

Sherri R. Carter, Executive Officer / Clerk of Court

By: _____ J. Clavero _____ Deputy

BOREN, OSHER & LUFTMAN, LLP
Jeremy J. Osher (SBN 192109)
josher@bollaw.com
Aaron M. Gladstein (SBN 266287)
agladstein@bollaw.com
222 North Pacific Coast Highway, Ste. 2222
El Segundo, CA 90245
Telephone: (310) 322-2021
Facsimile: (310) 322-2228

Attorneys for Plaintiff
ERIK SENKO

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

# FOR THE COUNTY OF LOS ANGELES - CENTRAL DISTRICT

| | |
|---|---|
| ERIK SENKO, an individual, on his behalf and on behalf of 56 other Owners and Members of Marina City Club Condominium Owners Association,<br><br>          Plaintiff,<br><br>     vs.<br><br>MARINA CITY CLUB CONDOMINIUM OWNERS ASSOCIATION, a California Non-Profit Mutual Benefit Corporation,<br><br>          Defendants. | Case No.: 19STLC03060<br><br>[*Assigned for all purposes to Honorable Dennis J. Landin, Department 51*]<br><br>**[~~PROPOSED~~] ORDER ON PLAINTIFF ERIK SENKO'S MOTION FOR ATTORNEY'S FEES**<br><br><br>**Motion Hearing:**<br>Date:   January 28, 2021<br>Time:   10:00 a.m.<br>Dept.   51 |

Electronically Received 02/08/2021 09:58 AM

1    The Motion for Attorney's Fees filed by Plaintiff Erik Senko ("Plaintiff") pursuant to Civil Code
2    sections 1717 and 5975(c) and Code of Civil Procedure section 1033.5 came on regularly for hearing on
3    January 28, 2021 at 10:00 a.m. in department 51 of the above-entitled Court, the Honorable Dennis J.
4    Landin presiding.
5    Jeremy J. Osher of Boren, Osher & Luftman, LLP appeared on behalf of Plaintiff. Patrick Malone
6    of Roseman Law, APC appeared on behalf of Defendant Marina City Club Condominium Owners
7    Association ("Defendant").
8    The Court, having heard and considered the arguments of counsel, and having reviewed and
9    considered Plaintiff's motion and all supporting papers, the opposition to said motion, and Plaintiff's
10   reply, and good cause appearing therefor, hereby finds and orders as follows:
11   1. Plaintiff's Motion is granted.
12   2. Plaintiff is the prevailing party in this action and is therefore entitled to reasonable attorney
13      fees.
14   3. Based on the Court's experience with attorney fee motions in similar matters, it finds that a
15      rate of $600 per hour for each partner and $400 per hour for each associate is reasonable in
16      view of the nature of this case.
17   4. The time billed for each task is sufficiently documented and generally reasonable except that
18      the number of hours required for trial preparation by Jeremy J. Osher is reduced from seventy
19      (70) to fifty (50) hours; the number of hours relating to the ex parte regarding the judgment is
20      reduced from eight (8) to five (5) hours; and the hours relating to the objections to the judgment
21      are reduced from ten (10) hours to five (5) hours.
22   5. Plaintiff is entitled to recover an additional ten (10) hours of time for work performed by
23      Jeremy J. Osher in connection with the Motion since the date it was filed.

\  \  \

\  \  \

\  \  \

6.  Based on the Court's findings with respect to the reasonable rates and the reasonable number of hours spent on this matter, the following chart reflects the hours and fees to which Plaintiff is entitled:

| Billers | Hours | Rate | Fees |
|---------|-------|------|------|
| Jeremy J. Osher | 168.30 | $600 | $100,980.00 |
| Aaron M. Gladstein | 62.30 | $400 | $24,920.00 |
| Stephen Z. Boren | 10.10 | $600 | $6,060.00 |
| **TOTAL** | | | **$131,960.00** |

**IT IS HEREBY ORDERED THAT** Defendant Marina City Club Condominium Owners Association is required to pay to Plaintiff Erik Senko the total amount of $131,960.00 for the reasonable attorney's fees Plaintiff incurred in litigating this matter. Payment is to be made to Plaintiff's counsel of record within thirty (30) days of the date of this Order.

**IT IS SO ORDERED.**

Dated: _____February 25_____, 2021

HONORABLE DENNIS J. LANDIN
JUDGE OF THE SUPERIOR COURT
Dennis J. Landin / Judge

[PROPOSED] ORDER ON PLAINTIFF ERIK SENKO'S MOTION FOR ATTORNEY'S FEES

**PROOF OF SERVICE**

STATE OF CALIFORNIA              )
                                )        ss
COUNTY OF LOS ANGELES           )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years of age and am not a party to this action. My business address is 222 N. Pacific Coast Highway, Suite 2222, El Segundo, CA 90245.

On February 8, 2021, I served the document(s) as described below on interested parties in this action as follows:

**[PROPOSED] ORDER ON PLAINTIFF ERIK SENKO'S MOTION FOR ATTORNEY'S FEES**

| ☒ | by transmitting the document(s) listed above, electronically, via the e-mail addresses set forth below. |

| | |
|---|---|
| Steven A. Roseman, Esq. Sophie Haimof, Esq. Roseman Law, APC 21650 Oxnard Street, Suite 2000 Woodland Hills, CA 91367-7857 roseman@roseman.law haimof@roseman.law | *Attorneys for Defendant Marina City Club Condominium Owners Association* |

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on February 8, 2021, at El Segundo, California.

_____
Kristina Hicks

**EXHIBIT JJ**

Electronically FILED by Superior Court of California, County of Los Angeles on 07/30/2019 03:42 PM Sherri R. Carter, Executive Officer/Clerk of Court, by J. So,Deputy Clerk

1     BOREN, OSHER & LUFTMAN LLP
      Stephen Z. Boren (SBN 192024)
2     sboren@bollaw.com
      Steven F. Kuehl (SBN 266460)
3     skuehl@bollaw.com
      222 North Pacific Coast Highway, Suite 2222
4     El Segundo, CA 90245
      Telephone: (310) 322-2021
5     Facsimile: (310) 322-2228

6

7     Attorneys for Plaintiff
      THE LOS ANGELES WHOLESALE
8     PRODUCE MARKET, LLC

9

10            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

11         **FOR THE COUNTY OF LOS ANGELES—CENTRAL DISTRICT**

| | |
|---|---|
| THE LOS ANGELES WHOLESALE PRODUCE MARKET, LLC, a California limited liability company, <br><br>         Plaintiff, <br><br>      vs. <br><br> ATLAS CAPITAL GROUP, LLC, a New York limited liability company; ALAMEDA SQUARE OWNER LLC, a California limited liability company; AND ALL PERSONS UNKNOWN, CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN OR INTEREST IN THE REAL PROPERTY DESCRIBED HEREIN ADVERSE TO PLAINTIFF'S CLAIM OR ANY CLOUD UPON PLAINTIFF'S CLAIM THERETO, NAMED AS DOES 1 through 100, inclusive, <br><br>         Defendants. | Case No.: BC628018 <br><br> Judge: Honorable Robert S. Draper <br> Department: 78 <br><br> **NOTICE OF RULING ON PLAINTIFF'S MOTION FOR ATTORNEY FEES** <br><br> <u>Hearing:</u> <br> Date: July 17, 2019 <br> Time: 8:30 a.m. <br> Dept.: 78 <br><br> Complaint filed: July 25, 2016 |

1      **PLEASE TAKE NOTICE** that on July 17, 2019 at 8:30 a.m. in department 78 of the above-

2 entitled Court located at 111 North Hill Street, Los Angeles, California 90012, Plaintiff The Los Angeles

3 Wholesale Produce Market, LLC's Motion for Attorney's Fees ("Motion for Attorney's Fees") came on

4 for hearing before the Honorable Robert S. Draper. Stephen Z. Boren, Esq. and Steven F. Kuehl, Esq. of

5 Boren, Osher & Luftman, LLP appeared on behalf of Plaintiff The Los Angeles Wholesale Produce

6 Market, LLC ("Plaintiff"). Ellyn Garofalo and Amir Kaltgrad of Venable LLP appeared on behalf of

7 Defendants Atlas Capital Group, LLC and Alameda Square Owner LLC.

8      Upon considering the papers submitted and oral argument of counsel present, and good cause

9 appearing therefrom, the Court ordered the following:

10      1.     The Court took the matter under submission. On July 26, 2019, the Court granted the

11 Motion for Attorney's Fees in the amount of $1,061,060.25.

12      2.     A copy of the Court's order granting the Motion for Attorney's Fees is attached hereto as

13 Exhibit "A".

14

15 Dated: July 30, 2019                       BOREN, OSHER & LUFTMAN, LLP

16

17                                   By:_____

18                                     Stephen Z. Boren

                                    Steven F. Kuehl

19                                     Attorneys for Plaintiff

                                    THE LOS ANGELES WHOLESALE PRODUCE

20                                     MARKET, LLC

21

22

23

24

25

26

27

28

# Exhibit A

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 78

**BC628018**                                                           July 26, 2019
**THE L A WHOLESALE PRODUCE MARKET LLC VS**                 8:30 AM
**ATLAS CAPITAL GROUP**

| | |
|---|---|
| Judge: Honorable Robert S. Draper | CSR: None |
| Judicial Assistant: Aisha S. Rising | ERM: None |
| Courtroom Assistant: S. Hahn | Deputy Sheriff: None |

APPEARANCES:

For Plaintiff(s): No Appearances

For Defendant(s):  No Appearances

**NATURE OF PROCEEDINGS:** Ruling on Submitted Matter

The Court, having taken the matter under submission on 07/17/2019, now rules as follows:

The Court adopts its Tentative Ruling as the final order of the Court as follows:

Plaintiff the Los Angeles Wholesale Produce Market, LLC's Motion for Attorney's Fees is
GRANTED in the amount of $1,061,060.25.

FACTUAL BACKGROUND

This action involves certain property in a section of downtown Los Angeles commonly known as
"Alameda Square" and the respective rights of the parties under the 1991 Easement Agreement
(the"1991 Agreement") and the 1993 Settlement, Mutual Access, and Easement Modification
Agreement (the "1993 Agreement"). The Causes of Action asserted by Los Angeles Wholesale
Produce Market ("LAWPM") are set forth in its First Amended Complaint filed April 14, 2017.

On August 16, 2017 the Court granted LAWPM's motion for summary adjudication on the First
and Fourth causes of action against Atlas Capital Group, LLC ("Atlas") and Alameda Square
Owners LLC ("Alameda"). On December 15, 2017, after a bench trial, the Court issued a
Statement of Decision finding for LAWPM on the Second and Third Causes of Action against
Atlas and Alameda. The facts relating to those causes of action are set forth in the written
opinion granting the Motion for Summary Adjudication on the First and Fourth Causes of Action
and the Court's Statement of Decision ruling for plaintiff on the Second and Third Causes of
Action.
LAWPM's Fifth Cause of Action alleged that plaintiff was damaged because Alameda removed
a gate referred to as the "8th – Central gate" but failed to pay plaintiff additional security costs
that plaintiff incurred as a result of the removal of this gate. This cause of action was tried to a

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Stanley Mosk Courthouse, Department 78

BC628018                                                                    July 26, 2019
THE L A WHOLESALE PRODUCE MARKET LLC VS                                          8:30 AM
ATLAS CAPITAL GROUP

Judge: Honorable Robert S. Draper            CSR: None
Judicial Assistant: Aisha S. Rising          ERM: None
Courtroom Assistant: S. Hahn                 Deputy Sheriff: None

jury on October 2-5 and 9, 2018. On October 9, 2018 the jury returned a verdict finding that Alameda was not required under the 1993 agreement to pay for extra security costs incurred by LAWPM as a result of the removal of the 8th – Central gate. The jury also independently found that LAWPM did not incur any additional security costs as a result of the removal of that gate. The question of whether Alameda was required to reimburse LAWPM for additional security costs incurred as a result of the removal of the 8th – Central gate was submitted to the jury because there was a suggestion that there would be extrinsic evidence which would be relevant to the interpretation of the 1993 Agreement. On May 6, 2019 the Court found that since no such evidence was introduced, the interpretation of the 1993 Agreement and the decision on whether Alameda breached the 1993 agreement by removing the 8th – Central gate were issues of law to be determined by the Court independent of the jury's verdict. On that same date the Court found that Alameda did not breach the 1993 Agreement because Alameda offered to replace the gate within the parameters set forth in the 1993 Agreement but LAWPM prevented Alameda from doing so. The Court also found that judgment against the LAWPM was independently required by the jury's finding that LAWPM had did not incur any additional security costs as a result of the removal of the 8 – Central gate and that a reasonable trier of fact could conclude based on the evidence presented that LAWPM failed to meet its burden of proof on this issue.

On May 6, 2019 the Court also addressed the issue of who was the prevailing party or parties in this action. The Court, exercising the discretion granted it under Code of Civil Procedure §1032, found that LAWPM was the prevailing party on the First, Second, Third and Fourth Causes of Action and that Alameda was the prevailing party on the Fifth Cause of Action. This finding was set forth in the minute order of that date and also in the Judgment entered on May 14, 2019. Both contracts at issue here, the 1991 Agreement and the 1993 Agreement, contain clauses providing that the prevailing party in any action under that Agreement may recover its reasonable attorney's fees. Under Code of Civil Procedure §1033.5(10) LAWPM is therefore entitled to an award of the reasonable attorney's fees it incurred in a prosecution of the First, Second, Third and Fourth Causes of Action.

On May 28, 2019 LAWPM filed its Motion for Attorney's fees incurred in prosecuting the First through Fourth causes of action accompanied by declarations by Stephen Boren and Robert Bruning.

On June 5 and June 24, 2019 Stephen Boren filed supplemental declarations in support of the Motion for Attorney's Fees.

On July 3, 2019 Alameda and Atlas filed their opposition to the Motion for Attorney's Fees.

On July 10, 2019 LAWPM filed its reply.

I. OBJECTIONS

Atlas and Alameda have filed objections to the declaration of Robert Bruning. The Court has

---

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Stanley Mosk Courthouse, Department 78

BC628018                                                                July 26, 2019
THE L A WHOLESALE PRODUCE MARKET LLC VS                                    8:30 AM
ATLAS CAPITAL GROUP


Judge: Honorable Robert S. Draper           CSR: None
Judicial Assistant: Aisha S. Rising         ERM: None
Courtroom Assistant: S. Hahn                 Deputy Sheriff: None

previously ruled on those objections and furnished a copy of that ruling to both parties

II. MOTION FOR ATTORNEY'S FEES

"Code of Civil Procedure section 1032, subdivision (b), guarantees prevailing parties in civil litigation awards of the costs expended in the litigation: 'Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding.'" (Williams v. Chino Valley Independent Fire Dist. ("Williams") (2015) 61 Cal.4th 97, 100.). Code OF Civil Procedure §1033.5(10) authorizes an award of attorney's fees as costs when they are provided for by contract.

LAWPM is seeking attorney's fees in the amount of $1,134,305.50. It arrives that this amount by multiplying the hours which it says it's lawyers spent in connection with First, Second, Third and Fourth Causes of Action by what it describes as the "reasonable rate" for the attorneys who represented it rather than the rates these attorneys actually charged LAWPM. The factual basis for the claim that these are the "reasonable rights" is supplied by the declaration of Robert Bruning.

Although Atlas and Alameda objected to the Bruning Declaration and appeared in their written opposition to contest the "reasonable rate" issue, their counsel stated at the hearing on this motion that they are not contesting the reasonableness of the rates requested by LAWPM. Based on this statement, the Court believes that any objection to the rates by which the total hours were multiplied has been withdrawn. In any event, the Court finds that the rates requested were well supported by the Bruning declaration and are reasonable.

Atlas and Alameda object to the attorney's fees requested by LAWPM on the grounds that the hours expended were unreasonable and that this was really a simple case. One example of this position is Atlas's and Alameda's claim at page 5 of their Opposition that the order on LAWPM's cause of action for declaratory relief merely "recited the language of the 1991 Easement Agreement." The complaint filed by LAWPM was verified, as was the answer filed on behalf of Atlas and Alameda. In their verified answer Atlas and Alameda denied every allegation made by LAWPM with respect to the meaning of the language in the 1991 Easement Agreement, a fact obviously inconsistent with the claim Atlas and Alameda are now making.

The fact that this was such a "simple case" was also obviously lost on Judge Feuer when she issued her 31 page single spaced Ruling on the Motion For Summary Judgment/Summary Adjudication which disposed of the 1st and 4th Causes of Action and her 22 page single spaced

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Stanley Mosk Courthouse, Department 78

BC628018                                                              July 26, 2019
THE L A WHOLESALE PRODUCE MARKET LLC VS                                   8:30 AM
ATLAS CAPITAL GROUP


Judge: Honorable Robert S. Draper            CSR: None
Judicial Assistant: Aisha S. Rising          ERM: None
Courtroom Assistant: S. Hahn                 Deputy Sheriff: None

---

Statement of Decision, after the bench trial, on the 2nd and 3rd causes of action. Based on this Court's review of these opinions and the record in connection with the Motion for New Trial Atlas and Alameda filed with respect to the First, Second, Third and Fourth Causes of Action, this Court does not believe or find that this was a simple case or that the hours and expended by the attorneys for LAWPM were excessive.

Atlas and Alameda also claim that the Court erred in its ruling that LAWPM was the prevailing party on the First, Second, Third and Fourth Causes of Action rather than identifying the prevailing party in the action as a whole. This assertion is simply a request for reconsideration of the Court's May 6, 2019 ruling with no additional facts or arguments being submitted. Additionally, if the court did make the "prevailing party" determination based on the action as a whole, there is no question that LAWPM would be the prevailing party based upon its achievement of its litigation objectives.

Finally, Atlas and Alameda contend that some of the hours being claimed were in fact hours incurred in connection with the 5th Cause of Action, not the First, Second, Third and Fourth Causes of Action. They reach this conclusion by analyzing the bills to LAWPM attached to the declarations of Stephen Boren. The hours identified to which LAWPM objects fall into three categories: (1) Fees charged for time between the Court's December 15, 2017 Statement of Decision on the Second and Third Causes of Action and the jury trial on the Fifth Cause of Action, (2) Fees charged for periods before December 2017 which relate to the Fifth Cause of Action, and (3) Fees after October 2018 that relate to the Fifth Cause of Action.

The Court finds that Atlas and Alameda's analysis shows that $53,262, $1415, and $1665.50 in these three categories, respectively, should be deducted. Adjusting that sum to take into account the fact that LAWPM's Motion requests fees not at the rates counsel billed LAWPM but at an adjusted rate, LAWPM's request for attorney's fees is reduced by $73,245.25. Accordingly,

Plaintiff The Los Angeles Wholesale Produce Market, LLC's Motion for Attorney's Fees is GRANTED in the amount of $1,061,060.25.

Plaintiff to provide notice.


Certificate of Mailing is attached.

---

**PROOF OF SERVICE**

STATE OF CALIFORNIA )
                    ) ss
COUNTY OF LOS ANGELES )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years of age and am not a party to this action. My business address is 222 N. Pacific Coast Highway, Suite 2222, El Segundo, CA 90245.

On July 30, 2019, I served the document(s) as described below on interested parties in this action as follows:

**NOTICE OF RULING ON PLAINTIFF'S MOTION FOR ATTORNEY'S FEES**

| ☒ | by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at El Segundo, California, addressed as set forth below. |
| ☒ | by transmitting the document(s) listed above, electronically, via the e-mail addresses set forth below. |

| Karen Hallock, Esq.<br>DLA Piper LLP (US)<br>550 South Hope Street, 24th Floor<br>Los Angeles, California 90071-2618<br>karen.hallock@dlapiper.com | Attorney for Defendants Atlas Capital Group, LLC and Alameda Square Owner LLC |
| Ellyn S. Garofalo, Esq.<br>Amir Kaltgrad, Esq.<br>VENABLE LLP<br>2049 Century Park East, Suite 2300<br>Los Angeles, California 90067<br>esgarofalo@Venable.com<br>akaltgrad@Venable.com | Attorney for Defendants Atlas Capital Group, LLC and Alameda Square Owner LLC |

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on July 30, 2019, at El Segundo, California.

_____
Hanna Lee

**EXHIBIT KK**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 20-6293-CBM(PLAx) | Date | MAY 28, 2021 |
|---|---|---|---|
| Title | Irish Rover Entertainment, LLC v. Aaron Sims et al | | |

| Present: The Honorable | CONSUELO  B. MARSHALL, UNITED STATES DISTRICT JUDGE |
|---|---|

| Yolanda Skipper | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendant |
| N/A | N/A |

**Proceedings:**     In Chambers-Off the Record

The Scheduling Conference, currently set for June 1, 2021, is hereby taken off calendar.  The Court will set the following deadlines:

Initial disclosures shall be completed by June 8, 2021.
ADR-1 Form shall be filed on or before June 8, 2021.

Non Expert discovery shall be completed on or before December 27, 2021.

Settlement conference shall be held on or before March 31, 2022.

Motions shall be set for oral argument on or before May 24, 2022.

Pre Trial Conference is set on July 26, 2022 at 2:30 p.m.

Jury Trial is set on August 23, 2022 at 10:00 a.m.(est. 7 days).

Initial Expert disclosure due no later than January 25, 2022.
Rebuttal expert disclosure completion due no later than February 22, 2022.
Expert discovery shall be completed on or before March 15, 2022.

IT IS SO ORDERED.

cc: all parties

                                                                          :

                                            Initials of Preparer          YS

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 20-6293-CBM(PLAx)** | Date | MAY 28, 2021 |
|----------|--------------------------|------|--------------|
| Title | Irish Rover Entertainment, LLC v. Aaron Sims et al | | |

BOREN, OSHER & LUFTMAN, LLP
Jeremy J. Osher (SBN 192109)
josher@bollaw.com
Aaron M. Gladstein (SBN 266287)
agladstein@bollaw.com
Matthew K. Tom (SBN 324298)
mtom@bollaw.com
222 N. Pacific Coast Highway, Suite 2222
El Segundo, CA 90245
Telephone: (310) 322-2021
Facsimile: (310) 322-2228

Attorneys for Plaintiff,
IRISH ROVER ENTERTAINMENT,
LLC

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| IRISH ROVER ENTERTAINMENT, LLC, a California limited liability company,<br><br>          Plaintiff,<br><br>     vs.<br><br>AARON SIMS, an individual; MATT DUFFER, an individual; ROSS DUFFER, an individual; NETFLIX, INC., a Delaware corporation; NETFLIX STREAMING SERVICES, INC., a Delaware corporation; 21 LAPS, INC., a California corporation; and DOES 1 through 50, inclusive,<br><br>          Defendants. | Case No.: 2:20-cv-06293-CBM-PLAx<br><br>Judge: Hon. Consuelo B. Marshall<br>Magistrate Judge: Hon. Paul L. Abrams<br><br>**ORDER TO CONTINUE TRIAL DATE AND EXTEND ALL RELATED PRE-TRIAL DEADLINES  [53]**<br><br>[Filed concurrently with Joint Stipulation To Continue Trial Date And Extend All Related Pre-Trial Deadlines]<br><br>Complaint Filed:   July 15, 2020<br>Trial Date: August 23, 2022 |

## ORDER

The Court, having read and considered the foregoing Stipulation between the parties, and good cause appearing thereof, hereby ORDERS as follows:

1.      The non-expert discovery cutoff date, currently set for December 27, 2021, is extended for a period of ninety (90) days to March 28, 2022;

2.      The initial expert disclosures deadline, currently set for January 25, 2022, is extended for a period of ninety (90) days to April 25, 2022;

3.      The rebuttal expert disclosures deadline, currently set for February 22, 2022, is extended for a period of ninety (90) days to May 23, 2022;

4.      The expert discovery cutoff date, currently set for March 15, 2022, is extended for a period of ninety (90) days to June 13, 2022;

5.      The settlement conference deadline, currently set for March 31, 2022, is extended for a period of ninety (90) days to June 28, 2022;

6.      The last day to hear motions, currently set for May 24, 2022, is extended for a period of ninety (90) days to August 23, 2022;

7.      The Pre-Trial Conference, currently set for July 26, 2022 at 2:30 p.m., is continued for a period of ninety (90) days to October 25, 2022 at 2:30 p.m.; and

8.      Jury Trial, currently set for August 23, 2022 at 10:00 a.m. (est. 7 days), is continued for a period of ninety (90) days to November 29, 2022 at 10:00 a.m.


**IT IS SO ORDERED.**


Dated: NOVEMBER 1, 2021

_____
HON. CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE

ORDER TO CONTINUE TRIAL DATE AND EXTEND ALL RELATED PRE-TRIAL DEADLINES

# PROOF OF SERVICE

STATE OF CALIFORNIA )
) ss
COUNTY OF LOS ANGELES )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years of age and am not a party to this action. My business address is 222 North Pacific Coast Highway, Suite 2222, El Segundo, CA 90245.

On October 29, 2021, I served the document(s) as described below on interested parties in this action as follows:

**[PROPOSED] ORDER TO CONTINUE TRIAL DATE AND EXTEND ALL RELATED PRE-TRIAL DEADLINES**

| ☒ | electronically by using the Court's ECF/CM System. | |
|---|---|---|
| | David A. Grossman, Esq.<br>Safia G. Hussain, Esq.<br>Loeb and Loeb LLP<br>10100 Santa Monica Boulevard<br>Suite 2200<br>Los Angeles, CA 90067-4120<br>Email: dgrossman@loeb.com<br>        sghussain@loeb.com | *Attorneys for Defendants Aaron Sims, Matt Duffer, Ross Duffer, Netflix, Inc., Netflix Streaming Services, Inc., and 21 Laps, Inc.* |

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on October 29, 2021, at El Segundo, California.


_____/s/ Jon Austin Raymundo_____

Jon Austin Raymundo

BOREN, OSHER & LUFTMAN, LLP
Jeremy J. Osher (SBN 192109)
josher@bollaw.com
Aaron M. Gladstein (SBN 266287)
agladstein@bollaw.com
Matthew K. Tom (SBN 324298)
mtom@bollaw.com
222 N. Pacific Coast Highway, Suite 2222
El Segundo, CA 90245
Telephone: (310) 322-2021
Facsimile: (310) 322-2228

Attorneys for Plaintiff,
IRISH ROVER ENTERTAINMENT,
LLC

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| IRISH ROVER ENTERTAINMENT, LLC, a California limited liability company,<br><br>          Plaintiff,<br><br>     vs.<br><br>AARON SIMS, an individual; MATT DUFFER, an individual; ROSS DUFFER, an individual; NETFLIX, INC., a Delaware corporation; NETFLIX STREAMING SERVICES, INC., a Delaware corporation; 21 LAPS, INC., a California corporation; and DOES 1 through 50, inclusive,<br><br>          Defendants. | Case No.: 2:20-cv-06293-CBM-PLAx<br><br>Judge: Hon. Consuelo B. Marshall<br>Magistrate Judge: Hon. Paul L. Abrams<br><br>**ORDER TO CONTINUE TRIAL AND EXTEND ALL PRE-TRIAL DEADLINES  [59]**<br><br>[Filed concurrently with Joint Stipulation to Continue Trial and Extend All Pre-Trial Deadlines]<br><br>Complaint Filed:   July 15, 2020<br>Trial Date: November 29, 2022<br><br>  [NOTE CHANGES MADE BY COURT] |

## **ORDER**

The Court, having read and considered the foregoing Stipulation between the parties, and good cause appearing thereof, hereby ORDERS as follows:

1.      The non-expert discovery cutoff date, currently set for May 27, 2022, shall be extended for a period of ninety (90) days to August 25, 2022;

2.      The initial expert disclosures deadline, currently set for June 24, 2022, shall be extended for a period of ninety (90) days to September 22, 2022;

3.      The rebuttal expert disclosures deadline, currently set for July 22, 2022, shall be extended for a period of ninety (90) days to October 20, 2022;

4.      The expert discovery cutoff date, currently set for August 12, 2022, shall be extended for a period of ninety (90) days to November 10, 2022;

5.      The settlement conference deadline, currently set for July 29, 2022, shall be extended to **JANUARY 31, 2023**; and

6.      The last day to hear motions, currently set for September 27, 2022, shall be extended to December 26, 2022;

7.    The Pre-Trial Conference, currently set for October 25, 2022 at 2:30 p.m., shall be continued for a period of ninety (90) days to **MARCH 7, 2023** at 2:30 p.m.; and

8.      Jury Trial, currently set for November 29, 2022 at 10:00 a.m. (est. 7 days), shall be continued for a period of ninety (90) days to **APRIL 4, 2023** at 10:00 a.m.

**IT IS SO ORDERED.**

Dated: MARCH 29, 2022

_____
HON. CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE

# PROOF OF SERVICE

STATE OF CALIFORNIA      )
                                 )   ss
COUNTY OF LOS ANGELES   )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years of age and am not a party to this action. My business address is 222 North Pacific Coast Highway, Suite 2222, El Segundo, CA 90245.

On March 25, 2022, I served the document(s) as described below on interested parties in this action as follows:

**[PROPOSED] ORDER TO CONTINUE TRIAL AND EXTEND ALL PRE-TRIAL DEADLINES**

| ☒ | electronically by using the Court's ECF/CM System. |
|---|---|
| David A. Grossman, Esq.<br>Safia G. Hussain, Esq.<br>Loeb and Loeb LLP<br>10100 Santa Monica Boulevard<br>Suite 2200<br>Los Angeles, CA 90067-4120<br>Email: dgrossman@loeb.com<br>          sghussain@loeb.com | *Attorneys for Defendants Aaron Sims, Matt Duffer, Ross Duffer, Netflix, Inc., Netflix Streaming Services, Inc., and 21 Laps, Inc.* |

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on March 25, 2022, at El Segundo, California.


                         /s/ *J. Austin Raymundo*
                         Jon Austin Raymundo