1 DAVID GROSSMAN (SBN 211326)
dgrossman@loeb.com
2 SAFIA GRAY HUSSAIN (SBN 251123)
sghussain@loeb.com
3 LOEB & LOEB LLP
10100 Santa Monica Blvd., Suite 2200
4 Los Angeles, CA 90067
Telephone: 310.282.2000
5 Facsimile: 310.282.2200

6 Attorneys for Defendants
AARON SIMS, MATT DUFFER, ROSS
7 DUFFER, NETFLIX, INC., NETFLIX
STREAMING SERVICES, INC., and
8 21 LAPS INC.

9

10 UNITED STATES DISTRICT COURT

11 CENTRAL DISTRICT OF CALIFORNIA

12

| | |
|---|---|
| 13 IRISH ROVER ENTERTAINMENT, LLC, a California limited liability 14 company, | Case No.: 2:20-cv-06293-CBM-PLA |
| 15 Plaintiffs, | Assigned to Hon. Consuelo B. Marshall |
| 16 v. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'** |
| 17 AARON SIMS, an individual; MATT DUFFER, an individual; ROSS 18 DUFFER, an individual; NETFLIX, INC., a Delaware corporation; 19 NETFLIX STREAMING SERVICES, INC., a Delaware corporation; 21 20 LAPS, INC., a California corporation; and DOES 1 through 50, inclusive, 21 | **MOTION FOR IMPOSITION OF SANCTIONS AGAINST PLAINTIFF AND ITS COUNSEL PURSUANT TO FED. R. CIV. P. 11** |
| 22 Defendants. | [*Filed Concurrently: Notice of Motion and Motion; Declarations of Ross Duffer, Matt Duffer, Aaron Sims, Lester A. Standiford, and Safia Gray Hussain; [Proposed] Order*] |
| 23 | Date: February 7, 2023 Time: 10:00 a.m. Courtroom: 8D |
| 24 | |
| 25 | First Amended Complaint Filed: October 12, 2020 Trial Date: May 2, 2023 |
| 26 | |
| 27 | |
| 28 | |

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

22707938
231804-10002

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS'
MOTION FOR RULE 11 SANCTIONS

# TABLE OF CONTENTS

**Page**

**I.**  INTRODUCTION ...................................................................................... 1

**II.**  STATEMENT OF FACTS........................................................................ 4

   A.  The Duffers Independently Create *Stranger Things*............................ 4

   B.  Plaintiff's *Totem*............................................................................... 6

   C.  Kennedy Threatened Suit After Netflix Refused His Pitches. ............. 7

   D.  Plaintiff's Suit Is Solely Based on Kennedy's Conspiracy Theories........................................................................................... 9

   E.  Kennedy Lost Most of His Emails Due To a "Computer Virus."............................................................................................. 9

   F.  Discovery Confirms Plaintiff's Claims Are Frivolous. ...................... 10

**III.**  LEGAL STANDARD ............................................................................ 10

**IV.**  ARGUMENT ........................................................................................ 12

   A.  No Evidence Supports Plaintiff's Speculative Theory of Access. ............................................................................................. 12

   B.  The Duffers Independently Created *Stranger Things*......................... 14

   C.  The Two Works Are Completely Dissimilar. ..................................... 16

      1.  Plot and Sequence of Events. .................................................. 17

      2.  Characters. ............................................................................. 19

      3.  Theme. .................................................................................... 20

      4.  Dialogue.................................................................................. 20

      5.  Mood. ..................................................................................... 21

      6.  Setting. ................................................................................... 21

      7.  Pace........................................................................................ 21

   D.  Plaintiff's "Concept Art" Claim Is Frivolous. ................................... 22

**V.**  CONCLUSION ...................................................................................... 25

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

22707938
231804-10002

i

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS'
MOTION FOR RULE 11 SANCTIONS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbas v. Vertical Entm't, LLC*,
  No. 2:18-cv-7399-CBM-AFM, 2019 U.S. Dist. LEXIS 210834
  (C.D. Cal. Aug. 19, 2019) .....................................................................24

*Althouse v. Warner Bros. Entm't*,
  No. CV 13-00696-RGK, 2014 U.S. Dist. LEXIS 92071
  (C.D. Cal. Apr. 28, 2014) .....................................................................19

*Basile v. Warner Bros. Entm't, Inc.*,
  No. 15-5243-DMG, 2016 U.S. Dist. LEXIS 194791
  (C.D. Cal. Jan. 4, 2016) .......................................................................19

*Benay v. Warner Bros. Entm't, Inc.*,
  607 F.3d 620 (9th Cir. 2010) ...............................................16, 17, 20

*Berkic v. Crichton*,
  761 F.2d 1289 (9th Cir. 1985) .....................................................16, 17

*Bernal v. Paradigm Talent & Literary Agency*,
  788 F. Supp. 2d 1043 (C.D. Cal. 2010) ..............................................12

*Esplanade Prods. v. Walt Disney Co.*,
  No. CV 17-02185-MWF, 2017 U.S. Dist. LEXIS 217700
  (C.D. Cal. Nov. 8, 2017) ......................................................................20

*Funky Films, Inc. v. Time Warner Entm't. Co., L.P.*,
  462 F.3d 1072 (9th Cir. 2006) .....................................................*passim*

*Gable v. NBC*,
  727 F. Supp. 2d 815 (C.D. Cal. 2010) ...............................................18

*Goel v. Coalition Am. Holding Co.*,
  No. CV 11-012349 JGB (Ex), 2013 U.S. Dist. LEXIS 197253
  (C.D. Cal. Feb. 26, 2013) ..............................................................11, 14

*Hunt v. Sunny Delight Bevs. Co.*,
  No. 8:18-cv-00557-JLS-DFM, 2018 U.S. Dist. LEXIS 217855
  (C.D. Cal. Dec. 18, 2018) ....................................................................25

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

22707938
231804-10002

ii

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS'
MOTION FOR RULE 11 SANCTIONS

# TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Kinney v. Cooper*,
   No. CV 15-8910 PSG, 2016 U.S. Dist. LEXIS 14533
   (C.D. Cal. Feb. 4, 2016) ...................................................................................11

*Litchfield v. Spielberg*,
   736 F.2d 1352 (9th Cir. 1984)...........................................................................18

*Mabson v. Ass'n of Apt. Owners*,
   CV. NO. 06-00235 DAE-LEK, 2007 U.S. Dist. LEXIS 71104,
   (D. Haw. Sept. 25, 2007)...................................................................................11

*Milano v. NBC Universal, Inc.*,
   584 F. Supp. 2d 1288 (C.D. Cal. 2008)........................................................16, 17

*Morawski v. Lightstorm Entm't, Inc.*,
   No. CV 11-10294-MMM, 2013 U.S. Dist. LEXIS 189155
   (C.D. Cal. Jan. 31, 2013) ...................................................................................15

*Olson v. NBC*,
   855 F.2d 1446 (9th Cir. 1988)............................................................................20

*Preferred Commc'ns v. City of L.A.*,
   No. CV 83-5846 (CBM), 1991 U.S. Dist. LEXIS 19578
   (C.D. Cal. Mar. 26, 1991)...................................................................................14

*Rhinehart v. Stauffer*,
   638 F.2d 1169 (9th Cir. 1979)............................................................................11

*Rice v. Fox Broad. Co.*,
   330 F.3d 1170 (9th Cir. 2003).............................................................................21

*Romex Textiles, Inc. v. HK Worldwide, LLC*,
   No. CV 18-6543-RSWL-AGR, 2020 U.S. Dist. LEXIS 23633
   (C.D. Cal. Feb. 10, 2020) ...................................................................................12

*Shame on You Prods. v. Banks*,
   120 F. Supp. 3d 1123 (C.D. Cal. 2015)........................................................20, 21

*Shaw v. Lindheim*,
   919 F.2d 1353 (9th Cir. 1990)............................................................................21

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

22707938
231804-10002

iii

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS'
MOTION FOR RULE 11 SANCTIONS

# TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Skidmore v. Led Zeppelin*,
  952 F.3d 1051 (9th Cir. 2020) ....................................................................... 12, 22

*Smith v. Ricks*,
  31 F.3d 1478 (9th Cir. 1994) ................................................................................ 11

*Three Boys Music Corp. v. Bolton*,
  212 F.3d 477 (9th Cir. 2000) ............................................................................... 13

*Truesdell v. S. Cal. Permanente Med. Grp.*,
  209 F.R.D. 169 (C.D. Cal. 2002)......................................................................... 11

*Warren v. Guelker*,
  29 F.3d 1386 (9th Cir. 1994) .......................................................................... 10, 11

*Wash. v. Viacomcbs, Inc.*,
  No. CV-00435-CBM-(PJWx), 2020 U.S. Dist. LEXIS 188005
  (C.D. Cal. Aug. 20, 2020) ................................................................................... 13

*Weygand v. CBS, Inc.*,
  No. CV 96-4540-WMB, 1997 U.S. Dist. LEXIS 10613
  (C.D. Cal. May 20, 1997) .................................................................................... 22

*Zatko v. Rowland*,
  835 F. Supp. 1174 (N.D. Cal. 1993).................................................................... 23

*Zella v. E.W. Scripps Co.*,
  529 F. Supp. 2d 1124 (C.D. Cal. 2007)................................................................ 16

**Other Authorities**

Fed. R. Civ. P. 11.............................................................................................*passim*

Fed. R. Civ. P. 11(b) .............................................................................................. 10

Fed. R. Civ. P. 11(c)(4)........................................................................................... 11

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

22707938
231804-10002

iv

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS'
MOTION FOR RULE 11 SANCTIONS

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants Aaron Sims, Matt Duffer, Ross Duffer, Netflix, Inc., Netflix Streaming Services, Inc., and 21 Laps (collectively, "Defendants") respectfully submit this memorandum in support of their motion for the imposition of sanctions against Plaintiff Irish Rover Entertainment, LLC ("Plaintiff") and its counsel, Boren Osher & Luftman LLP, pursuant to Rule 11 of the Federal Rules of Civil Procedure ("Rule 11").

## I.   INTRODUCTION

Plaintiff's claims in this case are factually and legally frivolous.  Plaintiff, through its principal, Jeffrey Kennedy, filed this suit alleging that the acclaimed television series, *Stranger Things*, infringes on Kennedy's unpublished work, entitled *Totem*.  To file and maintain its copyright infringement claims, Plaintiff was required to plead and prove that: (a) it has valid copyrights; and (b) Defendants copied Plaintiff's copyrighted works.  To prove copying, Plaintiff must demonstrate not only that Defendants had access to its work, but that the two works are "substantially similar." Plaintiff does not have any such evidence.  Discovery in this case has demonstrated the obvious: Plaintiff's claims are baseless, and *Stranger Things* was independently created by Matt and Ross Duffer.  No reasonable claimant or counsel would have filed this case after a thorough investigation of the facts, but Kennedy is not a reasonable claimant.  He is a classic conspiracy theorist who chooses to believe in unfounded speculation, even in the face of irrefutable, contrary evidence.  For the following reasons, the Court should dismiss the First Amended Complaint ("FAC") and sanction Plaintiff and its counsel for the filing and maintenance of this patently frivolous suit.

***First, Unrebutted Evidence Shows There Is No Access.***  Plaintiff's conspiracy theory is that the Duffers have, for years, secretly had access to its *Totem* work and continually refer to that work in creating each season of *Stranger Things*.  But there is no evidence of the Duffers having ***any*** access to Plaintiff's work.  There is certainly no direct evidence, as Kennedy admits he never submitted his work to the Duffers. Instead, Kennedy alleges that he worked with a concept artist named Aaron Sims, who

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

later surreptitiously passed *Totem* to the Duffers.  But after full discovery, there is no evidence supporting that allegation.  The Duffers testified that they had never seen or heard of *Totem* before this lawsuit; Sims testified that he never gave *Totem* to, or discussed *Totem* with, the Duffers; and Kennedy testified that he has no knowledge regarding or evidence supporting access.  This alone should cause Plaintiff to cease prosecution of this frivolous case.

***Second, Unrebutted Evidence Shows the Independent Creation of Stranger Things by the Duffers.***  The evidence is conclusive and unrebutted that the Duffers independently created *Stranger Things* (or the "Series").  Documentary evidence shows that the Duffers began developing the Series in 2010 – when they referred to it as *Montauk* – and that the fundamental ideas in their popular Series were documented years before the Duffers worked with Sims.  In a series of 2010 emails, the Duffers sketched out their idea for a sci-fi project involving a secret research facility, evil scientists, paranormal activity, a monster that comes through a portal to another dimension, and a main character with psionic abilities.  These are the primary elements of *Stranger Things* and they existed years before the Duffers even met Sims.  Although Sims eventually became a concept artist on *Stranger Things*, the only evidence regarding Sims' involvement is that the Duffers shared their fully fleshed out pilot script with him, not the other way around (as Kennedy speculates).  Sims did not supply any ideas to the Duffers before they created their Series – he was merely the recipient of their pre-existing pilot script.

***Third, Plaintiff's Similarity Claims Are Objectively Unreasonable.***  Plaintiff's assertion that the works at issue are "substantially similar" is frivolous and an independent violation of Rule 11.  A simple review of the Series and *Totem* yields only one conclusion: these works bear no resemblance to each other.

*Stranger Things* is set in a small Indiana town in the mid-1980s.  The Series focuses on four preteen boys and a young girl named Eleven who is gifted with psionic powers.  In the first season, one of the boys, Will Byers, is abducted by a monster called

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

22707938
231804-10002

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS'
MOTION FOR RULE 11 SANCTIONS

the "Demogorgon." The other children (along with Will's mother) work together to find and rescue Will. In the second and third seasons, the same core group of children, along with some of their older siblings and classmates, continue to fight different monsters, evil scientists, and Russian military operatives in their small town.

Plaintiff's *Totem*, on the other hand, is the story of Jackson Chance, an epileptic veteran who dies after freeing his dead wife's spirit from the grasp of a giant English-speaking fallen angel/demon named Azrael. *Totem* is steeped in Native American imagery and mythology, and involves magical totem poles, dream catchers with supernatural powers, "Blackwolf Indians" from another realm, "Lynx Indians" that help the protagonist on his journey, and a local doctor who is eventually revealed to be a powerful "medicine man."

Plaintiff's claims of supposed similarity were not formed, as required by Rule 11, after a "reasonable inquiry" into the facts – they are instead based on Kennedy's baseless inferences. Kennedy's entire view of this case is a classic conspiracy theory: not only did the Duffers use *Totem* to create *Stranger Things*, but the Duffers and their writing staff secretly kept *Totem* around to use in ***every season*** of the Series. In Kennedy's mind, not only did these successful creators base their Series on *Totem*, but they also "stole stories from" Kennedy's life, basing much of the Series on Kennedy's childhood friend (Clint Osthimer). In addition to stealing his script and his life story, Kennedy contends that the Duffers and their team of writers "mock" Kennedy by planting "Easter eggs" throughout several seasons of *Stranger Things*. In other words, not content to simply steal his childhood, the Duffers allegedly have deliberately taunted him by planting references to their supposed theft throughout the Series.

These are Kennedy's own words, from a pre-lawsuit threatening email he sent to Netflix's CEO and its Board of Directors:

> They even stole stories from my and Clint's childhood. Worst of all, they took my tribute to Clint and took a stigma about epilepsy that I sought to vehemently dispel and perpetuated the notion that epileptics are possessed by demons. The Duffer Brothers have told both you and the world that they created Stranger Things, but nothing is further from the

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

22707938
231804-10002

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS'
MOTION FOR RULE 11 SANCTIONS

truth.  They have taken Clint's story and told it in a way that denigrates his memory, which is a personal assault to me and those who continue to be inspired by Clint's strength.  And to add insult to injury, they sprinkled hidden clues throughout the show, clues which have no context to the show except to serve their amusement and mock Clint's memory, my tribute to Clint, and our childhood together.

Kennedy reaffirmed his improbable conspiracy claims in deposition, testifying that, despite the admitted absence of any supporting evidence, he "absolutely" believes that his stories about Clint Osthimer were the basis for scenes, characters, and settings in *Stranger Things* that have no counterpart whatsoever in *Totem*.

***Finally, Plaintiff Initiated and Is Pursuing This Action in Bad Faith for an Improper Purpose.***  The timing of Kennedy's pre-lawsuit threatening emails to Defendants, sent only after his unsolicited pitches to Netflix went unanswered, demonstrates that Plaintiff filed this lawsuit for an improper purpose.  Plaintiff's bad faith is further evidenced by the creation of websites and social media accounts touting its conspiracy theories, and in Kennedy's attempted solicitation of members of the press, in an attempt to create negative publicity for Defendants.  Most troubling, however, is that Plaintiff's own deposition testimony and document production reveal that Plaintiff has repeatedly and deliberately misrepresented the works at issue – including in its operative pleading – in a calculated effort to lend credence to its frivolous allegations of similarity.

This is a quintessential case for the imposition of Rule 11 sanctions.  There is no factual or legal support for the maintenance of these claims, which are solely based on the unfounded and elaborate conspiracy theories of an irrational claimant.

## II.    STATEMENT OF FACTS

### A.    The Duffers Independently Create *Stranger Things*.

In 2010, the Duffers – who had long been fascinated by urban legends and conspiracy theories – began to develop the concept for a film inspired by the "Montauk Urban Legend," according to which government scientists at the Camp Hero military base in Montauk, New York conducted research into mind control and other

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

22707938
231804-10002

supernatural activities.  Specifically, in November 2010, the Duffers sent themselves emails describing projects they were exploring at the time, including *The Montauk Experiment*.  In those emails, the Duffers envisioned a story set in the 1980s, that would include science-fiction elements such as a secret research facility, evil scientists, mind control, paranormal activity, unethical experiments, a portal to another dimension, a monster that comes through that portal and kills people in the facility before escaping, and a main character with psionic abilities who is a subject of mind control experiments at the facility (the "2010 *Montauk* Project").  Declaration of Matt Duffer ("Matt Decl.") ¶¶ 29-31 & Exs. B, C; Declaration of Ross Duffer ("Ross Decl.") ¶¶ 23-25.  These concepts, ideas, and elements would become *Stranger Things*.

In 2013, inspired in part by the film *Prisoners* (which featured a kidnapping), the Duffers decided to incorporate a child abduction into their 2010 *Montauk* Project, and to make it a television series instead of a film.  Matt Decl. ¶ 32; Ross Decl. ¶ 26. In October 2013, the Duffers created an outline for the pilot episode of the Series (the "2013 Pilot Outline").  The 2013 Pilot Outline explained that the Series would follow a group of nerdy children who spend their nights playing Dungeons & Dragons and eating pizza, but who are drawn into a world of supernatural terror.  The 2013 Pilot Outline elaborates that, while biking home one night, one of the children "goes into [a] strange world, taken by some evil force."  A local sheriff investigates, but the child has "simply vanished."  The sheriff and the missing child's family and friends all try to find him.  There is also an "escapee" from a research facility, who is tattooed with a number, has psionic powers, and who is the key to figuring out what has happened. Matt Decl. ¶ 33 & Ex. D; Ross Decl. ¶ 27.

In the summer of 2014, the Duffers completed their script for the pilot episode of the Series (then titled *Montauk*) (the "2014 Pilot Script").  The 2014 Pilot Script includes key elements from the 2010 *Montauk* Project (e.g., a 1980s setting, a secret research facility, evil scientists conducting unethical experiments, mind control, paranormal activity, a portal to another dimension, a monster that comes through that

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

22707938
231804-10002

5

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS'
MOTION FOR RULE 11 SANCTIONS

portal and kills people in the facility before escaping, and a main character with psionic abilities who is the subject of mind control experiments at the facility) and from the 2013 Pilot Outline (e.g., a child being abducted by a monster while biking home from playing Dungeons & Dragons with friends, and that child's cross-dimensional communications with friends and family). Matt Decl. ¶ 35 & Ex. F; Ross Decl. ¶ 29.

To support their attempted sale of the 2014 Pilot Script to a distributor, the Duffers created a "look book" showcasing the 1980s-era inspirations for the Series (such as *E.T.*, *Poltergeist*, and *A Nightmare on Elm Street*) (the "Look Book"). In March of 2015, using the 2014 Pilot Script and the Look Book, they closed a series deal with Netflix. Over the next several months, working with a group of writers, the Duffers changed the Series' title from *Montauk* to *Stranger Things* and the Series' setting from Long Island to the fictional town of Hawkins, Indiana. Matt Decl. ¶¶ 17, 36-40, 43 & Ex. A; Ross Decl. ¶¶ 17, 30-34, 37. ***What eventually became Stranger Things remained largely unchanged from the elements set forth in the Duffers' 2010 Montauk Project emails, the 2013 Pilot Outline, and the 2014 Pilot Script.***

*Stranger Things* premiered on Netflix on July 15, 2016. All three seasons are set in the 1980s in fictional Hawkins, Indiana. Hussain Decl. Exs. A, B, C.

## B. Plaintiff's *Totem*.

In 2007, Plaintiff's principal, Kennedy, began writing a film script. Kennedy has a business degree and has never received any professional training as a writer. Kennedy has never sold a script, has never been employed as a writer, and has never written any material other than the various iterations of the script that are at issue in this lawsuit, which are referred to as *Totem*. FAC ¶ 41; Hussain Decl. ¶ 8 & Ex. D, at 35:17-41:22. Kennedy claims he created between fifty and one hundred versions of *Totem*, over the course of more than ten years of rewrites and revisions. *Id*. ¶ 9 & Ex. D, at 249:5-18; *see also id.* Ex. O.

*Totem* tells the story of Jackson Chance, a PTSD-afflicted, epileptic veteran. Jackson's wife brings home a magical totem that she purchased on a Native American

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

22707938
231804-10002

6

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS'
MOTION FOR RULE 11 SANCTIONS

reservation.  Shortly thereafter, she is murdered by wolves.  The story reveals that the wolves are merely the physical form adopted by the spirits of "Blackwolf Indians" who were sent into the living world by a giant English-speaking demon named Azrael. Jackson Chance and his friend, Dr. Nerowe, journey on a "vision quest" to find and defeat the evil Azrael.  *Totem* is set in the mid-2000s in the Mountain West and is steeped in Native American imagery and mythology.  Dr. Nerowe is ultimately revealed to be a powerful "medicine man," and the two friends battle the evil Azrael with the assistance of magical totem poles and dream catchers with supernatural powers.  *Totem* is heavily imbued with Christian ideology and references; for example, in a climactic scene in *Totem*, a character is revealed to be the "Great Spirit" and tells a dying Jackson (whose initials are "J.C.") that he "may dwell with me in the house of the Lord forever."  FAC Ex. 7, at p. 113; *see also* Hussain Decl. ¶ 10 & Ex. D, at 157:18-158:21 (testifying that all versions of *Totem* include Christian, Native American, and totem elements).

## C.    Kennedy Threatened Suit After Netflix Refused His Pitches.

After watching *Stranger Things*, Kennedy did not initially claim that the Series stole from *Totem*.  To the contrary, after Kennedy watched *Stranger Things*, he continued to try to aggressively pitch *Totem* (including to Netflix).  It was only after his pitches to Netflix were rejected that he began to threaten legal action.

The undisputed evidence is that Kennedy watched *Stranger Things* in July 2016. Hussain Decl. ¶ 14 & Ex. D, at 58:11-16, 60:19-61:7.  In June 2017 (approximately one year after *Stranger Things* premiered), Kennedy began sending almost-monthly, unsolicited emails to Netflix.  *Id.* Ex. I.  In these emails, Kennedy never asserted that the Series had infringed his work; instead, he pitched *Totem* as "a great compliment [*sic*]/follow up to Stranger Things."  *Id.*  Kennedy further described *Totem* as a "most unique" story that "would slide right into the lineup as another fan favorite."  *Id.* Kennedy even altered his *Totem* prospectus – which previously described *Totem* as a motion picture – and sent a revised version to Netflix re-positioning *Totem* as a

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

22707938
231804-10002

7

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS'
MOTION FOR RULE 11 SANCTIONS

"serialized drama." *Id.* ¶¶ 17-18 & Exs. J, K.

Two years later – after his pitch emails to Netflix failed to gain traction – Kennedy began threatening legal action based on claimed similarities between the two works. He threatened suit ***unless*** Netflix "g[a]ve Totem an honest assessment for its commercial viability as a series or film in your wheelhouse." *Id.* Ex. L.

Once it became clear that Kennedy was ginning up a lawsuit, he was told that the Duffers independently created *Stranger Things*, that the Duffers did not have access to the *Totem* screenplay, and that *Totem* was not even remotely similar to *Stranger Things*. *Id.* Ex. M. In response, in December 2019, Kennedy issued so-called "cease and desist" letters to Defendants. *Id.* Ex. N. In these letters, Kennedy engaged in a series of extortionate threats. Kennedy warned that he would publicize the supposed theft of his work by creating a YouTube channel, an Instagram page, and websites dedicated to his specious theories. *Id.* ¶ 22 & Ex. N. Kennedy further threatened that, unless Defendants acceded to his demands, he would send cease and desist letters to all of *Stranger Things*' licensees. He also threatened to present his frivolous claims "to the Federal Bureau of Investigation for further investigation and potential prosecution by the Department of Justice." *Id.* ¶¶ 23-24 & Ex. N. Kennedy separately sent a "Cease and Desist Demand Letter" to Netflix's CEO, accusing the Duffers of stealing not just *Totem*, but "stories from my and Clint's [his best friend growing up] childhood." Kennedy's letter stated that he believes the Duffers "sprinkled hidden clues" of their supposed infringement of his work throughout *Stranger Things* "to serve their amusement and mock Clint's memory, my tribute to Clint, and our childhood together." *Id.* ¶ 26 & Ex. O.

This behavior was part of a pattern of extortionate threats made by Kennedy over failed business relationships. Kennedy previously made similar threats to Evergreen Films, the company he engaged in approximately 2008 to assist with development of his *Totem* project. After he stopped working with Evergreen, he threatened to publicly smear that company, and warned that he would use political pressure to damage

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

22707938
231804-10002

8

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS'
MOTION FOR RULE 11 SANCTIONS

Evergreen's ability to continue doing business through their Alaska office.[1]

### D.    Plaintiff's Suit Is Solely Based on Kennedy's Conspiracy Theories.

Plaintiff engaged several attorneys before filing suit, two of whom withdrew as counsel after having been challenged on the merits of Plaintiff's claims.  Plaintiff's current counsel filed this action on July 15, 2020, and filed the operative FAC, asserting claims for copyright infringement, on October 12, 2020.  ECF No. 10.

Plaintiff's FAC alleges that Aaron Sims was engaged in 2009 to create concept art and visual effects for *Totem*.  FAC ¶ 4.  The FAC speculates that, after receiving a 2013 version of *Totem* (there is no evidence of Sims receiving such a script), Sims may have shared it with the Duffers.  *Id.* ¶¶ 6-9, 52-54.  Plaintiff also speculates that Sims may have discussed Jeffrey Kennedy's childhood with the Duffers who, in turn, used Kennedy's childhood memories and settings in order to create *Stranger Things*.  FAC ¶ 9 & Ex. 6; Hussain Decl. ¶ 26 & Ex. O; *id.* ¶¶ 28-30 & Ex. D, at 241:18-242:9, 255:15-258:16, 266:12-267:20.  Indeed, in this case, Kennedy testified that he believes that the Duffers used the home of one of his childhood friends to create Will Byers' house in *Stranger Things*.  *Id.* ¶ 27 & Ex. D, at 133:20-23

Kennedy not only asserts that the Duffers took his unpublished screenplay to create the first season of *Stranger Things*, but he also claims that the Duffers, along with the entire *Stranger Things* writers' room, continued to refer to *Totem* (and Kennedy's childhood) to draft screenplays for at least twenty-five episodes of *Stranger Things* over the course of three seasons.  *Id.* ¶ 31 & Ex. D, at 253:10-15.

### E.    Kennedy Lost Most of His Emails Due To a "Computer Virus."

Fact discovery closed on August 25, 2022.  ECF No. 60.  Defendants produced over 63,000 pages of documents, and responded to a combined 46 requests for

---

[1] Hussain Decl. ¶ 25 & Ex. D, at 101:2-102:12.  Kennedy threatened to go to the press to pressure Evergreen, stating: "Unfortunately, you've attempted to bully the wrong person.  You've miscalculated when you deemed me insignificant and took Charlie's money.  In the coming weeks, the light of truth will shine on both your business proposals and your accounting practices.  The voice of the Alaskan taxpayer will be heard and so will the voice of a retired California judge."  *Id.*

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

22707938
231804-10002

9

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS'
MOTION FOR RULE 11 SANCTIONS

admission and 90 interrogatories.  Hussain Decl. ¶ 44.  Plaintiff failed to produce virtually any emails in this case, asserting that his computer was infected by a "virus" that somehow caused his web-based AOL emails to disappear.  *Id.* ¶ 45 & Ex. R.

### F.    Discovery Confirms Plaintiff's Claims Are Frivolous.

Plaintiff's two principals, Kennedy and his financial benefactor, Charles Brink, admit that they have no theory of access beyond Sims.  Hussain Decl. ¶ 32 & Ex. D, at 105:7-20; *id.* Ex. F, at 109:5-110:2.  Yet there is no evidence of Sims providing access to Plaintiff's work.  Plaintiff admits that, despite extensive discovery from Defendants, there is no written evidence that it ever gave Sims the 2013 version of *Totem* that underlies its claims.  *Id.* ¶ 33 & Ex. D, at 92:11-20.  Kennedy further testified that he has no knowledge of Sims actually providing the *Totem* script to the Duffers.  *Id.* ¶ 34 & Ex. D, at 199:24-201:14; *id.* Ex. E, at 375:23-377:2.  While Kennedy has no evidence to support his allegations, there is extensive evidence of a lack of access: Sims repeatedly denied sharing any aspect of *Totem* with the Duffers, and the Duffers testified that they had never seen or heard of *Totem* or Kennedy, and that they independently created *Stranger Things* beginning in 2010 when the project was called *Montauk*.  Sims Decl. ¶¶ 11, 15, 22, 27; Matt Decl. ¶¶ 4, 29-35, 45, 53-55, 59-60, 62-67; Ross Decl. ¶¶ 4, 23-29, 39, 47-49, 53-54, 56-61; Hussain Decl. ¶¶ 34-35 & Ex. D, at 199:24-201:14; *id.* Ex. E, at 354:6-355:2, 375:23-377:2; *id.* Ex. F, at 175:19-176:14, 207:18-209:2 (confirming there is no evidence that the Duffers accessed *Totem*).

Despite uncontradicted evidence of no access to Plaintiff's *Totem*, a glaring lack of any similarities between *Totem* and *Stranger Things*, and a principal who can only point to wild conspiracy theories, Plaintiff and its counsel nonetheless continue to pursue frivolous claims of copyright infringement.

## III.  LEGAL STANDARD

Federal Rule of Civil Procedure 11(b) was enacted to deter abuses of the legal process by providing "for the imposition of sanctions when a [pleading] is frivolous, legally unreasonable or brought for improper purpose."  *Warren v. Guelker*, 29 F.3d

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

22707938
231804-10002

10

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS'
MOTION FOR RULE 11 SANCTIONS

1386, 1388 (9th Cir. 1994).  Rule 11 provides, in relevant part, that:

> By presenting to the court . . . a pleading, written motion, or paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> …
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

The standard used to determine whether Rule 11 has been violated is objective reasonableness: "whether a reasonable attorney, having conducted an objectively reasonable inquiry into the facts and law, would have concluded that the offending paper was well founded." *Kinney v. Cooper*, No. CV 15-8910 PSG (JCx), 2016 U.S. Dist. LEXIS 14533, at *16 (C.D. Cal. Feb. 4, 2016).  In other words, an attorney violates Rule 11 when he or she makes a written assertion, claim, or argument that lacks objective factual or legal support, regardless of the attorney's subjective belief. *See Truesdell v. S. Cal. Permanente Med. Grp.*, 209 F.R.D. 169, 173-74 (C.D. Cal. 2002); *see also Smith v. Ricks*, 31 F.3d 1478, 1488 (9th Cir. 1994) (sanctions cannot be avoided by "operating under the guise of a pure heart and empty head").

Critically for this Motion, Rule 11 applies to the continuation of a frivolous action, and when discovery reveals (or in this case, confirms) that a claim is baseless, it is incumbent on counsel to withdraw it.  *See Goel v. Coalition Am. Holding Co.*, No. CV 11-012349 JGB (Ex), 2013 U.S. Dist. LEXIS 197253, at *21 (C.D. Cal. Feb. 26, 2013) (imposing sanctions where "Plaintiff and his counsel persisted in arguing the claim long after it was clear that the claim was not tenable"); *Mabson v. Ass'n of Apt. Owners*, CV. NO. 06-00235 DAE-LEK, 2007 U.S. Dist. LEXIS 71104, at *14-15 (D. Haw. Sept. 25, 2007) (imposing Rule 11 sanctions against attorney who continued to pursue lawsuit after gaining knowledge that it was frivolous).

The Court has broad discretion to impose sanctions on "any attorney, law firm,

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

22707938
231804-10002

11

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS'
MOTION FOR RULE 11 SANCTIONS

or party that violated the rule or is responsible for the violation." *Warren*, 29 F.3d at 1388. A sanction may include "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation[,]" Fed. R. Civ. P. 11(c)(4), and may also include, at the Court's discretion, "nonmonetary directives," including the dismissal or striking of the complaint or claims. *Rhinehart v. Stauffer*, 638 F.2d 1169, 1171 (9th Cir. 1979) (affirming dismissal of complaint as Rule 11 sanction). Both are warranted here.

## IV.  ARGUMENT

Fact discovery has closed, and Plaintiff's only "evidence" supporting its infringement claims consists of Kennedy's unsubstantiated and incoherent conspiracies regarding the purported transmittal of scripts, art, and his childhood memories, from Sims to the Duffers. Speculation and conjecture are not sufficient support for a federal pleading. Discovery is complete, and the facts and evidence in this case confirm that Plaintiff's claims are objectively unreasonable.

To prevail on a copyright infringement claim, a plaintiff must demonstrate that: (1) it owns a valid copyright; and (2) the defendant copied protected aspects of the work. *See Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020). In the absence of direct evidence of copying, a plaintiff may request the court infer copying by showing that: (1) the defendant had access to plaintiff's work; and (2) that the two works are substantially similar. *Id.*; *accord Funky Films, Inc. v. Time Warner Entm't. Co., L.P.*, 462 F.3d 1072, 1076 (9th Cir. 2006). Here, the ***actual*** evidence stands in stark contrast to Plaintiff's uninformed speculation. There is no access. The Duffers independently created *Stranger Things* (initially titled *Montauk*) and they sent their completed work to Sims – not vice versa. Plaintiff and its counsel have nevertheless persisted in pursuing these frivolous claims, and they have acted in an objectively unreasonable manner in violation of Rule 11.

### A.    No Evidence Supports Plaintiff's Speculative Theory of Access.

To demonstrate access, Plaintiff bears the burden of proving that the Duffers, the

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

22707938
231804-10002

12

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS'
MOTION FOR RULE 11 SANCTIONS

creators of the allegedly infringing work, had a "reasonable opportunity" to view or copy Plaintiff's work. *Romex Textiles, Inc. v. HK Worldwide, LLC*, No. CV 18-6543-RSWL-AGR, 2020 U.S. Dist. LEXIS 23633, at \*11 (C.D. Cal. Feb. 10, 2020). "In order to support a claim of access, a plaintiff must offer 'significant, affirmative and probative evidence." *Bernal v. Paradigm Talent & Literary Agency*, 788 F. Supp. 2d 1043, 1054 (C.D. Cal. 2010). Ninth Circuit courts have consistently held that a plaintiff must show "more than a bare possibility" of access, and "reasonable opportunity" "may not be inferred through mere speculation or conjecture." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000); *accord Wash. v. Viacomcbs, Inc.*, No. CV-00435-CBM-(PJWx), 2020 U.S. Dist. LEXIS 188005, at \*8 (C.D. Cal. Aug. 20, 2020) (dismissing infringement claim that was supported only by speculation that an intermediary passed plaintiff's script to defendant). Here, there is no evidence to support Plaintiff's conclusory and speculative assertion that the Duffers accessed Kennedy's (entirely dissimilar work) before they created *Stranger Things*.

Plaintiff's two principals (Kennedy and Brink) both admitted in deposition that there is no evidence to support Plaintiff's access theory. Hussain Decl. ¶¶ 34-35 & Ex. D, at 199:24-201:14; *id.* Ex. E, at 354:6-355:2, 375:23-377:2; *id.* Ex. F, at 175:19-176:14, 207:18-209:2. The Duffers also testified that they did not discuss the *Totem* project with Sims, and had never seen or read the *Totem* screenplay before this lawsuit. Matt Decl. ¶¶ 53-54, 67; Ross Decl. ¶¶ 47-48, 61. The evidence further shows that, in 2014, the Duffers sent Sims the ***completed*** 2014 Pilot Script, based on the 2010 *Montauk* Project. The Duffers sent their finalized 2014 Pilot Script to Sims when they asked him if he could help create concept art for the Look Book. The 2014 Pilot Script expanded on the same concepts included in the Duffers' 2010 *Montauk* Project. Matt Decl. ¶¶ 29-35, 52, 55 & Exs. B, C, D, E, F, G; Ross Decl. ¶¶ 23-29, 46, 49.

The 2014 Pilot Script opens with a chaotic and deadly scene inside a secret military facility, where scientists have been killed by an unknown force. The story shifts to four friends, Mike, Dustin, Will, and Lucas, playing Dungeons and Dragons

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

22707938
231804-10002

13

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS'
MOTION FOR RULE 11 SANCTIONS

in a suburban basement. Will leaves the game, bicycles home, and is forced off the road by a shadowy figure, who follows him into his home, and eventually abducts him from his backyard shed. The Series' main characters, including Eleven, Joyce Byers, and Police Chief Hopper, were included in the 2014 Pilot Script. Matt Decl. Ex. F. It is undisputed that Sims – the alleged point of access – first became aware of the 2014 Pilot Script when the Duffers sent it to him in September 2014. Sims Decl. ¶¶ 16-19, 22; *see also* Matt Decl. ¶¶ 52, 55; Ross Decl. ¶¶ 46, 49. There is no possibility that Sims could have contributed any material to *Montauk/Stranger Things* **before** it was created and presented to him as a completed work in late 2014.[2]

There was no evidence whatsoever to support Plaintiff's FAC when it was filed. Now, after a year of discovery, the documents and testimony establish, beyond any rational doubt, that Sims had nothing to do with the creation of the story and characters that Plaintiff argues were "infringed" by the Duffers. The Duffers created their work without accessing or using Plaintiff's *Totem* work, and without any utilization of stories from Kennedy's "childhood." There is no evidence to support Plaintiff's speculative theory of access, and Plaintiff and its counsel should be sanctioned for the objectively unreasonable continuation of this action. *See Goel*, 2013 U.S. Dist. LEXIS 197253, at *21; *Preferred Commc'ns v. City of L.A.*, No. CV 83-5846 (CBM) (Bx), 1991 U.S. Dist. LEXIS 19578, at *1 (C.D. Cal. Mar. 26, 1991) (awarding Rule 11 sanctions where allegations were not well grounded in fact).

## B. The Duffers Independently Created *Stranger Things*.

The documentary evidence establishes that the Duffers independently created the project that ultimately became *Stranger Things* no later than November 2010, years

---

[2] Plaintiff's theory of access is that, after receiving a 2013 *Totem* screenplay from Plaintiff, Sims (on an undisclosed date) shared that screenplay and *Totem* concept art with the Duffers. FAC ¶¶ 6-9, 52-54 (alleging access on "information and belief"). Plaintiff has conceded, however, that it has **no evidence** that it sent the 2013 *Totem* screenplay to Sims. Hussain Decl. ¶ 33 & Ex. D, at 92:11-20. Even setting aside that Sims has testified that he never shared *Totem* with the Duffers, it is entirely unclear what screenplay Plaintiff believes was in Sims' possession when he first met the Duffers, or when that screenplay was supposedly sent to Sims.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

22707938
231804-10002

14

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS'
MOTION FOR RULE 11 SANCTIONS

before the Duffers ever met Sims (Plaintiff's sole point of "access").  The connection between the 2010 *Montauk* Project, the 2013 Pilot Outline, the 2014 Pilot Script, and *Stranger Things* shows clear independent creation by the Duffers, and no claim can be rationally asserted based on supposed "infringement" of those pre-existing ideas.  *See Morawski v. Lightstorm Entm't, Inc.*, No. CV 11-10294-MMM (JCGx), 2013 U.S. Dist. LEXIS 189155, at *22 (C.D. Cal. Jan. 31, 2013) ("Reviewing all the evidence adduced by the parties, the court concludes that Cameron has rebutted any inference that would otherwise arise that he used Morawski's ideas by demonstrating that he independently created the ideas he purportedly misappropriated.  Defendants have adduced evidence that the core characters, themes, and plot of Avatar are composites of earlier Cameron works or historical events.  Moreover, all of the alleged similarities identified by Morawski can be traced to pre-pitch ideas Cameron developed independently or derived from well-known historical events.").

The existence of the 2010 *Montauk* Project alone (created years before the Duffers met Sims) defeats any purported infringement theory.  As of 2010, the Duffers had already outlined their "Montauk" idea, including the following elements:

- a secret research facility (this ultimately becomes the "Hawkins Lab" in *Stranger Things*);

- evil scientists (this ultimately becomes several characters, most notably "Dr. Martin Brenner," in *Stranger Things*);

- a "gritty eighties" setting (this ultimately becomes the setting and mood in *Stranger Things*);

- mind control, paranormal activity, and unethical/mind control experiments (all major plot points in *Stranger Things*);

- the opening of an interdimensional portal (this ultimately becomes the "Upside Down" in *Stranger Things*);

- a monster coming through the opened portal (this ultimately becomes the "Demogorgon" monster in *Stranger Things*);

- the monster escaping and killing people in the facility (this ultimately becomes a major plot point in *Stranger Things*); and

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

22707938
231804-10002

15

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS'
MOTION FOR RULE 11 SANCTIONS

- the main character being forced to use psychic powers to end the experiments and save the facility, as visualized in a "blood-soaked finale" (this becomes the character, "Eleven"). *E.g.*, Matt Decl. Exs. B, C.

At base, Plaintiff's claim is that the Duffers "took" Kennedy's ideas by creating a story involving characters that have to fight against a villainous creature from another dimension/plane of existence. That concept is, fundamentally, not protected by the Copyright Act[3] but, in any case, it is undisputed that all of the ideas which led to the creation of the Demogorgon (i.e., Plaintiff's "villainous creature"), the "Upside Down" (i.e., Plaintiff's other "dimension/plane of existence"), and the inclusion of a character who has special powers that help to defeat the monster, ***originated in 2010***. *Id.*

There is no viable claim of copying regarding these foundational elements of *Stranger Things*, because they were independently created long before Sims (the only claimed point of access) ever met the Duffers. Further, there is no credible claim that the Duffers accessed *Totem* before they created their further iterations of *Montauk/Stranger Things*, including their 2013 Pilot Outline and 2014 Pilot Script.

### C. The Two Works Are Completely Dissimilar.

Under the Ninth Circuit's substantial similarity analysis, there is absolutely no legal similarity between the works at issue. When analyzing whether works are substantially similar, courts are required to examine only those elements of a plaintiff's work that qualify for copyright protection. *Funky Films, Inc.*, 462 F.3d at 1081. One of the fundamental tenets of copyright law is that concepts and ideas are not protectable. *See Milano v. NBC Universal, Inc.*, 584 F. Supp. 2d 1288, 1294 (C.D. Cal. 2008). Accordingly, courts have routinely held that general plot ideas are not subject to protection. *See Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir. 1985) ("General plot ideas are not protected by copyright law; they remain forever the common property of artistic mankind[.]"). Elements that flow naturally from a basic plot point, known

---

[3] The idea of fighting a creature from another dimension/plane of existence is well-established in prior television and film works (e.g., *The Evil Dead* (1981), *Poltergeist* (1982), *A Nightmare on Elm Street* (1984, *et seq.*), *Hellraiser* (1987, *et seq.*), Stephen King's *IT* (1990)). In fact, the Duffers referenced, and paid homage to, all of these works when they created the Series. Matt Decl. Ex. A.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

22707938
231804-10002

16

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS'
MOTION FOR RULE 11 SANCTIONS

as *scenes à faire*, also are not protected by copyright law. *See Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1135 (C.D. Cal. 2007). In other words, "familiar stock scenes and themes that are staples of literature are not protected." *Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620, 624 (9th Cir. 2010).

In determining substantial similarity, courts employ an extrinsic test, which is an objective analysis that focuses on "articulable similarities between the plot, theme, dialogue, mood, setting, pace, characters, and sequence of events" of the works. *Id.* In applying this test, courts compare "not the basic plot ideas for stories, but the actual concrete elements that make up the total sequence of events and the relationships between the major characters." *Berkic*, 761 F.2d at 1293; *Milano*, 584 F. Supp.2d at 1295 ("[E]ven very similar ideas that are incorporated into movie plots cannot be protected where there is no substantial similarity in the expression of the idea").

In applying the extrinsic test, the court first "filter[s] out and disregard[s] the non-protectable elements." *Funky Films*, 462 F.3d at 1077. Here, in addition to filtering out unprotectable ideas, such as a monster coming through a portal, the idea of an alternate plane of existence, or a "quest" to find a loved one, the Court must filter out all of the ideas that were in existence prior to Plaintiff's claimed point of "access" to the *Totem* work. Thus, all of the ideas that the Duffers created in their 2010 *Montauk* Project must be filtered out and cannot be the subject of any claim of infringement here.

***This is not a close case*** – the works at issue are extraordinarily dissimilar. Plaintiff's principal, Kennedy, incoherently alleges that every single character in *Stranger Things* was taken from his screenplay(s), and that every single plot point in three seasons of *Stranger Things* was similarly taken from his work. These are not rational allegations, they are not based on evidence, and instead are borne of unfounded speculation and blatant mischaracterizations of the works themselves.

### 1.    *Plot and Sequence of Events.*

Plaintiff's *Totem* is centered around Jackson Chance, an epileptic veteran, his schizophrenic wife Autumn, and her "mystic" connection to the Native American

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

22707938
231804-10002

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS'
MOTION FOR RULE 11 SANCTIONS

spiritual world.  When Autumn dies, Jackson embarks on a quest to release her spirit from the evil winged-creature Azrael and his band of "Blackwolf Indians."  Battling Azrael in the spirit world, and Autumn's childhood friend FBI Agent Sam Miller, who is in love with Autumn, in the real world, Jackson embraces Native American folklore, teaming up with a Shaman, Thunderbear, and his granddaughter, Kimi.  Jackson and his friend Dr. Nerowe fight Azrael in a climactic scene, aided by fiery swords and magical dreamcatchers.  Jackson is killed, sacrificing himself to save Dr. Nerowe, and is reunited with Autumn when her spirit is released.  As Jackson dies, Kimi tells him: "be not afraid, Warrior.  Your quest is complete…I am the Great Spirit. And you may dwell with me in the house of the Lord forever."  FAC Ex. 7, at p. 115.

*Stranger Things* does not concern Native American folklore and, for the most part, does not even revolve around adults.  The first season of *Stranger Things* is about Will's abduction, his friends' (and family's) search to save him, Mike's budding romantic relationship with Eleven (a young girl with a shaved head whom the boys found wearing a hospital gown while looking for Will in the local forest), and the group's quest to find and destroy the gate to an alternate dimension they refer to as the Upside Down.  The plot of the second season revolves around freeing Will from his possession by a monster called the Mind Flayer, avoiding being eaten by "demodogs," Eleven learning about her past and honing her psionic abilities, and closing the gate to the Upside Down.  The third season involves the teenage leads working together to prevent Russian scientists from reopening the gate to the Upside Down, avoiding being killed by possessed townspeople, the core group of boys becoming interested in girls, and two of the girls (Eleven and Max) becoming friends.  Hussain Decl. Exs. A, B, C. *Stranger Things*' plot and sequence of events is vastly different from *Totem*'s Native American mythological quest; there is no similarity of expression involving plot or sequence of events.  *See Gable v. NBC*, 727 F. Supp. 2d 815, 844 (C.D. Cal. 2010).[4]

---

[4] Plaintiff has steadfastly avoided application of the extrinsic test and instead has alleged the existence of substantial similarity by selecting and comparing random, unrelated elements from each work.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

22707938
231804-10002

18

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS'
MOTION FOR RULE 11 SANCTIONS

## 2. *Characters.*

*Totem*'s protagonist is Jackson, a thirty-year-old veteran who has a "mystic" connection to the Native American spiritual world. All of *Totem*'s other characters are secondary to Jackson. *Totem*'s supporting characters include Jackson's schizophrenic wife Autumn who is also a mystic; Autumn's friend FBI Agent Sam Miller, who is in love with Autumn, and teams up with Azrael to kill Jackson; Jackson's friend Dr. William Nerowe, who comes to believe that he is a powerful "medicine man;" the Lynx Shaman named Thunderbear; his granddaughter Kimi, who is the "Eternal Light" for the Lynx tribe; and the evil demon Azrael and his "Blackwolf Indians." FAC Ex. 7.

By contrast, *Stranger Things* is not structured around one character, and instead is constructed with an ensemble cast. Further, most of the main characters in *Stranger Things* are children, with no Native American affiliations. Unlike in *Totem*, where an adult male is the sole protagonist, *Stranger Things* features four, nerdy, twelve-year-old boys who like to play Dungeons & Dragons (Will, Mike, Dustin, and Lucas), and a strange-but-gifted young girl with psionic abilities (Eleven). Other significant characters in *Stranger Things* include: Will's sixteen-year-old brother Jonathan; Mike's sixteen-year-old sister Nancy; Steve (Nancy's teenage boyfriend in Season 1);

The Ninth Circuit has unequivocally rejected this approach. As a matter of law, "random similarities scattered throughout the parties' works" cannot establish substantial similarity. *See Litchfield v. Spielberg*, 736 F.2d 1352, 1356 (9th Cir. 1984). In addition to random similarities, Plaintiff alleges that abstract ideas, such as a monster coming through a portal, support his claim of "substantial similarity." Plaintiff's abstract plot descriptions are so generalized that they are nothing more than ideas – which are not legally protectable. *See Funky Films, Inc.*, 462 F.3d at 1081 (holding that the works were not substantially similar despite the fact that both were based on the death of a patriarch who leaves the family's two sons to run the family funeral home and both involved the return of one son to his hometown to help the business, another son changing his religion to aid the business, and a competitor bidding on the business, because these were conceptual similarities and "general plot ideas are not protected by copyright law, they remain forever the common property of artistic mankind"); *accord Althouse v. Warner Bros. Entm't*, No. CV 13-00696-RGK (SSx), 2014 U.S. Dist. LEXIS 92071, at *9 (C.D. Cal. Apr. 28, 2014) (holding that, although the protagonists both attempted to free other characters, and battle against an evil enemy, those general concepts were insufficient to establish similarity of protectable plot expression); *Basile v. Warner Bros. Entm't, Inc.*, No. 15-5243-DMG (MRWx), 2016 U.S. Dist. LEXIS 194791, at *20-21 (C.D. Cal. Jan. 4, 2016) (the allegation of claimed plot similarity that "Jupiter Jones and the characters Earth and Mars are similar because they are part of the 'Supreme being bloodline and the only ones who can save their home planet'" was insufficient to establish a legal claim as it was based on nothing more than the "shared premises of human origin mythology and a hero's quest").

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

22707938
231804-10002

19

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS'
MOTION FOR RULE 11 SANCTIONS

Steve's teenage friend Robin; Max, a female schoolmate of the young boys; Max's eighteen-year-old brother Billy; Will's single mom Joyce; and the Hawkins police chief Jim Hopper.   Hussain Decl. Exs. A, B, C.   ***None of these characters bear any resemblance to any characters in Totem***.   *See Funky Films*, *Inc*., 462 F.3d at 1078-79 (no similarity where several central characters in defendants' work were "[c]ompletely missing" from or had "no counterpart" in plaintiff's work).

Plaintiff claims that every single *Totem* character was copied to create a character (or characters) in *Stranger Things*, but these claimed similarities are specious, and involve deliberate mischaracterizations of the works.  *See* Standiford Decl. ¶¶ 23-28.  At most, Plaintiff's alleged character similarities amount to similarities of generic characteristics, such as the common existence of "strong-willed" characters on a "quest" to find a loved one.  Such stock elements are legally unprotectable.  *See Esplanade Prods. v. Walt Disney Co*., No. CV 17-02185-MWF (JCx), 2017 U.S. Dist. LEXIS 217700, at *34 (C.D. Cal. Nov. 8, 2017).

### 3.   *Theme.*

The primary themes of *Totem* have philosophical and religious overtones: overcoming the grief of a loved one dying and the fight between good and evil in the Native American spirit world.  By contrast, the primary themes of *Stranger Things* are childhood friendship and social and romantic development and dynamics between teenagers working together to defeat monsters.  There are no thematic similarities between the works, and while Plaintiff argues that the works share similar themes of "man versus supernatural" and "reuniting with loved ones" (FAC ¶ 95), those are general concepts and are not protectable.  *See Benay*, 607 F.3d at 627.

### 4.   *Dialogue.*

There is no "extended similarity in dialogue" in *Totem* and *Stranger Things*, as is required for the works to be substantially similar.  *Olson v. NBC*, 855 F.2d 1446, 1450 (9th Cir. 1988).  Plaintiff asserts that the use of the term "PTSD," the use of the phrases "let me go" and "I'm sorry," and references to "garden gnomes" constitute

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

22707938
231804-10002

20

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS'
MOTION FOR RULE 11 SANCTIONS

similarity of protectable dialogue. FAC ¶ 137. These are objectively unreasonable claims that are inconsistent with clear Ninth Circuit jurisprudence. *See Shame on You Prods. v. Banks*, 120 F. Supp. 3d 1123, 1156 (C.D. Cal. 2015) (commonly-used phrases and expressions are not protected).

### 5.  *Mood.*

*Totem* is a dark, spiritual, and serious morality play. By contrast, while *Stranger Things* does include tense scenes involving monsters, the overarching mood is far more light-hearted. Moreover, to the extent that both works include scenes involving evil creatures and alternate dimensions, the mood in these scenes is unprotectable as it flows "naturally from unprotectable basic plot premises" involving monsters and evil dimensions. *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1177 (9th Cir. 2003).

### 6.  *Setting.*

*Totem* takes place in the present day (or as of the mid-2000s) in the Mountain West, close to rural, Native American lands. This setting ties in to the Native American village, folklore, and spirit world that is central to *Totem*. By contrast, *Stranger Things* is set in the fictional, Norman Rockwell-like town of Hawkins, Indiana in the 1980s.

Plaintiff alleges that both works feature "a small, middle-class town in rural America surrounded by a sprawling landscape of woods and nature." FAC ¶ 111. This is inaccurate, as the *Totem* script makes almost no mention of any "town." Moreover, this broad concept is not protectable. *Shaw v. Lindheim*, 919 F.2d 1353, 1363 (9th Cir. 1990). Similarly, the setting of "humble houses, [that] have large yards like one would find in a rural town," FAC ¶ 112, is generic and unprotectable. *See Shame on You Prods.*, 120 F. Supp. 3d at 1159. Plaintiff's other setting "similarities" – backyard tool sheds, large institutional buildings, alternate dimensions, railroad tracks, and a sweat lodge (FAC ¶¶ 113-118) – are generic unprotectable ideas and, moreover, appear in very different contexts. *Compare* FAC Ex. 7; *with* Hussain Decl. Exs. A, B, C.

### 7.  *Pace.*

Plaintiff's work is a screenplay for a feature-length film, and takes place over a

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

22707938
231804-10002

21

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS'
MOTION FOR RULE 11 SANCTIONS

few days or weeks.  The first three seasons of *Stranger Things* extend over twenty-five television episodes, with a total runtime of more than twenty hours.  The first three seasons of *Stranger Things* are distinct, each with separate storylines, spanning the course of several years and portraying the adventures of numerous characters.  The parties' works are not substantially similar in pace.  *See Weygand v. CBS, Inc.*, No. CV 96-4540-WMB, 1997 U.S. Dist. LEXIS 10613, at *25-26 (C.D. Cal. May 20, 1997).

### D.   Plaintiff's "Concept Art" Claim Is Frivolous.

Plaintiff's separate claim for copyright infringement of *Totem*'s concept art is frivolous.  All of the *Totem* concept art, like the story itself, is based on Native American themes, imagery, symbols, and mythology.  Sims Decl. ¶ 4 & Ex. A.  None of that art is substantially similar to anything in *Stranger Things*.  Plaintiff's claimed similarity between *Totem*'s Azrael and *Stranger Things*' Demogorgon is also baseless: Azreal is a skeletal, winged creature with buffalo-like horns and wings, dressed in Native American garb that floats without feet; the Demogorgon is a faceless bipedal creature with slimy skin whose head opens like a flower to reveal multiple rows of teeth.  No reasonable claimant, or counsel, could assert that there is "substantial similarity" of creative expression between these entirely different works.[5]

### E.   This Action Was Brought and Maintained for an Improper Purpose.

The undisputed evidence shows that this lawsuit was not borne of Plaintiff's legitimate (or rational) belief that *Totem* was infringed by *Stranger Things*, but as a result of Kennedy's inability to realize the "opportunity" he sought from Netflix. Hussain Decl. ¶ 36 & Ex. D, at 289:15-293:19.  Rule 11 does not permit the filing or maintenance of a lawsuit for such an improper purpose, and Plaintiff's improper motive provides an independent basis for the imposition of sanctions.

It is undisputed Kennedy watched the entire first season of *Stranger Things* in July 2016.  *Id.* ¶ 14 & Ex. D, at 58:11-16, 60:19-61:7.  Approximately one year later,

---

[5] Plaintiff also has not produced any evidence of a transfer of copyright from Sims, who created the art, to Plaintiff.  *See Skidmore*, 952 F.3d at 1064 (plaintiff must be the copyright owner).

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

22707938
231804-10002

22

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS'
MOTION FOR RULE 11 SANCTIONS

in June 2017, Kennedy began sending monthly, unsolicited emails to Netflix. *Id.* Ex. I. In these emails, Kennedy pitched *Totem* as a "most unique" story that would be "a great compliment [*sic*]/follow up to Stranger Things." *Id.* After his pitch emails failed to gain traction, Kennedy began threatening legal action based on claimed similarities between the two works. He then threatened suit ***unless*** Netflix "g[a]ve Totem an honest assessment for its commercial viability as a series or film in your wheelhouse." *Id.* Ex. L. Kennedy then filed this lawsuit ***after*** Netflix refused to accede to his demands to consider producing his screenplay. *See id.* Ex. M.

Plaintiff's improper purpose is further exemplified by Kennedy's extensive campaign of misrepresentations to third parties, to the press, and to this Court. In an attempt to create the false impression that *Totem* bears some similarity to *Stranger Things*, Plaintiff has knowingly and repeatedly misrepresented the works. For example, in an attempt to fabricate similarities between *Totem*'s Kimi and *Stranger Things*' Eleven, Kennedy gave an interview to USA Today and informed the reporter that his character "Kimi" was a young woman with a shaved head, just like Eleven. *Id.* ¶ 37 & Ex D, at 75:20-76:4; *see also id.* Ex. H. This was a deliberately false representation: ***Kennedy's "Kimi" character is not bald*** – she has dark hair, and she is repeatedly described in Kennedy's own screenplays as having dark hair. Kennedy also created a "storyboard" for *Totem* in approximately 2009 and, when he did so, Kimi was depicted with dark hair. *Id.* ¶ 38 & Ex. P; *id.* ¶ 39 & Ex. D, at 73:20-23, 269:3-270:9. Kennedy repeatedly contacted the press during this lawsuit in order to generate negative publicity about Defendants, and in order to amplify the false statements he submitted to the Court in the FAC. *Id.* Ex. Q. And, as discussed above, Kennedy created an Instagram page (containing false comparisons of the works), created a YouTube video repeating those same false representations, and threatened to interfere with Netflix's business partners (and to go to the FBI) unless he was paid an extortionate sum for his frivolous claims. *Id.* ¶¶ 22-25 & Ex. N.

Moreover, because the works at issue are vastly different, Plaintiff deliberately

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

22707938
231804-10002

23

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS'
MOTION FOR RULE 11 SANCTIONS

misrepresented the works in its FAC to make its allegations more colorable. The inclusion of these misrepresentations in Plaintiff's pleading subjects it and its counsel to sanctions. *See, e.g.*, *Zatko v. Rowland*, 835 F. Supp. 1174, 1182 (N.D. Cal. 1993) (dismissing plaintiff's claims and imposing monetary sanctions pursuant to Rule 11 for direct misrepresentations of fact in the complaint that plaintiff later contradicted in his own deposition testimony); *Abbas v. Vertical Entm't, LLC*, No.: 2:18-cv-7399-CBM-AFM, 2019 U.S. Dist. LEXIS 210834, at *8-10 (C.D. Cal. Aug. 19, 2019) (imposing Rule 11 sanctions where complaint included false allegations).

Kennedy is the sole author of the *Totem* screenplays, and he is intimately familiar with its content. Kennedy has also repeatedly watched *Stranger Things*, and has created detailed charts touting perceived similarities between the works. Kennedy is unemployed, and his partner and financier Charles Brink testified that Kennedy treats this infringement claim as a "full-time job." Hussain Decl. ¶ 41 & Ex. F, at 66:22-67:5. Therefore, the misrepresentations in the FAC cannot be excused as oversights.

Plaintiff's FAC makes specific and calculated misrepresentations in order to create a false impression of similarity. Specifically, to make *Totem*'s adult character Autumn appear similar to *Stranger Things*' abducted twelve-year old, Will Byers, Plaintiff alleged that *Totem*'s protagonist Jackson Chance is searching for his wife (like Joyce is searching for her son in *Stranger Things*) because "Jackson believes his wife Autumn Chance was alive." FAC ¶ 71; *see also id.* ¶¶ 78, 93c. This is a knowingly false characterization of Plaintiff's work. Jackson knows that his wife is dead, and embarks on a journey to free her soul. Hussain Decl. Ex. J ("Autumn chooses to make **the ultimate sacrifice** for love … she **sacrifices her life to Azreal** and is taken into his world." (Emphasis added.)); *id.* ¶ 42 & Ex. D, at 72:18-73:8 (admitting that Autumn "sacrifice[s] herself"). Plaintiff also attempts to draw a similarity between *Totem*'s Kimi and *Stranger Things*' Eleven, by asserting that, like Eleven, Kimi is "the monster slayer." FAC ¶ 88. This, again, is easily debunked. While Eleven (seemingly) kills the Demogorgon in the final episode of the first season of the Series, Kimi does not

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

22707938
231804-10002

24

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS'
MOTION FOR RULE 11 SANCTIONS

"slay" *Totem*'s villain, Azrael.  Plaintiff's 2013 screenplay states that Nerowe destroys Azreal's totem and that Jackson slays the monster Azrael, while Kimi lies prone and injured on the ground.  FAC Ex. 7, at 107-08, 110-12, 113.  The FAC also attempts to create a false comparison between Azrael's domain in *Totem* and the Upside Down in *Stranger Things*.  To that end, Plaintiff alleges that *Totem* is partially set in a "carbon copy" or an "alternate dimension that is a dark copy of their current reality."  FAC ¶¶73, 75, 93c.  While the Upside Down *is* a mirror version of reality, *Totem* does not utilize that concept, and Azrael's domain is full of settings and structures that have no analog in the real world.  Hussain Decl. ¶ 43 & Ex. D, at 155:2-22, 235:13-236:11.

Plaintiff's misrepresentations of the works are in bad faith, and further support the imposition of sanctions.  *See Hunt v. Sunny Delight Bevs. Co.*, No. 8:18-cv-00557-JLS-DFM, 2018 U.S. Dist. LEXIS 217855, at \*8-11 (C.D. Cal. Dec. 18, 2018) ("The Court will not parse through Plaintiff's allegations to determine which, if any, are salvageable, unimplicated by Plaintiff's dishonesty…," striking complaint after finding that the plaintiff misrepresented facts stated therein).

## V.    CONCLUSION

For all of the foregoing reasons, Defendants request that this Court sanction Plaintiff and Plaintiff's counsel pursuant to Rule 11 of the Federal Rules of Civil Procedure by: (1) dismissing the First Amended Complaint with prejudice, and (2) ordering Plaintiff and Plaintiff's counsel to reimburse Defendants for the legal fees and costs incurred in bringing this Motion and in defending against this lawsuit.  If the Court grants this Motion and awards the requested monetary sanctions, Defendants will submit a motion for attorneys' fees detailing the requested fees and costs.

Dated:  November 29, 2022            LOEB & LOEB LLP

By: _____
David Grossman
Attorneys for Defendants

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

22707938
231804-10002

25

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS'
MOTION FOR RULE 11 SANCTIONS