DAVID GROSSMAN (SBN 211326)
dgrossman@loeb.com
SAFIA GRAY HUSSAIN (SBN 251123)
sghussain@loeb.com
LOEB & LOEB LLP
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA 90067
Telephone: 310.282.2000
Facsimile: 310.282.2200
*Attorneys for Defendants*
AARON SIMS, MATT DUFFER, ROSS
DUFFER, NETFLIX, INC., NETFLIX
STREAMING SERVICES, INC., and
21 LAPS INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRISH ROVER ENTERTAINMENT, LLC, a California limited liability company, | Case No.: 2:20-cv-06293-CBM-PLA |
| Plaintiffs, | Assigned to Hon. Consuelo B. Marshall |
| v. | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE THE EXPERT TESTIMONY OF JOHN RAINEY; MEMORANDUM OF POINTS AND AUTHORITIES** |
| AARON SIMS, an individual; MATT DUFFER, an individual; ROSS DUFFER, an individual; NETFLIX, INC., a Delaware corporation; NETFLIX STREAMING SERVICES, INC., a Delaware corporation; 21 LAPS, INC., a California corporation; and DOES 1 through 50, inclusive, | [*Filed concurrently: Declaration of Safia Gray Hussain; [Proposed] Order*] |
| Defendants. | Date: February 14, 2023<br>Time: 10:00 a.m.<br>Courtroom: 8D |
| | First Amended Complaint Filed: October 12, 2020<br>Trial Date: May 2, 2023 |

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

23208250
231804-10002

DEFENDANTS' MOTION
TO EXCLUDE EXPERT TESTIMONY
OF JOHN RAINEY

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that, on February 14, 2023, at 10:00 a.m., or as soon thereafter as counsel may be heard in Courtroom 8D of the Honorable Consuelo B. Marshall, United States District Judge, Central District of California, located at 350 W. 1st Street, Los Angeles, California 90012, defendants Aaron Sims, Matt Duffer, Ross Duffer, Netflix, Inc., Netflix Streaming Services, Inc., and 21 Laps, Inc. (collectively, "Defendants"), will and hereby do move to exclude all testimony of John Rainey, Plaintiff Irish Rover Entertainment, LLC's ("Plaintiff") purported expert on purported substantial similarities between Plaintiff's unpublished work, *Totem*, and the aired television series, *Stranger Things*.

This motion is made on the grounds that Rainey's testimony fails to meet the requirements of Rule 702 of the Federal Rules of Evidence. First, Rainey's opinion is not based on sufficient facts, as his comparison is predicated upon a version of the Totem screenplay for which there is no evidence of access by any Defendant. Second, Rainey failed to apply the governing methodology in the Ninth Circuit to evaluate the similarities, if any, between two works in a copyright infringement action. Third, Rainey's opinion that the two works are substantially similar lacks any methodology demonstrating a specialized analysis of the works; instead, Rainey merely parrots Plaintiff's lay observations and allegations of scattershot similarities set forth in its pleading. Finally, Rainey's opinions regarding purported "copying" and "appropriation" constitute improper legal conclusions.

This Motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities in support thereof; the Declaration of Safia Gray Hussain and exhibits thereto filed concurrently herewith; all records in this action; and on such further argument, evidence, and authority as may be offered at or before the time of hearing.

/ / /

/ / /

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

23208250
231804-10002

1

DEFENDANTS' MOTION
TO EXCLUDE EXPERT TESTIMONY
OF JOHN RAINEY

1          This motion is made following the conference of counsel pursuant to L.R. 7-3

2    which took place on December 20, 2022.

3    Dated:  January 3, 2023                          LOEB & LOEB LLP

4

5    By: _____
           David Grossman
6          Safia Gray Hussain
           *Attorneys for Defendants*
7          AARON SIMS, MATT DUFFER, ROSS
           DUFFER, NETFLIX, INC., NETFLIX
8          STREAMING SERVICES, INC., and
           21 LAPS INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

23208250
231804-10002

DEFENDANTS' MOTION TO EXCLUDE
EXPERT TESTIMONY
OF JOHN RAINEY

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ..................................................................................... 1

II.  LEGAL STANDARD ............................................................................. 2

III.  ARGUMENT ........................................................................................ 3

    A.  Rainey's Opinion Is Not Based on Sufficient Facts. ............................ 3

    B.  Rainey's Opinion Is Based Upon an Improper Methodology. ............. 5

        1.  Rainey Failed To Apply the Extrinsic Test. .............................. 7

        2.  Rainey Failed To Filter Out Unprotectable Elements. ............. 11

    C.  Rainey's Substantial Similarity Opinion Lacks Any Methodology Demonstrating a Specialized Analysis of the Works. ................................................................................................ 14

    D.  Rainey's Opinions Constitute Improper Legal Conclusions. ............. 20

    E.  Rainey's Testimony Should Be Excluded Under Rule 403 ................ 21

IV.  CONCLUSION ................................................................................... 22

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

23208250
231804-10002

i

DEFENDANTS' MOTION
TO EXCLUDE EXPERT TESTIMONY
OF JOHN RAINEY

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Abdin v. CBS Broad., Inc.*,
   971 F.3d 57 (2d Cir. 2020) ................................................................ 13

*Am. Booksellers Ass'n v. Barnes & Noble, Inc.*,
   135 F. Supp. 2d 1031 (N.D. Cal. 2001) ............................................. 17

*Bahra v. Cnty. of San Bernardino*,
   No. EDCV 16-1756 JGB (SPx), 2021 U.S. Dist. LEXIS 170596
   (C.D. Cal. June 24, 2021) .................................................................. 20

*Basile v. Warner Bros. Ent., Inc.*,
   No. CV 15-5243-DMG, 2016 U.S. Dist. LEXIS 194791 (C.D. Cal.
   Jan. 4, 2016) ....................................................................................... 8

*Benay v. Warner Bros. Ent., Inc.*,
   607 F.3d 620 (9th Cir. 2010) .......................................................... 7, 8

*Berkic v. Crichton*,
   761 F.2d 1289 (9th Cir. 1985) ............................................................ 8

*Brooke Grp. v. Brown & Williamson Tobacco Corp.*,
   509 U.S. 209 (1993) .......................................................................... 18

*Cagle v. Cooper Cos. (In re Silicone Gel Breasts Implants Prods. Liab.
   Litig.)*,
   318 F. Supp. 2d 879 (C.D. Cal. 2004) ................................................ 2

*Cavalier v. Random House, Inc.*,
   297 F.3d 815 (9th Cir. 2002) .............................................................. 6

*Chase-Riboud v. Dreamworks Inc.*,
   987 F. Supp. 1222 (C.D. Cal. 1997) ................................................... 9

*Claar v. Burlington N.R.R.*,
   29 F.3d 499 (9th Cir. 1994) ................................................................ 3

*Concord Boat Corp. v. Brunswick Corp.*,
   207 F.3d 1039 (8th Cir. 2000) ............................................................ 3

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

23208250
231804-10002

ii

DEFENDANTS' MOTION
TO EXCLUDE EXPERT TESTIMONY
OF JOHN RAINEY

*Cooper v. Brown*,
    510 F.3d 870 (9th Cir. 2007) ................................................................. 3

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993) ..............................................................2, 3, 20, 21

*Diviero v. Uniroyal Goodrich Tire Co.*,
    114 F.3d 851 (9th Cir. 1997) ............................................................... 14

*Dumond v. Reilly*,
    No. CV 19-8922-GW-AGRx, 2021 U.S. Dist. LEXIS 199398 (C.D.
    Cal. Jan. 8, 2021) ................................................................................ 10

*Earp v. Cullen*,
    623 F.3d 1065 (9th Cir. 2010) ............................................................. 21

*Funky Films, Inc. v. Time Warner Ent. Co., L.P.*,
    462 F.3d 1072 (9th Cir. 2006) ............................................................... 6

*Estate of Gonzales v. Hickman*,
    CASE NO. ED CV 05-660 MMM, 2007 U.S. Dist. LEXIS 84050
    (C.D. Cal. May 30, 2007) ..................................................................... 5

*Grodzitsky v. Am. Honda Motor Co.*,
    No. 2:12-cv-001142-SVW-PLA, 2017 U.S. Dist. LEXIS 222399
    (C.D. Cal. Oct. 30, 2017) .................................................................... 11

*Guidroz-Brault v. Mo. Pac. R.R. Co.*,
    254 F.3d 825 (9th Cir. 2001) ............................................................... 14

*Hangarter v. Provident Life & Accident Ins. Co.*,
    373 F.3d 998 (9th Cir. 2004) ............................................................... 20

*Hardwell v. Parker*,
    No. CV 21-9100-DMG, 2022 U.S. Dist. LEXIS 206346 (C.D. Cal.
    Aug. 25, 2022) ...................................................................................... 9

*Intermedics, Inc. v. Ventritex, Inc.*,
    139 F.R.D. 384 (N.D. Cal. 1991) ......................................................... 14

*Johannsongs-Publ'g Ltd. v. Lovland*,
    No. CV 18-10009-AB, 2020 U.S. Dist. LEXIS 82464 (C.D. Cal.
    Apr. 3, 2020)........................................................................3, 6, 12, 14

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

23208250
231804-10002

DEFENDANTS' MOTION TO EXCLUDE
EXPERT TESTIMONY
OF JOHN RAINEY

*Knowles v. Spin Master, Inc.*,
    No. CV 18-5827 PA, 2019 U.S. Dist. LEXIS 160965 (C.D. Cal.
    Sept. 17, 2019) ............................................................................................ 6

*Mackie v. Hipple*,
    No. C09-0164RSL, 2010 U.S. Dist. LEXIS 157025 (W.D. Wash.
    Mar. 22, 2010) ........................................................................................... 21

*Mata v. Or. Health Auth.*,
    739 F. App'x 370 (9th Cir. 2018) .............................................................. 14

*Mattel, Inc. v. MGA Ent., Inc.*,
    616 F.3d 904 (9th Cir. 2010) ..................................................................... 12

*Mattel, Inc. v. Mga Ent., Inc.*,
    No. CV 04-9049 DOC, 2011 U.S. Dist. LEXIS 161798 (C.D. Cal.
    Jan. 26, 2011) ............................................................................................ 11

*McCoy v. Kazi*,
    No. CV 08-07244 SJO, 2010 U.S. Dist. LEXIS 150679 (C.D. Cal.
    Aug. 27, 2010) ........................................................................................... 20

*N.W. v. City of Long Beach*,
    Nos. EDCV 14-1569-VAP (SPx), LACV 14-8374-VAP (SPx), 2016
    U.S. Dist. LEXIS 194469, at *6-7 (C.D. Cal. June 7, 2016) ..................... 20

*Navarro v. P&G*,
    No. 1:17-cv-406, 2021 U.S. Dist. LEXIS 43140 (S.D. Ohio Mar. 8,
    2021) .......................................................................................................... 19

*Olson v. NBC*,
    855 F.2d 1446 (9th Cir. 1988) ............................................................. 7, 10

*Perfect 10, Inc. v. Giganews, Inc.*,
    No. CV 11-07098-AB, 2014 U.S. Dist. LEXIS 185062 (C.D. Cal.
    Oct. 31, 2014) ...................................................................................... 14, 19

*Pierson v. Ford Motor Co.*,
    445 F. App'x 966 (9th Cir. 2011) ................................................................ 4

*Rambus Inc. v. Hynix Semiconductor, Inc.*,
    254 F.R.D. 597 (N.D. Cal. 2008) .............................................................. 11

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

23208250
231804-10002

iv

*Rentmeester v. Nike, Inc.*,
    883 F.3d 1111 (9th Cir. 2018) ................................................................ 6

*Rhine v. Buttigieg*,
    No. 2:20-cv-01761-RAJ-BAT, 2022 U.S. Dist. LEXIS 189487
    (W.D. Wash. Sept. 15, 2002) .............................................................. 14

*Rice v. Fox Broad. Co.*,
    330 F.3d 1170 (9th Cir. 2003) ............................................................. 7

*Samsung Elecs. Colo. v. Quanta Comput., Inc.*,
    No. No C-00-4524 VRW, 2006 U.S. Dist. LEXIS 66447 (N.D. Cal.
    Sept. 15, 2006) .................................................................................. 21

*Shame on You Prods. v. Banks*,
    120 F. Supp. 3d 1123 (C.D. Cal. 2015) ........................................ 9, 13

*Silas v. HBO, Inc.*,
    201 F. Supp.3d 1158 (C.D. Cal. 2016) ............................................... 9

*Skidmore v. Led Zeppelin*,
    952 F.3d 1051 (9th Cir. 2020) ........................................................ 5, 6

*Smith v. Weeknd*,
    No. CV 19-2507 PA, 2020 U.S. Dist. LEXIS 130549 (C.D. Cal.
    July 22, 2020) ................................................................................... 12

*Snyder v. Bank of Am., N.A.*,
    No. 15-cv-04228-KAW, 2020 U.S. Dist. LEXIS 206437 (N.D. Cal.
    Nov. 3, 2020) .................................................................................... 11

*Stardock Sys. v. Reiche*,
    No. Case No: C 17-07025 SBA, 2018 U.S. Dist. LEXIS 222971, at
    *18 n.6 (N.D. Cal. Dec. 27, 2018) .................................................... 21

*Stein v. Pac. Bell*,
    No. C 00-2915 SI, 2007 U.S. Dist. LEXIS 19193 (N.D. Cal. Mar.
    19, 2007) ........................................................................................... 14

*United States v. Brownlee*,
    744 F.3d 479 (7th Cir. 2014) ....................................................... 15, 19

*United States v. Diaz*,
    876 F.3d 1194 (9th Cir. 2017) ........................................................... 21

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

23208250
231804-10002

DEFENDANTS' MOTION TO EXCLUDE
EXPERT TESTIMONY
OF JOHN RAINEY

*United States v. Ramirez-Robles*,
   386 F.3d 1234 (9th Cir. 2004) ...........................................................................21

*Waymo LLC v. Uber Techs., Inc.*,
   No. C 17-00939 WHA, 2017 U.S. Dist. LEXIS 183688, 2017 WL
   5148390 (N.D. Cal. Nov. 2, 2017) ....................................................................11

**Other Authorities**

Fed. R. Evid. 403 ..........................................................................................2, 21, 22

Fed. R. Evid. 702 ....................................................................................2, 3, 14, 20

Fed. R. Evid. 703 ...................................................................................................14

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

23208250
231804-10002

DEFENDANTS' MOTION TO EXCLUDE
EXPERT TESTIMONY
OF JOHN RAINEY

## **MEMORANDUM OF POINTS AND AUTHORITIES**

Defendants Aaron Sims, Matt Duffer, Ross Duffer, Netflix, Inc., Netflix Streaming Services, Inc., and 21 Laps, Inc. (collectively, "Defendants"), by and through their undersigned attorneys, respectfully submit this Motion To Exclude the Expert Testimony of John Rainey ("Rainey), Plaintiff Irish Rover Entertainment, LLC's ("Plaintiff") designated expert on substantial similarity.

## I.    INTRODUCTION

Defendants move to exclude Rainey's testimony on five separate grounds. Each ground, independently, is sufficient to strike Rainey's opinion.  Taken together, however, the evidence and rationale for his exclusion is overwhelming.

First, Rainey's opinion is not based on sufficient facts.  He admits the focus of his expert opinion was the 2013 draft of the screenplay *Totem*, but **Plaintiff has admitted that there is no evidence that the 2013 screenplay was ever accessed by Defendants**.  Rainey's opinion is therefore impermissibly speculative as he is opining regarding supposed similarities relating to a screenplay that was never accessed by any of the Defendants.  Courts have concluded that expert opinions are inadmissible when the expert is unable to cite to specific facts supporting their opinion, including access.

Second, Rainey fails to utilize the accepted methodology for analyzing substantial similarity.  Rainey opines that there is substantial similarity between *Stranger Things* and *Totem*, yet he failed to apply the Ninth Circuit's mandatory extrinsic test in formulating his opinion.  Rainey was "fascinated" when he was contacted to act as an expert witness by Jeffrey Kennedy, Plaintiff's controlling principal, because Rainey had never acted as an expert before.  Rainey's inexperience is not, by itself, disqualifying.  However, his failure to apply the proper methodology mandates his exclusion.  Because Rainey has never engaged in a substantial similarity analysis, his opinion failed to filter out both unprotected and pre-existing elements, which filtration is expressly required by the Ninth Circuit (and copyright law). Rainey's conclusions are based on random elements, taken out of context, spread

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

23208250
231804-10002

1

DEFENDANTS' MOTION
TO EXCLUDE EXPERT TESTIMONY
OF JOHN RAINEY

across the entirety of Plaintiff's unpublished script and compared with three disparate seasons of *Stranger Things*. The law is clear: Rainey's failure to apply the relevant methodology (and his use of irrelevant and unprotectable elements to support his opinion) precludes the use of his opinion in support of Plaintiff's case.

Third, Rainey makes an additional mistake as it concerns his analysis. Not only does he fail to use any recognized methodology, but he instead simply regurgitates Plaintiffs' self-serving list of alleged similarities. Parroting one party's "facts" as a proffered expert is not permitted under Ninth Circuit law and cannot support a jury decision.

Fourth, Rainey's opinion contains inadmissible legal conclusions, something that is the exclusive providence of the Court and decidedly not permitted by an expert witness.

Fifth, due to Rainey's failures, the Court, pursuant to Evidence Code 403, is permitted to exclude evidence as its unfairly prejudices Defendants by failing to live up to the requirements for experts under Ninth Circuit law.

For all of these reasons, the Court should exclude Rainey's expert testimony.

## II.    LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence provides that an expert can testify only if four conditions are met: (a) the expert must have scientific, technical, or other specialized knowledge that is related to issues before the court; (b) the testimony is based on sufficient facts or data; (c) "the testimony is the product of reliable principles and methods"; and (d) "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993) (noting that the admissibility of expert opinion testimony is governed by the Federal Rules of Evidence); *Cagle v. Cooper Cos. (In re Silicone Gel Breasts Implants Prods. Liab. Litig.)*, 318 F. Supp. 2d 879, 889-93 (C.D. Cal. 2004) (using Rule 702 to test expert's qualifications, the reliability of the testimony, and the usefulness of the testimony). Plaintiff, as the proponent of Rainey's testimony, bears

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

23208250
231804-10002

2

DEFENDANTS' MOTION TO EXCLUDE
EXPERT TESTIMONY
OF JOHN RAINEY

the burden of proving that the proffered testimony satisfies **each** Rule 702 (and *Daubert*) requirement. *See Cooper v. Brown*, 510 F.3d 870, 880 (9th Cir. 2007).

If the proffered expert fails to show that his or her testimony is based on reliable principles or methods reliably applied to the facts of the case, his or her testimony should be excluded. *See, e.g., Johannsongs-Publ'g Ltd. v. Lovland*, No. CV 18-10009-AB (SSx), 2020 U.S. Dist. LEXIS 82464, at *13-17 (C.D. Cal. Apr. 3, 2020) (expert testimony in copyright infringement case excluded where expert's report compared only 'excerpts' from two songs at issue and failed to put the selected excerpts in the context of the entire compositions; expert's further failure to consider prior art failed to "filter out unprotectable prior art elements, which is the foundation of the extrinsic test," rendering opinion about similarities "legally deficient and irrelevant"); *see also, e.g., Claar v. Burlington N.R.R.*, 29 F.3d 499, 502 (9th Cir. 1994) (expert testimony excluded for lack of foundation where the expert failed to review a student's school records of long-term poor performance before concluding that the child's below-average performance was due to chemical exposure); *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1056-57 (8th Cir. 2000) (expert's testimony should be excluded if his methodology is inconsistent with controlling facts and law).

The opinion of John Rainey, Plaintiff's designated substantial similarity expert, falls short of these requirements, and his reports and testimony at trial should be excluded in its entirety.

## III.    ARGUMENT

### A.    Rainey's Opinion Is Not Based on Sufficient Facts.

Rainey's opinion fails at the outset because it is based on a comparison of a version of the *Totem* screenplay for which there is no evidence of access.

Rainey's expert report states that "the primary focus of my comparison will be the 2013 draft of the screenplay *Totem*," which he repeatedly reaffirmed in his deposition. Declaration of Safia Gray Hussain ("Hussain Decl.") Ex. A (Rainey Expert Report, hereinafter "Report"), at 3; Ex. B, at 27:23-28:7. This is the same version of

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

23208250
231804-10002

the screenplay attached to Plaintiff's First Amended Complaint ("FAC") and upon which Plaintiff's claims are predicated. FAC ¶¶ 6-9 & Ex. 7. But there is no evidence in the record that the 2013 version made its way to Matt and Ross Duffer – the creators of *Stranger Things*. Absent such evidence, the Report is based on inadmissible facts.

Plaintiff **alleges** that the 2013 draft was emailed to defendant Aaron Sims, and Plaintiff **speculates** that, at some unknown later date, Sims may have shared this screenplay with the Duffers. FAC ¶ 9. But allegations are not sufficient for an expert report (or for summary judgment). *See Pierson v. Ford Motor Co.*, 445 F. App'x 966, 968 (9th Cir. 2011) (finding that "an expert's opinions and conclusions which are based on nothing more than speculation cannot constitute substantial evidence"). Here, Plaintiff concedes that it has no evidence that it ever sent the 2013 *Totem* screenplay to Sims (much less to the Duffers). Hussain Decl. Ex. C, at 92:11-20. For example, there is no email transmitting the 2013 screenplay to Sims. Indeed, Plaintiff's two principals both admitted in deposition that there is no evidence to support Plaintiff's access theory. *Id.* at 199:24-201:14, 354:6-355:2, 375:23-377:2; *id.* Ex. D, at 175:19-176:14, 207:18-209:2.

Further, the uncontroverted evidence rebuts Plaintiff's speculative theory of access: Sims testified that he never provided any of the *Totem* works to the Duffers, did not use any materials from *Totem* to create the Demogorgon or any other artwork for *Stranger Things*, and did not discuss Plaintiff, Kennedy, or the *Totem* works with the Duffers (or any of the Defendants). *Id.* Ex. E, at 111:3-14, 112:9-15, 150:14-151:1. The Duffers also testified that they did not discuss the *Totem* project with Sims, and had never seen or read the *Totem* screenplay before this lawsuit. *Id.* Exs. F, (Ross Duffer) at 19:2-8, 72:13-22; G (Matt Duffer) at 17:19-25, 146:14-17.

While the Report contains a handful of references to other versions of the *Totem* screenplay, those few mentions cannot save Rainey's opinion. Only three of the non-2013 script references are purported bases for Rainey's conclusions regarding similarities between *Totem* and *Stranger Things*. First, Rainey opines that Dungeons

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

23208250
231804-10002

4

DEFENDANTS' MOTION TO EXCLUDE
EXPERT TESTIMONY
OF JOHN RAINEY

& Dragons is a "*Totem* Integral[]," or an "element[] which [is] integral to the *Totem* story," because of a single line of dialog in the 2008 and 2010 versions of *Totem* – but not in the 2013 version that underlies Plaintiff's claims.  Report at 31, 33.  Second, Rainey opines that the two works are similar because both have a "butterfly motif," based in part on the use of a butterfly in a storyline in the 2010 version of *Totem* that Rainey admits does not appear in the 2013 version at issue.  *Id.* at 32; Hussain Decl. Ex. B, at 26:11-25 (testifying that *Totem* character Rivershadow "is from the 2010 draft of – probably the very first draft [of *Totem*].  And, as I understand it, it was like a prequel to what I was analyzing.").  Third, Rainey compares a stage direction in the 2014 version of *Totem*, Report at 25, which Plaintiff concedes was created after the Duffers created an outline for *Stranger Things* in 2013 (and thus is not at issue).  *See* FAC ¶ 6.  These random elements from other versions have no bearing on the determination of substantial similarity as between Plaintiff's works and *Stranger Things*.

Discovery is over.  There is no evidence that the 2013 version of the *Totem* screenplay – which forms the basis of Rainey's opinion – was ever sent to any of the Defendants.  This is a foundational issue.  Rainey's opinion, based on a factually irrelevant document, must be excluded.  *See, e.g.*, *Estate of Gonzales v. Hickman*, No. ED CV 05-660 MMM (RCx), 2007 U.S. Dist. LEXIS 84050, at *26 (C.D. Cal. May 30, 2007) (finding expert opinion inadmissible where expert cited no specific facts to support his opinion and the only available evidence contradicted it).

## B.    Rainey's Opinion Is Based Upon an Improper Methodology.

Proof of copyright infringement requires that the plaintiff show: (1) it owns a valid copyright, and (2) the defendant copied protected aspects of the work.  *See Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020).  The second element has two distinct components: "copying" and "unlawful appropriation."  *Id*.  "In the absence of direct evidence of copying ... the plaintiff 'can attempt to prove it circumstantially by showing that the defendant had access to the plaintiff's work and

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

that the two works share similarities probative of copying.'" *Id.* (quoting *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018)).  The "hallmark" of "unlawful appropriation" is that the two works share substantial similarities involving protected elements of the plaintiff's work.  *Id.*  Determining substantial similarity involves a two-part analysis consisting of the extrinsic test and the intrinsic test; the plaintiff must satisfy both for the works to be deemed substantially similar.  *Id.*

> The Ninth Circuit's governing extrinsic test is an objective analysis that:
>
> focuses on 'articulable similarities between the plot, themes, dialogue, mood,  setting, pace, characters, and sequence of events' in the two works.  In applying the extrinsic test, this court 'compares, not the basic plot ideas for stories, but the actual concrete elements that make up the total sequence of events and the relationships between the major characters.

*Funky Films, Inc. v. Time Warner Ent. Co., L.P.*, 462 F.3d 1072, 1081 (9th Cir. 2006). "Familiar stock scenes and themes that are staples of literature are not protected." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 823 (9th Cir. 2002).  In addition, "[s]cenes-à-faire, or situations and incidents that flow necessarily or naturally from a basic plot premise, cannot sustain a finding of infringement." *Id.*  "Therefore, when applying the extrinsic test, a court must filter out and disregard the non-protectable elements in making its substantial similarity determination." *Id.* at 822-23.

Here, Rainey opines that "[t]here are substantial similarities between [*Totem* and *Stranger Things*] leading to the conclusion that one property had knowledge of the other and consciously chose to adopt elements from it." Report at 3.  This opinion must be excluded as Rainey did not apply the extrinsic test.  *See Johannsongs-Publ'g Ltd.*, 2020 U.S. Dist. LEXIS 82464, at *18 (failing to apply extrinsic test is grounds for excluding an expert opinion).

His opinion should also be excluded because he impermissibly predicated it on purported similarities based on "alleged, scattered similarities without any focus on protectable expression[.]" *Knowles v. Spin Master, Inc.*, No. CV 18-5827 PA (JCx), 2019 U.S. Dist. LEXIS 160965, at *10-11 (C.D. Cal. Sept. 17, 2019) (excluding

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

23208250
231804-10002

DEFENDANTS' MOTION TO EXCLUDE
EXPERT TESTIMONY
OF JOHN RAINEY

expert); *see also Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1179-80 (9th Cir. 2003) (affirming exclusion of expert testimony that "merely restated…generic similarities in expressive content"); *Olson v. NBC*, 855 F.2d 1446, 1450 (9th Cir. 1988) (affirming court's decision to discount expert testimony that deemphasized dissimilarities and relied on unprotectable elements).

Because Rainey's opinion is not based on reliable principles or methods reliably applied to the facts of the case, he should be disqualified.

### 1.   Rainey Failed To Apply the Extrinsic Test.

Rainey admits that his "expert" analysis was based on "taking two projects," "reading them," and "seeing what is similar in both projects." Hussain Decl. Ex. B, at 122:25-123:13. This is the antithesis of the extrinsic test, under which a proffered substantial similarity expert must closely examine **only the protectable elements** relating to the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events. *See Benay v. Warner Bros. Ent., Inc*., 607 F.3d 620, 625 (9th Cir. 2010). Here, Rainey admits he did not objectively examine and compare the works' literary elements, and his testimony should be excluded. Hussain Decl. Ex. B, at 49:13-50:3.

Rainey's failure to apply the extrinsic test can be seen clearly in just a few examples:

- Consistent with Ninth Circuit requirements, Rainey should have faithfully and objectively described the respective plots of the works at issue. But Rainey did not summarize *Totem*'s plot, nor did he summarize the plot of any season of *Stranger Things*. Instead, Rainey simply applied broad general descriptions of the works. For example, he opines that "[c]entral to both projects is the specter of a monster … that escapes through the ruptured 'veil' between two dimensions, invades human reality with its monster minions, and wreaks havoc…." Report at 3. He also opines that the "hook" of both plots is that there "is an independent, existential agency of evil that preys upon humans" and both stories rely

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

23208250
231804-10002

7

DEFENDANTS' MOTION TO EXCLUDE
EXPERT TESTIMONY
OF JOHN RAINEY

on a girl to fix the evil by closing the portal.  Report at 13.[1]  Abstract concepts such as the hero's journey and "saving the day for a family member" are too common to be protected.  *See, e.g.*, *Basile v. Warner Bros. Ent., Inc.*, No. CV 15-5243-DMG (MRWx), 2016 U.S. Dist. LEXIS 194791, at *21 (C.D. Cal. Jan. 4, 2016).

- Rainey also ignored obvious differences between the works.  Hussain Decl. Ex. B, at 132:23-134:3.  However, differences in the protectable expression contained in literary works are critical to the extrinsic analysis.  *See Benay*, 607 F.3d at 625 (holding that the plots were dissimilar even when both plots contained stories about American war veterans traveling to Japan in the 1870s to train the Japanese army in modern western tactics to defeat the samurai rebellion because, in reviewing the differences, it was clear the plots develop "quite differently"); *Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir. 1985) (explaining that an expert must look "beyond the vague, abstracted idea of a general plot").

- But that is exactly what Rainey did, for example, when reviewing characters.  Rainey claims that *Totem*'s protagonist Jackson Chance is "similar" to *Stranger Things*' protagonist Joyce Byers, in spite of his admissions that the latter is a single mother in her 40s with two children who works as a cashier in a small town and has a 'slow-burn' romantic relationship with the town sheriff; and the former is a married, childless military veteran in his 30s with PTSD who loves his wife and is a diagnosed epileptic.  Hussain Decl. Ex. B, at 150:16-153:4.  While Rainey claims they are both fueled by unconditional love on their quests

---

[1] In deposition, Rainey contradicted his Report by admitting (correctly) that in *Totem*, the young girl (Kimi) does not actually destroy the villain and save the world, unlike Eleven in *Stranger Things* who does use her powers to kill the Demogorgon in the first season's final episode.  Hussain Decl. Ex. B, at 190:2-12.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

23208250
231804-10002

8

DEFENDANTS' MOTION TO EXCLUDE
EXPERT TESTIMONY
OF JOHN RAINEY

but are treated as mentally unstable (Report at 7), even that "similarity" is quite different: he admitted in deposition that one was the love of a husband and wife and the other of a mother and child. Hussain Decl. Ex. B, at 172:9-173:9.

- Rainey expressly admitted his failure to apply the extrinsic test as part of his character analysis when he conceded at deposition that the "similarities" of characters he was claiming were based on "archetypes" that filled a specific role. *Id.* at 159:25-160:16, 172:2-6. But a proper comparison of characters requires a review of, among other things, "the totality of the characters' attributes and traits.…" *Hardwell v. Parker*, No. CV 21-9100-DMG (PVCx), 2022 U.S. Dist. LEXIS 206346, at *18-20 (C.D. Cal. Aug. 25, 2022). Even some shared traits between characters are not enough to prove substantial similarity when the characters "have noticeable differences." *Silas v. HBO, Inc.*, 201 F. Supp. 3d 1158, 1177 (C.D. Cal. 2016). "No character infringement claim can succeed unless plaintiff's original conception sufficiently developed the character, and defendants have copied this development and not merely the broader outlines." *Shame on You Prods. v. Banks*, 120 F. Supp. 3d 1123, 1164 (C.D. Cal. 2015).

- Rainey's approach in comparing characters was not to look at "objective attributes and traits" but to look at "story functions," something not supported by the extrinsic test. Hussain Decl. Ex. B, at 160:8-16, 169:18-170:8, 171:7-18, 173:14-20. *See Chase-Riboud v. Dreamworks Inc.*, 987 F. Supp. 1222, 1228 (C.D. Cal. 1997) (characters that serve the same function are not similar and not afforded protection).

- Further, Rainey refused to compare eleven (11) *Stranger Thing* characters with any characters in *Totem*, claiming that they had no relevance to the Series. Report at 12. In doing so, Rainey simply

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

DEFENDANTS' MOTION TO EXCLUDE
EXPERT TESTIMONY
OF JOHN RAINEY

disregarded the fact that some of those characters have more than double the screen time of others he chose to compare.  Hussain Decl. Ex. B, at 182:19-183:22.[2]

The Ninth Circuit has repeatedly cautioned against what occurred in Rainey's Report: comparing works at abstract levels, without regard to the objective, copyrightable, literary elements in each work.  Indeed, an "expert" report would not be permitted if it claimed that *Star Wars* infringes on *The Wizard of Oz* by opining that both works involve a protagonist who is being raised by an aunt and uncle, who goes on a quest to another world, aided by a metal-clad ally and fur-clad ally, who fights a villain wearing black, adorned with distinctive black headgear, and who is imbued with supernatural powers.  Rainey's opinion suffers from a fundamental failure to move beyond abstractions and examine **protectable elements** of the works.

Because Rainey's analysis is untethered from the extrinsic test, he reaches some truly preposterous conclusions.  For example, his expert opinion is that the character Thunderbear, an elderly "Lynx Indian" shaman who assists *Totem*'s protagonist is similar to Dr. Brenner, a villainous character in *Stranger Things* who presides over a secret scientific testing facility and performs unethical experiments on children (including Eleven, one of the main characters in the Series).  These characters could

---

[2] Rainey's claims of comparison with respect to dialogue, setting, mood and pace are similarly improper.  Rainey claims that the dialogue in the works is "similar" because all characters are on a quest to rescue loved ones.  Report at 26.  However, when asked about specific dialogue comparisons, Rainey could only identify the phrases "I promise",  "I'm sorry", and "take care of him" as purported similarities.  Hussain Decl. Ex. B, at 248:5-249:11.  This is not appropriate analysis under the extrinsic test.  *See Dumond v. Reilly*, No. CV 19-8922-GW-AGRx, 2021 U.S. Dist. LEXIS 199398, at *52 (C.D. Cal. Jan. 8, 2021) (ordinary phrases are not protectable); *see also Olson*, 855 F.2d at 1450 (it is necessary to have "extended similarity of dialogue . . . to support a claim of substantial similarity based upon this issue").  Further, with respect to setting, the works take place in different decades, in different areas of the country and in different specific locations.  *Totem* has a number of scenes that take place in the "Lynx Indian" village, and in a cavernous villain's lair.  *Stranger Things* has no such settings and, in fact, utilizes settings such as a secret scientific facility (Hawkins lab), the streets, stores and police station of a small town, and the local middle school (among many others).  None of these settings exist in *Totem*.  Rainey nevertheless claims that the works' settings are "similar" because "both stories are set in small, middle class town in rural America."  Report at 22.  This is an unprotectable setting, and furthermore, Rainey admitted that there is no "town" named (or described) in the entire *Totem* script.  *Id.* at Ex. B, at 46:9-15.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

23208250
231804-10002

10

DEFENDANTS' MOTION TO EXCLUDE
EXPERT TESTIMONY
OF JOHN RAINEY

not be more dissimilar, yet Rainey asserts that *Stranger Things* "appropriated" the Thunderbear character for the following reason: because Dr. Brenner tells his unwilling subject to call him "Papa" and Thunderbear is referred to by his granddaughter as "Grandfather." Report at 10. This is not legitimate literary analysis, it defies common sense, and it is expressly precluded by the law of this Circuit.

Rainey's failure to employ the proper methodology is sufficient grounds to exclude his reports and testimony. *See, e.g.*, *Mattel, Inc. v. Mga Ent., Inc.*, No. CV 04-9049 DOC (RNBx), 2011 U.S. Dist. LEXIS 161798, at *30 (C.D. Cal. Jan. 26, 2011) (failure to apply the correct test in a copyright case is grounds for excluding expert opinion); *see also Snyder v. Bank of Am., N.A.*, No. 15-cv-04228-KAW, 2020 U.S. Dist. LEXIS 206437, at *20 (N.D. Cal. Nov. 3, 2020) (excluding expert report based on unreliable methodology); *Waymo LLC v. Uber Techs., Inc.*, No. C 17-00939 WHA, 2017 U.S. Dist. LEXIS 183688, 2017 WL 5148390, at *2 (N.D. Cal. Nov. 2, 2017) (excluding expert testimony because "[o]ther than grade-school arithmetic…[the expert] did not apply any coherent principle, methodology…"); *Grodzitsky v. Am. Honda Motor Co.*, No. 2:12-cv-001142-SVW-PLA, 2017 U.S. Dist. LEXIS 222399, at *14 (C.D. Cal. Oct. 30, 2017) (failure by an expert to demonstrate that he arrived at his conclusion via sound methodology is fatal to his testimony); *Rambus Inc. v. Hynix Semiconductor, Inc.*, 254 F.R.D. 597, 606 (N.D. Cal. 2008) (excluding expert report that did not "apply a reliable methodology to reach a helpful conclusion"). Testimony regarding random, unprotectable "similarities" is not permitted under Ninth Circuit law, and Rainey's opinions must be excluded.

### 2.    Rainey Failed To Filter Out Unprotectable Elements.

Rainey also failed to consider any "prior art" to determine if the elements he opines are "substantial[ly] similar[]" are unique or, conversely, are common or generic and thus unprotected. This is an independent basis for excluding Rainey's reports and testimony.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

23208250
231804-10002

11

As noted above, only those elements of the works that are **protected** may be considered in assessing substantial similarity under the extrinsic test. *See Mattel, Inc. v. MGA Ent., Inc.*, 616 F.3d 904, 913 (9th Cir. 2010). The process of determining whether an element is protectable thus typically requires an analysis of "prior art" to determine if those elements are unique or, conversely, are common or generic and unprotected. *E.g.*, *Smith v. Weeknd*, No. CV 19-2507 PA (MRWx), 2020 U.S. Dist. LEXIS 130549, at *20 (C.D. Cal. July 22, 2020) (expert report that failed to filter out unprotectable elements did not create triable issue of fact); *Johannsongs-Publ'g Ltd.*, 2020 U.S. Dist. LEXIS 82464, at *13-17 (where expert "fail[ed] to filter out unprotectable elements, which is the foundation of the extrinsic test," his "opinion about the similarities [between two works] are legally deficient and irrelevant").

Rainey admitted that he failed to conduct **any** prior art search or analysis of prior existing works. Hussain Decl. Ex. B, at 57:15-19; 225:21-226:5.[3] Rainey's complete misapprehension of the appropriate methodology under the extrinsic test, and his failure to utilize an appropriate methodology, are clear in his improper and erroneous reliance upon random, generic and unprotectable elements and scenes-à-faire.

For example, Rainey opines that *Totem* and *Stranger Things* are similar because in both, "the protagonist is the steadfast character and, by maintaining a strong emotional position or mindset, changes those around them." Report at 20. But Rainey also concedes – albeit without naming any specific prior work – that this abstract "story model" exists in prior works or "cases." *Id.* In deposition, Rainey acknowledged that one such prior work that follows this "story model" is *Star Wars*, in which Luke

---

[3] Not only did Rainey fail to consider any prior art, but it is evident from his rebuttal report that he does not understand its relevance to the extrinsic test: After attempting to distinguish two of the many prior works discussed in the report of Defendants' expert, Rainey inexplicably opines "[i]t is my opinion that the Screenplay Totem has much more than sufficient originality and creativity to constitute an original work within the requirement of the Copyright Act of a 'modicum' of creativity." Report at 26. Even setting aside that copyrightability is a legal question inappropriate for expert testimony, this "opinion" has no bearing on whether the two works at issue are substantially similar.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

23208250
231804-10002

12

DEFENDANTS' MOTION TO EXCLUDE
EXPERT TESTIMONY
OF JOHN RAINEY

Skywalker is the "steadfast character" that changes his ally (Han Solo). Hussain Decl. Ex. B, at 233:6-11. Rainey failed to conduct any analysis of this or any other prior art in formulating his opinions to determine if this "less common" "theme" in the works at issue was common and thus unprotectable. Report at 20.

Rainey also opines that "[b]oth stories are set in a small, middle-class town in rural America surrounded by forests[,]" without any further description of the towns, without noting any differences between them, and without considering similar settings used in prior works (e.g., *Back to the Future* (1985, 1989, 1990), *The Mist* (2007)). Report at 22. Rainey's conclusion that the Chance home in *Totem* and Byers home in *Stranger Things* are similar because both are "humble homes" with large yards and a tool shed in the backyard suffers from the same lack of analytic dissection, including disregarding the same elements found in prior art. These generic settings commonly used in films are not protectable. *See Shame on You Prods.*, 120 F. Supp. 3d at 1156 ("[T]he use of city streets is generic and flows from the unprotectable concept of setting in a work in a city.").

Rainey also concludes that the works are similar because both share a "universal theme" of "Human versus the Supernatural," Report at 19, but this is a generic theme in numerous prior works that Rainey does not consider or even acknowledge (e.g., *Poltergeist*) and is not protectable. *See Abdin v. CBS Broad., Inc.*, 971 F.3d 57, 71 (2d Cir. 2020) (describing "supernatural forces" as a "stock theme" in the science fiction genre).[4]

Rainey's failure to filter out common, unprotected elements when assessing the works' purported similarities renders his opinions irrelevant to the extrinsic test. *See*

---

[4] Rainey's description of this theme as realized in *Stranger Things* – namely, that "Joyce Byers and Hopper and friends go up against the Shadow Monster/Mind Flayer, the ultimate evil, in a carbon copy alternate dimension in order to save Will who was abducted into that dimension" – is also factually incorrect, as (1) Will is abducted into the alternate dimension (or "Upside Down") in Season 1 of the Series, (2) the Shadow Monster/Mind Flayer is not introduced until Season 2, and (3) the *Stranger Things* characters do not "go up against" the Shadow Monster/Mind Flayer in the alternate dimension, but in the real world. *See Stranger Things* Seasons 1-3 (Previously lodged with Court at Dkt. No. 31, Exs. A-C.)

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

23208250
231804-10002

13

DEFENDANTS' MOTION TO EXCLUDE
EXPERT TESTIMONY
OF JOHN RAINEY

*Johannsongs-Publ'g Ltd.*, 2020 U.S. Dist. LEXIS 82464, at *13-17.  Rainey should not be permitted to provide opinions on similarity that are predicated on a patently improper methodology.  His reports and testimony must be excluded.

### C.    Rainey's Substantial Similarity Opinion Lacks Any Methodology Demonstrating a Specialized Analysis of the Works.

Rainey's testimony should be excluded for the additional reason that he has merely regurgitated – often verbatim – Plaintiff's self-serving and flawed list of alleged "similarities" between random elements throughout the works and has adopted those as his own "opinions."  This is not expert analysis.

While an expert may rely on facts in the record, Fed. R. Evid. 703, it may not be based on assumptions of fact without evidentiary support.  *See Guidroz-Brault v. Mo. Pac. R.R. Co.*, 254 F.3d 825, 830-31 (9th Cir. 2001).  Moreover, the expert must add something in the nature of expertise to those facts.  *See* Fed. R. Evid. 702; *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB (SHx), 2014 U.S. Dist. LEXIS 185062, at *7 (C.D. Cal. Oct. 31, 2014) (copyright action holding that "'Rule 702 demands that expert testimony relate to scientific, technical or other specialized knowledge, which does not include unsubstantiated speculation and subjective beliefs.'" (quoting *Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir. 1997))).  An expert may **not** merely repeat one party's rendition of the facts.  *See Mata v. Or. Health Auth.*, 739 F. App'x 370, 372 (9th Cir. 2018) (holding that the district court did not abuse its discretion by excluding an expert from testifying where his "report did little more than vouch for [the party's] version of events").[5]

---

[5] *See also Rhine v. Buttigieg*, No. 2:20-cv-01761-RAJ-BAT, 2022 U.S. Dist. LEXIS 189487, at *10 (W.D. Wash. Sept. 15, 2002) ("[A]n expert may not simply parrot or rely on a party's allegations and theories."); *Stein v. Pac. Bell*, No. C 00-2915 SI, 2007 U.S. Dist. LEXIS 19193, at *34 (N.D. Cal. Mar. 19, 2007) (excluding expert testimony where expert "reviewed various documents and then restated as his 'opinions' the findings or allegations in those materials"); *Intermedics, Inc. v. Ventritex, Inc.*, 139 F.R.D. 384, 395-96 (N.D. Cal. 1991) ("[I]t would be fundamentally misleading, and could do great damage to the integrity of the truth finding process, if testimony that was being presented as the independent thinking of an 'expert' in fact was the product, in whole or significant part, of the suggestions of counsel.").  As Judge Posner aptly observed, "[a]n expert who parrots

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

23208250
231804-10002

14

DEFENDANTS' MOTION TO EXCLUDE
EXPERT TESTIMONY
OF JOHN RAINEY

The following partial list, comparing (1) Rainey's expert opinions, with (2) allegations from Plaintiff's FAC and arguments from Plaintiff's Opposition to Defendants' Motion to Dismiss ("Pl.'s Opp."), demonstrates that Rainey's supposed expert "opinion" is identical to Plaintiff's (specifically Jeffrey Kennedy's) non-expert assertions regarding supposed similarity between the works:

| Rainey's "Opinion" | Plaintiff's Allegations/Arguments |
|---|---|
| "Central to both projects is the specter of a monster, Azrael in *Totem* and Shadow Monster/Mind Flayer in *Stranger Things*, that escapes through the ruptured "veil" between two dimensions, invades human reality with its monster minions, and wreaks havoc in an effort to enslave humanity for motives that seem beyond the sphere of reason." Report at 3. | "Central to both projects is the specter of a monster, Azrael in *Totem* and Shadow Monster/Mind Flayer in *Stranger Things*, that escapes through the ruptured "veil" between two dimensions, invades human reality with its monster minions, and wreaks havoc in an effort to enslave humanity for motives that seem beyond the sphere of reason." Pl.'s Opp. at 4 |
| "In *Stranger Things*, Eleven, who is 12 years old, functions (perceives) well beyond her age. She has great psionic powers. She is responsible for opening the 'gate' … that allows the Demogorgon/Shadow Monster/Mind Flayer to enter this world. Her death would result in allowing the Shadow Monster/Mind Flayer to destroy humankind. In Season 1, she obliterates a Demogorgon. In Season 2, with the help of Hopper she banishes the Shadow Monster/Mind Flayer by closing the gate. In Season 3, she is wounded near the climax, but convinces Billy to stand against the Shadow Monster/Mind Flayer which gives Joyce and Hopper time to close the gate and again defeat the Shadow Monster/Mind Flayer." Report at 9. | "Eleven is 12 year-year-old girl, yet she is an old soul who functions (perceives) well beyond her age. She has great psionic powers (psychokinetic, telepathic, and remote viewing). She is responsible for opening the 'gate' that allows the Demogorgon/Shadow Monster/Mind Flayer to enter this world. Her death would result in allowing the Shadow Monster/Mind Flayer to destroy humankind. In Season 1, she obliterates a Demogorgon. In Season 2, with the help of Hopper she banishes the Shadow Monster/Mind Flayer by closing the gate. In Season 3, she is wounded near the climax, but convinces Billy to stand against the Shadow Monster/Mind Flayer which gives Joyce and Hopper time to close the gate and again defeat the Shadow Monster/Mind Flayer." FAC ¶ 71. |
| "In *Totem*, FBI Agent Sam Miller is a secondary antagonist to the cohesion between Jackson and Nerowe in their quest to save Autumn. Sam, having been bullied as a child by a caregiver at the Evergreen Home orphanage, feels that the world is against him and he must | "In *Totem*, FBI Agent Sam Miller is a secondary antagonist to the cohesion between Jackson and Nerowe in their quest to save Autumn. Sam, having been bullied as a child, feels that the world is against him and he must protect himself by playing the bully including |

[another's] statement is not giving testimony; he is a ventriloquist's dummy." *United States v. Brownlee*, 744 F.3d 479, 482 (7th Cir. 2014).

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

23208250
231804-10002

15

DEFENDANTS' MOTION TO EXCLUDE
EXPERT TESTIMONY
OF JOHN RAINEY

| | |
|---|---|
| protect himself by playing the bully including threatening Nerowe's child. A part of his bullying persona manifests as prejudice against Native Americans. For instance, on page 41 (2013 draft) he says to the totem pole: 'Stupid Injun stick! I hate you! Retarded Injuns! I will find you!' Then, he shoots Kimi and says, "'Filthy Lynx!'" Report at 11. | threatening a child. A part of his bullying persona is that he is prejudiced against Native Americans. For instance, on page 41 (2013 draft) he says to the totem pole: 'Stupid Injun stick! I hate you! Retarded Injuns! I will find you!'" FAC ¶ 71. |
| "Both *Totem* and *Stranger Things* revolve around the respective protagonists' quests, Jackson in *Totem* and Joyce in *Stranger Things*, to rescue a loved one from having been abducted by a monster and carried to an alternate dimension that is a dark copy of their current reality. The respective monsters and shapeshifting minions oppose that quest." Report at 13. | "Both *Totem* and *Stranger Things* revolve around the respective protagonists' quests, Jackson in *Totem* and *Joyce* in Stranger Things, to rescue a loved one from having been abducted by a monster and carried to an alternate dimension that is a dark copy of their current reality. The respective monsters and shapeshifting minions oppose that quest." FAC ¶ 73. |
| "In *Totem*, Nerowe ultimately resolves his skepticism and becomes convinced that something strange regarding Autumn's seeming death is happening. Despite the funeral held for Autumn, Nerowe feels he must assist Jackson in his quest to find her. In *Stranger Things*, Hopper ultimately resolves his skepticism and becomes convinced that something strange regarding Will's seeming death is happening. Despite the funeral held for Will, Hopper feels he must assist Joyce in her quest to find him." Report at 14. | "In *Totem*, Nerowe ultimately resolves his skepticism and becomes convinced that something strange regarding Autumn's seeming death is happening. Despite the funeral held for Autumn, Nerowe feels he must assist Jackson in his quest to find her. Similarly, In *Stranger Things*, Hopper ultimately resolves his skepticism and becomes convinced that something strange regarding Will's seeming death is happening. Despite the funeral held for Will, Hopper feels he must assist Joyce in her quest to find him." Pl.'s Opp. at 11. |
| "For instance, in *Totem*, Jackson, the Protagonist archetype, or story-driver function, is afflicted with seizures which give him visions of the alternate dimension, carbon copy world. In *Stranger Things*, Season 2, this character trait of seizures and visions of evil is attributed to Will, the Child archetype, as a motive for the Protagonist archetype, Joyce, to continue her quest to save her son." Report at 15. | "In *Totem*, Jackson, the Protagonist archetype, or story-driver, is afflicted with seizures that give him visions of the alternate dimension, carbon copy world. In *Stranger Things*, Season 2, this character trait of seizures and visions of evil is attributed to Will, the Child archetype, as a motive for the Protagonist archetype, Joyce, to continue her quest to save her son." FAC ¶ 82. |
| "In both projects, the device of seizures is used to reveal the other-worldly danger that threatens the human race. Because of the monster's relationship with Will in Season 1, a twist is created in the final sequence of Season 1 to allow the Shadow Monster to obtain control | "In both projects, the device of seizures is used to reveal the other-worldly danger that threatens the human race. Because of the monster's relationship with Will in Season 1, a twist is created in the final sequence of Season 1 to allow the Shadow Monster to obtain control |

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

23208250
231804-10002

DEFENDANTS' MOTION TO EXCLUDE
EXPERT TESTIMONY
OF JOHN RAINEY

| | |
|---|---|
| over Will and make him its 'spy'. As it gains more influence over him, Will, like Jackson in *Totem,* has seizures that give him visions of the Shadow Monster's carbon copy alternate-dimensional." Report at 15. | over Will and make him its 'spy'" As it gains more influence over him, Will, like Jackson in *Totem,* has seizures that give him visions of the alternate-dimensional world." FAC ¶ 83. |
| "Joyce becomes aware of Will's possession and seeks to resolve Will's seizures and vows to protect him, just as Autumn vows to protect Jackson in *Totem.* The respective vows to protect that are taken by Autumn in *Totem* and Joyce in *Stranger Things* mirror each other in that while the vows are exactly the same within the two codependent relationships, they are executed by the opposite character. The vow to protect in *Totem* is given to the opposite character in *Stranger Things,* but the vow is the same." Report at 15. | "Joyce becomes aware of Will's possession and seeks to resolve Will's seizures and vows to protect him, just as Autumn seeks to protect Jackson in *Totem.* The respective vows to protect that are taken by Autumn in *Totem* and Joyce in *Stranger Things* mirror each other in that while the vows are exactly the same between the two codependent relationships, the archetypes are reversed." FAC ¶ 84. |
| "There are two aspects to the subject of theme. First, there are universal thematic topics that conceptualize the nature of the story itself. Second, there is the moral, ethical thematic arc that is implied by the emotional journey the main character, often the protagonist, takes leading to the resolution of some flaw or value out of balance in that character." Report at 17. | "There are two aspects to the subject of theme. First, there are universal thematic topics that conceptualize the nature of the story itself. Second, there is the moral, ethical thematic arc that is implied by the emotional journey the main character, often the protagonist, takes leading to the resolution of some flaw or value out of balance in that character." FAC ¶ 94. |
| "So, in *Totem,* it is established that seizures are associated with surges in neural electricity and electrical surges are associated with the monster's presence. Jackson has electrical surges in his brain that result in grand mal seizures on the following pages of the 2013 draft of *Totem*: 3, 9, 16, 33, 36, 50, 73, 102, 106-107. In almost every seizure that he has, he either has a vision of a dramatic future event or he has an experience of Azrael and the alternate dimension. In *Stranger Things,* Season 2, Episodes 3-4, when the Shadow Monster/Mind Flayer enters Will's body, he has a seizure. But he has shivering reactions before that event that flips him briefly into the carbon copy alternate dimension..." Report at 30. | "In *Totem,* seizures are associated with surges in neural electricity and electrical surges are associated with the monster's presence. Jackson has electrical surges in his brain that result in grand mal seizures on the following pages of the 2013 draft of *Totem* (*See* Exhibit '7' at pp. 3, 9, 16, 33, 36, 50, 73, 102, 106-107. In almost every seizure that he has, he either has a vision of a dramatic future event or he has an experience of Azrael and the alternate dimension. In *Stranger Things,* Season 2, Episodes 3-4, when the Shadow Monster/Mind Flayer enters Will's body, he has a seizure. But he has shivering reactions before that event that flips him briefly into the Upside-Down, alternate dimension...." FAC ¶ 147.[6] |

---

[6] A more comprehensive list of comparisons between Rainey's expert "opinions" set forth in his Report and Plaintiff's allegations and arguments is attached as Exhibit H to the Hussain Declaration.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

23208250
231804-10002

17

DEFENDANTS' MOTION TO EXCLUDE
EXPERT TESTIMONY
OF JOHN RAINEY

So resolute is Rainey's adoption of Plaintiff's allegations in the FAC that **he even parrots deliberate misrepresentations of the works** – **including elements that Plaintiff has admitted are inaccurate**. *See Am. Booksellers Ass'n v. Barnes & Noble, Inc.*, 135 F. Supp. 2d 1031, 1041 (N.D. Cal. 2001) ("'[W]hen an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury verdict.'") (quoting *Brooke Grp. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993)).

For example, although Rainey repeats the FAC's allegation that "[i]n *Totem*, Azrael abducts Autumn Chance from the tool shed in the Chance's back yard and imprisons her in the dark, alternate dimension, a reflected copy of the human dimension" (Report at 13),[7] Plaintiff's principal, Jeffrey Kennedy, conceded at deposition that in fact Autumn is **not** abducted but killed, or "sacrifice[d]." Hussain Decl. Ex. B, at 72:18-73:8; *see also id.* Ex. I (Autumn "chooses to make the ultimate sacrifice for love" and "sacrifices her life to Azrael"). Rainey's conclusion is also contradicted by the *Totem* script itself, which states that "[t]he light leaves Autumn's eyes" after "her body [is] shredded by the blades of axes and daggers." FAC Ex. 7, at 36, 37. Kennedy further admitted that the alternate dimension in *Totem* is **not** a "reflected" or "carbon copy" of the human dimension, but includes locations – including Azrael's sanctuary in which the deceased Autumn's soul is imprisoned – that do not have a counterpart in the real world. Hussain Decl. Ex. C, at 154:23-155:22; *see also* FAC Ex. 7, at 113-115.

As yet another example, Rainey parrots the FAC's allegation that "ten-year-old Kimi in *Totem* … is responsible for the rupture in the 'veil' between this human dimension and a dark, carbon copy alternate dimension through which the monster is

---

[7] *Compare* FAC ¶ 78 ("In *Totem*, Azrael abducts Autumn from the tool shed in the Chance's back yard and imprisons her in the dark, alternate dimension, a reflected copy of the human dimension.").

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

23208250
231804-10002

18

DEFENDANTS' MOTION TO EXCLUDE
EXPERT TESTIMONY
OF JOHN RAINEY

able to invade the current human reality." Report at 13.[8]  However, this is a false claim of similarity.  Kennedy himself admitted that, in his *Totem* script, Kimi does not create opening of the portal and that two other characters, Sam Miller and Jackson Chance (**not** Kimi), plant the totem that opens the portal.  Hussain Decl. Ex. C, at 148:24-150:2. The *Totem* screenplay further demonstrates that Kimi tried to **prevent** Autumn from taking the subject totem pole that ultimately ruptures the veil between dimensions: "Kimi: That's for turtles, not people."  FAC Ex. 7, at 22.

In perhaps the worst example of Rainey parroting a false claim by Plaintiff that has subsequently been debunked, Rainey opines that "[i]n *Stranger Things*, the Demogorgons (Demo-Dogs)…shape-shift back and forth from two-legged, humanoid monsters to four-legged Demo-Dogs."  Report at 10.[9]  This is a false representation of the works and, again, Kennedy himself acknowledged in his deposition that the Demogorgon does **not** "shape-shift."  Hussain Decl. Ex. C, at 243:5-17, 349:13-350:14. This is obvious to viewers, because in Season 2 of *Stranger Things*, "Demo-Dogs" are introduced and are revealed to be younger/adolescent versions of the Demogorgon species.  In an effort to make Plaintiff's work sound similar to *Stranger Things*, the FAC alleged that both works involve characters "shape-shifting" – but this is wrong, and this obviously false assertion was uncritically parroted by Rainey to support his "similarity" opinion.

In short, Rainey's opinion, based on random elements scattered throughout the two works, was arrived at by parroting back Plaintiff's own allegations.  This type of report "is not an expert opinion."  *Navarro v. P&G*, No. 1:17-cv-406, 2021 U.S. Dist. LEXIS 43140, at *27-28 (S.D. Ohio Mar. 8, 2021); *see also Brownlee*, 744 F.3d at 482; *cf. Perfect 10, Inc.*, 2014 U.S. Dist. LEXIS 185062, at *4-5 ("Maintaining *Daubert*'s

---

[8] *Compare* FAC ¶ 74 ("[T]en-year-old Kimi in *Totem* … is responsible for the rupture in the "veil" between the human dimension and a dark, carbon-copy alternate dimension through which a monster is able to invade the current human reality.").

[9] *Compare* FAC ¶ 71 ("The Demogorgon … shape-shift back and forth from two-legged, upright humanoid monsters to four-legged Demo-Dogs.").

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

23208250
231804-10002

19

DEFENDANTS' MOTION TO EXCLUDE
EXPERT TESTIMONY
OF JOHN RAINEY

1   standards is particularly important considering the aura of authority experts often

2   exude, which can lead juries to give more weight to their testimony." (citation

3   omitted)).

4       Because Rainey's Report lacks any reliable methodology demonstrating

5   specialized knowledge or expert analysis of substantial similarity between protectable

6   elements in *Totem* and *Stranger Things*, it fails to satisfy the requirements of Rule 702

7   or *Daubert*, and his testimony should be excluded.

8       **D.    Rainey's Opinions Constitute Improper Legal Conclusions.**

9       Rainey's argumentative and baseless legal conclusions regarding supposed

10  "copying" and "appropriation" are inadmissible, improper and must be excluded.

11      As summarized in *N.W. v. City of Long Beach*, Nos. EDCV 14-1569-VAP

12  (SPx), LACV 14-8374-VAP (SPx), 2016 U.S. Dist. LEXIS 194469, at *6-7 (C.D. Cal.

13  June 7, 2016):

14          Though expert testimony is appropriate where 'scientific, technical, or
            other specialized knowledge will assist the trier of fact,' expert testimony
15          consisting of legal conclusions is generally inappropriate…. Even if a
            jury is not misled into adopting legal conclusions offered by an expert
16          witness, the testimony remains objectionable if it communicates a legal
            standard, explicitly or implicitly, to the jury; an expert cannot instruct
17          the jury on the law.   These rules are meant to protect against the
            admission of opinions which would merely tell the jury what result to
18          reach.

19  Courts consistently hold that "'an expert witness cannot give an opinion as to her legal

20  conclusion, i.e., an opinion on an ultimate issue of law.'" *Bahra v. Cnty. of San

21  Bernardino*, No. EDCV 16-1756 JGB (SPx), 2021 U.S. Dist. LEXIS 170596, at *9

22  (C.D. Cal. June 24, 2021) (quoting *Hangarter v. Provident Life & Accident Ins. Co.*,

23  373 F.3d 998, 1016 (9th Cir. 2004)).  Indeed, expert testimony that merely "proffer[s]

24  legal conclusions is not helpful to the trier of fact and invades the province of the jury,"

25  and is thus properly excluded. *McCoy v. Kazi*, No. CV 08-07244 SJO (CWx), 2010

26  U.S. Dist. LEXIS 150679, at *44 (C.D. Cal. Aug. 27, 2010).

27      Here, Rainey improperly opines that "one property had knowledge of the other

28  and consciously chose to adopt elements from it"; "shared elements … display the

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

23208250
231804-10002

20

DEFENDANTS' MOTION TO EXCLUDE
EXPERT TESTIMONY
OF JOHN RAINEY

impetus to conscious appropriation from one property to the other"; "the creators of *Stranger Things* had prior access to *Totem* and consciously chose to appropriate elements from it"; "because there are so many of these elements that are common to both projects, when taken together, it becomes tantamount to copying"; "any form of [retroactive continuity] on any story element that is identified as having been copied from another work constitutes a continuation of the appropriation"; and "my initial report … states a strong case for copyright infringement." Report at 3, 35, 36; Hussain Decl. Ex. J ("Rebuttal Report"), at 1, 2, 9, 27. *See Mackie v. Hipple*, No. C09-0164RSL, 2010 U.S. Dist. LEXIS 157025, at *9-10 (W.D. Wash. Mar. 22, 2010) (whether actionable copying has occurred is a legal conclusion).[10]

These opinions constitute impermissible legal conclusions and must be excluded. *See, e.g.*, *Samsung Elecs. Colo. v. Quanta Comput., Inc.*, No. No C-00-4524 VRW, 2006 U.S. Dist. LEXIS 66447, at *36 (N.D. Cal. Sept. 15, 2006) (excluding expert's legal conclusions); *see also Earp v. Cullen*, 623 F.3d 1065, 1975 (9th Cir. 2010) (holding that district court did not abuse discretion to prevent expert from testifying regarding an ultimate legal conclusion).

## E.    Rainey's Testimony Should Be Excluded Under Rule 403.

Rainey's failure to apply the Ninth Circuit's extrinsic test to arrive at his opinion, his use of random elements (such as the common use of a "butterfly" "tattoos" and "garden gnomes") to arrive at a conclusion of legal "similarity," as well as his intrusion into the role of the fact finder through improper legal conclusions, warrants the exclusion of his reports and testimony under Federal Rule of Evidence 403. *See*

---

[10] For reasons that are not clear, Rainey also opines "that the Screenplay *Totem* has much more than sufficient originality and creativity to constitute an original work within the requirement of the Copyright Act of a 'modicum' of creativity." Rebuttal Report at 26. Not only does this appear to misapprehend Rainey's obligation under the extrinsic test to consider and filter out unprotectable elements and prior art, but "whether the work in question is 'copyrightable' constitutes an improper legal conclusion." *Stardock Sys. v. Reiche*, No. C 17-07025 SBA, 2018 U.S. Dist. LEXIS 222971, at *18 n.6 (N.D. Cal. Dec. 27, 2018) (citing *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017)).

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

23208250
231804-10002

21

DEFENDANTS' MOTION TO EXCLUDE
EXPERT TESTIMONY
OF JOHN RAINEY

*United States v. Ramirez-Robles*, 386 F.3d 1234, 1246 (9th Cir. 2004) ("Rule 403 and *Daubert* address different aspects of evidence and therefore act independently.").

Rule 403 empowers a court to exclude relevant evidence when its probative value is substantially outweighed by, among other things, unfair prejudice, confusing the issues, and/or misleading the jury. *See* Fed. R. Evid. 403. Plaintiff will argue that the glaring errors and deficiencies in Rainey's opinions should go to the weight of his testimony, rather than admissibility. However, Rainey's entire opinion is unmoored from the relevant extrinsic test and therefore, any probative value is minimal and substantially outweighed by the risk of unfairly prejudicing Defendants and confusing and misleading the jury. Rainey's opening report, and his rebuttal report, should both be excluded as they both suffer from the same irredeemable infirmities – Rainey bases his opinions on an unpublished screenplay that was never accessed by the Defendants, Rainey fails to apply the extrinsic test (or any expert methodology), and Rainey improperly and uncritically adopts and repeats Plaintiff's (often incorrect) allegations relating to supposed similarities between these entirely different works.

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that Rainey's reports and testimony be excluded from trial.

Dated:   January 3, 2023                LOEB & LOEB LLP

                                        By: _____
                                            David Grossman
                                            Safia Gray Hussain
                                            *Attorneys for Defendants*
                                            AARON SIMS, MATT DUFFER, ROSS
                                            DUFFER, NETFLIX, INC., NETFLIX
                                            STREAMING SERVICES, INC., and
                                            21 LAPS INC.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

23208250
231804-10002

22

DEFENDANTS' MOTION TO EXCLUDE
EXPERT TESTIMONY
OF JOHN RAINEY