1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BOREN, OSHER & LUFTMAN, LLP
Jeremy J. Osher (SBN 192109)
josher@bollaw.com
Aaron M. Gladstein (SBN 266287)
agladstein@bollaw.com
Matthew K. Tom (SBN 324298)
mtom@bollaw.com
222 N. Pacific Coast Highway, Suite 2222
El Segundo, CA 90245
Telephone: (310) 322-2021
Facsimile: (310) 322-2228

Attorneys for Plaintiff
IRISH ROVER ENTERTAINMENT, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRISH ROVER ENTERTAINMENT, LLC, a California limited liability company,<br><br>   Plaintiff,<br><br>  vs.<br><br>AARON SIMS, an individual; MATT DUFFER, an individual; ROSS DUFFER, an individual; NETFLIX, INC., a Delaware corporation; NETFLIX STREAMING SERVICES, INC., a Delaware corporation; 21 LAPS ENTERTAINMENT, a business entity, form unknown; and DOES 1 through 50, inclusive,<br><br>   Defendants. | Case No.: 2:20-CV-06293-CBM-PLA (Assigned to Hon. Consuelo B. Marshall)<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE THE EXPERT TESTIMONY OF PROFESSOR JEFFREY SEDLIK**<br><br>[Declarations of Jeremy J. Osher and Professor Jeffrey Sedlik filed concurrently herewith]<br><br>**Hearing**<br>Date: February 14, 2023<br>Time: 10:00 a.m.<br>Courtroom: 8B |

# **TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................... 1

II.    STATEMENT OF RELEVANT FACTS ....................................... 3

III.   ARGUMENT.................................................................................. 4

       A.   Sedlik's Opinions Regarding Similarities Between The Selection
            And Arrangement Of Elements In *Totem* And *Stranger Things* Are
            Based On A Valid And Reliable Methodology That Will Assist The
            Jury. ........................................................................................ 6

       B.   Sedlik is a Preeminent Expert Who is Fully Qualified to Offer His
            Opinions. ................................................................................. 9

       C.   Sedlik Does Not Provide a Substantial Similarity Analysis And
            Defendants' Arguments In This Regard Are Irrelevant........................... 12

       D.   Sedlik's Expert Opinions are Relevant, Admissible, and Premised
            on Reliable Methodology. ....................................................... 13

       E.   Defendants Blatantly Distort Sedlik's Testimony Regarding The
            Scope Of His Opinions............................................................. 16

       F.   Sedlik's Testimony is Based On Sufficient Facts.................................. 17

       G.   Sedlik's Opinions And Methodologies Repeatedly Have Been
            Accepted By Numerous Courts And The Two Cases Cited By
            Defendants Do Not Diminish His Expertise Or Credibility. .................. 19

       H.   Sedlik's Opinions Are Based On His Own Independent Review and
            Analysis of Various Elements of *Totem* and *Stranger Things*.................. 22

       I.    Defendants' Argument Under Rule 403 Must Be Rejected. .................. 24

IV.    CONCLUSION ............................................................................ 25

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Brittney Gobble Photography, LLC v. Sinclair Broad. Grp., Inc.*

4

    No. SAG-18-03403, 2021 WL 5359671 (D. Md. Nov. 17, 2021)................19, 20

5

*Brittney Gobble Photography, LLC v. Wenn Limited*

6

    2019 WL 2446997 (E.D. Tenn. Feb. 19, 2019) ...........................................20, 21

7

*D'Pergo Custom Guitars, Inc. v. Sweetwater Sound, Inc.*

8

    2020 WL 60351 (D.N.H. Jan. 6, 2020) ........................................................21

9

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*

10

    509 U.S. 579, 596 (1993) ........................................................1, 2, 5, 17

11

*Davis v. Davison Hotel Co., LLC*

12

    No. CV 12-6327 CAS (AJWx), 2013 WL 3337669 at *3 (C.D. Cal. July 1, 2013)
    ............................................................................................................25

13

*Elosu v. Middle Fork Ranch, Inc.*

14

    26 F.4th 1017, 1020 (9th Cir. 2022)...........................................2, 11, 15

15

*Karol W. Corp. v. Smith News Co., Inc.*

16

    2013 WL 12084485, at *4 (C.D. Cal. Aug. 23, 2013)........................................21

17

*Kennedy v. Collagen Corp.*

18

    161 F.3d 1226, 1231 (9th Cir. 1998) .................................................3, 6

19

*L.A. Printex Industries, Inc. v. Aeropostale, Inc.*

20

    676 F.3d 841, 846 (9th Cir. 2012) .......................................................18

21

*Leonard v. Stemtech Health Scis., Inc.*

22

    No. 08-067-LPS-CJB, 2013 WL 5311295, at *6 (D. Del. Sept. 23, 2013) ....21, 22

23

*Leonard v. Stemtech International, Inc.*

24

    834 F.3d 376 (3d Cir. 2016)................................................................21

25

*Lewert v. Boiron, Inc.*

26

    212 F.Supp.3d 917, 937 (C.D. Cal. 2016) .....................................1, 3, 5

27

28

*Maldonado v. Apple, Inc.*
No. 3:16-cv-04067-WHO, 2021 WL 1947512, at \*17 (N.D. Cal. May 14, 2021)
................................................................................................................................12

*Mata v. Or. Health Auth.*
739 F.App'x 370 (9th Cir. 2018) ................................................................23

*McCullock v. H.B. Fuller Co.*
61 F.3d 1038, 1044 (2d Cir. 1995)................................................................6

*Metcalf v. Bocho*
294 F.3d 1069, 1074 (9th Cir. 2002) ...........................................................7

*Morrill v. Stefani*
338 F.Supp.3d 1051, 1056 n.2 (C.D. Cal. 2018) ........................................6

*Navarro v. P&G*
No. 1:17-cv-406, 2021 WL 868586 (S.D. Ohio Mar. 8, 2021) ..............19

*Rhine v. Buttigieg*
No. 2:20-cv-01761-RAJ-BAT, 2022 WL 7729817 (W.D. Wash. Sept. 15, 2022)
................................................................................................................................23

*Shaw v. Lindheim*
919 F.2d 1353, 1363 (9th Cir. 1990) .........................................................15

*Skidmore v. Led Zeppelin*
952 F.3d 1051, 1064 (9th Cir. 2020) .........................................................18

*Turner v. ThyseenKrupp Materials, N.A.*
492 F.Supp.3d 1045, 1049 (S.D. Cal. 2020)..............................................17

*U.S. v. Hankey*
203 F.3d 1160, 1172 (9th Cir. 2000) .........................................................25

*Under a Foot Plant, Co. v. Exterior Design, Inc.*
2017 WL 3593014 (D. Md. 2017) ..............................................................21

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*
959 F.3d 1194 (9th Cir. 2020) ....................................................................18

iii

*United States v. 14.38 Acres of Lan Situated in Leflore County, Miss.*

    80 F.3d 1074, 1078 (5th Cir. 1996) ........................................................5

*United States v. Finley*

    301 F.3d 1000, 1014-16 (9th Cir. 2002) ...............................................5

*United States v. Mills*

    704 F.2d 1553, 1559 (11th Cir. 1983) .................................................25

**Statutes**

Fed. R. Civ. P. 26(a)(2)(B) ....................................................................4

Fed. R. Evid. 403 ...................................................................................24

Fed. R. Evid. 702 ....................................................................................4

**Other Authorities**

*Nimmer on Copyright* § 1303[A].............................................................16

Local Rule 7-3.........................................................................................4

Plaintiff Irish Rover Entertainment, LLC ("Plaintiff") hereby submits its Opposition to the Motion to Exclude Expert Testimony of Professor Jeffrey Sedlik ("Motion") filed by Defendants Aaron Sims, Matt Duffer, Ross Duffer, Netflix, Inc., Netflix Streaming Services, Inc., and 21 Laps Entertainment ("Defendants").

## I.   __INTRODUCTION__

By the instant Motion, Defendants seek to completely exclude the testimony of Professor Jeffrey Sedlik ("Sedlik"), Plaintiff's visual expression expert designated to opine on (1) practices, standards, procedures, workflows, and policies in the visual and performing arts; and (2) similarities between *Totem* and *Stranger Things* in the selection, arrangement and combination of numerous elements, such as characters, plot, sequence, themes, settings, mood, and tone.

Defendants' Motion is devoid of relevant legal authority and consists instead of a rehash of the arguments advanced by Defendants in their concurrently filed Motion for Summary Judgment. They also spend a great deal of time disputing Sedlik's conclusions, but as demonstrated herein, that is not the proper basis for a *Daubert* motion. Defendants are acutely aware that the diametrically opposed opinions espoused by the parties' competing experts—particularly on the issue of substantial similarity— amounts to a classic "battle of the experts", "and such a battle must be left for the jury's resolution." *See, e.g., Lewert v. Boiron, Inc.*, 212 F.Supp.3d 917, 937 (C.D. Cal. 2016), aff'd, 742 F.App'x 282 (9th Cir. 2018).

To avoid allowing this matter to go to the jury, Defendants urge this Court to altogether exclude the testimony of Plaintiff's experts, including Sedlik, based on arguments that wholly lack merit. Importantly, wholesale exclusion of expert witness testimony is inappropriate absent extraordinary circumstances, which simply are not present here. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596 (1993).

For the following reasons, Defendants' Motion should be denied:

***First***, Sedlik properly assessed and opined on similarities between the selection, arrangement, and combination of numerous elements in *Totem*, which are also reflected,

included, or referenced in scenes from *Stranger Things*.  That Defendants disagree with the opinions and conclusions that Sedlik derives therefrom is tantamount to asking this Court to reject his opinions and conclusions as "incorrect"; and, *ipso facto*, to accept Defendants' experts' opinions and as "correct".  However, case law is clear that such a decision is not within the province of the trial court at this juncture. *See Daubert*, 509 U.S. at 594-95 (1993) ("The focus [of the Court's inquiry], of course, must be solely on the principles and methodology, not on the conclusions that they generate"); *Elosu v. Middle Fork Ranch, Inc.*, 26 F.4th 1017, 1020 (9th Cir. 2022) ("Although a district court may screen an expert opinion for reliability, and may reject testimony that is wholly speculative, it may not weigh the expert's conclusions or assume a factfinding role.").

**Second**, Sedlik is a preeminent expert in the review, critique, and comparative analysis of similarities in the expression of ideas in works in which that expression incorporates visual storytelling, regardless of the medium of expression (photography, film, television, illustration, painting, *etc*.) and including the comparison of the expression of ideas in works executed in the same or different media. Sedlik is fully qualified to offer the opinions that are set forth in his expert report and to which he testified during his deposition in this matter. Sedlik's testimony is reliable and will assist the trier of fact in this case. Indeed, Sedlik's analysis and conclusions serve to bolster the opinions advanced by Plaintiff's literary expert, John W. Rainey.

**Third**, despite Defendants' accusation, Sedlik does not "merely regurgitate Plaintiff's self-serving allegations of scattered similarities from its pleading, without adding any expert evaluation." Mtn. 21:1-2. As explained herein, Sedlik conducted an objective, independent analysis and applied his expertise in photography, film, and television in reaching his conclusions.

**Fourth**, Defendant's attempt to exclude Sedlik is founded on a baseless assertion that Sedlik lacks the education, knowledge, training, and experience to opine on similarities of expression in works in film and television. As an initial matter, "[d]isputes as to the strength of [an expert's] credentials … go to the weight, not the

admissibility, of his testimony." *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1231 (9th Cir. 1998). Regardless, Sedlik is uniquely qualified to render his opinions. Sedlik studied both filmmaking and photography at the Art Center College of Design, where he received a degree after intensive training in screenwriting, directing, cinematography, storyboarding, lighting for film, photography, illustration, and other topics. Sedlik is a 25-year professor at the Art Center College of Design, where he teaches students from the photography, film, television, and art direction departments on topics including the translation of ideas from written form to illustration to final product. Sedlik's sworn testimony at deposition reflects his knowledge, and training on the fundamentals and intricacies of storytelling and screenwriting.[1] Osher Decl., ¶ 3, Ex. "A" [Sedlik Deposition Transcript (hereafter, "Sedlik Transcript")], 201:19-202:14, 227:17-22, 228:2-8, 228:15-21, 228:25-229:4. Put simply, Defendants attempts to discredit Sedlik's qualifications fall flat.

*Fifth*, Defendants' Motion is silent regarding the fact that they designated two different experts to rebut the opinions advanced by Sedlik in this case, *i.e.*, Michael Knapp (a former Netflix employee who is on Netflix's list of preferred vendors) and Lester A. Standiford (Defendants' literary expert, who does not share any of Sedlik's relevant qualifications). Although Plaintiff believes that Sedlik's opinions stand up under the scrutiny of Defendants' rebuttal experts, the fact that Defendants' felt it necessary to designate multiple experts only serves to demonstrate that this "case boils down to a battle of the experts, and such a battle must be left for the jury's resolution." *Lewert v. Boiron, Inc.*, 212 F.Supp.3d 917, 937 (C.D. Cal. 2016).

For these reasons, Defendants' Motion should be denied in its entirety.

## II.   <u>STATEMENT OF RELEVANT FACTS</u>

On September 23, 2022, Plaintiff served its Expert Witness Designation (the

---

[1] During a career spanning more than 35 years, Sedlik has operated a production studio, not only producing and directing photography, but also producing and directing television commercials and videos, serving as a cinematographer and director of photography.

"Designation") in accordance with Federal Rules of Civil Procedure, Rule 26(a)(2)(B). Within the Designation, Plaintiff's designated three (3) separate experts, including Sedlik. In his initial report dated September 22, 2022, Sedlik states the following:

> Based on my review, and on my knowledge, training and expertise, Plaintiff's selection arrangement and combination of numerous elements in *Totem*, such as characters, plot, sequence, themes, settings, mood, and tone – **as reflected in the *Totem* concept art – are also reflected, included, or referenced in scenes from *Stranger Things*.**

Declaration of Jeffrey Sedlik ("Sedlik Decl."), ¶ 3 & Ex. "A" [Sedlik Expert Report at 18 (emphasis added)] (hereafter, "Sedlik Report").

On December 6, 2022, Defendants deposed Sedlik in a full-day deposition. The deposition was contentious and at one point during a break when Defendants' counsel falsely accused Sedlik of failing to provide truthful testimony. Declaration of Jeremy J. Osher ("Osher Decl."), ¶ 3.

On December 20, 2022, Defendants forwarded a meet and confer communication requesting that Plaintiff meet and confer regarding this Motion pursuant to Local Rule 7-3. *Id.*, ¶ 8. Notably, Defendants' meet and confer letter was sent on the last possible day on which the parties could meet and confer on the substance of Defendants' threatened Motion in accordance with Local Rule 7-3.

### III.   <u>ARGUMENT</u>

Federal Rule of Evidence 702 governs the admissibility of expert witness testimony. A qualified expert may give testimony if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702.

"'In applying Rule 702, the Court functions as a gatekeeper, determining whether proffered expert testimony meets the requirements of Rule 702 by a preponderance of the evidence.'" *Lewert v. Boiron, Inc.*, 212 F.Supp.3d 917, 924 (C.D. Cal. 2016) (quoting *In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*, 984 F.Supp.2d 1021, 1026 (C.D. Cal. 2013)). "Thus, before admitting expert testimony, courts must make a 'preliminary assessment' of (1) whether the expert is qualified to present the opinion offered, (2) 'whether the reasoning or methodology underlying the testimony is scientifically valid,' and (3) 'whether that reasoning or methodology properly can be applied to the facts in issue.'" *Ibid.* (quoting *Daubert,* 509 U.S. at 592-593).

In essence, the trial court must ensure the proposed expert testimony "both rests on a reliable foundation and is relevant to the task at hand." *Daubert,* 509 U.S. at 597. Wholesale exclusion of expert witness testimony is inappropriate absent extraordinary circumstances, which are not present here.  As the Supreme Court held in *Daubert:*

> Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence. Additionally, in the event that the trial court concludes that the scintilla of evidence presented supporting a position is insufficient to allow a reasonable juror to conclude that the position more likely than not is true, the court remains free to direct a judgment… These conventional devices, rather than wholesale exclusion … are the appropriate safeguards where the basis of [expert] testimony meets the standards of Rule 702.

*Id.* at 596 (internal citations omitted).

*Daubert* "did not work a sea change over federal evidence law," and "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system[.]" *United States v. 14.38 Acres of Lan Situated in Leflore County, Miss.*, 80 F.3d 1074, 1078 (5th Cir. 1996). Cross-examination is the appropriate means to test an expert's opinion and "a jury is free to reject [an expert's] testimony." *United States v. Finley*, 301 F.3d 1000, 1014-16 (9th Cir. 2002).

Finally, in the Ninth Circuit, arguments as to credentials and faults in the use of

a particular methodology—like the arguments expressed by Defendants here—go to weight, not admissibility:

> Judges in jury trials should not exclude expert testimony simply because they disagree with the conclusions of the expert. The *Daubert* duty is to judge the reasoning used in forming an expert conclusion. The test is whether or not the reasoning is scientific and will assist the jury. If it satisfies these two requirements, then it is a matter for the finder of fact to decide what weight to accord the expert's testimony… **Disputes as to the strength of [an expert's] credentials, faults in his use of a [a particular] methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility, of his testimony.**

*Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1231 (9th Cir. 1998) (emphasis added) [citing *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995)]; *see also Morrill v. Stefani*, 338 F.Supp.3d 1051, 1056 n.2 (C.D. Cal. 2018) [citing *Kennedy* and overruling defendants' objection to expert evidence on substantial similarity—"[i]n this case, methodology goes to the weight of the expert's testimony, not whether the evidence is admissible."]

 As demonstrated more fully below, Sedlik's expert opinions and testimony satisfies each requirement of Rule 702, and Defendants' Motion to exclude the same should be denied in its entirety.

 A. **Sedlik's Opinions Regarding Similarities Between The Selection And Arrangement Of Elements In *Totem* And *Stranger Things* Are Based On A Valid And Reliable Methodology That Will Assist The Jury.**

 Sedlik's opinions regarding the parties' respective works are straightforward. In reaching his conclusions, Sedlik's report makes clear he relied primarily on the following material (1) "the **concept art** for *Totem,* as well as visual reference material provided by Kennedy to Sims; (2) "**image comparisons** produced by Plaintiff, including screen captures created by Plaintiff, depicting **still frames made by Plaintiff from scenes in various episodes of *Stranger Things***"; (3) "the *Stranger Things* series on Netflix"; and (4) other documents and materials listed in his report, which includes

various versions of the *Totem* screenplay. Sedlik Report, p.18 (emphasis added).

Based on his review, and on his knowledge, training, and expertise, Sedlik concluded that: (1) "Plaintiff's selection, arrangement and combination of numerous elements in *Totem*, such as characters, plot, sequence, themes, settings, mood, and tone—**as reflected in the *Totem* concept art**—are also reflected, included, or referenced in **scenes from *Stranger Things***"; and (2) "the quantity and combination of similarities between elements depicted or referenced in Plaintiff's Totem concept art and elements embodied in various scenes and episodes of *Stranger Things* is uncanny, and is indicative of Defendants' appropriation of Plaintiff's selection and arrangement of elements from *Totem*." *Id.*, p. 20. In rendering these opinions Sedlik relied in part on certain assumptions provided by counsel (as discussed below) as well as his education and academic background and decades of professional experience as a photographer, filmmaker, forensic image analyst, and copyright expert in the visual arts.

Despite Defendants' efforts to convolute the issues, the Ninth Circuit has repeatedly recognized the relevance and validity of Sedlik's "selection and arrangement" analysis. In *Metcalf v. Bocho*, 294 F.3d 1069, 1074 (9th Cir. 2002), the Ninth Circuit held that while "the similarities proffered by [plaintiffs] are not protectable when considered individually [because] they are either too generic or constitute 'scenes a faire' … the presence of **so many generic similarities and the common patterns in which they arise** do help [plaintiffs] satisfy the extrinsic test. The particular sequence in which an author strings a significant number of unprotectable elements can itself be a protectable element. Each note in a scale, for example, is not protectable, but a pattern of notes in a tune may earn copyright protection." Thus, the fact that Sedlik does not express opinions about "any **particular image's similarity**" to *Stranger Things* is of no moment. Osher Decl., Ex. "A" ["Sedlik Transcript"], 172:20-22. As Sedlik confirmed in deposition—"It's quantity and combination of similarities, when you look at the various aspects of '*Totem*' that appear in '*Stranger Things*' from plot and themes and settings and mood and everything mentioned in my

1    report. Not any one photograph." *Id.*, 173:9-14.

2          Similarly, Defendants' suggestion that Sedlik's report only contains one (1) side-

3    by-side comparison (Illustration C-01) of visual elements related to the two works, and

4    that he based his similarity opinions entirely on an action figure considered in isolation,

5    is false, misleading, and inaccurate. Nothing in his report states that this illustration is

6    a "comparison" or that he compared the two illustrations in Illustration C-01.

7          Sedlik did compare relevant expression in all the documents and materials listed

8    in his "materials considered" list. Indeed, Sedlik's report and deposition testimony

9    makes clear that he reviewed a significant quantity of information and documents,

10   including scripts, illustrations, the live-action *Totem* demo, pleadings by all parties,

11   depositions, documents, and videos produced by Plaintiff and Defendants, all four

12   seasons of *Stranger Things*, *etc. Id.*, 72:13-19, 103:19-104:25, 105:20-24; 142:19-24,

13   236:5-17; Sedlik Report, pp. 34-36. He also considered numerous additional visual

14   works in reaching his conclusions, including, but not limited to, juxtapositions of *Totem*

15   concept art and still frames depicting scenes from *Stranger Things*. Osher Decl., ¶ 6,

16   Ex. D [Art Comparison – Exhibit #1]; *see also* Sedlik Report Materials Considered

17   [*Totem* copyrighted Artwork & Videos; ASC Full Totem Archive].

18         Regardless, cross-examination at trial is the appropriate means for Defendants to

19   test Sedlik's testimony by raising their assertion that the comparison is "misleading, as

20   the action figure is not an accurate representation of the Demogorgon as designed and

21   as it appears in *Stranger Things*." Mtn. 5:26-27. In this regard, however, the licensing

22   agreement for the action figure presumably gives Netflix and the Duffer Brothers

23   review and approval rights over the action figure, and they or their representatives likely

24   received and inspected the action figure in advance of production and personally

25   approved the design and appearance of the action figure as an accurate representation

26   of the Demogorgon. Moreover, it is true that (1) no drawing or illustration of the

27   Demogorgon replicates the Demogorgon precisely, and (2) the appearance of the

28   Demogorgon character in season 1 is different than the appearance of the character in

other seasons, (3) there are multiple demogorgons within each season and across multiple seasons, each with differences in appearance.

Accordingly, Sedlik's testimony regarding similarities between the selection, arrangement, and combination of story elements in the *Totem* concept art and scenes from *Stranger Things* is relevant, admissible, and helpful to the trier of fact in this case.

## B. Sedlik is a Preeminent Expert Who is Fully Qualified to Offer His Opinions.

Sedlik's extensive experience and qualifications are set forth in his report and were the subject of his deposition in this case. Sedlik Report, pp. 1-5.

As an initial matter, there is simply no merit to Defendants' assertion that "Sedlik's only training, experience, or specialized knowledge are his experience as a professional photographer (and to a lesser extent, in advertising)." Mtn. 6:28-7:1. A cursory review of Sedlik's Curriculum Vitae demonstrates that he has extensive experience in film including forensic analysis of photographs, images, and videos. Sedlik Report p. 25; *see also* Sedlik Transcript, 13:4-14 [photographers "have to do a lot of different things to make a living. And one of those things is video and motion projects."]. Since 1986, he has served as the President of Sedlik Productions/Sedlik Design, a leading commercial photography, design, and film production company. He also serves as producer, director, and photographer in creating photography, film, and video productions for advertising agencies, graphic design studios, television, and clients in the entertainment industry. *Id.* Thus, contrary to Defendants' assertion, Sedlik has extensive experience in photography, film, and television.[2]

Sedlik has more than 25 years of experience in high-level positions in trade associations and standard-setting bodies in the photography, advertising, marketing, technology, and design industries. *Id.*, 1. As an example, Sedlik currently serves as the

---

[2] Despite Sedlik's training, experience and other qualifications on this topic, Plaintiff is <u>not</u> presenting Sedlik as a literary or screenplay expert.

President and CEO of the PLUS Coalition ("PLUS"), a non-profit international standards body and trade association representing industries involved in the creation, licensing, and use of visual art, including illustrators, graphic design studios, publishers, photographers, and all other image licensees and licensors. PLUS develops, propagates, and maintains universal standards for use by licensees and licensors in visual art transactions. As a founding member of the PLUS Board of Directors, Sedlik developed the core concept of the Coalition and its copyright licensing standards. *Id.*, 2. In December 2022, Sedlik was elected to the Board of Directors of the Copyright Alliance by vote of its members, which include Netflix, Paramount, Disney, Sony Pictures, Warner Brothers, Motion Picture Association, and NBC Universal among many others.[3]

Sedlik has been an internationally recognized advertising photographer and commercial director for more than 37 years, working with professional photographers, videographers, advertising agencies, design firms, among others in the United States and abroad, for clients such as 20th Century Fox, BBC, CBS, MGM, MTV Networks, Universal Studios, and Warner Brothers, among others. *Id.*, 5. He is the former President of the Advertising Photographers of America ("APA"), the leading trade association for commercial photographers and videographers, and served the APA as Chief National Advisor on Licensing and Copyright. He represented the APA in discussions with the United States Copyright Office and worked with organizations around the world to develop and maintain standards for licensing terms, licensing agreements, model releases, and other photography-related matters. *Id.*, 2.

Sedlik is regularly invited by the United States Copyright Office to speak to its employees and has been engaged by the Copyright Office to train new Registration Examiners on visual art copyright registration issues from 2010 to present. *Id.*, 3. He teaches seminars to the Visual Arts Examining Section of the Copyright Office on original expression and authorship in visual works as well as copyright licensing in the

---

[3] https://copyrightalliance.org/about/boards/

visual arts. He has testified repeatedly before Congress on copyright law issues and legislative reform and has assisted legislators and government agencies in drafting federal copyright legislation. *Id.*, 4. Most recently, Sedlik has been summoned by the United State House of Representatives and United States Senate to testify on copyright law, copyright licensing, copyright management information, and online infringement.

Sedlik's background includes a Bachelor of Fine Arts degree from the Art Center College of Design, where he gained knowledge in cinematography and film, including, but not limited to, how to structure and write screenplays, scripts, and storyboards. Sedlik Transcript, 228:15-21. He is long-time faculty member and Professor at the Art Center College of Design, where he sits on the Intellectual Property Committee and teaches advanced courses on the artistic, technical, production, legal, and business aspects of traditional and digital photography and videography. His curriculum has included instruction on narrative storytelling, story structuring, and directing, as well as legal topics including copyright law, registration, and licensing. Sedlik Report, 5.

Since 1979, Sedlik as reviewed and critiqued hundreds of thousands of visual works, and instructed thousands of photography, illustration, art direction and film students on visual storytelling, production, and licensing. Sedlik Transcript, 72:24-73:1. Sedlik has taught courses to law students and legal professionals on practical applications of copyright law in the visual arts, including courses on the creation, original expression, and copyright of still and moving images, and has been a frequent lecturer on copyright law at institutions such as Duke University and NYU Law School. Sedlik Report, p. 4 & Ex. 1.

Sedlik's education and extensive experience and knowledge in the film, photography, and visual arts industries qualify him to testify regarding the opinions in his report. *See Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022) ("An expert's specialized knowledge can serve as the requisite 'facts or data' on which they render an opinion"). Throughout his 35-year career, Sedlik has worked with the interplay between literary and visual works and translating written work into visual

work, which is directly at issue in this case. The fact that Sedlik has never been engaged as a concept artist in television production does not preclude him from offering expert opinions on the purpose and importance of visual concepts in the process of storytelling in film and television. *See Maldonado v. Apple, Inc.*, No. 3:16-cv-04067-WHO, 2021 WL 1947512, at *17 (N.D. Cal. May 14, 2021) ("Courts do not prevent experts from testifying merely because, though otherwise qualified, they do not have expertise in some hyperspecialized corner of their field that they are competent to testify in from their more general expertise.") Accordingly, Sedlik is fully qualified to render expert opinions on the subjects identified in his report, and the Court should allow the jury to weigh his testimony at trial.

## C. Sedlik Does Not Provide a Substantial Similarity Analysis And Defendants' Arguments In This Regard Are Irrelevant.

Defendants contend that "[i]n order to opine on purported substantial similarity in the objective elements of theme, plot, dialogue, characters, sequence of events, mood, pace, and setting between two works, Sedlik must be an expert in literary analysis." Mtn. 16:21-23. In this regard, Defendants devote many pages to their argument that Sedlik's opinions must be excluded because that are "not derived application of the Ninth Circuit's governing extrinsic test, but is impermissibly predicated on claimed similarities in random elements throughout the two works." Mtn. 11:9-14:9. Defendants' counsel also repeatedly demanded that Sedlik perform a substantial similarity analysis in real time during Sedlik's deposition, which was both inappropriate and irrelevant since that is not within the scope of Sedlik's designation, and since Sedlik's report makes no reference to substantial similarity. *See* Sedlik Transcript, 77:11-12, 77:16-22, 78:13-16, 78:25-79:7, 82:20-25, 84:5-12, 84:18-23, 85:12-17, 85:25-87:3, 86:14-16, 88:24-89:6.

These strawman arguments are entirely misplaced, as the scope of Sedlik's engagement in this matter does not include offering testimony on the issue of substantial similarity, nor will Sedlik conduct a comparative literary analysis of any *Totem* script

to any *Stranger Things* script. Moreover, as stated in his deposition. This argument is entirely misplaced as the scope of Sedlik's engagement does not include offering testimony on the issue of substantial similarity, nor will Sedlik conduct a comparative literary analysis *Totem* to *Stranger Things*. Moreover, as repeatedly stated in his deposition, although his opinions "may relate to substantial similarity", he "has not been retained to make an expert determination as to whether any two or more visuals are substantially similar" and has "not determined that any of these images are or are not substantially similar." Sedlik Transcript 55:25-56-11, 55:12-20, 60:7-15, 73:11-22; 83:22-23.

### D. Sedlik's Expert Opinions are Relevant, Admissible, and Premised on Reliable Methodology.

Defendants' repeated arguments regarding substantial similarity analysis and the related extrinsic test are inapposite given the scope of Sedlik's testimony, which is limited to the "selection and arrangement" test recognized by the Ninth Circuit. Sedlik's report makes no reference to substantial similarity and he confirms in his deposition that he was not retained to opine on substantial similarity. Sedlik Transcript 77:19-22. With regards to the objective "selection and arrangement" analysis that he did perform, Sedlik observed Plaintiff's selection and arrangement of combinations of expressive elements in *Totem*, and then reviewed screen captures from scenes in *Stranger Things*, and further reviewed the streamed version of all episodes of *Stranger Things*. In that review, Sedlik identified numerous similarities in the selection and arrangement of expressive elements previously observed in his review of the *Totem* works. Sedlik Declaration, ¶¶ 4-8.

In deposition, Sedlik also explained that he "reviewed the visual works, and to the extent that those visual works were representations of occurrences or characters or tone or plot or other aspects of the script, I then went back to the script and read the script so I could understand what those images were intended to represent and then opined on the similarities between the elements that are referenced in Plaintiff's '*Totem*'

13

concept and elements in the scenes of '*Stranger Things*.'"[4] Sedlik Transcript 104:1-10, 104:16-25. Notably, Sedlik's opinions in this case were based on the *Totem* script only "to the extent that visuals refer back to occurrences or themes or tone or other aspects of the '*Totem*' script that are then reflected in whole or in part in '*Stranger Things*'." *Id.,* 102:13-16, 105:20-24.

Although Sedlik reviewed the *Totem* scripts, he focused on the artwork as "a representation of the events—it's a visual representation of events and occurrences that are in the script or screenplay." *Id.*, 114:21-22. The following exchange from Sedlik's deposition provides an explanation:

> Q:    Again, you are not providing a literary expert opinion in this case, right?
>
> A:    There's a literary aspect to the opinions. I start from the visual art. To understand the visual art and what it represents, I go back to the story as it's represented in the visual art … the visual art is a snapshot of an occurrence or a character or a setting and to inform my understanding of that and how it fits into the overall picture, I have to go back to the script…
>
> Q:    Right. So when you were looking at the "*Totem*" concept art, you went back to the script to see the place in that script that related to the specific image that you were looking at, right?
>
> A:    More than the place in the script. That would suggest that there's a pinpoint location in the script. Whereas if it's a concept art for setting, I need to read around that setting. You know, where is this location, what is this house, what is this shed, what are the occurrences in the shed and so on. And that, as mentioned in my report … those opinions are on what aspects of '*Totem*,*' starting with visual, going back to the script and circling back to '*Stranger Things*,' then show up in '*Stranger Things.*'

Sedlik Transcript 144:25-146:8.

Based on his objective analysis, Sedlik provides twenty-four (24) examples of Plaintiff's selection, arrangement, and combination of numerous elements in *Totem*, that are also reflected, included, or referenced in scenes from *Stranger Things.* Sedlik

---

[4] With respect to this section, Sedlik made minor transcription corrections to his transcript that do not impact the substance of the quoted language. Osher Decl., Ex. "B" [Sedlik Errata Sheet].

Report, 18-19. Sedlik made clear during his deposition that these 24 examples were not a comprehensive accounting of similarities, but were expressly presented as "examples". Sedlik Transcript, 178:19-24; 196:25-197:10. Notably, Defendants' counsel refused to allow Sedlik to testify regarding additional examples not itemized in his report.[5] *Id.*, 197:7-198:12, 242:20-243:1. Put simply, there simply is no merit to Defendants' contention that Sedlik purportedly "admitted that he did not use any [expert methodology]" in reaching his conclusions in this case. Sedlik applied an independent, objective "selection and arrangement" analysis combined with his extensive knowledge, training and expertise in photography, film, and television.

That Defendants find Sedlik's opinions and conclusions premised on "cherry-picked elements," and "generalities, mischaracterizations of the work, and generic ideas and plot devices commonly found in story-telling that are scattered through the works" merely amounts to a disagreement with Sedlik's opinions and conclusions, which is not a proper basis for excluding his opinions. *See Daubert*, at 595 ("The focus [of the Court's inquiry], of course, must be solely on principles and methodology, **not on the conclusions that they generate**." [emphasis added]); *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1020 (9th Cir. 2022) ("Although a district court may screen an expert opinion for reliability, and may reject testimony that is wholly speculative, it may not weigh the expert's conclusions or assume a factfinding role"). Moreover, even if it is determined that the individual *Totem* elements identified in Sedlik's report are not protectable, it is indisputable that the selection and arrangement of those elements are factual issues that must be resolved by a jury. *See Metcalf*, at 1074 ("The particular sequence in which an author strings a significant number of unprotectable elements can itself be a protectable element."); *see also Shaw v. Lindheim*, 919 F.2d 1353, 1363 (9th Cir. 1990) ("Even if none of these plot elements is remarkably unusual in and of itself,

---

[5] Defendants' counsel also repeatedly cut Sedlik off while he was providing deposition testimony. Sedlik Transcript, 80:14, 82:9, 149:10, 150:21, 151:2, 163:20.

the fact that both scripts contain all of these similar events gives rise to a triable question of substantial similarity of protected expression" … and "'[w]here plot is … properly defined as 'the sequence of events' by which the author expresses his 'theme' or 'idea,' it constitutes a pattern which is sufficiently concrete so as to warrant a finding of substantial similarity if it is common to both plaintiff's and defendant's works") [citing *Nimmer on Copyright* § 1303[A], at 13-31].

Contrary to Defendants' assertion that Sedlik failed to include any of the *Totem* concept art he relied upon in reaching his conclusions, his report clearly states in the "Materials Considered" section that he reviewed an "Artwork Comparison – Exhibit #1" and exhibits demonstrating similarities in story dialogue and structuring, which contain side-by-side comparisons of *Totem* concept art and still frames from the *Stranger Things* show and which Defendants had the opportunity to review after Sedlik's report was submitted. Sedlik's report makes clear that he reviewed and analyzed the *Totem* concept art and that he watched all four seasons of *Stranger Things*, and throughout his report he cites to numerous documents in connection with his opinions, including scripts, deposition testimony, documents produced by the parties, *etc.* There is no requirement that Sedlik include a depiction of every visual that he reviewed and opined on in his report, particularly where he cites to the "materials considered" list in his report, which incorporates visuals by reference.

**E. Defendants Blatantly Distort Sedlik's Testimony Regarding The Scope Of His Opinions.**

Defendants disingenuously assert that "Sedlik admitted in his deposition that he is not offering any expert opinion regarding visual similarity of any *Totem* concept art and any particular scene from *Stranger Things*." Mtn. 15:22-24 [citing Sedlik Transcript 172:11-22 and quoting 172:20-22].) This a gross mischaracterization of Sedlik's statement that he has not "expressed any opinion about any particular image's similarity to anything in *Stranger Things*." Sedlik Transcript, 172:20-22.

When read in the context of which it was given, it is clear Sedlik intended

"anything in *Stranger Things*" to refer to **any single image** in the show; he was not referring more broadly to **anything at all** in *Stranger Things*. Indeed, Defendants' questions immediately preceding this statement inquired about a specific piece of concept art from *Totem* (i.e., the image of the Lynx Valley) and it is within that context that Sedlik provided his response.

To be clear, and as he repeatedly testified at his deposition, Sedlik's core opinion is that it is the quantity and combination of similarities between the various aspects and elements of *Totem* that appear in *Stranger Things* (*e.g.*, plot, themes, setting) that evidence copying, not any one visual image. Sedlik Transcript 171:6-25, 171:24-172:14, 173:22-174:3, 174:4-13, 190:13-17.

## F. <u>Sedlik's Testimony is Based On Sufficient Facts.</u>

Defendants contend that "[t]here is no evidence that any of the Defendants accessed the 2013 version of the *Totem* screenplay, and Sedlik's opinion is therefore subject to exclusion to the extent it relies on that work – which it does because it expressly relies on numerous elements of character, plot, and dialogue from that work." Mtn. 17:14-16. However, this argument ignores the legal standard as to the Court's gatekeeping function regarding the reliability of expert witness testimony. "In determining the reliability of expert testimony, the district court's task 'is to analyze not what the experts say, but what basis they have for saying it.'" *Turner v. ThyseenKrupp Materials, N.A.*, 492 F.Supp.3d 1045, 1049 (S.D. Cal. 2020) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995)).

Here, Sedlik based many of his opinions on the 2013 version of the *Totem* screenplay. Importantly, however, Sedlik also reviewed and based his opinions on other prior versions of the screenplays. Sedlik Transcript 55:4-8; 105:20-24. To be clear, Sedlik reviewed all the *Totem* screenplays provided to him by Plaintiff, not only the 2013 version. *Id.*, 99:6-10, 101:2-22, 131:1-7. Defendants' argument that Sedlik cannot rely upon the 2013 *Totem* screenplay as a basis for his opinions because there is purportedly "no evidence that any of the Defendants accessed the 2013 version of the

Screenplay" is a transparent attempt to bootstrap onto Defendants' identical argument in their MSJ—which is not accurate.  Of course, one of the key issues to be decided on Defendants' pending MSJ is whether a genuine dispute exists regarding Defendants' access to the *Totem* screenplays—which there is.

Prior to the Court's determination on the MSJ, Defendants cannot summarily conclude that there was no access to the 2013 *Totem* screenplay—which is a disputed fact—and then urge the Court to reject the reliability of Sedlik's opinions based on that assumption. That the Court must reject Defendants' argument in this regard is particularly so with respect to the erroneous assertion that "Plaintiff concedes that it has no evidence that it ever sent the 2013 *Totem* screenplay to Sims."  Mtn. 18:20-21. This argument—which is repeated verbatim in the MSJ—is an egregious misrepresentation of the testimony and constitutes an intentional misstatement of the law in that it erroneously asserts/assumes that one must present *direct* evidence of access.  However, the Ninth Circuit has noted that "direct evidence of copying", *i.e.*, access and substantial similarity, "is not available in most [copyright infringement cases]." *L.A. Printex Industries, Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 846 (9th Cir. 2012) [abrogated on other grounds as recognized in *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 959 F.3d 1194 (9th Cir. 2020)]. "In the absence of direct evidence of copying … the plaintiff 'can attempt to prove it circumstantially by showing that the defendant had access to the plaintiff's work and that the two works share similarities probative of copying.'" *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020).

At bottom, this issue, *i.e.*, whether and to what extent Defendants had access to the *Totem* works, is a factual question to be decided by the Court on summary judgment, and, eventually, by a jury. The Court should reject Defendants' roundabout effort to improperly dispose of this critical issue via the instant *Daubert* Motion.  *See* Mtn. 19:3-5. ("The evidentiary support for the majority of Sedlik's opinions – the 2013 version of the *Totem* screenplay for which there admittedly is no evidence of access – is therefore lacking, and his reports and testimony must be excluded.")

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION
TO MOTION TO EXCLUDE EXPERT TESTIMONY OF PROFESSOR JEFFREY SEDLIK

**G.** **Sedlik's Opinions And Methodologies Repeatedly Have Been Accepted By Numerous Courts And The Two Cases Cited By Defendants Do Not Diminish His Expertise Or Credibility.**

The cases cited by Defendants in which Sedlik's opinions were partially excluded are easily distinguished from the instant case. First, in *Navarro v. P&G*, No. 1:17-cv-406, 2021 WL 868586 (S.D. Ohio Mar. 8, 2021) ("*Navarro*"), Sedlik opined on the actual damages for the copyright infringement of photographs using three different models: the "Market Rates" model, the "Fee Analysis" model, and the "Model Fee Differential" model. *Navarro*, 2021 WL 868586 at *1-2. To determine actual damages, Sedlik obtained fee quotes from photographers and then averaged the quotes to produce the fair market value. *Id.*, *5. Although the Court excluded some of Sedlik's alternative methods as unreliable (the methods described by Defendants on page 22 of the Motion),[6] the Court specifically accepted Sedlik's method of determining fair market value. *Id.*, *7. The district court found that Sedlik's "Market Rates" model and "Fee Analysis" model **were sufficiently reliable** under Rule 702 and *Daubert* and thus denied defendants' motion to exclude those opinions. *Id.*, *7.

Second, in *Brittney Gobble Photography, LLC v. Sinclair Broad. Grp., Inc.*, No. SAG-18-03403, 2021 WL 5359671 (D. Md. Nov. 17, 2021) ("*Sinclair*"), the Court denied the defendant's motion to exclude Sedlik and further denied defendants' motion to exclude all Sedlik's opinions, only granting defendant's motion in part, by excluding certain selected opinions that the Court found were not reliably applied to the facts at

---

[6] Sedlik also was engaged to provide a secondary "alternative" calculation on actual damages based on a comparison of fees paid to models (i.e., the "Model Fee Differential" model), which was proffered only for consideration purposes. Although the court "had no doubt about Mr. Sedlik's qualifications," it ultimately found Sedlik's "Model Fee Differential" theory to be unreliable and speculative under *Daubert* given that it was based on his own assumptions. *Id.* at *5, *9. The district court also excluded Sedlik's opinion on fraud damages because it lacked "methodology demonstrating an expertised valuation of [plaintiff's] photographs." *Id.* at *9. However, the district court rejected defendants' request to exclude all of Sedlik's calculations because his damages estimates were purportedly "excessive," noting that "[t]he Court cannot exclude Sedlik's opinions solely because his damages estimates are too high in Defendants' eyes." *Id.* at *11.

issue. *Id.*, *7. However, the court permitted Sedlik to testify about "the methodology he used to arrive at the fair market value of a license to use one of the images at issue" as well as "his expertise in the photography industry, and the common norms and practices in that industry." *Id.*, *9. Importantly, the only issue with Sedlik's opinion in *Sinclair* was that he was directed to assume that more than 50 television stations were each separate legal entities, and to calculate damages for each entity, rather than for the parent company Sinclair. It was the corporate structure that was the issue, and Sedlik was directed to assume that each station was a separate entity. Sedlik disclosed this assumption in his report, and expressly stated that he would recalculate damages as if they were a single entity.

In the prior related matter of *Brittney Gobble Photography, LLC v. Wenn Limited*, No. 3:16-CV-306-HSM-DCP, 2019 WL 2446997 (E.D. Tenn. Feb. 19, 2019), involving claims of copyright infringement by a different defendant of the exact same photographs in the same transaction as was at issue in *Sinclair*, the district court validated all of Sedlik's opinions and his application of methodology to the facts, together with his calculations with respect to actual damages and awarded a judgment of almost $5.8 million to the plaintiff.

More specifically, after considering Sedlik's opinion, along with his professional experience, the district court found Sedlik's actual damages calculation, which included a multiplier of three (3), to be reasonable under the circumstances, reasoning that:

> Sedlik used generic cat photographs to estimate the fair market value; however, these cat photographs did not account for the scarcity of the Registered Images that are the subject of this lawsuit. Plaintiff's unrebutted evidence shows that the fair market value calculation was complete only after Sedlik accounted for the scarcity of the Registered Images. The Court recommends a multiplier of three (3), given the scarcity of the photographs and Sedlik's unrebutted opinion that a multiplier represents the fair market value of the photographs. Accordingly, the Court RECOMMENDS that Plaintiff be awarded a total award of $ 5,754,941.88 in actual damages for Defendants' direct and contributory copyright infringement.

Defendants' reliance on *Navarro* and *Sinclair* is misplaced. In both cases, Sedlik's expert testimony pertained to issues relating to actual copyright damages and in both cases, the court affirmed Sedlik's knowledge, training, and expertise, declined to exclude Sedlik, and allowed him to testify as to his core opinions. Moreover, the bases for the partial exclusions of Sedlik's testimony related to nuanced damages calculations and the underlying facts giving rise to the same. After more than 25 years of experience and hundreds of engagements as an expert in copyright matters, the 2021 order in *Sinclair* was only the **second** time that a court found Sedlik's application of methodology to be unreliable, only in part, and only to the extent applied to the unique facts of the matter.

More importantly, Sedlik's methodologies have been used and accepted by courts in numerous copyright infringement cases. *See Leonard v. Stemtech International, Inc.*, 834 F.3d 376 (3d Cir. 2016); *Under a Foot Plant, Co. v. Exterior Design, Inc.*, 2017 WL 3593014 (D. Md. 2017); *Brittney Gobble Photo., LLC v. WENN, Ltd.*, 2019 WL 2446997 (E.D. Tenn. Feb. 19, 2019); *D'Pergo Custom Guitars, Inc. v. Sweetwater Sound, Inc.*, 2020 WL 60351 (D.N.H. Jan. 6, 2020). He has been deemed a distinguished expert on visual works licensing, licensing transactions, and copyright damages by numerous courts. *See Navarro*, 2021 WL 868586 at *3-4; *Leonard*, 2013 WL 5311295, at *5; *Karol W. Corp. v. Smith News Co., Inc.*, 2013 WL 12084485, at *4 (C.D. Cal. Aug. 23, 2013).

In *Leonord*, the District Court specifically denied the Defendant's *Daubert* motion and held that Sedlik's method of using quotes received from stock photography agencies and averaging them to determine the fair market value was reliable. *Leonard v. Stemtech Health Scis., Inc.*, No. 08-067-LPS-CJB, 2013 WL 5311295, at *6 (D. Del. Sept. 23, 2013). The Third Circuit then affirmed the District Court's denial of Defendant's Daubert Motion, stating that Defendant's arguments go to the weight of Sedlik's opinion, rather than admissibility. Leonard, 834 F.3d at 391. Additionally, the Third Circuit substantively addressed Sedlik's use of a scarcity multiplier and accepted

21

such a method as a proper means to opine on the full fair market value, as the Court found it was not used for punitive measures. *Id.*, 393-94.

In *Under a Foot*, Sedlik was disclosed by the Plaintiff as its damages expert in a photography copyright infringement case. 2017 WL 3593014, at *1-2. Just as in *Navarro*, Sedlik obtained fee pricing from three reputable stock photography agencies to determine the fair market value. *Id.*, *5. In addition, Sedlik used a "competitive use multiplier" to determine the full fair market value of the photographs for a willing buyer's competitive use. *Id.* The District of Maryland Court held that Sedlik's methodology in determining actual damages was reliable and that Sedlik's use of a multiplier was acceptable due to Sedlik's reliance on his own professional and academic experience. *Id.*, *5-6.

Here, Sedlik offers expert testimony on two discreet issues relevant to this case: (1) practices, standards, procedures, workflows, and policies in the visual and performing arts; and (2) similarities between *Totem* and *Stranger Things* in the selection, arrangement, and combination of numerous elements, such as characters, plot, sequence, themes, settings, mood, and tone. As explained above, Sedlik's methodology is straightforward and reliable. *See* Sedlik Decl., ¶¶ 4-8. Defendants' efforts to mischaracterize Sedlik's testimony should be rejected.

## H. Sedlik's Opinions Are Based On His Own Independent Review and Analysis of Various Elements of *Totem* and *Stranger Things*.

Despite Defendants' accusation, Sedlik does not "merely regurgitate Plaintiff's self-serving allegations of scattered similarities from its pleading, without adding any expert evaluation." Mtn. 21:1-2. Sedlik made clear in his deposition that he confirmed everything in his report by careful review and consideration of all four Seasons of *Stranger Things*, all visual works produced in the matter, the scripts, all relevant documents and materials, and all related testimony. Sedlik Transcript, 243:15-18. Sedlik's report and testimony make clear that the facts underlying his opinions were obtained from (i) assumption provided by retaining counsel; (ii) filings made in this

action; (iii) materials produced by the parties during discovery, including deposition transcripts; (iv) multiple versions of the *Totem* script; (v) *Totem* concept art; and (vi) all four seasons of *Stranger Things*.

The cases relied on by Defendants are inapposite and readily distinguishable. In *Mata v. Or. Health Auth.*, 739 F.App'x 370 (9th Cir. 2018), the entirety of the Ninth Circuit's factual reasoning for excluding the expert's opinion is as follows: "Soeken's report did little more than vouch for Mata's version of events." *Id.*, 372.  In *Rhine v. Buttigieg*, No. 2:20-cv-01761-RAJ-BAT, 2022 WL 7729817 (W.D. Wash. Sept. 15, 2022), the district court in the Western District of Washington first noted that there was no opposition filed to the motion to exclude. *Id.*, at *1. Furthermore, the district court excluded the opinions of Plaintiff's expert, Sawyer, because "Sawyer admitted there is no standard to apply and that he simply relied upon his experience and read the materials and offered his opinions" and "Sawyer relied solely on his conversations with Plaintiff and 16 items given to him by Plaintiff to review in formulating his opinions." *Id.*, *3.

Here, Sedlik applied an independent, objective "selection and arrangement" analysis combined with his extensive knowledge, training and expertise in photography, film, and television. Indeed, Sedlik's report provides twenty-four (24) examples of Plaintiff's selection, arrangement, and combination of numerous elements in *Totem*, which are also reflected, included, or referenced in scenes from *Stranger Things.* Sedlik Report, 18-19. Defendants fail to acknowledge Sedlik's testimony that he performed his review of the images and then expressed his opinions in the report; he does not merely "adopt a client's assertions of similarity." Sedlik Transcript, 40:11-14.

The three (3) cherry-picked examples of Sedlik purportedly "regurgitating Plaintiff's self-serving allegations" are easily dismissed because—as noted above—Sedlik did not parrot Plaintiff's allegations as the basis for forming his opinion. First, Defendants claim that Autumn is not "abducted," but murdered. Although Nerowe believes Azrael is not real and Autumn is dead, Jackson certainly does not believe either of those things, as he had previously seen Autumn captured under Azrael's purple

feathers in the shed, had spoken with Lilly in the cemetery, and had viewed Autumn's drawings from her red box. Similar to Joyce following clues (*i.e.*, Christmas lights) to begin her search for Will, Jackson followed similar clues to begin his search for Autumn. Further, Autumn is not shown as having been murdered. Like Will Byers' abduction from the shed in *Stranger Things*, Autumn's abduction from the shed in Totem is purposely left open-ended. When coupled with the fact that Sedlik reviewed *all* drafts of the *Totem* script as part of his analysis—some of which include references to Autumn being "taken" (Osher Decl., ¶ 5, Ex. "C" [Kennedy Deposition Transcript] 72:23-24) and statements by Jackson that "we will find your grandfather and Autumn again"—his conclusion that Autumn is abducted makes sense.

## I.   Defendants' Argument Under Rule 403 Must Be Rejected.

The clear takeaway from Defendants' argument that Sedlik's report and testimony should be excluded under Federal Rule of Evidence 403 is that ***even if*** the Court rejects Defendants' other arguments, *i.e.,* that Sedlik is not qualified to provide expert testimony on the proffered subjects and that his testimony is purportedly not based on a reliable methodology or sufficient facts, the Court should nevertheless exclude his opinions under Rule 403. In fact, Defendants readily admit that their other arguments go to the weight of Sedlik's testimony rather than admissibility:

> **Even if the defects in Sedlik's analysis and opinions discussed above could be deemed as going to weight rather than admissibility**, any probative value is minimal and substantially outweighed by the risk of unfairly prejudicing Defendants and confusing and misleading the jury.

Mtn. 22:3-6 (emphasis added).

As discussed in detail hereinabove, there is no merit to Defendants' assertions that Sedlik's opinions must be excluded. There is equally no merit to Defendants' assertion that Sedlik's opinion must be excluded under Rule 403.

Moreover, "FRE 403 **favors admissibility**, while concomitantly providing the means of keeping distracting evidence out of trial." *U.S. v. Hankey*, 203 F.3d 1160,

1172 (9th Cir. 2000) [emphasis added]. As further noted by the Ninth Circuit in *Hankey*:

> Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403. Unless trials are to be conducted as scenarios, or unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing. Its major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.

*Id.* (quoting *United States v. Mills*, 704 F.2d 1553, 1559 (11th Cir. 1983); *Davis v. Davison Hotel Co., LLC*, No. CV 12-6327 CAS (AJWx), 2013 WL 3337669 at *3 (C.D. Cal. July 1, 2013) ("[T]he risk of unfair prejudice can often be minimized by delivering an instruction informing the jury of the proper limited purposes for which potentially unfair evidence may be used").

It cannot reasonably be said that Sedlik's opinions, particularly in a highly technical copyright infringement matter where expert opinion will assist trier of fact, come close to carrying such "scant or cumulative probative force." The Court should not overlook the true impetus for Defendants' instant Motion. It is not that Defendants actually are concerned about Sedlik's opinions misleading a jury. Rather, it is that Defendants need Sedlik's opinions to be summarily rejected so that this case does not boil down to a "battle of the experts." If Defendants truly are concerned about the potentially prejudicial effect of Sedlik's testimony on the jury, they should be required to make that argument at the appropriate time via motion *in limine*.

## IV.   <u>CONCLUSION</u>

Based on the foregoing argument and authority, Plaintiff respectfully requests that the Court deny Defendants' Motion in its entirety.

Dated: January 17, 2023

BOREN, OSHER & LUFTMAN, LLP

By: /s/ Jeremy J. Osher
Jeremy J. Osher
Attorneys for Plaintiff
IRISH ROVER ENTERTAINMENT, LLC