BOREN, OSHER & LUFTMAN, LLP
Jeremy J. Osher (SBN 192109)
josher@bollaw.com
Aaron M. Gladstein (SBN 266287)
agladstein@bollaw.com
Matthew K. Tom (SBN 324298)
mtom@bollaw.com
222 N. Pacific Coast Highway, Suite 2222
El Segundo, CA 90245
Telephone: (310) 322-2021
Facsimile: (310) 322-2228

Attorneys for Plaintiff
IRISH ROVER ENTERTAINMENT, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRISH ROVER ENTERTAINMENT, LLC, a California limited liability company, <br><br> Plaintiff, <br><br> vs. <br><br> AARON SIMS, an individual; MATT DUFFER, an individual; ROSS DUFFER, an individual; NETFLIX, INC., a Delaware corporation; NETFLIX STREAMING SERVICES, INC., a Delaware corporation; 21 LAPS INC., a California corporation; and DOES 1 through 50, inclusive, <br><br> Defendants. | Case No.: 2:20-CV-06293-CBM-PLA (Assigned to Hon. Consuelo B. Marshall) <br><br> **PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW** <br><br> [Local Rule 16-4] <br><br> **Final Pretrial Conference** <br> Date: August 15, 2023 <br> Time: 2:30 p.m. <br> Courtroom: 8D <br><br><br> Complaint Filed: July 15, 2020 <br> Trial Date: September 19, 2023 |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................ 1

II.   THE PARTIES' CLAIMS AND DEFENSES ..................................... 2

    A.    PLAINTIFF'S CLAIMS AND REQUIRED ELEMENTS ...................... 2

        1.    Summary of Plaintiff's Claims [L.R. 16-4(a), (b)] .......................... 2

        2.    Key Evidence in Support of Plaintiff's Claims [L.R. 16-4.1(c)] ................................................................................ 10

        3.    Summary of Defendants' Affirmative Defenses [L.R. 16-4.1(d), (e) ................................................................... 18

        4.    Key Evidence In Opposition to Defendants' Affirmative Defenses [L.R. 16-4.1(f)] ..................................... 24

        5.    Anticipated Evidentiary Issues [L.R. 16-4.1(h)] .......................... 25

        6.    Identification of Issues of Law [L.R. 16-4.1(i)] ........................... 26

III.  BIFURCATION OF ISSUES [L.R. 16-4.3] ....................................... 26

IV.  JURY TRIAL [L.R. 16-4.4] ............................................................. 26

    A.    ISSUES TRIABLE TO A JURY ....................................................... 26

    B.    ISSUES TRIABLE TO THE COURT ................................................ 27

V.    ATTORNEY'S FEES [L.R. 16-4.5] ................................................. 27

VI.  ABANDONMENT OF ISSUES [L.R. 16-4.6] ................................... 27

# TABLE OF AUTHORITIES

**Cases**

*Bernal v. Paradigm Talent and Literary Agency*

    788 F.Supp.2d 1043, 1056 (C.D. Cal. 2010)...............................................4, 6, 10

*Ellison v. Robertson*

    357 F.2d 1072, 1076 (9th Cir. 2004)........................................................................8

*Granite State Ins. Co. v. Smart Modular Technologies, Inc.*

    76 F.3d 1023, 1027 (9th Cir. 1996)........................................................................27

*Hampton v. Paramount Pictures Corp.*

    279 F.2d 100, 104 (9th Cir. 1960)..........................................................................23

*J&J Sports Productions, Inc. v. Montanez*

    2010 WL 5279907 (E.D. Cal. 2010) ......................................................................23

*L.A. News Serv. V. KCAL-TV Channel 9*

    108 F.3d 1119, 1122 (9th Cir. 1997).......................................................................24

*L.A. Printex Industries, Inc. v. Aeropostale, Inc.*

    676 F.3d 841, 852 (9th Cir. 2012).....................................................................3, 5, 9

*Mozaffarian v. Breitling U.S.A., Inc.*

    1998 WL 827596 (N.D. Cal. Nov. 19, 1998).........................................................25

*Olson v. National Broadcasting Co., Inc.*

    855 F.2d 1446, 1448-49 (9th Cir. 1988) ...........................................................4, 6, 10

*Payne v. Anvil Knitwear, Inc.*

    2007 WL 1953438 (C.D. Cal. June 27, 2007)........................................................20

///

*Perfect 10, Inc. v. Amazon.com, Inc.*

    508 F.3d 1146 (9th Cir. 2007) ....................................................................... 7

*Perfect 10, Inc. v. Visa Intern. Service Ass'n*

    494 F.3d 788, 794-795 (9th Cir. 2007) .................................................... 7, 8

*Petrella v. Metro-Goldwyn-Mayer, Inc.*

    572 U.S. 663, 665 (1994) ............................................................................. 19

*Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*

    562 F.2d 1157, 1165 (9th Cir. 1977) ................................................. 4, 6, 10

*Skidmore v. Led Zeppelin*

    952 F.3d 1051 (9th Cir. 2020) ........................................... 3, 5, 6, 9, 19

*Sony Computer Entertainment America, Inc. v. Bleem, LLC*

    214 F.3d 1022, 1028 (9th Cir. 2000) ........................................................ 25

*Three Boys Music Corp. v. Bolton*

    212 F.3d 477, 481 (9th Cir. 2000) ....................................... 3, 5, 9, 21

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*

    959 F.3d 11194, 1198 (9th Cir. 2020) ....................................... 3, 5, 9

*United States v. Perez*

    116 F.3d 840, 845 (9th Cir. 1997) ............................................................ 23

*VHT, Inc. v. Zillow Group, Inc.*

    918 F.3d 723, 732 (9th Cir. 2019) ............................................................ 22

*Vogel v. Huntington Oaks Del. Partners, LLC*

    291 F.R.D. 438, 442 (C.D. Cal. 2013) ..................................................... 19

*Zivkovic v. Southern California Edison Co.*

    302 F.3d 1080, 1088 (9th Cir. 2002) .............................. 18, 20, 21, 22, 23, 24

**Statutes**

17 U.S.C. § 106 ................................................................................ 2, 4, 7, 26

17 U.S.C. § 107 ........................................................................................ 21

17 U.S.C. § 501 .................................................................................... 2, 4, 7

17 U.S.C. § 505 ........................................................................................ 27

17 U.S.C. § 507(b) ............................................................................... 19, 24

**Rules**

Ninth Circuit Manual of Model Civil Jury Instructions § 17.5 (2020) .............. 2, 5, 7, 8

Ninth Circuit Manual of Model Civil Jury Instructions § 17.22 (2021) ..................... 21

Pursuant to Local Rule 16-4, Plaintiff Irish Rover Entertainment, LLC respectfully submits the following Memorandum of Contentions of Fact and Law addressing the contentions of the parties in anticipation of the trial scheduled to commence on September 19, 2023.

## I.    <u>INTRODUCTION</u>

This is an action for direct, contributory, and vicarious copyright infringement brought by Plaintiff Irish Rover Entertainment, LLC ("Plaintiff" or "Irish Rover"), a California limited liability company with its principal place of business in this District, against Defendants Aaron Sims, Ross Duffer, Matt Duffer, Netflix, Inc., Netflix Streaming Services, Inc., and 21 Laps, Inc. (collectively "Defendants").

Plaintiff, which was founded by award-winning screenplay writer, Jeffrey Kennedy ("Kennedy"), is the registered owner of the copyrighted feature film screenplay entitled *Totem*, which was influenced by Kennedy's childhood. Plaintiff also is the registered owner of the copyrighted *Totem* concept art.

Defendants have infringed upon and incorporated numerous protectible elements from *Totem* into the hit television series *Stranger Things*, which is the most successful streaming title to date for defendants Netflix, Inc. and Netflix Streaming Services, Inc. (collectively, "Netflix") and its executive producer Shawn Levy, the sole proprietor of 21 Laps, Inc. ("21 Laps"). From 2009 to 2015, defendant Aaron Sims ("Sims") repeatedly was given direct access to various versions of the *Totem* screenplay in connection with the concept art for which he was hired by Plaintiff to create. Subsequently, in February 2013, Sims was hired by defendants Ross Duffer and Matt Duffer (collectively, the "Duffers") to work on an unrelated film entitled *Hidden*. In October 2013, within months of beginning work with Sims, the Duffers created a skeleton outline for a television series entitled *Montauk*, which would later become *Stranger Things*.

As is described below and will be proven at trial, the many shared elements between *Totem* and *Stranger Things* go well beyond mere coincidence. Rather, they

portend intentional copying on the part of the Duffers given their access to *Totem* through their intermediary, Sims, and the resulting substantial similarities between the two works in the areas like characters, plot, sequence of events, theme, setting, mood, tone, pace, and dialogue. As for Netflix, 21 Laps, and Simms, they are contributorily and/or vicariously liable for the Duffers' direct infringement given the combination of their knowledge, contribution and/or inducement of the same, in addition to their ability (and failure) to supervise and/or control the Duffers' infringing activity—particularly with respect to Netflix and 21 Laps.

## II.    THE PARTIES' CLAIMS AND DEFENSES

### A. PLAINTIFF'S CLAIMS AND REQUIRED ELEMENTS

#### 1.    Summary of Plaintiff's Claims [L.R. 16-4(a), (b)].

Plaintiff's operative First Amended Complaint ("FAC") alleges seven counts for relief.

**Claim 1: Direct Copyright Infringement (*Totem* Screenplay).**

Summary: Plaintiff alleges violations of 17 U.S.C. §§ 106 and 501 due to the Duffers' unauthorized copying of Plaintiff's copyrighted work, *Totem*. Specifically, there exist substantial similarities between original/protectible elements (including the selection and arrangement of elements) in *Totem* and similar elements (including the selection and arrangement of elements) in *Stranger Things*, including in the areas of characters, plot, sequence of events, theme, setting, mood, tone, pace, and dialogue. The Duffers have infringed upon Plaintiff's exclusive rights by preparing unauthorized derivative works of *Totem* in the form of *Stranger Things*, reproducing copyrighted elements of *Totem* in *Stranger Things*, and publicly performing *Stranger Things*, which contains copyrighted elements of *Totem*.

Elements and Supporting Case Law: Plaintiff has the burden of proving by a preponderance of the evidence that (1) Plaintiff is the owner of a valid copyright in the *Totem* screenplay; and (2) the Duffers copied original expression from the copyrighted work. *See* Ninth Circuit Manual of Model Civil Jury Instructions § 17.5 (2020).

"A copyright plaintiff must prove (1) ownership of the copyright; and (2) infringement—that the defendant copied protected elements of plaintiff's work." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000) (overruled on unrelated grounds in *Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020). "[A] copyright defendant need not copy a plaintiff's work in its entirety to infringe the work. It is enough that the defendant appropriated a substantial portion of the plaintiff's work." *L.A. Printex Industries, Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 852 (9th Cir. 2012) (abrogated on other grounds as recognized by *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 959 F.3d 11194, 1198 (9th Cir. 2020)).

"'Because direct evidence of copying is not available in most cases,' a plaintiff can establish copying by showing (1) that the defendant had access to the plaintiff's work and (2) that the two works are substantially similar." *Id*. at 846. As noted in *Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020):

> The Ninth Circuit employs a "two-part test to determine whether the defendant's work is substantially similar to the plaintiff's copyrighted work. The first part, the extrinsic test, compares the objective similarities of specific expressive elements in the two works. Crucially, because only substantial similarity in protectable expression may constitute actionable copying that results in infringement liability, 'it is essential to distinguish between the protected and unprotected material in a plaintiff's work.' The second part, the intrinsic test, 'test[s] for similarity of expression from the standpoint of the ordinary reasonable observer, with no expert assistance.' Both tests must be satisfied for the works to be deemed substantially similar."

*Id*. at 1064.

"The 'extrinsic' test, which is used to determine whether there is a substantial similarity in ideas, 'depends not on the responses of the trier of fact, but on specific criteria which can be listed and analyzed.' The 'intrinsic' test, which is used to compare forms of expression, 'depend[s] on the response of the ordinary reasonable person.' Although analytic dissection and expert testimony are appropriate under the extrinsic test, they are not appropriate under the intrinsic test." *Olson v. National Broadcasting*

*Co., Inc.*, 855 F.2d 1446, 1448-49 (9th Cir. 1988); *see also Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1165 (9th Cir. 1977)[1] ["The question [on the intrinsic test] is whether defendant took from plaintiff's work so much of what is pleasing to the (eyes and) ears of lay (persons), who comprise the audience for whom such popular (works are) composed, that defendant wrongfully appropriated something which belongs to plaintiff"].

"Absent direct evidence of access, a plaintiff can prove access using circumstantial evidence of either (1) a 'chain of events' linking the plaintiff's work and the defendant's access, or (2) 'widespread dissemination' of the plaintiff's work." *Ibid*. In a copyright infringement action, when plaintiff shows "that he submitted his work to an intermediary *who is in a position to transmit the plaintiff's work to the creators of the infringing work* … [t]he intermediary can be a person who (1) has supervisory responsibility for the allegedly infringing project, (2) contributed ideas and materials to it, or (3) worked in the same unit as the creators." *Bernal v. Paradigm Talent and Literary Agency*, 788 F.Supp.2d 1043, 1056 (C.D. Cal. 2010). "At a minimum, however, 'the dealings between the plaintiff and the intermediary and between the intermediary and the alleged copier must involve some overlap in subject matter to permit an inference of access.'" *Ibid*.

**Claim 2: Direct Copyright Infringement (*Totem* Concept Art)**.

<u>Summary</u>: Plaintiff alleges violations of 17 U.S.C. §§ 106 and 501 due to the Duffers and Sims' unauthorized copying of Plaintiff's copyrighted concept art for *Totem*. Specifically, there exist substantial similarities between original/protectible elements (including the selection and arrangement of elements) in the *Totem* concept art and visual elements/components of *Stranger Things*. The Duffers and Sims have infringed upon Plaintiff's exclusive rights in the concept art by preparing unauthorized derivative works of *Totem* in the form of *Stranger Things*, reproducing copyrighted

---

[1] Overruled on other grounds in *Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020).

elements of the *Totem* concept art in *Stranger Things*, and publicly performing and displaying *Stranger Things*, which contains copyrighted elements of the *Totem* concept art.

Elements and Supporting Case Law: Plaintiff has the burden of proving by a preponderance of the evidence that (1) Plaintiff is the owner of a valid copyright in the *Totem* concept art; and (2) the Duffers and Sims copied original expression from the copyrighted work. *See* Ninth Circuit Manual of Model Civil Jury Instructions § 17.5 (2020).

"A copyright plaintiff must prove (1) ownership of the copyright; and (2) infringement—that the defendant copied protected elements of plaintiff's work." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000) (overruled on unrelated grounds in *Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020). "[A] copyright defendant need not copy a plaintiff's work in its entirety to infringe the work. It is enough that the defendant appropriated a substantial portion of the plaintiff's work." *L.A. Printex Industries, Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 852 (9th Cir. 2012) (abrogated on other grounds as recognized by *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 959 F.3d 11194, 1198 (9th Cir. 2020)).

"'Because direct evidence of copying is not available in most cases,' a plaintiff can establish copying by showing (1) that the defendant had access to the plaintiff's work and (2) that the two works are substantially similar." *Id*. at 846. As noted in *Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020):

> The Ninth Circuit employs a "two-part test to determine whether the defendant's work is substantially similar to the plaintiff's copyrighted work. The first part, the extrinsic test, compares the objective similarities of specific expressive elements in the two works. Crucially, because only substantial similarity in protectable expression may constitute actionable copying that results in infringement liability, 'it is essential to distinguish between the protected and unprotected material in a plaintiff's work.' The second part, the intrinsic test, 'test[s] for similarity of expression from the standpoint of the ordinary reasonable

observer, with no expert assistance.' Both tests must be satisfied for the works to be deemed substantially similar."

*Id*. at 1064.

"The 'extrinsic' test, which is used to determine whether there is a substantial similarity in ideas, 'depends not on the responses of the trier of fact, but on specific criteria which can be listed and analyzed.' The 'intrinsic' test, which is used to compare forms of expression, 'depend[s] on the response of the ordinary reasonable person.' Although analytic dissection and expert testimony are appropriate under the extrinsic test, they are not appropriate under the intrinsic test." *Olson v. National Broadcasting Co., Inc.*, 855 F.2d 1446, 1448-49 (9th Cir. 1988); *see also Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1165 (9th Cir. 1977) ["The question [on the intrinsic test] is whether defendant took from plaintiff's work so much of what is pleasing to the (eyes and) ears of lay (persons), who comprise the audience for whom such popular (works are) composed, that defendant wrongfully appropriated something which belongs to plaintiff"].

"Absent direct evidence of access, a plaintiff can prove access using circumstantial evidence of either (1) a 'chain of events' linking the plaintiff's work and the defendant's access, or (2) 'widespread dissemination' of the plaintiff's work." *Ibid*. In a copyright infringement action, when plaintiff shows "that he submitted his work to an intermediary *who is in a position to transmit the plaintiff's work to the creators of the infringing work* … [t]he intermediary can be a person who (1) has supervisory responsibility for the allegedly infringing project, (2) contributed ideas and materials to it, or (3) worked in the same unit as the creators." *Bernal v. Paradigm Talent and Literary Agency*, 788 F.Supp.2d 1043, 1056 (C.D. Cal. 2010). "At a minimum, however, 'the dealings between the plaintiff and the intermediary and between the intermediary and the alleged copier must involve some overlap in subject matter to permit an inference of access.'" *Ibid*.

**Claim 3: Contributory Copyright Infringement**.

<u>Summary</u>: Plaintiff alleges violations of 17 U.S.C. §§ 106 and 501 due to Sims

and Netflix knowingly having induced, caused, or materially contributed to the unauthorized copying of Plaintiff's copyrighted works *Totem* and the *Totem* concept art.

Elements and Supporting Case Law: Plaintiff has the burden of proving by a preponderance of the evidence that (1) Sims and Netflix knew or had reason to know of the infringing activity; and (2) Sims and Netflix intentionally induced and/or materially contributed to the Duffers' infringing activity *See* Ninth Circuit Manual of Model Civil Jury Instructions § 17.21 (2019).

"Contributory copyright infringement is a form of secondary liability with roots in the tort-law concepts of enterprise liability and imputed intent." *Perfect 10, Inc. v. Visa Intern. Service Ass'n*, 494 F.3d 788, 794-795 (9th Cir. 2007). The Ninth Circuit has "found that a defendant is a contributory infringer if [he] (1) has knowledge of a third party's infringing activity, and (2) 'induces, causes, or materially contributes to the infringing conduct.'" *Perfect 10, supra*, at 795. "We understand these several criteria to be non-contradictory variations of the same basic test, i.e., that one contributorily infringes when he (1) has knowledge of another's infringement and (2) either (a) materially contributes to or (b) induces that infringement." *Ibid*. In *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007), the Ninth Circuit held that "Google could be held contributorily liable if it had knowledge that infringing Perfect 10 images were available using its search engine, could take simple measures to prevent further damage to Perfect 10's copyrighted works, and failed to take such steps." *Id*., at 1172.

**Claim 4: Vicarious Copyright Infringement**.

Summary: Plaintiff alleges violations of 17 U.S.C. §§ 106 and 501 due to Netflix and 21 Laps having directly benefitted from the unauthorized copying of Plaintiff's copyrighted works *Totem* and the *Totem* concept after having failed to exercise their supervision and/or control over the same.

Elements and Supporting Case Law: Plaintiff has the burden of proving by a

preponderance of the evidence that (1) Netflix and 21 Laps directly benefitted from the infringing activity of the Duffers and Sims (2) Netflix and 21 Laps had the right and ability to supervise and/or control the infringing activity of the Duffers and Sims, and (3) Netflix and 21 Laps failed to exercise that right and ability. *See* Ninth Circuit Manual of Model Civil Jury Instructions § 17.20 (2019).

"A defendant is vicariously liable for copyright infringement if he enjoys a direct financial benefit from *another's* infringing activity and 'has the right and ability to supervise' the infringing activity." *Ellison v. Robertson*, 357 F.2d 1072, 1076 (9th Cir. 2004) [italics in original]. "For vicarious liability to attach … the defendant must have the right and ability to *supervise* and *control*, the infringement, not just affect it." *Perfect 10, supra*, at 805 (italics in original).

**Claim 5: Declaratory Relief.**

Summary: Plaintiff alleges an actual controversy has arisen and now exists relating to the rights and duties of Plaintiff and Defendants under the United States copyright laws. Specifically, Plaintiff contends that it is the sole owner of the copyrighted works *Totem* and the *Totem* concept art, and that *Stranger Things* infringes on Plaintiff's rights in and to these copyrighted works. Plaintiff further contends that it is entitled to compensation based on Defendants' infringement, whereas Defendants dispute these contentions.

Elements: To prove direct copyright infringement of Plaintiff's copyrighted works, the *Totem* screenplay and concept art, by the Duffers and Sims, Plaintiff has the burden of proving by a preponderance of the evidence that (1) Plaintiff is the owner of a valid copyright in both the *Totem* screenplay and *Totem*; and (2) the Duffers and Sims copied original expression from the copyrighted works. *See* Ninth Circuit Manual of Model Civil Jury Instructions § 17.5 (2020).

"A copyright plaintiff must prove (1) ownership of the copyright; and (2) infringement—that the defendant copied protected elements of plaintiff's work." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000) (overruled on unrelated

grounds in *Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020). "[A] copyright defendant need not copy a plaintiff's work in its entirety to infringe the work. It is enough that the defendant appropriated a substantial portion of the plaintiff's work." *L.A. Printex Industries, Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 852 (9th Cir. 2012) (abrogated on other grounds as recognized by *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 959 F.3d 11194, 1198 (9th Cir. 2020)).

"'Because direct evidence of copying is not available in most cases,' a plaintiff can establish copying by showing (1) that the defendant had access to the plaintiff's work and (2) that the two works are substantially similar." *Id*. at 846. As noted in *Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020):

> The Ninth Circuit employs a "two-part test to determine whether the defendant's work is substantially similar to the plaintiff's copyrighted work. The first part, the extrinsic test, compares the objective similarities of specific expressive elements in the two works. Crucially, because only substantial similarity in protectable expression may constitute actionable copying that results in infringement liability, 'it is essential to distinguish between the protected and unprotected material in a plaintiff's work.' The second part, the intrinsic test, 'test[s] for similarity of expression from the standpoint of the ordinary reasonable observer, with no expert assistance.' Both tests must be satisfied for the works to be deemed substantially similar."

*Id*. at 1064.

"The 'extrinsic' test, which is used to determine whether there is a substantial similarity in ideas, 'depends not on the responses of the trier of fact, but on specific criteria which can be listed and analyzed.' The 'intrinsic' test, which is used to compare forms of expression, 'depend[s] on the response of the ordinary reasonable person.' Although analytic dissection and expert testimony are appropriate under the extrinsic test, they are not appropriate under the intrinsic test." *Olson v. National Broadcasting Co., Inc.*, 855 F.2d 1446, 1448-49 (9th Cir. 1988); *see also Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1165 (9th Cir. 1977) ["The question [on the intrinsic test] is whether defendant took from plaintiff's work so

9

much of what is pleasing to the (eyes and) ears of lay (persons), who comprise the audience for whom such popular (works are) composed, that defendant wrongfully appropriated something which belongs to plaintiff"].

"Absent direct evidence of access, a plaintiff can prove access using circumstantial evidence of either (1) a 'chain of events' linking the plaintiff's work and the defendant's access, or (2) 'widespread dissemination' of the plaintiff's work." *Ibid*. In a copyright infringement action, when plaintiff shows "that he submitted his work to an intermediary *who is in a position to transmit the plaintiff's work to the creators of the infringing work* … [t]he intermediary can be a person who (1) has supervisory responsibility for the allegedly infringing project, (2) contributed ideas and materials to it, or (3) worked in the same unit as the creators." *Bernal v. Paradigm Talent and Literary Agency*, 788 F.Supp.2d 1043, 1056 (C.D. Cal. 2010). "At a minimum, however, 'the dealings between the plaintiff and the intermediary and between the intermediary and the alleged copier must involve some overlap in subject matter to permit an inference of access.'" *Ibid*.

## 2. <u>Key Evidence in Support of Plaintiff's Claims [L.R. 16-4.1(c)].</u>

**Claim 1: Direct Copyright Infringement (*Totem* Screenplay)**. Plaintiff will introduce the following categories of evidence establishing that the Duffers directly infringed upon Plaintiff's exclusive rights in its copyrighted work, the *Totem* screenplay, by preparing unauthorized derivative works of *Totem* in the form of *Stranger Things*, reproducing copyrighted elements of *Totem* in *Stranger Things*, and publicly performing *Stranger Things*:

**a.      Ownership:** Evidence showing Plaintiff's ownership of the copyrighted *Totem* screenplay will include testimony from Plaintiff's Managing Member, Kennedy and Certificates of Registration issued by the United States Copyright Office.

**b.      Access:** Evidence showing the Duffers' access to Plaintiff's copyrighted *Totem* screenplay will include testimony from Kennedy, the Duffers, and Sims and related documents, showing Plaintiff's numerous submissions of different versions of

the *Totem* screenplay to Sims while Sims was providing concept art for *Totem*, and Sims' subsequent work with the Duffers beginning in 2013 just prior to their creation of *Stranger Things*.

**c.    Substantial Similarity**: Evidence showing the substantial similarity between the *Totem* screenplay and *Stranger Things* under the "extrinsic test" will include testimony from Plaintiff's designated expert, John Rainey. Mr. Rainey will opine on story-telling components that are common to both *Totem* and *Stranger Things*, including the areas of character, plot, sequence of events, theme, setting, mood, tone, pace, and dialogue, and the qualitative importance of these similar elements. With regard to the "intrinsic test", evidence submitted to the jury for purposes of its objective assessment will include, but is not limited to, copies of all *Totem* scripts, all *Totem* concept art, and Seasons 1 through 4 of *Stranger Thing*.

**Claim 2: Direct Copyright Infringement (*Totem* Concept Art)**. Plaintiff will introduce the following categories of evidence establishing that the Duffers and Sims directly infringed upon Plaintiff's exclusive rights in its copyrighted work, the *Totem* concept art by preparing unauthorized derivative works of *Totem* in the form of *Stranger Things*, reproducing copyrighted elements of the *Totem* concept art in *Stranger Things*, and publicly performing and displaying *Stranger Things*, which contains copyrighted elements of the *Totem* concept art:

**a.    Ownership:** Evidence showing Plaintiff's ownership of the copyrighted *Totem* concept art will include testimony from Plaintiff's Managing Member, Kennedy, Plaintiff's work-for-hire agreement with Evergreen Films, and Certificates of Registration issued by the United States Copyright Office.

**b.    Access:** Evidence showing the Duffers and Sims' access to Plaintiff's copyrighted *Totem* concept art will include testimony from Kennedy, the Duffers, and Sims and related documents, showing Sims' obvious access to the *Totem* concept art—which he created for Plaintiff—and Sims' subsequent work with the Duffers beginning in 2013 just prior to their creation of *Stranger Things*.

**c.**     **Substantial Similarity**: Evidence showing the substantial similarity between the *Totem* concept art and *Stranger Things* under the "extrinsic test" will include testimony from Plaintiff's designated expert, Jeffrey Sedlik. Mr. Sedlik will opine on the similarities in the selection and arrangement of combinations of expressive elements he observed in reviewing the *Totem* concept art, and screen captures from and streamed episodes of *Stranger Things*, including the qualitative importance of those elements. With regard to the "intrinsic test", evidence submitted to the jury for purposes of its objective assessment will consist of testimony from Kennedy, visual display of stills depicting the *Totem* concept art, and visual display of video clips from episodes of *Stranger Things* and/or stills depicting the same.

**Claim 3: Contributory Copyright Infringement**. Plaintiff will introduce the following categories of evidence establishing that Sims and Netflix contributorily infringed upon Plaintiff's exclusive rights in its copyrighted works, the *Totem* screenplay and concept art, in that they knew or had reason to know that the Duffers were preparing unauthorized derivative works of *Totem* in the form of *Stranger Things*, reproducing copyrighted elements of *Totem* in *Stranger Things*, and publicly performing *Stranger Things*, and Sims and Netflix intentionally induced and/or materially contributed to this infringing activity:

**a.**     **Ownership:** Evidence showing Plaintiff's ownership of the copyrighted *Totem* screenplay and concept art will include testimony from Plaintiff's Managing Member, Kennedy and Certificates of Registration issued by the United States Copyright Office.

**b.**     **Access:** Evidence showing the Duffers' access to Plaintiff's copyrighted *Totem* screenplay will include testimony from Kennedy, the Duffers, and Sims and related documents, showing Plaintiff's numerous submissions of different versions of the *Totem* screenplay to Sims while Sims was providing concept art for *Totem*, and Sims' subsequent work with the Duffers beginning in 2013 just prior to their creation of *Stranger Things*. As for the *Totem* screenplay, the evidence will include testimony

from Kennedy, the Duffers, and Sims and related documents, showing Sims' obvious access to the *Totem* concept art—which he created for Plaintiff—and Sims' subsequent work with the Duffers beginning in 2013 just prior to their original creation of *Stranger Things*.

**c.    Substantial Similarity**: Evidence showing the substantial similarity between the *Totem* screenplay and *Stranger Things* under the "extrinsic test" will include testimony from Plaintiff's designated experts, John Rainey and Jeffrey Sedlik. Mr. Rainey will opine on story-telling components that are common to both *Totem* and *Stranger Things*, including the areas of character, plot, sequence of events, theme, setting, mood, tone, pace, and dialogue, and the qualitative importance of those elements. Mr. Sedlik will opine on the similarities in the selection and arrangement of combinations of expressive elements he observed in reviewing the *Totem* concept art, and screen captures from and streamed episodes of *Stranger Things*. With regard to the "intrinsic test" for the *Totem* screenplay, evidence submitted to the jury for purposes of its objective assessment will consist of testimony from Kennedy, shooting scripts for episodes of *Stranger Things* (particularly from Season 1), the *Totem* screenplay, and visual display of video clips from episodes of *Stranger Things* and/or stills depicting the same. As for the *Totem* concept art, evidence submitted to the jury will consist of testimony from Kennedy, visual display of still depicting the *Totem* concept art, and visual display of video clips from episodes of *Stranger Things* and/or stills depicting the same.

**d.    Knowledge of Infringing Activity**. Evidence showing Sims' knowledge of the Duffers' infringing activity will consist of testimony from Kennedy, Sims, and the Duffers, and related documents, showing Sims having provided the Duffers access to the copyrighted *Totem* screenplay and *Totem* concept art. In addition, the testimony and related documents will show Sims' awareness of the fact that the Duffers then incorporated protected elements from both the *Totem* screenplay and concept art into *Stranger Things* as Sims worked on the first season of *Stranger Things*. As for Netflix,

evidence of its knowledge of the Duffers' infringing activity will consist of testimony from Kennedy, and related documentary evidence, showing that Kennedy engaged in numerous written exchanges with Netflix in which Kennedy provided detailed accounts of the substantial similarities between *Totem* and *Stranger Things* and demanded that Netflix take action to halt the unauthorized display and public performance of *Stranger Things*. The evidence will also show that, despite being on notice of the same—through Kennedy's communications—Netflix chose to ignore Kennedy's demands and warnings, rather than confronting the Duffers and halting their own displaying/public performance of *Stranger Things*.

     **e.**    **Material Contribution/Inducement**.

Evidence showing that Sims materially contributed to and/or induced the Duffers' infringing activity will consist of similar testimony and documentary evidence described above showing Sims' indisputable access to *Totem*, and his provision of the same to the Duffers knowing that they intended to unlawfully copy protected elements into *Stranger Things*. Evidence showing that Netflix materially contributed to and/or induced the Duffers' infringing activity will consist of testimony from Netflix's person(s) most qualified, and related documentation, showing that *Stranger Things*—of which Netflix had knowledge regarding its infringement of *Totem*—was available to Netflix's millions of subscribers, that Netflix could have taken simple measures to prevent further damage to Plaintiff's copyrighted works by halting any further display and/or reproduction of *Stranger Things*, and that Netflix failed to employ any such measures.

**Claim 4: Vicarious Copyright Infringement**. Plaintiff will introduce the following categories of evidence establishing that 21 Laps and Netflix vicariously infringed upon Plaintiff's exclusive rights in its copyrighted works, the *Totem* screenplay and concept art, in that they directly benefitted from the infringing activity, had the right and ability to supervise and/or control the same, and failed to exercise that right and ability.

**a.    Ownership:** Evidence showing Plaintiff's ownership of the copyrighted *Totem* screenplay and concept art will include testimony from Plaintiff's Managing Member, Kennedy and Certificate(s) of Registration issued by the United States Copyright Office.

**b.    Access:** Evidence showing the Duffers' access to Plaintiff's copyrighted *Totem* screenplay will include testimony from Kennedy, the Duffers, and Sims and related documents, showing Plaintiff's numerous submissions of different versions of the *Totem* screenplay to Sims while Sims was providing concept art for *Totem*, and Sims' subsequent work with the Duffers beginning in 2013 just prior to their creation of *Stranger Things*. As for the *Totem* screenplay, the evidence will include testimony from Kennedy, the Duffers, and Sims and related documents, showing Sims' obvious access to the *Totem* concept art—which he created for Plaintiff—and Sims' subsequent work with the Duffers beginning in 2013 just prior to their original creation of *Stranger Things*.

**c.    Substantial Similarity**: Evidence showing the substantial similarity between the *Totem* screenplay and *Stranger Things* under the "extrinsic test" will include testimony from Plaintiff's designated experts, John Rainey and Jeffrey Sedlik. Mr. Rainey will opine on story-telling components that are common to both *Totem* and *Stranger Things*, including the areas of character, plot, sequence of events, theme, setting, mood, tone, pace, and dialogue, and the qualitative importance of those elements. Mr. Sedlik will opine on the similarities in the selection and arrangement of combinations of expressive elements he observed in reviewing the *Totem* concept art, and screen captures from and streamed episodes of *Stranger Things*. With regard to the "intrinsic test" for the *Totem* screenplay, evidence submitted to the jury for purposes of its objective assessment will consist of testimony from Kennedy, shooting scripts for episodes of *Stranger Things* (particularly from Season 1), the *Totem* screenplay, and visual display of video clips from episodes of *Stranger Things* and/or stills depicting the same. As for the *Totem* concept art, evidence submitted to the jury will consist of

testimony from Kennedy, visual display of still depicting the *Totem* concept art, and visual display of video clips from episodes of *Stranger Things* and/or stills depicting the same.

**d.     Direct Financial Benefit**. Evidence showing that Netflix has enjoyed, and continues to enjoy, a direct financial benefit from Sims' and the Duffers' infringement of the *Totem* screenplay and concept art will consist of testimony from Plaintiff's retained business economics expert, Mickey A. Ferri, Ph.D., regarding Netflix's profits from *Stranger Things* that are directly attributable to the infringing conduct, as well as documentary evidence, including that produced by Netflix in this matter, showing the same. Evidence showing that 21 Laps has enjoyed a direct financial benefit from Sims' and the Duffers' infringement of the *Totem* screenplay and concept art will likewise consist of testimony from Dr. Ferri, as well as documentary evidence pertaining to the same, showing 21 Laps' compensation from Netflix for executive producing and directing services provided on *Stranger Things*.

**e.     Right and Ability to Supervise/Control**.

Evidence showing that Netflix had, and continues to have, the right and ability to supervise and/or control the infringing activity, will consist of testimony from Netflix's person(s) most qualified, and related documentation, showing that Netflix, as the streaming service that purchased the rights to air episodes of *Stranger Things*, and paid significant sums of monies to the Duffers (and, vis-à-vis the Duffers, Sims) for doing so, had limitless control over the content in *Stranger Things* that ultimately reached its viewers. And, because Netflix did air episodes of *Stranger Things* that improperly contain protected elements of *Totem*, and continues to do so, the same evidence will show—albeit axiomatically—that Netflix failed to properly exercise its right and ability to supervise and control the infringing activity, despite having been on notice of the same. As for 21 Laps, the evidence showing its ability and right to supervise and control the infringing activity—vis-à-vis its principal, Shawn Levy—will consist of testimony from Mr. Levy and Netflix's person(s) most qualified, and related documentation,

showing that 21 Laps had significant input on scripts for most, if not all, episodes of *Stranger Things* before the same were finalized for shooting. Similar to Netflix, this evidence with respect to 21 Laps will also show that 21 Laps failed to properly exercise its right and ability to control and/or supervise the infringing activity insomuch as the episodes of *Stranger Things* ultimately aired containing protected elements of *Totem*, despite 21 Laps and Mr. Levy being on notice of the same.

**Claim 5: Declaratory Relief.**

In line with Plaintiff's direct infringement claims pertaining to the *Totem* screenplay and *Totem* concept art, Plaintiffs will introduce the following categories of evidence establishing that *Stranger Things* infringes upon Plaintiff's rights in and to those copyrighted works for purposes of its Declaratory Relief claim.

**a.**     **Ownership:** Evidence showing Plaintiff's ownership of the copyrighted *Totem* screenplay will include testimony from Plaintiff's Managing Member, Kennedy and Certificates of Registration issued by the United States Copyright Office. Evidence showing Plaintiff's ownership of the copyrighted *Totem* concept art will include testimony from Plaintiff's Managing Member, Kennedy, Plaintiff's work-for-hire agreement with Evergreen Films, and Certificates of Registration issued by the United States Copyright Office.

**b.**     **Access:** Evidence showing the Duffers' access to Plaintiff's copyrighted *Totem* screenplay will include testimony from Kennedy, the Duffers, and Sims and related documents, showing Plaintiff's numerous submissions of different versions of the *Totem* screenplay to Sims while Sims was providing concept art for *Totem*, and Sims' subsequent work with the Duffers beginning in 2013 just prior to their creation of *Stranger Things*. Evidence showing the Duffers and Sims' access to Plaintiff's copyrighted *Totem* concept art will include testimony from Kennedy, the Duffers, and Sims and related documents, showing Sims' obvious access to the *Totem* concept art— which he created for Plaintiff—and Sims' subsequent work with the Duffers beginning in 2013 just prior to their creation of *Stranger Things*.

c.      **Substantial Similarity**: Evidence showing the substantial similarity between the *Totem* screenplay and *Stranger Things* under the "extrinsic test" will include testimony from Plaintiff's designated expert, John Rainey. Mr. Rainey will opine on story-telling components that are common to both *Totem* and *Stranger Things*, including the areas of character, plot, sequence of events, theme, setting, mood, tone, pace, and dialogue. With regard to the "intrinsic test", evidence submitted to the jury for purposes of its objective assessment will consist of testimony from Kennedy, shooting scripts for episodes of *Stranger Things* (particularly from Season 1), the *Totem* screenplay, and visual display of video clips from episodes of *Stranger Things* and/or stills depicting the same. Evidence showing the substantial similarity between the *Totem* concept art and *Stranger Things* under the "extrinsic test" will include testimony from Plaintiff's designated expert, Jeffrey Sedlik. Mr. Sedlik will opine on the similarities in the selection and arrangement of combinations of expressive elements he observed in reviewing the *Totem* concept art, and screen captures from and streamed episodes of *Stranger Things*. With regard to the "intrinsic test", evidence submitted to the jury for purposes of its objective assessment will consist of testimony from Kennedy, visual display of stills depicting the *Totem* concept art, and visual display of video clips from episodes of *Stranger Things* and/or stills depicting the same.

### 3.   Summary of Defendants' Affirmative Defenses [L.R. 16-4.1(d), (e).

As an initial matter, many of the so-called affirmative defenses pled in Defendants' Answer to Plaintiff's First Amended Complaint are not, in actuality, affirmative defenses. Rather, they are Defendants' attempts to argue that Plaintiff has not met his burden of proof, i.e., "negative defenses". These are not the proper bases for affirmative defenses. See, e.g., *Zivkovic v. Southern California Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002) ("A defense which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense").

**First Affirmative Defense ("Failure to State a Claim"):**

Summary: Defendants contend that Plaintiff's First Amended Complaint fails to

state a claim upon which relief may be granted.

"[F]ailure to state a claim is not an affirmative defense; it is a defect in plaintiff's claim and not an additional set of facts that would bar recovery notwithstanding the plaintiff's valid prima facie case." *Vogel v. Huntington Oaks Del. Partners, LLC*, 291 F.R.D. 438, 442 (C.D. Cal. 2013). Moreover, the Court already rejected Defendants' argument that Plaintiff's First Amended Complaint fails to state a claim upon which relief may be granted when the Court denied Defendants' Motion to Dismiss under FRCP 12(b)(6). Dkt. 40.

**Second Affirmative Defense ("Statute of Limitations"):**

Summary: Defendants contend that Plaintiff's claims are barred by the applicable statute of limitations.

Elements: Defendant has the burden of showing, by a preponderance of the evidence, that Plaintiff learned, or should have learned, of Defendants' alleged infringement more than three years before Plaintiff filed suit.

Source: 17 U.S.C. § 507(b) provides that "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued."

**Third Affirmative Defense ("Laches"):**

Summary: Defendants contend that Plaintiff's claims are barred, in whole or in part, by the equitable doctrine of laches.

An affirmative defense of laches is disallowed in copyright infringement cases where the claims are brought within the three-year statute of limitations and the infringement is ongoing. See *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 665 (1994); see also *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1057 (9th Cir. 2020) ("[L]aches is not a defense where copyright infringement is ongoing").

**Fourth Affirmative Defense ("Unprotectable Elements"):**

Summary: Defendants contend that Plaintiff's claims are barred, in whole or in part, because allegedly infringed elements are not original to Plaintiff and/or do not

constitute protectable copyrightable expression.

A purported defense based on the argument that the allegedly infringed elements of the works do not constitute protectable copyrightable expression is an attack on Plaintiff's case-in-chief, rather than an affirmative defense. See *Zivkovic v. Southern California Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002) ("A defense which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense").

**Fifth Affirmative Defense ("Access"):**

Summary: Defendants contend that Plaintiff's claims are barred because Matt and Ross Duffer did not have access to the allegedly infringed works.

A purported defense based on the argument that the Duffers did not have access to the allegedly infringed works is an attack on Plaintiff's case-in-chief, rather than an affirmative defense. See *Zivkovic v. Southern California Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002) ("A defense which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense").

**Sixth Affirmative Defense ("Independent Creation"):**

Summary: Defendants contend that Plaintiff's claims are barred because *Stranger Things* was created independently of the allegedly infringed works.

A purported defense based on the argument that *Stranger Things* was created independently of *Totem* is an attack on and denial of Plaintiff's case-in-chief, rather than an affirmative defense. See, e.g., *Payne v. Anvil Knitwear, Inc.* No. CV 06-8100 SVW, 2007 WL 1953438, at *3 (C.D. Cal. June 27, 2007) (holding that an argument pertaining to "an affirmative defense of 'prior independent creation' [i]n reality … centers on … [defendant's] access to Plaintiffs' registered copyrights" since designs were created "years before Plaintiffs' copyrights were fixed"); see also *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 486 (9th Cir. 2000)[2] ("By establishing reasonable

---

[2] Overruled on unrelated grounds by *Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020).

access and substantial similarity, a copyright plaintiff creates a presumption of copying. The burden shifts to the defendant to rebut that presumption through proof of independent creation").

**Seventh Affirmative Defense ("Fair Use"):**

Summary: Defendants contend that Plaintiff's claims are barred, in whole or in part, by the doctrine of fair use.

Elements: Defendants have the burden of establishing fair use, by a preponderance of the evidence, based on the following factors: (1) the purpose and character of the use, including whether the use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work.

Source: 17 U.S.C. § 107; Ninth Circuit Manual of Model Jury Instructions: Civil § 17.22 (2021).

**Eighth Affirmative Defense ("No Volitional Conduct"):**

Summary: Defendants contend that Plaintiff's claim for direct infringement against Netflix and 21 Laps is barred, in whole or in part, because the allegedly primary infringements were not caused by any volitional conduct by Netflix or 21 Laps, and are not otherwise attributable to Netflix or 21 Laps.

A purported defense based on the argument that there was no volitional conduct on the part of Netflix or 21 Laps is an attack on Plaintiff's case-in-chief, rather than an affirmative defense. See *Zivkovic v. Southern California Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002) ("A defense which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense"). Notably, even if Netflix and/or 21 Laps' volitional conduct was at issue in this case—which Plaintiff disputes—proving the same would be part of Plaintiff's burden of proof. See *VHT, Inc. v. Zillow Group, Inc.* 918 F.3d 723, 732 (9th Cir. 2019) (finding that the volitional conduct requirement is applied

1   when the "direct infringement claim is lodged against a defendant who does nothing

2   more than operate an automated, user-controlled system"). This notion does not apply

3   to Netflix or 21 Laps, both of whom had direct input and/or control over the content in

4   *Stranger Things*.

5        **Ninth Affirmative Defense ("Vicarious Infringement"):**

6        <u>Summary</u>: Defendants contend that Plaintiff's claim for vicarious infringement

7   against Netflix and 21 Laps is barred, in whole or in part, because Netflix and 21 Laps

8   did not and do not have the right or ability to control the alleged primary infringement

9   and/or did not obtain a financial benefit directly attributable to the alleged primary

10  infringement.

11       Defendants' assertion that Plaintiff purportedly cannot prove two of the essential

12  factual elements of its Vicarious Infringement claim, *i.e.*, that Netflix and 21 Laps did

13  not have the right/ability to control the infringement and/or did not obtain a direct

14  financial benefit, amounts to yet another attack on Plaintiff's ability to prove its case-

15  in-chief, rather than an actual affirmative defense. See *Zivkovic v. Southern California*

16  *Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002) ("A defense which demonstrates that

17  plaintiff has not met its burden of proof is not an affirmative defense").

18       **Tenth Affirmative Defense ("Contributory Infringement"):**

19       <u>Summary</u>: Defendants contend that Plaintiff's claim for contributory

20  infringement against Netflix and 21 Laps is barred, in whole or in part, because Netflix

21  and 21 Laps did not have knowledge of the alleged primary infringement and/or did not

22  induce, cause or materially contribute to the alleged primary infringement.

23       Defendants' assertion that Plaintiff purportedly cannot prove two of the essential

24  factual elements of its Contributory Infringement claim, *i.e.*, that Netflix and 21 Laps

25  did not have knowledge of the direct infringement and/or did not induce, cause, or

26  materially contribute to the same, amounts to yet another attack on Plaintiff's ability to

27  prove its case-in-chief, rather than an actual affirmative defense. See *Zivkovic v.*

28  *Southern California Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002) ("A defense which

demonstrates that plaintiff has not met its burden of proof is not an affirmative defense").

**Eleventh Affirmative Defense ("Waiver, Estoppel, and/or Ratification"):**

Summary: Defendants contend that Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver, estoppel and/or ratification.

Elements and Sources:

To prove **waiver**, Defendants must show that Plaintiff's conduct resulted in an "intentional relinquishment or abandonment of a known right." *United States v. Perez*, 116 F.3d 840, 845 (9th Cir. 1997).

To prove **estoppel**, Defendants have the burden of proving each of the following four elements: "(1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury." *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104 (9th Cir. 1960).

Defendants' **ratification** affirmative defense is entirely misplaced in this lawsuit. "The doctrine of ratification is a contract principle." *J&J Sports Productions, Inc. v. Montanez*, 2010 WL 5279907 at *4 (E.D. Cal. 2010) (striking the ratification affirmative defense as "wholly irrelevant and immaterial" because "there is no indication in the pleadings that there was a contractual relationship between Plaintiff and Defendants").

**Twelfth Affirmative Defense ("Monetary Damages"):**

Summary: Defendants contend that Plaintiff's claim for injunctive relief is barred because monetary damages would provide an adequate remedy for Plaintiff's alleged injury.

Defendants' contention that Plaintiff's Declaratory Relief claim is "barred" because Plaintiff's will be afforded an adequate remedy at law vis-à-vis monetary damages is, in essence, a colloquy about Plaintiff's ability to be made whole through an

award of monetary damages *after* a finding of liability by the jury. In other words, Defendants are opining on Plaintiff's ability to prove its declaratory relief cause of action. This is not the proper basis of an affirmative defense. See *Zivkovic v. Southern California Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002) ("A defense which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense").

### 4. <u>Key Evidence In Opposition to Defendants' Affirmative Defenses [L.R. 16-4.1(f)].[3]</u>

<u>Second Affirmative Defense ("Statute of Limitations"):</u>

Plaintiff incorporates by reference the evidence described in Section II.A.2 hereinabove, which shows that Defendants directly, contributorily, and vicariously infringed upon Plaintiff's copyrighted works and that Plaintiff, upon discovering the infringement, brought its claims within the statutory timeframe set forth in 17 U.S.C. § 507(b).

<u>Seventh Affirmative Defense ("Fair Use"):</u>

Plaintiff incorporates by reference the evidence described in Section II.A.2 hereinabove, which shows that Plaintiff's copyrighted works, though inspired—in a general sense—by certain events from Kennedy's childhood, is fictional and fantastical in nature, as opposed to informational and/or factual. See *L.A. News Serv. V. KCAL-TV Channel 9*, 108 F.3d 1119, 1122 (9th Cir. 1997) (fair use finding is strongly favored when infringed work is information, factual and news). Moreover, the evidence described in Section II.A.2, namely the expert opinions of John Rainey and Jeffrey Sedlik regarding substantial similarity, will show a high degree of copying by Defendants. See *Sony Computer Entertainment America, Inc. v. Bleem, LLC*, 214 F.3d 1022, 1028 (9th Cir. 2000) (noting that fair use finding is not likely when there is a high degree of copying and "essence" of copyrighted work and copy are similar).

---

[3] In this Section, Plaintiff only addresses those defenses raised by Defendants that actually constitute affirmative defenses. See Section II.A.3 above.

Eleventh Affirmative Defense ("Waiver, Estoppel, and/or Ratification"):

Plaintiff incorporates by reference the evidence described in Section II.A.2 hereinabove, which shows that Defendants directly, contributorily, and vicariously infringed upon Plaintiff's copyrighted works and that Plaintiff, neither intentionally relinquished or abandoned its right to assert claims and/or recover against Defendants, nor engaged in any conduct from which it could reasonably be deduced that Plaintiff is estopped from doing so.

## 5. Anticipated Evidentiary Issues [L.R. 16-4.1(h)].

Plaintiff anticipates the following evidentiary issues, which are the subject of Plaintiff's pending motions *in limine*:

1.  Whether Defendants may introduce and/or reference at trial settlement communications transmitted to Defendants prior to the filing of this lawsuit. Plaintiff maintains that Defendants are expressly barred from the same under FRE 408. See also *Mozaffarian v. Breitling U.S.A., Inc.*, No. C 94–1133 SI, 1998 WL 827596 at *6 (N.D. Cal. Nov. 19, 1998) (finding that compromise negotiations are excluded under FRE 408 "when they related to a claim that was disputed as to either validity or amount at the time the negotiations were undertaken. It is not necessary that the negotiations occur after a formal complaint is filed"). *See* Dkt. 166.

2.  Whether Lester A. Standiford, Defendants' designated expert on the issue of substantial similarity, may offer any opinions relating to substantial similarity beyond Season 1 of *Stranger Things*. Plaintiff maintains that Mr. Standiford's testimony must be limited to Season 1 as his Rule 26 Report and deposition testimony were so limited, notwithstanding the fact that Plaintiff's First Amended Complaint contains express allegations of substantial similarities between the works that extend *beyond* Season 1 of *Stranger Things*. *See* Dkt. 167.

3.  Whether Defendants may introduce email communications between Jeffrey

Kennedy and representatives of Evergreen Films pertaining to a prelitigation dispute wholly unrelated to the facts at issue in this litigation. Plaintiff maintains that such evidence would be presented by Defendants solely to suggest that Jeffrey Kennedy has a "litigious" character and, as such, Defendants should be precluded from admitting the same under Federal Rule of Evidence 404. *See* Dkt. 168.

### 6.  Identification of Issues of Law [L.R. 16-4.1(i)].

Plaintiff identifies the following issue of law germane to this case: whether the work-for-hire agreement entered into between Plaintiff and Evergreen supports a finding that the concept art created by Sims for Plaintiff is owned by Plaintiff. See, e.g., *Matter of Beverly Hills Bancorp*, 649 F.2d 1329, 1334 ("The interpretation of a contract presents a question of law"). Plaintiff's position is that it is the outright and sole owner of the copyrighted *Totem* concept art.

### III.  BIFURCATION OF ISSUES [L.R. 16-4.3]

Plaintiff does not have any bifurcation requests.

### IV.  JURY TRIAL [L.R. 16-4.4]

#### A. ISSUES TRIABLE TO A JURY

A timely demand for jury trial has been made. The following issues are triable to the jury:

1.  Copyright infringement under the three theories asserted by Plaintiff: (1) direct copyright infringement under 17 U.S.C. § 106; (2) contributory copyright infringement; and (3) vicarious copyright infringement.

2.  The following affirmative defenses asserted by Defendants: Second Affirmative Defense ("Statute of Limitations"); and Seventh Affirmative Defense ("Fair Use").

3.  Statutory damages per work.

4.  Plaintiff's actual damages for the infringement and Defendants' profits

attributable to the infringement.[4]

### B. ISSUES TRIABLE TO THE COURT

The following issues are triable to the Court:

1.      Defendants' equitable affirmative defenses: Eleventh Affirmative Defense ("Waiver, Estoppel, and/or Ratification"). See *Granite State Ins. Co. v. Smart Modular Technologies, Inc.*, 76 F.3d 1023, 1027 (9th Cir. 1996) ("A litigant is not entitled to have a jury resolve a disputed affirmative defense if the defense is equitable in nature").

## V.      ATTORNEY'S FEES [L.R. 16-4.5]

Should Plaintiff establish that Defendants infringed upon Plaintiff's copyrighted works, Plaintiff may be entitled to its attorney's fees under the Copyright Act. See 17 U.S.C. § 505.

## VI.      ABANDONMENT OF ISSUES [L.R. 16-4.6]

Plaintiff has not abandoned any of its claims in its First Amended Complaint.

Plaintiff is not presently aware if Defendants have elected to abandon any of their twelve (12) affirmative defenses.

Dated: July 25, 2023                    BOREN, OSHER & LUFTMAN, LLP


                                        By: */s/ Jeremy J. Osher*
                                        Jeremy J. Osher
                                        Aaron M. Gladstein
                                        Matthew K. Tom
                                        Attorneys for Plaintiff
                                        IRISH ROVER ENTERTAINMENT, LLC

---

[4] Actual and statutory damages are currently sought in the alternative. Plaintiff reserves its right to elect statutory damages before final judgment is rendered. 17 U.S.C. § 504(c)(1).