BOREN, OSHER & LUFTMAN, LLP
Jeremy J. Osher (SBN 192109)
josher@bollaw.com
Aaron M. Gladstein (SBN 266287)
agladstein@bollaw.com
Matthew K. Tom (SBN 324298)
mtom@bollaw.com
222 N. Pacific Coast Highway, Suite 2222
El Segundo, CA 90245
Telephone: (310) 322-2021
Facsimile: (310) 322-2228

Attorneys for Plaintiff
IRISH ROVER ENTERTAINMENT, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRISH ROVER ENTERTAINMENT, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>AARON SIMS, an individual; MATT DUFFER, an individual; ROSS DUFFER, an individual; NETFLIX, INC., a Delaware corporation; NETFLIX STREAMING SERVICES, INC., a Delaware corporation; 21 LAPS, INC., a California corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: 2:20-CV-06293-CBM-PLA<br>(Assigned to Hon. Consuelo B. Marshall)<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO SET ASIDE TIME FOR PUBLICATION OF WORKS**<br><br>**Hearing**<br>Date: August 15, 2023<br>Time: 2:30 p.m.<br>Courtroom: 8D<br><br>Trial: September 19, 2023 |

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Defendants'[1] proposal for a 38 hour "neutral presentation" of evidence before Plaintiff Irish Rover Entertainment, LLC ("Plaintiff" or "Irish Rover") starts its case-in-chief is as unprecedented as it is impractical. The proposal is unprecedented because Defendants have failed to identify a single case across any subject matter where any court has deviated so fundamentally from basic trial practice that allows the plaintiff to present its case first. Indeed, the adversarial system remains the hallmark of our system of justice. That system depends on vigorous competing presentations and cross-examination by represented parties. Nothing about this copyright case warrants such an extraordinary deviation from these established principles for trial.

Defendants' proposal is also impractical. The parties have stipulated for years now that trial will take 5-7 trial days. Defendants' various proposals would consume at least two trial days and as many as all of those trial days. It also risks jury disengagement before trial even starts if the jury screens a television show for over a week before it hears from the first witness.

Plaintiff submits that the ordinary trial practice remains appropriate here. To be sure, Plaintiff agrees that the jury will receive both the copyrighted and infringing works in evidence, and so the jury will have the entirety of those works available to it throughout deliberations to weigh as appropriate—as every jury does in every case. The parties should otherwise present their cases in the most compelling and persuasive manner that each sees fit—as happens in every trial. Plaintiff submits that the Court should deny the Defendants' motion in its entirety.

/ / /

/ / /

---

[1] "Defendants" refers, collectively, to Aaron Sims ("Sims"), Matt Duffer, Ross Duffer (collectively, the "Duffers" or "Duffer Brothers"), Netflix, Inc., Netflix Streaming Services, Inc., and 21 Laps, Inc.

## II. BACKGROUND

Jeffrey Kennedy created an original screenplay that he later titled *Totem*. The screenplay is a supernatural suspense story that pits a core set of characters against an evil figure and his minions in an alternate dimension. The evil figure (Azrael) accesses the human world through a gateway that a 10-year-old girl (Kimi) with supernatural powers had created. The screenplay follows the protagonist's pursuit to save his wife in the alternate plane (which is a carbon-copy of the human world setting), along with the evil figure's efforts to kill Kimi.

Mr. Kennedy formed Irish Rover to commercialize this screenplay. Irish Rover contracted with Sims for the purpose of preparing artwork and otherwise playing a key role in development. They worked closely on this project for years. But after they concluded their work, the Duffer Brothers hired Sims for a key role in the development of what would become *Stranger Things* on Netflix. *Stranger Things* is a supernatural television show that features an evil monster with a team of Demogorgons that access the human world through a gateway that a 12-year-old girl (Eleven) with supernatural powers had opened. The show is driven by the suspense of a mother's effort to find her son in the alternate dimension (a carbon-copy of the human world setting), along with the evil monster's efforts to kill Eleven.

The parties vigorously dispute this case. The Defendants have filed motions to dismiss and summary judgment based on its steadfast view that the two works are not substantially similar. Irish Rover has detailed the many similarities across known subcomponents that make up a television program. Irish Rover has likewise substantiated these similarities through qualified expert testimony. The Court has denied the Defendants' dispositive motions and concluded that a jury must resolve this dispute. The Court has set trial for September 19, 2023, which the parties have stipulated will take 5-7 trial days.

/ / /

/ / /

/ / /

## III. ARGUMENT

### A. Defendants Offer No Authority That Any Court (Anywhere) Has Ever Preempted The Plaintiff's Case-In-Chief For A Neutral Presentation Of Evidence Before Trial Starts.

Defendants' proposal is an unprecedented effort to interfere with Irish Rover's case-in-chief. "Without question, the adversarial process is the hallmark of our system of justice. . . . The very premise of this process [is] that the issues and the evidence will be clarified and sharpened by vigorous presentations from both sides." *Gerlaugh v. Stewart*, 129 F.3d 1027, 1051 (9th Cir. 1997). "[O]ur system 'is designed around the premise that [parties represented by competent counsel] know what is best for them, and are responsible for advancing the facts and argument entitling them to relief.'" *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (quoting *Greenlaw v. United States*, 554 U.S. 237, 386 (Scalia, J., concurring in part and concurring in judgment)). A fundamental principle in this adversarial system is that the plaintiff, the party that bears the burden of proof, enjoys the privilege to put its case on first. *See, e.g.*, *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 57 (2005); *see also Herring v. New York*, 422 U.S. 853, 862 (1975) ("no aspect of such [partisan] advocacy could be more important than the opportunity finally to marshal the evidence for each side before submission of the case to judgment"). These principles are so engrained in centuries of trial practice that Netflix failed to identify a single example in any criminal or civil case that usurped the plaintiff's privilege to present its case first in favor of a "neutral presentation" of evidence to the jury.

Defendants' proposal is also impractical. For years now, the parties have stipulated that trial will last 5-7 days. Dkt. 45 at 9. The Court has planned for the same. Dkt. 46, 140. And Irish Rover and its counsel have prepared its case with these stipulated time limits in mind too. Defendants have seemingly done the same also. *See* motion *in limine* No. 7 [Dkt. 181] at 10 ("the Court has set a schedule and Defendants have notified witnesses who are working around that schedule (and may not be available later due to their own obligations)"). Netflix estimates that the neutral presentation it wants will take over 38

hours. Dkt. 173 at 9. Based on the Court's standard trial day, that will consume 6 of the 7 total days for trial. Even Defendants' alternative proposal to watch the entire first season of *Stranger Things* followed by individual episodes from later seasons, together with a script narration, would take over two trial days.

     To be sure, nothing in copyright law requires this "neutral presentation" of the works before the parties' cases-in-chief. The decisions in *Antonick v. Electronic Arts*, 841 F.3d 1062, 1065-66 (9th Cir. 2016) and *Stewart v. Wachowski*, 574 F. Supp. 2d 1074, 1103-04 (C.D. Cal. 2005) stand for the unremarkable proposition that the plaintiff needs to offer the infringing works into evidence. No one disputes that premise here: the parties both agree to offer the copyrighted works and the infringing works into evidence. And once in evidence, the jury will have complete access to review and weigh the evidence—as is done in every trial. The jury can then carry out the Court's instructions on the intrinsic and extrinsic tests, while also weighing the parties' competing presentations throughout the entire trial.

     Nothing in those two decisions, or any other case offered by Defendants, otherwise suggests that the jury must—or even should—somehow receive a neutral presentation about the works before trial starts. Indeed, Defendants overstate the degree of analysis required, as the Ninth Circuit has cautioned that the jury need not consider the works "hypercritically or with meticulous scrutiny." *Twentieth Century-Fox Film Corp. v. Stonesifer*, 140 F.2d 579, 582 (9th Cir. 1944). Nor does the law require Irish Rover to prove that the entire copyrighted work is substantially similar to the entire infringing work. "[A] copyright defendant need not copy a plaintiff's work in its entirety to infringe the work. It is enough that the defendant appropriated a substantial portion of the plaintiff's work." *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 852 (9th Cir. 2012) (emphasis added). Indeed, the Ninth Circuit has embraced Judge Hand's famous maxim that "it is enough that substantial parts were lifted; no plagiarist can excuse the wrong by showing how much of his work he did not pirate." *Id.* (quoting *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir. 1936)). For this reason, courts have found infringement on

only short sequences in an entire song, or just 20-percent of an entire film. *See, e.g.*, *Baxter v. MCA, Inc.*, 812 F.2d 421, 425 (9th Cir. 1987) ("Even if a copied portion be relatively small in proportion to the entire work, if qualitatively important, the finder of fact may properly find substantial similarity"). Nothing about copyright law requires the Court to deviate from established trial practice that features competing presentations by well-represented adversaries.

### B. Ordinary Trial Practice Will Alleviate Defendants' Purported Concerns.

Defendants will have a complete opportunity to defend itself against what it calls "trial by list." To start, this critique is unwarranted. Irish Rover has detailed the similarities between its works and *Stranger Things* across the established framework for the extrinsic test (like plot, characters, sequence of events, among others). This Court has determined that Irish Rover's expert analysis is admissible and creates a genuine issue of fact for the jury to resolve. Dkt. 150. Defendants' continued efforts to malign Irish Rover and its case before trial has no merit.

Even so, the most elementary aspects of trial will allow Defendants to address their concerns. Courts have long hailed cross-examination as "the 'greatest legal engine ever invented for the discovery of truth'." *California v. Green*, 399 U.S. 149, 158 (1970) (quoting 5 Wigmore § 1367). Defendants have not explained why it would be an inadequate tool here. If, as Defendants' own cherry-picked examples suggest, Irish Rover tried to prominently argue its case based on a totem image or reference to Dungeons & Dragons (both minor similarities in Irish Rover's expert's overall analysis) (Dkt. 173 at 8 n.4), then Defendants would seemingly be well suited to cross-examine Irish Rover's expert on that subject to show what they contend are so different about those references in *Stranger Things*. For instance, they could ask about the number of times those references appear in the screenplay versus the television show. The same is true for Defendants' disagreement over the similarities between Jackson Chance and Joyce Byers, which Defendants were able to argue to the Court in just one paragraph. *Id.* at 7-8. Nothing about these examples

suggests the jury needs six days of television to understand Defendants' competing positions.

Nor are Defendants correct about Federal Rule of Evidence 106. "To be sure, Rule 106 does not obligate a district court to grant a party's motion to introduce an entire document or recording to correct the misleading impression created by the opposing party's partial introduction. We have long recognized that '[a]pplication of the rule of completeness is a matter for the trial judge's discretion.'" *United States v. Lopez*, 4 F.4th 706, 717 (9th Cir. 2021) (internal citations omitted). Indeed, the district court declined to play a 4-hour videotape in *United States v. Mendoza* as a "undue consumption of time." No. 16-cr-00150, 2022 WL 958381, at *6 (N.D. Cal. Mar. 30, 2022). Like Defendants here, the defendant complained that the government would select misleading excerpts of the video following the defendant's arrest. *Id.* at *6-7. While free to identify additional excerpts to provide context, the district court rejected the defendant's request to play the entire video. *Id.* The only difference here is that the jury will receive the entire works into evidence.

### C. **An Alternative Solution To Defendants' Perceived Problem Is For Each Side To Prepare 30-Minute Compilations Of *Stranger Things* To Give The Jury A "Look And Feel".**

Irish Rover submits that the Court need not deviate from the basic principles and practice for trials that feature competing presentations of evidence and cross-examination. But if the Court is inclined to screen portions of *Stranger Things* for the jury, Irish Rover submits a more reasonable and equitable proposal is for each side to prepare a 30-minute compilation and present it in its case-in-chief. This proposal will conserve trial time while also giving the jury a "look and feel" of the infringing work (and the jury will have in evidence the entire works to weigh as appropriate during deliberations). And as concerned as Defendants may be that 30 minutes of television may detail too many similarities, Defendants will presumably compile 30 minutes that they maintain support their theory of

the case. Thus, this approach still honors the adversarial process—"the hallmark of our system of justice"—too. *Gerlaugh v. Stewart*, 129 F.3d 1027, 1051 (9th Cir. 1997).

### IV. <u>CONCLUSION</u>

The Defendants have vigorously contested every aspect of this case at every stage. Trial will be no different. The Court should entrust the same principles and procedures underlying the adversarial system to allow for both parties to present their best case to the jury here. Irish Rover asks the Court to deny the Defendants' motion.

Dated: July 25, 2023       BOREN, OSHER & LUFTMAN, LLP

By: */s/ Jeremy J. Osher*
　　Jeremy J. Osher
　　Aaron M. Gladstein
　　Matthew K. Tom
　　Attorneys for Plaintiff
　　IRISH ROVER ENTERTAINMENT, LLC